PAUL J. MARAVELIAS, *pro se*
34 Mockingbird Hill Rd
Windham, NH 03087
Telephone: (603) 475-3305
Email: paul@paulmarv.com

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2019 FEB 11  P 12: 24

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PAUL MARAVELIAS,<br>    a natural person,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN J. COUGHLIN,<br>    a natural person, in his individual and<br>    official capacities,<br><br>GORDON J. MACDONALD,<br>    a natural person, in his official capacity as<br>    Attorney General of New Hampshire,<br><br>PATRICIA G. CONWAY,<br>    a natural person, in her official capacity as<br>    Rockingham County Attorney,<br><br>TOWN OF WINDHAM, ex rel.,<br>WINDHAM POLICE DEPARTMENT,<br>    municipal entities,<br><br>GERALD S. LEWIS,<br>    a natural person, in his official capacity as<br>    Chief of Police of the Town of Windham,<br><br>        Defendants. | Case No.<br><br><br>**COMPLAINT**<br><br><br>**ORIGINAL VERIFIED<br>COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF**<br><br><br>Date Action filed:  2/10/2019<br>Time: 11:00AM |

## PRELIMINARY STATEMENT

1.      NOW COMES Plaintiff PAUL MARAVELIAS ("Plaintiff") with Complaint and brings this action joining two substantially related claims. The first matter is predominant and exigent: this action seeks an emergency *ex parte* temporary restraining order (TRO)

against Defendants to enjoin them from enforcing an illegal state court order abusing Maravelias's federal constitutional rights. Defendants issued a baseless court order against Maravelias *ultra vires,* in total absence of statutory or equitable authority, masquerading as "extended terms" of a preexisting civil protective order, to newly criminalize his "possession" of public internet "social media communications" necessary as exhibits in state court proceedings for his own defense. **Less than 72 hours ago, on Friday 2/8/19, Defendants threatened they will enforce these illegal "extended terms" to the protective order and are imminently expected to issue arrest and/or search warrants against Maravelias at any moment today, in catastrophic violation of his civil rights, causing irreparable injury.** *See* Plaintiff's accompanying "EMERGENCY *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION". This action seeks declaratory relief and a permanent injunction to redress Defendants' said unlawful order against Plaintiff. The second related component of this action seeks declaratory judgement that NH RSA 633:3-a, III-c., pertaining to the legal standard for extending civil stalking protective orders after initial expiration, is facially invalid in violation of the First and Fourteenth Amendments to the Constitution of the United States of America.

## **JURISDICTION AND VENUE**

2.     This action arises under 42 U.S.C. § 1983 and the United States Constitution. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343 in that the instant case arises under questions of federal constitutional law.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4.      Personal jurisdiction exists whereas all individual parties are natural citizens within the federal boundaries of the United States of America.

5.      Claims herein for injunctive relief are authorized pursuant to 28 U.S.C. § 1343 and Rule 65 of the Federal Rules of Civil Procedure.

6.      Claims herein for declaratory relief are authorized pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

7.      Venue is appropriate per 28 U.S.C. § 1391 as Defendants' material conduct has occurred and is occurring substantially within the State of New Hampshire, in which all parties reside.

## PARTIES

8.      Plaintiff PAUL MARAVELIAS is a natural person over 18 years of age residing within the Town of Windham and Rockingham County in the State of New Hampshire. He is a recent Dartmouth College graduate in Economics and employed as a software engineer. He resides with his parents and sister at 34 Mockingbird Hill Road, Windham, NH 03087.

9.      Defendant JOHN J. COUGHLIN is a natural person and judicial officer within the judicial branch of the State of New Hampshire. He is a Senior Active Status judge at 10th Circuit Court – District Division – Derry, 10 Courthouse Ln, Derry, NH 03038. Defendant JOHN J. COUGHLIN was acting under color of New Hampshire state law at all times material. JOHN J. COUGHLIN is being sued in his individual and official capacities.

10.     All other Defendants are being sued in their official capacities only.

11.     Defendant GORDON J. MACDONALD is the Attorney General of the State of New Hampshire with the official address of 33 Capitol St, Concord, NH 03301. Under NH RSA 7:6, he "shall have and exercise general supervision of the criminal cases pending before

the supreme and superior courts of the state" and "with the aid of the county attorneys" …

shall enforce the criminal laws of the state." He has authority to enforce the illegal order

against Maravelias in question.

12.     Defendant PATRICIA G. CONWAY is the County Attorney for Rockingham

County, NH with the official address 10 NH-125, Brentwood, NH 03833. She has authority to

enforce the illegal order against Maravelias in question in Rockingham County.

13.     Defendant TOWN OF WINDHAM is a municipal entity in the State of New

Hampshire which maintains and operates the Windham Police Department ("WPD"), a law

enforcement agency. WPD is responsible for the training, conduct, employment, supervision,

and retention of its officers and employees. The TOWN OF WINDHAM is responsible for

overseeing WPD and ensuring its personnel comply with the laws and constitution of the

United States of America. At all times material, the officers, personnel, and employees of the

TOWN OF WINDHAM were acting and continue to act under color of New Hampshire state

law as applied through the customs, usages, and policies of said town.

14.     Defendant GERALD S. LEWIS is an employee of the TOWN OF WINDHAM

as Chief of Police at the Windham Police Department. Defendant GERALD S. LEWIS is

responsible for the training, conduct, employment, supervision, and retention of his

subordinate officers and employees and has a duty to ensure said personnel comply with the

laws and constitution of the United States of America. Defendant GERALD S. LEWIS has

been acting and continues to act under color of state law as applied through the customs,

usages, and policies of the Town of Windham at all times material.

# FACTUAL ALLEGATIONS

## PROCEDURAL BACKGROUND

15.    In January 2018, Plaintiff was subject to a preexisting New Hampshire civil stalking protective order restraining him from contacting the petitioner in that action, Christina DePamphilis. The underlying state District Court case is <u>Christina DePamphilis v. Paul Maravelias</u> (473-2016-CV-00124). On 1/5/18, DePamphilis moved to extend the stalking order against Maravelias another year to February 2019, pursuant to RSA 633:3-a, III-c.

16.    Maravelias has long maintained the said "protective" order litigation is an illegitimate, bad-faith campaign of malicious harassment orchestrated by DePamphilis's father David DePamphilis. Maravelias claims DePamphilis committed perjury to obtain the order; he has an audio recording proving she falsely put words in his mouth to obtain it. At one point during cross-examination, DePamphilis admitted that Maravelias never actually spoke certain words to her which she claimed (maliciously) in her petition he said.

17.    In June 2017, Christina DePamphilis posted incitative bullying/harassment social media posts identifying and directed against Paul Maravelias, middle-fingering him with her father and boyfriend. Maravelias's final contact with DePamphilis had been asking-her-out once to dinner, which she declined. Maravelias commented at trial she was trying to "bait" him to violate her "bad-faith" "stalking order". She was trying to provoke a jealous reaction and cruelly cause more trouble for Maravelias.

18.    Maravelias collected screenshots of DePamphilis's public internet social media harassment conduct to use for his self-defense at the protective order hearing. Other individuals shared with him other "social media exhibits" from DePamphilis which supported Maravelias's case against the civil protective order.

19.     In May and June 2018, Defendant JOHN J. COUGHLIN presided over a three-day trial at Derry, NH District Court on DePamphilis's extension motion.

20.     Defendant JOHN J. COUGHLIN admitted many of Maravelias's social media image evidentiary exhibits, including DePamphilis's vulgar cyberbullying post against Maravelias, *inter alia*.

21.     On 6/15/18, Defendant JOHN J. COUGHLIN granted the stalking order extension against Maravelias, extending said order to 2/5/19.

**THE ORWELLIAN SUMMER 2018 "EXTENDED TERMS" OR "FURTHER CONDITIONS"**

22.     On 7/2/18, DePamphilis filed a certain Motion in the District Court which is the critical foundation of this action. She filed a "**Motion for Modification of Stalking Final Order of Protection to Include Further Conditions**", attached as **Exhibit A.**

23.     In said Motion, she sought that Defendant JOHN J. COUGHLIN modify her stalking order against Maravelias to include the following additional criminally-enforceable provision:

> "**Respondent [Maravelias] shall not gain access to or possess any of Petitioner's [DePamphilis's] social media communications either directly or through a third party;**"

24.     Hereinafter, Plaintiff refers to the above provision as the "extended terms". Two other such "further conditions" were sought and granted, but this action disregards them.

25.     On 7/5/18, Maravelias filed an Objection to DePamphilis's Motion. Maravelias pointed-out that she was attempting to criminalize Maravelias's mere possession of her "social media exhibits" – by then, record-admitted evidentiary public court exhibits which

proved, in one part, that she was incitatively cyberbullying Maravelias with vulgar gestures, and therefore lied about having "fear" of him for the stalking order.

26.     Maravelias's 7/5/18 Objection (**Exhibit B** – redundant exhibits therefrom omitted) spoke of the unconstitutional overbreadth and vagueness of the requested terms, noting that Defendant JOHN J. COUGHLIN had no legal authority to grant such draconian, Orwellian "extended terms" against Maravelias by the procedural mechanism of a civil stalking order, which is purposed to prevent physical following/stalking.

27.     In response to Maravelias's 7/5/18 Objection, DePamphilis filed a Reply on 7/12/18 which proposed a minor concession in her requested "further conditions", that Maravelias should not "<u>knowingly</u> [gain access to or possess…]". This 7/12/18 Reply is attached as **Exhibit C**.

28.     On 7/16/18, Maravelias filed a surreply to DePamphilis's 7/12/18 Reply, noting that her requested further terms were still outrageously illegal, unconstitutional, unwarranted, and draconian.

**DEFENDANT JOHN J. COUGHLIN GRANTS THE "EXTENDED TERMS" IN ONE WORD**

29.     On 8/7/18, Defendant JOHN J. COUGHLIN **DENIED** Maravelias's Objection (**Exhibit D**) and **<u>GRANTED</u>** (**Exhibit E**) DePamphilis's original 7/2/18 Motion criminalizing Maravelias to "gain access to or possess" his accuser's "[public] social media communications", even including public court exhibits where she made vulgar, incitative cyberbullying posts to harass Maravelias, which proved she lied about having "fear" of Maravelias to get a false, vindictive "stalking" order against him.

30.     Defendant JOHN J. COUGHLIN, *sua sponte,* granted DePamphilis's original 7/2/18 Motion and not even DePamphilis's concessively ameliorated "further condition" as conceded in her subsequent 7/12/18 Motion, in light of Maravelias's objection. *See* **Exhibit F.**

31.     In his Order granting the "extended terms", Defendant JOHN J. COUGHLIN did not write a single word of statutory authority or legal reasoning for his shocking, reckless order, nor wrote any response to Maravelias's objection arguments whatsoever. Judge Coughlin merely scribbled, "Respondent's objection is **DENIED**", on Maravelias's 7/5/18 Objection and criminalized Maravelias to possess his own court exhibits.

**DEFENDANTS' IMMINENT FEBRUARY 2019 THREATS TO ARREST MARAVELIAS AND ENFORCE THE ILLEGAL ORDER**

32.     On 1/24/19, DePamphilis moved the District Court to extend her order again. This Motion was granted the same day; Defendants 8/7/18 expanded terms against Maravelias are still in-effect.

33.     In fall 2018, Plaintiff Maravelias had been a *pro se* litigant in two related appeal cases in the New Hampshire Supreme Court regarding the DePamphilis/Maravelias parties.

34.     On 2/8/19, Plaintiff Maravelias met with Sgt. Bryan Smith at the Windham Police Department. Sgt. Smith, a WPD officer and Town of Windham employee, revealed Defendants are now investigating Maravelias for violating the "extended terms" of the order.

35.     For compelling detail on the imminent threat of irreparable injury expected from impending enforcement of these unlawful "extended terms", Plaintiff Maravelias attaches the supporting declaration entitled "PAUL MARAVELIAS'S DECLARATION IN SUPPORT OF EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION". This

declaration contains an assortment of verbatim quotes from the recent 2/8/19 conversation at WPD between Maravelias and Sgt. Smith.

36.     In said conversation, Sgt. Smith produced a copy of an exhibit Maravelias attached to a December 2018 reply brief Maravelias filed in one of his NH Supreme Court appeals. Sgt. Smith asserted that it was one of DePamphilis's social media communications and that he would likely "arrest" Maravelias if his investigation fails to establish that the said Exhibit had been part of any earlier court hearing.

37.     The Exhibit in question is an image which proves DePamphilis boldly lied about another part of her "stalking" accusations against Maravelias, where she falsely asserted it was socially inappropriate for Maravelias to say hello to her at a 2015 graduation ceremony Maravelias attended for his sister.

38.     Sgt. Smith specifically identified Defendants' 8/7/18 extended terms to the protective order and explained he may arrest Maravelias for violating said terms.

39.     Sgt. Smith said that he would likely "arrest" Maravelias if Maravelias was in "possession" of certain public materials from "social media", ostensibly referring Maravelias's own Supreme Court Reply Brief exhibit. In such an event, Defendants will criminally prosecute Maravelias for violating the "extended terms" by possessing what they claim is a public social media communication by DePamphilis, which is lawful for any other person to possess.

**PAST AND PRESENT ACTUAL HARM AND INJURY SUFFERED BY MARAVELIAS AS A RESULT OF DEFENDANTS' ILLEGAL "EXTENDED TERMS"**

40.     Ever since Defendants imposed the "extended terms", Maravelias has feared criminal prosecution and felt compelled to chill his public speech. In the 2/8/19 conversation,

Maravelias indicated he has felt compelled to forfeit defending his falsely maligned reputation (from the underlying protective order) in certain ways he would pursue were the illegal "extended terms" not constantly threatening his free speech with criminal penalties.

41.    Defendants have stated to Maravelias their intention to engage in a course of conduct affecting his constitutional interest. In fact, they have proven they are actively and imminently threatening said interests by virtue of their current criminal investigation against Maravelias as Sgt. Smith personally averred to Maravelias in person less than 72 hours ago.

42.    Maravelias has trembled in fear of punishment to take acts amounting to the introduction of otherwise-lawful public internet images into his state court briefs/pleadings which would otherwise benefit his position, because of the unlawful "extended terms".

43.    In order to attempt to comply with the unlawful "extended terms", Maravelias has been compelled to destroy and dispose of his own property as well as take elaborate pains that other "third parties" do not maliciously cause Maravelias to commit a crime by virtue their own "possession" or "gaining access" conduct.

44.    Maravelias has suffered extreme emotional distress and trauma in connection with being subject to such unlawful, arbitrary terms and not even being able to know the precise legal functioning or definition of its vague terms "social media communication", "through a third party", and "possess". He lives in constant confusion and fear as a result.

## COUNT 1
## VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)
### Defendants' "Extended Terms" Within a Standard Civil Stay-Away Order Abridge Maravelias's Free Speech and Press Rights

45.    All paragraphs hereinabove are repeated herein as though fully set forth.

46.     The First Amendment to the U.S. Constitution states that "Congress shall make no law . . . abridging the freedom of speech". It is incorporated against the states by operation of the Fourteenth Amendment, which provides "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law…".

47.     Defendants' civil "stalking" "protective" order against Maravelias in its current form, through their "extended terms" granted on 8/7/18 with no explanation at all, violates Maravelias's constitutionally protected free speech and press rights.

48.     The "extended terms" constitute a prior restraint against Maravelias exercising his protected freedoms to speech and press, even absent the imminent enforcement threat. By possessing, publicizing, or expressing himself with certain evidentiary exhibits deemed DePamphilis's "social media communications", Defendants will punish Maravelias with criminal prosecution – nominally, for violating a civil stalking protective order pursuant to RSA 633:3-a.

49.     Defendants are now likely to arrest Plaintiff Maravelias because of his publication to the New Hampshire Supreme Court of a Reply Brief containing an appendical exhibit alleged to be a "social media communication" of DePamphilis. This exhibit shows that DePamphilis lied to obtain a false "stalking" protective order by which Defendants' 8/7/18 Order against Maravelias, imposing the "extended terms", operates to begin with.

50.     Defendants' 8/7/18 "extended terms" are not narrowly tailored to serve a significant governmental interest. The governmental interest behind civil stalking protective orders is to protect true victims of stalking from violent acts, not to criminalize the process of

a respondent in such a proceeding from defending himself in the court system, using public evidentiary exhibits from "social media" to defend himself against claims of "stalking".

51.     Defendants' 8/7/18 extended terms do not appropriate any alternative channel by which Maravelias could defend himself in the legal system where his accuser's public "social media exhibits" are profitable for his legal self-defense in the court system.

52.     Defendants' 8/7/18 extended terms do not appropriate any alternative channel by which Maravelias could publicly share said "social media" evidentiary materials (e.g., on the internet) to defend his name and reputation from defamatory and false "stalking" accusations, without fearing criminal prosecution by the State of New Hampshire.

53.     Defendants' extended terms therefore implicate Maravelias's right to be free from reputational and social stigma. Said terms have chilled Maravelias's public speech which he would have otherwise made to defend his name from the false stalking accusations both in the court system and on the internet, where necessitating exhibits from "social media". They also implicate his right to be left alone, since Defendants will arrest him for "possession" and any lawful expression evidencing "possession".

54.     The above is neither theory nor speculation: Sgt. Smith asserted to Maravelias on 2/8/19 his Supreme Court Reply Brief exhibit is inculpatory evidence of "possession".

55.     Defendants' extended terms are unconstitutionally overbroad because they prohibit, chill, and regulate a significant amount of legitimate speech even if some possible applications of them could prevent unlawful speech.

56.     Defendants' extended terms are unconstitutionally overbroad for being both overinclusive and underinclusive. As-applied, the extended terms do not prohibit any

unprotected criminally threatening or obscene speech, but rather prohibit public speech necessary for Maravelias to defend himself within the New Hampshire court system.

57.     Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his First Amendment rights to freedom of speech and press.

58.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent injunctive relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

**COUNT 2**
**VIOLATION OF PART I, ARTICLE 22**
**OF THE NEW HAMPSHIRE CONSTITUTION**

59.     All paragraphs hereinabove are repeated herein as though fully set forth.

60.     Plaintiff repeats the aforecited authorization for his state law claims under this Court's supplemental jurisdiction, which arise from the same set of facts and transactions/occurrences giving rise to the federal causes of action in this Complaint.

61.     Part I, Article 22 of the New Hampshire Constitution offers even broader protections for free speech rights than the U.S. Constitution.

62.     Accordingly, the Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his rights under Part I, Article 22 of the NH Constitution.

63.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent

injunctive relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## COUNTS 3, 4, AND 5
## VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE-PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)

64.     All paragraphs hereinabove are repeated herein as though fully set forth.

65.     The Fourteenth Amendment guarantees that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law…".

**Count 3: The "Extended Terms" Violate Due Process Since They Are Unconstitutionally Vague**

66.     Defendants' nominal "extended terms" against Maravelias violate and disparage his rights guaranteed by the Fourteenth Amendment to the U.S. Constitution. Said terms are unconstitutionally vague, in violation of due process protections, for failing to define what counts as "possession" of a "social media communication", what counts as "third party" "possession" of the same, what counts as "direct" "possession" of the same, or even what counts as a "social media communication" to begin with (*e.g.*, whether usage of a social media app itself is necessary to "possess" such a "communication", or whether a static photographic "screenshot" reproduction of a "social media communication" visualized on another's device is itself a "communication" or merely an indication or record of such a "communication" existing elsewhere).

67.     The vagueness of Defendant's extended terms terms invites arbitrary and discriminatory enforcement, and they are unintelligible a person of average intelligence.

68.     Defendants' present and imminent threat to criminally enforce the illegal order already underscores the untenable problems of vagueness in their extended terms. In Maravelias's 2/8/19 conversation with Sgt. Smith, there was disagreement whether the Reply Brief exhibit is a "social media communication".

69.     On its face, the extended terms appear to criminalize Maravelias's mere "possession" of public court exhibits, necessarily "depriving" him of that property by forcing him to relinquish and discard said property lest he face criminal punishment.

70.     Defendants' extended terms against Maravelias also produce the absurd result that Christina DePamphilis's possessing *her own* "social media communications" automatically criminalizes Maravelias, since he has access to public court documents where her said "communications" are already entered as exhibits and/or since he has a legal right subpoena them from her; therefore, Maravelias could be said to "possess" by a "third-party" (DePamphilis herself) the said "communications", according to reasonable interpretation of the vague term "third-party [possession]" in Defendants' outrageous 8/7/18 extended terms.

71.     The same can be said for virtually any instance of Maravelias's friend or family member merely reading a copy of his Supreme Court briefs or viewing the record of the case.

72.     Defendants' vague extended terms contain zero due-process protection mechanisms by which Maravelias would not be require automatically to discard and not "possess" any items which might be "social media communications" even if they are public court exhibits for his own cases.

**Count 4: The "Extended Terms" Violate Procedural Due Process Since They Contained No Advanced-Noticed Starting Effective Date and Therefore Inescapably Entrap Their Subject into Committing a Crime**

73.     Defendants' extended terms against Maravelias are worded such that it would be impossible to obey them. Since they contain no effective starting date, they took-effect and began to criminalize any "possession" of public court exhibits as soon as Judge Coughlin signed the Order, before notifying Maravelias that the extended terms were granted. The extended terms contain no practical procedures for compliance, such as a provision that certain things currently in "possession" must be destroyed or relinquished by a certain time.

74.     Since Maravelias cannot un-destroy destroyed items, it cannot be argued that Maravelias could have temporarily destroyed such exhibits pending Judge Coughlin's ruling.

**Count 5: The "Extended Terms", Masquerading Under the Procedural Guise of a Common Civil Protective Order, Violate Substantive Due Process Since They are *Ultra Vires* Issued in Complete Absence of Legal Authority**

75.     *First*, Defendant JOHN J. COUGHLIN acted in reckless defiance of statutory authority on 8/7/18 when he ordered the extended terms against Maravelias by and through "further conditions" to a civil stalking protective order. New Hampshire state law precisely regulates said civil protective orders and enumerates the types of relief which may be granted.

76.     Defendants' extended terms are in excess of the permitted forms of relief for NH civil stalking protective orders. The local NH district courts have jurisdiction over civil stalking protective orders under RSA 633:3-a. RSA 633:3-a, III-a states, "The types of relief that may be granted [with such civil protective orders] … shall be the same as those set forth in RSA 173-B [the similar statute controlling Domestic Violence protective orders]".

77.     RSA 173-B:5 exclusively enumerates the forms of additional relief New Hampshire state courts may grant in such DV or stalking protective orders, as follows:

"(a) Protective orders:
(1) Restraining the defendant from abusing the plaintiff.
(2) Restraining the defendant from entering the premises and curtilage where the plaintiff resides,

except when the defendant is accompanied by a peace officer and is allowed entry by the plaintiff for the sole purpose of retrieving personal property specified by the court.

(3) Restraining the defendant from contacting the plaintiff or entering the plaintiff's place of employment, school, or any specified place frequented regularly by the plaintiff or by any family or household member.

(4) Restraining the defendant from abusing the plaintiff, plaintiff's relatives, regardless of their place of residence, or plaintiff's household members in any way.

(5) Restraining the defendant from taking, converting, or damaging property in which the plaintiff may have a legal or equitable interest.

(6) Directing the defendant to relinquish to the peace officer, in addition to the relief specified in RSA 173-B:5, I, any and all deadly weapons…

(7) Granting the petitioner exclusive care, custody, or control of any animal owned, possessed, leased, kept, or held by the petitioner….

(b) Other relief including, but not limited to:

(1) Granting the plaintiff the exclusive use and possession of the premises and curtilage of the plaintiff's place of residence…

(2) Restraining the defendant from withholding items of the plaintiff's personal property specified by the court. A peace officer shall accompany the plaintiff in retrieving such property to protect the plaintiff.

(3) Granting to the plaintiff the exclusive right of use and possession of the household furniture, furnishings, or a specific automobile…

(4) Ordering the defendant to make automobile, insurance, health care, utilities, rent, or mortgage payments.

(5) Awarding temporary custody of the parties' minor children to either party or, where appropriate, to the department, provided that: …

(6) Establishing visitation rights with regard to the parties' minor children. …

(7) Directing the defendant to pay financial support to the plaintiff or minor children, unless the defendant has no legal duty to support the plaintiff or minor children.

(8) Directing the abuser to engage in a batterer's intervention program or personal counseling. …

(9) Ordering the defendant to pay the plaintiff monetary compensation for losses suffered as a direct result of the abuse which may include, but not be limited to, loss of earnings or support, medical and dental expenses, damage to property, out-of-pocket losses for injuries …

(10) Ordering the defendant to pay reasonable attorney's fees."

78.     Absolutely nowhere in either the New Hampshire civil stalking protective order statute nor the procedurally-controlling DV protective order statute are Defendants authorized to enjoin broad prophylactic injunctions against the free speech and due process rights to "possess" public "social media communications" from the internet for one's legal defense.

79.     *Second*, as an officer of the NH local Derry District Court, Defendant JOHN J. COUGHLIN did not have any general equitable jurisdictional power to enjoin such terms

against Maravelias even if they were not otherwise unconstitutional. The NH local District Court has jurisdiction over such civil stalking protective order cases pursuant to RSA 502-A:14, "Civil Causes. – I. Exclusive Jurisdiction" which states, "all district courts shall have original and exclusive jurisdiction of civil cases in which the damages claimed do not exceed $1,500". The NH District Court does not have general equitable powers, which is reserved to the NH Superior Court. *See* RSA 498:1, "Jurisdiction", which states "the superior court shall have the powers of a court of equity in … cases in which there is not a plain, adequate and complete remedy at law; and in all other cases cognizable in a court of equity". Thus, Defendant JOHN J. COUGHLIN, within a civil stalking protective order case, had no legal authority to grant relief not specifically authorized by the controlling statute(s) therefor.

80.     Accordingly, Defendant JOHN J COUGHLIN'S 8/7/18 order granting the extended terms against Maravelias constitutes an arbitrary, despotic act done *ultra vires* in total defiance of constitutional, statutory, and jurisdictional authority.

81.     Defendant JOHN J. COUGHLIN'S conduct was extreme and outrageous, malicious, wanton and reckless, shocking to the conscience, completely outside the boundaries of propriety and lawfulness, and contemptuous of the moral ethos of the State of New Hampshire and the United States of America.

82.     Defendants acted willfully, knowingly, and maliciously in a coordinated effort to disparage *pro se* Paul Maravelias's federal constitutional rights by unilateral acts of judicial tyranny: Maravelias's 7/5/18 Objection articulately warned Defendants of the illegality of the proposed extended terms and that granting them would be in excess of legal authority. *See* Paragraphs 23 through 25 of Maravelias's 7/5/18 Objection. (**Exhibit B**)

83.     Jointly regarding Counts 3, 4, and 5, the Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his Fourteenth Amendment due process rights.

84.     Jointly regarding Counts 3, 4, and 5, as a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent injunctive relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## COUNT 6
## VIOLATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)

85.     All paragraphs hereinabove are repeated herein as though fully set forth.

86.     The Fourteenth Amendment guarantees that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws."

87.     Maravelias dares Defendants to illustrate one single other time in human history that a New Hampshire local District Court has ordered a civil stalking order respondent not to "possess" "directly or through a third-party" "social media communications" of a petitioner which are necessary court exhibits for said respondent's self-defense.

88.     Since Defendants' extended terms were issued without any legal authority (*See supra*), other NH civil stalking protective order respondents are not – nor ever have been – ordered in a fashion which similarly-situated Maravelias has been ordered here.

89.     Equivalently, no other petitioners in such actions are enabled to have their opponents "ordered" to not "possess" public internet evidence as part of their opposing case, as similarly-situated DePamphilis has been enabled here.

90.      Defendant JOHN J. COUGHLIN did not even attempt to justify his 8/7/18 order or make any specific findings of fact justifying the harmonizing the extended terms to the particular facts and circumstances of the case. He just reflexively scribbled "DENIED" on Maravelias's Objection and "GRANTED" on DePamphilis's original Motion.

91.      Accordingly, Defendants' extended terms violate the Equal Protection clause, since similarly situated petitioners/respondents in NH civil stalking protective order proceedings are currently accorded inconsistent, unequal rights.

92.      Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his Fourteenth Amendment equal protection rights.

93.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent injunctive relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## COUNT 7
## EX POST FACTO LAW UNDER ARTICLE II § 10 cl. 1 OF
## THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)

94.      All paragraphs hereinabove are repeated herein as though fully set forth.

95.      Since Defendants' extended terms did not contain any effective start date, they became enforceable with the underlying stalking order in relation to <u>all times</u> said stalking order was in effect, whether before the 8/7/18 granting of said terms or not.

1    96.    The extended terms therefore violate the Ex Post Facto clause of the U.S.

2    Constitution, criminalizing Maravelias for any "possession" after the protective order was

3    extended but before the "extended terms" were granted.

4
5    97.    Defendants, acting under color of state law, have threatened to and will enforce

6    and implement the above-identified "extended terms" against Plaintiff Maravelias, in

7    violation of the Ex Post Facto clause of the U.S. Constitution.

8
9    98.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

10   Maravelias has and will suffer irreparable harm and injury, which will continue absent

11   injunctive relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth

12   hereunder in the section entitled "Prayer for Relief".

13

14                                  **COUNT 8**
15        **NH RSA 633:3-A, III-C. IS FACIALLY OVERBROAD IN**
          **VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION**

16   99.    All paragraphs hereinabove are repeated herein as though fully set forth.

17
18   100.   Defendants' unlawful extended terms against Maravelias are in-effect by the

19   existence of an extended civil stalking protective order, extended pursuant to RSA 633:3-a,

20   III-c. In relevant part, the said statute reads:

21
22       "Any order under this section shall be for a fixed period of time not to exceed one year, but may
23       be extended by order of the court upon a motion by the plaintiff, showing good cause, with notice
         to the defendant, for one year after the expiration of the first order and thereafter each extension
         may be for up to 5 years, upon the request of the plaintiff and at the discretion of the court. The
24       court shall review the order, and each renewal thereof and shall grant such relief as may be
         necessary to provide for the safety and well-being of the plaintiff." (Emphasis added)
25

26   101.   Maravelias has standing to challenge the facially constitutionality of this statute

27   in this Court. This Court exercises supplemental jurisdiction over this claim as it arises from

28   the same set of transactions and/or occurrences as give rise to the prior federal question causes

of action pertaining to the "extended terms". As far as is known, RSA 633:3-a, III-c. is not currently being challenged in any New Hampshire Supreme Court appeal, nor is Maravelias yet subject to any criminal prosecution involving this statute. The instant cause of action therefore passes the *Rooker-Feldman* doctrine and all abstention doctrines.

102.    This statute permits extension of such protective orders if plaintiff's "well-being" primarily would be jeopardized without an extension, even if concern for "safety" is minimal. The Oxford English Dictionary defines "well-being" as "the state of being comfortable, healthy or happy." <u>Therefore, if a petitioner merely alleges she would be "uncomfortable" or "unhappy" without the extension, the state court is required to extend it.</u>

103.    Said protective orders inflict extensive restrictions against a subject's constitutional rights, such as no-contact and firearms relinquishment orders.

104.    The statute is therefore facially overbroad in violation of the First Amendment, because it enables trial courts to extend such protective orders based on a respondent's constitutionally protected non-threatening public speech which could "discomfort" the petitioner, thereby triggering the overbroad "well-being" standard for extension.

105.    The statute's language is therefore not narrowly-tailored to serve a significant governmental interest. It does not grant respondents any alternative channels to express themselves in public which could "discomfort" or "displease" petitioners without being punished by extended-duration restrictions of their constitutional rights. The overbroad statute therefore has a chilling effect against appropriate speech to such protective order respondents.

106.    The "well-being" standard in the statute is overbroad also because it is not narrowly-tailored to serve the actual governmental interest of the statute, which is not preventing "displeasure" or "discomfort" of petitioners, but rather protecting them from

"stalking" – conduct causing a "reasonable person to fear for their physical safety".

*See* RSA 633:3-a, I.

107.    The "well-being" standard in the statute inescapably renders it a content-based speech regulation, since a respondent's public expression which is "displeasing" to the petitioner would alone satisfy the "well-being" standard for extending it, whereas agreeable public speech not upsetting the petitioner would not trigger the "well-being" standard.

108.    The statute is both overinclusively and underinclusively not narrowly tailored. *First*, it punishes respondents' acts of public expression which are not contrary to the governmental interest of preventing stalking (e.g., publicly disagreeing with the fact that a stalking order was issued). *Second*, it fails to equally punish *new* stalking order defendants with its overbroad "well-being" extension standard. *Cf.* RSA 633:3-a, III-a, the more stringent legal standard for initial issuance of a stalking order requiring a "stalking course of conduct", as opposed to mere indication that granting the order serves a petitioner's "well-being".

109.    Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias by means of a civil stalking protective order which is in-effect because of a facially overbroad statute, RSA 633:3-a, III-c., in violation of the First Amendment to the U.S. Constitution. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## COUNT 9
## NH RSA 633:3-A, III-C. IS FACIALLY VOID FOR VAGUENESS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

110.    All paragraphs hereinabove are repeated herein as though fully set forth.

111. "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703,732 (2000).

112. The language of RSA 633:3-a, III-c. is unintelligible and so loosely constrained that arbitrary, discriminatory enforcement thereof is inevitable. Not only is the term "well-being" too vague, but also the extent to which the preceding term "safety" narrows or qualifies "well-being".

113. This vagueness is substantially likely or guaranteed to complicate every stalking order extension case brought before NH state courts, regardless of the particular facts of such cases. The statute provides zero guidance on how trial court judges should interpret "well-being", or on what conduct beyond threatening speech or actual violence would permit extension not necessarily to serve a plaintiff's "safety", but rather their "well-being".

114. For instance, one judge might consider a "well-being" order ridiculous and far in-excess-of the legislative counter-stalking intent, calibrating his or her judgements to the statute's broad "safety" context, even applying *ejusdem generis* to constrain "well-being" thereby. However, another judge might reject this interpretation, "safety and well-being" not being a list, and adopt the plain meaning of the word "well-being".

115. The statute's vagueness is not only semantic but also syntactic, fraught with meaningful ambiguity between the co-possible constructions "shall grant such relief as may be necessary to provide for the (safety and well-being)" and "… relief as may be necessary to provide for the safety, and (relief as may be necessary to provide for the) well-being". The

former interpretation begets tautology, the latter overbroad plaintiff-sycophancy. Both interpretations are reasonable but produce vastly different legal outcomes.

116.    The comparable protective order laws of <u>no other US state discard the initial-issuance-standard for something pointlessly different for extension</u>, as does New Hampshire's unconstitutionally defective statute. For example, the analogous Massachusetts statute for extension of Civil Harassment Orders, M.G.L. 258E §3(d), states in relevant part that "the court [may extend] the [<u>harassment</u>] order … as it deems necessary <u>to protect the plaintiff</u> <u>from harassment</u>." *Id.* It does not switch the legal standard to something different and overbroad when it concerns extension, requiring a "stalking course of conduct" for an original order but only vague "interest in well-being" for subsequent extensions, as with the defective New Hampshire statute. *Cf. also* 19-A M.R.S. 4007(2), the analogous Maine statute controlling extension of DV protective orders following civil adjudications of "<u>abuse</u>": "the court may extend an order, upon motion of the plaintiff, for such additional time as it determines necessary to protect the plaintiff … <u>from abuse</u>."

117.    That a statute's unintelligibility to an average person and propensity for arbitrary enforcement violates the due process rights guaranteed by the Fourteenth Amendment is pellucid – especially here, where said vague statute controls the extension of court orders severely limiting other federal constitutional rights.

118.    Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias by means of a civil stalking protective order which is in-effect because of an unconstitutionally vague statute, RSA 633:3-a, III-c., in violation of the Fourteenth Amendment to the U.S. Constitution. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court:

I. Issue a temporary restraining order (TRO) and preliminary injunction prohibiting Defendants and their officials, employees, and agents from implementing or enforcing the said "extended terms" to the civil protective order against Maravelias in New Hampshire District Court Case No. 473-2016-CV-00124;

II. Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's civil constitutional rights as guaranteed by the First Amendment to the U.S. Constitution;

III. Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's civil constitutional rights as guaranteed by Part I, Article 22 of the New Hampshire Constitution;

IV. Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's due process and equal protection rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution;

V. Enter a declaratory judgment that Defendants' said "extended terms" to the civil protective order are *ultra vires* and in violation of NH state law;

VI. Enter a declaratory judgment that Defendants' said "extended terms" to the civil protective order violate the Ex Post Facto clause of the U.S. Constitution;

VII. Enter a declaratory judgment that New Hampshire RSA 633:3-a, III-c. is unconstitutionally overbroad on its face in violation of the First and Fourteenth Amendments to the U.S. Constitution;

VIII. Enter a declaratory judgment that New Hampshire RSA 633:3-a, III-c. is unconstitutionally vague on its face in violation of the Fourteenth Amendment to the U.S. Constitution;

IX. Enter a permanent injunction to prevent future unlawful conduct by Defendants;

X. Award Plaintiff the reasonable costs and disbursements of this action;

XI. Grant any further relief as may be deemed just and proper.

_____

Respectfully submitted,



PAUL J. MARAVELIAS, *pro se*



/s/ Paul J. Maravelias, *pro se*_____            Dated: February 11ᵗʰ, 2019

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**


NOTARY ACKNOWLEDGMENT


STATE OF NEW HAMPSHIRE – COUNTY OF _____

On this ___ day of February 2019, before me, _____, the
undersigned officer, personally appeared _____, known to me (or
satisfactorily proven) to be the person whose name is subscribed to the within instrument
and acknowledged that he/she executed the same for the purposes therein contained, who
being by me first duly sworn, on his oath, deposes and says:

**All factual stipulations within the foregoing Original**
**Verified Complaint are true and accurate to the best of my**
**knowledge as of 2/11/2019.**

*[affiant's statement of facts]*

2/11/19

*[signature of affiant]*

**Paul J. Maravelias**
*[typed name of affiant]*

**34 Mockingbird Hill Rd, Windham, NH 03087**
*[address of affiant]*


In witness whereof I hereunto set my hand and official seal.



_____

Notary Public

My commission expires: _____

# EXHIBIT A

## STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                                    10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-124

Christina DePamphilis

v.

Paul Maravelias

## PETITIONER'S MOTION FOR MODIFICATION OF STALKING FINAL ORDER OF PROTECTION TO INCLUDE FURTHER CONDITIONS

NOW COMES the Petitioner Christina DePamphilis, by and through her attorneys, Preti Flaherty PLLP, and respectfully submits the within Motion for Modification of Stalking Final Order of Protection to Include Further Conditions and, in support thereof, states as follows:

1.      In a June 15, 2018 Order, the Court granted Petitioner's Motion to Extend the Stalking Final Order of Protection in this case until February 5, 2019.

2.      Respondent subsequently filed a Motion for Reconsideration, seeking the Court to reverse its decision on Petitioner's Motion to Extend, to which Petitioner is objecting in a separate pleading.

3.      As the Court is aware from the evidence and testimony presented at the extension hearing, in a November 2017 letter to undersigned counsel, Respondent vowed to "go nuclear and utterly destroy (Christina's) academic and professional future…" (Petitioner's Ex. 2 at hearing). On December 10, 2017, Respondent made good on that threat by sending an e-mail to four Windham High School teachers calling Christina libelous names and urging that she be kicked out of the National Honor Society (Petitioner's Ex. 3 at hearing).

13188052.1

# EXHIBIT A

4. In addition, Respondent introduced numerous exhibits at the hearing demonstrating that he is closely monitoring Petitioner's social media and Internet activity and accessing material that he is not intended to see.

5. Respondent was criminally charged with violating the Stalking Order by sending the December 2017 e-mail to Christina's school. The State, however, recently *nol prossed* the charge.

6. Given this evidence, corroborated and confirmed by Respondent's own testimony, it is appropriate that Petitioner be afforded further specific protections under the Stalking Final Order of Protection. The requested protections are:

   a. Respondent shall not gain access to or possess any of Petitioner's social media communications either directly or through a third party;

   b. Respondent shall not communicate with Petitioner's current or future academic providers; and

   c. Respondent shall not communicate with Petitioner's current or future employers.

7. While the State, in this instance, chose not to prosecute Respondent for his e-mail to Windham High School, this does not mean it was legitimate or protected conduct. Without any doubt, the e-mail was intended to academically and reputationally harm Christina, as Respondent had pledged to do one month earlier.

8. By requesting that Respondent be prohibited from contacting Christina's present and future schools and employers, such harassment and potential academic and professional harm will be prevented.

9. A Final Order of Protection may only be modified by order of the Court. RSA 173-B:5, VIII (a). These are well-justified modifications to the Order which are tailored to the facts and history of this case and are "necessary to bring about a cessation of abuse." *See* RSA

2

13188052.1

# EXHIBIT A

173-B:5, 1. The three requested conditions also address Petitioner's legitimate concern that Respondent may take further actions that will harm her academic and professional future.

WHEREFORE, for the reasons set forth above, Petitioner respectfully requests this Honorable Court to:

A.    Grant Petitioner's Motion by adding the three conditions requested;

B.    Modify the Stalking Final Order of Protection to include the following three conditions:

1.    Respondent shall not gain access to or possess any of Petitioner's social media communications either directly or through a third party;

2.    Respondent shall not communicate with Petitioner's current or future academic providers; and

3.    Respondent shall not communicate with Petitioner's current or future employers; and

C.    Grant such other relief as may be just and proper.

Respectfully submitted,

CHRISTINA DePAMPHILIS

By her attorneys,

PRETI, FLAHERTY, BELIVEAU & PACHIOS, PLLP

Dated: July 2, 2018

By: _____
Simon R. Brown, NH Bar #9279
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1500

3

13188052.1

# EXHIBIT B

Robin E. Pinelle, Circuit Clerk
NH Circuit Court
10th Circuit – District Division – Derry
10 Courthouse Lane
Derry, NH 03038

July 5th, 2018

Paul Maravelias
34 Mockingbird Hill Rd
Windham, NH 03087

RE:  Christina DePamphilis vs. Paul Maravelias
     Docket No. 473-2016-CV-00124

Dear Clerk Pinelle,

Enclosed please find Respondent's *Objection to Petitioner's Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* to be filed in the above-referenced case.

Thank you for your attention to this matter.

Sincerely,

Paul J. Maravelias

CC: Simon R. Brown, Esq.

I, Paul Maravelias, certify that a copy of the present *Objection to Petitioner's Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* was forwarded on this day through USPS Certified Mail to Simon R. Brown, Esq., counsel for the Petitioner, P.O. Box 1318, Concord, NH, 03302-1318.

# EXHIBIT B

## THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-00124

Christina DePamphilis

v.

Paul Maravelias

## RESPONDENT'S OBJECTION TO PETITIONER'S MOTION FOR MODIFICATION OF STALKING FINAL ORDER OF PROTECTION TO INCLUDE FURTHER CONDITIONS

NOW COMES the Respondent, Paul Maravelias, and moves this Court to deny Petitioner's baseless *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* dated 7/2/18. In support thereof, he represents as follows:

1. On 7/2/18, David DePamphilis's daughter, the Petitioner, filed the aforementioned Motion to impose even more severe court-ordered restrictions on Maravelias's public free-speech rights, even after her outright lies, inconsistent statements, and vulgar acts of harassment against Maravelias were undeniably exposed in numerous ways during hearings before this Court on 5/3, 5/4, and 6/8 of this year.

## A. PETITIONER CHRISTINA DEPAMPHILIS'S MOTION AIMS TO EXCUSE HER DOCUMENTED ILLEGAL BEHAVIORS AND EMPOWER HER TO CONTINUE VIOLATING THE LAW, AND IS BUT ANOTHER PREDICTABLE ACT IN HER CONTINUED CAMPAIGN OF LEGAL HARASSMENT AGAINST MARAVELIAS

# EXHIBIT B

2.      As this Court will remember, Christina DePamphilis has cruelly bullied the victim, Mr.

Maravelias, with incitative, vulgar, and insulting posts on her <u>public</u> social media profile(s)

during the pendency of her criminally falsified "stalking" order against the victim/Respondent.

3.      She now seeks to have this Court outlaw Maravelias's mere possessing a record of her

behavior.

4.      In particular, in June 2017, Petitioner posted an inflammatory picture of her boyfriend

*directly addressing* the victim and making incitative comments against him (6/19/18).

5.      After failing to elicit any response from Maravelias that would violate her bad-faith

"stalking" order against him, she then posted a rehearsed image of herself, her father David

DePamphilis, and her 21-year-old boyfriend Matthew LaLiberte, all middle-fingering the victim,

and also making an incitative comment against the victim which identified him.

6.      Viewed in the light of her acts of criminal harassment (RSA 644:4) against Mr.

Maravelias, the Petitioner's present motion to prohibit Maravelias from "gaining access" to or

even "possessing" these public posts, even from "third parties", is a risible perversion of

propriety.

7.      Essentially, <u>Christina DePamphilis wishes to be legitimated by this Court to continue</u>

<u>her vulgar harassment of Mr. Maravelias while injunctively restraining him from even using her</u>

<u>outrageous public social media exhibits for legal purposes to defend himself</u>. This Court should

feel insulted by such a disrespectful and inappropriate attempt to abuse its power.

8.      The Petitioner's continued conduct of filing baseless motions against the victim is for

no valid purpose beyond solely to harass him; this Court should impose sanctions against her

accordingly for such repeated and patently unreasonable motions against Mr. Maravelias.

# EXHIBIT B

9.    Furthermore, the Petitioner's motion attempts to excuse her generic illegal behaviors, past and future, demonstrated on her social media, in which Mr. Maravelias is not the victim.

10.    In the Motion to Extend Hearing, this Court accepted *inter alia* a relevant evidentiary exhibit of the "minor" Petitioner – a picture from her social media. In this post, she had pictured herself, at age 16, holding a purse in her right hand and an open bottle of vodka in her left while leaving a party at "4:43am", with her parked, about-to-be-driven car in the background.

11.    Christina DePamphilis also documented her psychoactive substance abuse, her private sexual behaviors[1], and her further underage alcoholic consumption in other social media postings.

12.    Thus, <u>the Petitioner's current desire to handcuff Maravelias in his public free speech rights to third-parties is but a panicked "futile attempt" to avoid responsibility for her pictured acts of law-breaking and perjury[2]</u>, should Maravelias discontinue his magnanimous decline so-far to lawfully document said public postings on the web, as he lawfully threatened to do in a November 2017 response to Attorney Brown's out-of-the-blue threatening letter[3].

---

[1] If this Court were to grant Petitioner's Motion and thereby enter the enterprise of unlawfully policing private conducts of speech, it would at least be equitable for the Court to order Christina DePamphilis to cease and desist making improper posts revealing her private sexual behaviors before peers. Upon information and belief, this behavior is socially unacceptable, and is considered disturbing by her peers. It is not practiced by other youth, even by ones who picture themselves violating state laws on alcohol/marijuana consumption. While the latter is at least somewhat socially acceptable, the Petitioner has caused discomfort to her peers with her unwanted social media indications of her private sex life. These should never be publicly posted on social media, especially given her age.

[2] Christina DePamphilis maintained her false claim under oath on 5/3/18 that she has "fear for her physical safety" of Mr. Maravelias, despite her abusive, harassing, and unlawful conduct victimizing Mr. Maravelias. Indeed, this Court has validated Christina DePamphilis's hurtful law-breaking, in wrongfully granting an extension on her Stalking Order. That matter is pending this Court's review in a reconsideration pleading filed by Respondent.

[3] Maravelias has every right to publicly republish her legally-public postings, as acknowledged by the mere existence of the instant motion by Petitioner, the daughter of David DePamphilis, to injunct against said right.

# EXHIBIT B

13. The Petitioner requests that it be unlawful for Maravelias to even "possess" her social media postings. This is so absurd that it would criminalize Mr. Maravelias for merely owning his copy of this Court's own public evidence exhibits from this case which he used at Hearing.

14. Thus, it would also violate the "Right to Know" law (91-A), guaranteeing access to public court records, *e.g.* Christina DePamphilis's posting of herself middle-fingering her victim.

15. While it is strongly speculated that there are many photographs in existence of the 17-year-old female Petitioner which are already quite unlawful for anyone to even possess[4], these are most certainly not the public social media postings in question, which are fully lawful for legal use.

**B. PETITIONER'S MOTION DISHONESTLY OMITS PARTS OF MARAVELIAS'S ALLEGED "THREATNING QUOTE" TO OBFUSCATE THE FACT THAT HE WAS MERELY COUNTER-THREATENING LAWFUL DETERRENT RETALIATION IF LEGALLY ATTACKED**

16. The Petitioner seems quite fixated on the fact that Maravelias merely *responded to* Attorney Brown's provocative, threatening letter to him. Maravelias made a comment along the lines that he would "go nuclear and utterly destroy [Christina's] academic and professional future".

17. Conveniently, Petitioner omits the second part of Maravelias's actual sentence: "[share her own public social media artifacts], should David dare challenge [Maravelias] legally".

18. Thus, Petitioner's counsel <u>first provoked Maravelias with an absurd, causeless threat of lawsuit</u>, and Maravelias then <u>lawfully counter-threatened</u> to share Petitioner's already-public social media posts, which might have a negative effect on her future due to <u>her own</u> outrageous behaviors.

---

[4] 18 U.S.C. § 2251, RSA 649-A:3

# EXHIBIT B

## C. PETITIONER'S MOTION HAS NO BASIS IN THE LAW WHATSOEVER, AS THE REQUESTED RELIEF FAR EXCEEDS THE POWERS GRANTED TO THIS COURT BY THE LAW AND WOULD FURTHER BLATANTLY ABUSE MARAVELIAS'S BASIC CONSTITUTIONAL RIGHTS TO FREE SPEECH, PRESS, AND PETITION, AMONG OTHERS

*"Free speech and Liberty of the press are essential to the security of Freedom in a State: They ought, therefore, to be inviolably preserved."* – N.H. Const., Part I, Article 22

19.   A Stalking Order – whether lawfully issued or not – does not grant a trial court unspecified powers to enjoin broad prophylactic injunctions on First Amendment-protected speech against Respondent. Petitioner's Motion seeks no relief whatsoever regarding Maravelias's conduct *with her*, but rather his speech to third-party actors. This is shameful and cowardly.

20.   "Only narrow categories of speech, such as defamation, incitement and pornography produced with real children, fall outside the ambit of the right to free speech." State v. Zidel, 156 N.H. 684, 686, 940 A.2d 255 (2008). As Petitioner's requested terms seek to injunct against Maravelias's free speech rights in none of the aforecited unprotected categories[5], but rather would proscribe any and all communications with large classes of third party individuals, her motion must be unquestionably denied.

21.   If this Court were to abuse its power by granting such latitudinous injunctions against Mr. Maravelias's public speech to parties other than Petitioner, it would incur liability in federal – let alone state-level – lawsuits for damages on the grounds of willful, reckless First Amendment transgression. Since this Court is well-aware of the facts and circumstances of this case and has demonstrated a repeated pattern of inexcusable conduct evincing a clear bias against Respondent, it

---

[5] Insofar as the Petitioner falsely claims Maravelias's 12/10/17 email regarding her conduct was "libelous", the proper remedy for defamation is recovery of damages through civil equity litigation – not a personal-safety-exclusive Stalking Order. Mr. Maravelias is the victim, not the author, of libelous/slanderous expression.

# EXHIBIT B

would be liable for Section 42 U.S.C. § 1983 federal damages in violating Respondent's

constitutional rights while acting under color of state law.

22.   That such violations be knowing or willful is not a prerequisite element for § 1983 action.

23.   While the Court has authority to issue specific orders of protection as enumerated on the

standard form for Stalking Orders requested by Petitioner *prior to and not after* any hearing, the

Court may do so only "as is necessary to bring about a cessation of stalking". *See* RSA 633:3-a, III-

a. Furthermore, 633:3-a, II. narrows the legal definition "stalking" such that it "shall not include

constitutionally protected activity, nor shall it include conduct that was necessary to accomplish a

legitimate purpose independent of making contact with the targeted person".

24.   Therefore, the requested modifications to the Stalking Order are absolutely illegal. They

overwhelmingly exceed the Court's statutory authority to prohibit solely acts of further "stalking",

of which constitutionally protected speech (*e.g.,* to own/use public social media postings or

communicate with public employees independent of contacting Petitioner) is not.

25.   Furthermore, if the Court nonetheless asserted an undefined power to grant these expanded

injunctions against Respondent, it would violate plainly established protections on constitutional,

legitimate speech to third-parties who are not plaintiffs in any civil protective order. Such a court

order would be contemptuous of Part I, Article 22 of the State Constitution and the First and

Fourteenth Amendments of the Federal Constitution, *inter alia*.

26.   The relief sought in Petitioner's motion is unconstitutional for being impossibly vague and

woefully overbroad. "Courts are suspicious of broad prophylactic rules in the area of free

expression, and therefore precision of regulation must be the touchstone in an area so closely

touching our most precious freedoms". <u>Montenegro v. New Hampshire Div. of Motor Vehicles</u>, 166

N.H. 215, 220 (2014). The sought expanded terms of protection fail to sustain any "precision of

# EXHIBIT B

regulation" standard, as they are impermissibly overbroad and confusingly vague. A statute is considered unconstitutionally "'overbroad' in violation of the First Amendment if in its reach it prohibits constitutionally protected conduct." <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 114 (1972).

27.   The second and third sought orders of protection forbid that the Respondent should contact Petitioner's "present or future" "academic providers" or "employers". In imposing such groundless authoritarian sanctions against Maravelias, the Court would expect him to conjure a supernatural ability to presciently discern through a crystal ball who might be her "future employer(s)" or who might be her future/current "academic provider(s)", a term which is in itself impossibly vague.

28.   Clearly, these measures are wickedly crafted <u>to outlaw any and all acts of constitutionally protected, self-defensive speech Maravelias may take on the web or elsewhere to defend his own wrongfully discredited name, traduced in envy by the Petitioner-attention-seeker, as any public act of speech whatsoever could be visible to an "employer" or "academic provider"</u>.

29.   "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." <u>Ashcroft v. Free Speech Coal.</u>, 535 U.S. 234, 237 (2002). Even if the requested additional injunctions did function to prevent further acts of "stalking", they are still egregiously overbroad and therefore unactionable manifestations of the statute, due to the copious protected speech that would be simultaneously criminalized. <i>See</i> <u>Doyle v. Comm'r, N.H. Dep't. of Resources & Economic Dev.</u>, 163 N.H. 215, 221 (2012), which holds laws facially overbroad under Part I, Article 22 of the State Constitution where "a substantial number of its applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep". <u>Id</u>.

# EXHIBIT B

30.   This Court must observe the brutally evident reality that Christina DePamphilis finds herself in a guilt-ridden panic-mode state, now that her outrageous acts of protective order falsification have been documented by Maravelias at the Hearing, that the wrong order was actually extended against him (perpetuating the injustice), and that he still has full right to make public speech acts to document her crimes. This Court issues jail sentences routinely in its official duties: why then should it protect a nefarious perjurer-criminal from natural consequences as comparatively tepid as having the objective facts of her own public words further publicized?

## D.  PETITIONER'S CITATION OF RSA 173-B:5 IS INCOMPLETE, DECEPTIVE, AND INVALID

31.   Paragraph 9 of David DePamphilis's daughter's Motion attempts to deceive this Court into believing it has any legal authority whatsoever to grant her request. This is another act of the Petitioner's storied obscurantism and willful misrepresentation of facts.

32.   RSA 173-B is the domestic violence statute, in which the operative legal term is "abuse".

33.   "Abuse" is defined in 173-B:1, I as certain acts performed exclusively "by a family or household member or by a current or former sexual or intimate partner" of the victim.

34.   Mr. Maravelias has never been a "family or household member" of Petitioner, nor one of the many men who may honestly claim to have been her "sexual or intimate partner", thankfully.

35.   Thus, 173-B terminology pertaining to "abuse" is thoroughly inapplicable to the instant case.

36.   Although the procedural stipulations of 173-B are applied to Stalking protective orders under 633:3-a, III-a, this does not mean specific language pertaining to physically violent domestic "abuse" in 173-B may be absorbed into a very different case pertaining to alleged "stalking".

37.   The Petitioner attempts to fool this Court into adopting a strange interpretation of 173-B:5 by obscurantistically omitting the full text of the statute for essential context:

# EXHIBIT B

"I. A finding of abuse shall mean the defendant represents a credible threat to the safety of the plaintiff. <u>Upon a showing of abuse of the plaintiff by a preponderance of the evidence</u>, the court shall grant such relief as is necessary to bring about a cessation of abuse." (Emphasis added)

38.   The Petitioner dishonestly cherry-picks the last 8 words of the statute in Paragraph 9 of her Motion – omitting even the majority of the quoted sentence, let alone the surrounding context – to advance a preposterous interpretation thereof before this Court.[6]

39.   That is, the Petitioner deceitfully conflates the statute controlling *the original issuance of a domestic violence restraining order* with a nonexistent power of this Court *to issue further stalking-related injunctions against Mr. Maravelias* without any form of due process inherent to the original issuance of Stalking order terms of protection, such as a full and fair trial, the notice of criminal consequences for perjurious accusations in the petition form, and a public notary taking the oath of the Petitioner certifying the truth of his or her allegations.

40.   The dishonesty of Petitioner's Paragraph 9 conduct is extreme and willful. This Court should impose sanctions for such blatant attempts to fool it into breaking the law, and the bar association should be contacted regarding a potential Code of Attorney Conduct violation[7].

41.   Absolute judicial immunity exists where a judge acts within a "judicial capacity". <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978). Since issuing unlawful injunctions against Respondent on the basis of an inapplicable legal standard for a separate cause of action (as documented above) establishes a framework in which the Court <u>knows</u> it acts outside of the law, such an act would be in excess of any legitimate "judicial capacity" and would dissolve the ordinary shield of absolute judicial immunity from federal Section 1983 and/or other litigation.

---

[6] See the parallel language specific to Stalking orders in 633:3-a, III-a, which differs from 173-B's text and again pertains to the initial process of Stalking Petition filing and subsequent court order post-hearing, not an unfettered right to grant further unnoticed prayers for relief found nowhere in the Petition nor ever raised at the Hearing.

[7] See New Hampshire Rules of Professional Conduct Rule 1.1 (b)(1), Rule 4.1, and the 2004 ABA Model Rule Comment on Rule 4.1

# **EXHIBIT B**

42.   In further support of the Court's inability to impose unlawful, unconstitutional restrictions

on the public speech of Respondent, see <u>Exhibit A</u> (Respondent's May 2018 Motion to Dismiss

filed in the baseless criminal case against Respondent for his 12/10/17 National Honor Society

ethics complaint email, which Petitioner references in her Motion).

## E.  <u>THE LEGAL SCOPE AND LEGISLATIVE HISTORY OF THE STALKING STATUTE CONCERN PERSONAL SAFETY PROTECTION EXCLUSIVELY – NOT ENFORCING CRIMINAL SANCTIONS FOR ACTS OF DISAGREEABLE SPEECH OR EVEN DEFAMATORY SPEECH.</u>

43.   The expanded terms requested by Christina DePamphilis <u>have absolutely nothing to do</u>

<u>with protecting her physical safety</u>. They are fretful, neurotic exasperations that the Court order

Maravelias 1) not possess public legal exhibits and 2) not make any communications to third-

parties. Even if this were a legitimate "protection" of someone's "career" or "academics", the law

affords this Court no ability to enforce random "protection" injunctions at its own despotic, nanny-

state volition, as requested.

44.   The Stalking statute permits physical-violence-prevention-related protections <u>exclusively</u>.

## F.  <u>PETITIONER'S ABUSIVE MOTION FALSELY ACCUSES THE RESPONDENT EXACTLY OF HER OWN DISTURBING BEHAVIORS</u>

45.   When taking breaks from secretly collecting pictures of Maravelias's private bedroom

without his knowledge and harassing him with vulgar middle-finger posts with her boyfriend, the

Petitioner Christina DePamphilis has been monitoring Maravelias's online activity and gaining

access to material she is not intended to see. In a recent filing, she revealed that she has likely

hacked into Maravelias's private business product support forum and accessed Maravelias's private

postings on an off-topic discussion section therefrom.

46.   Given the Petitioner's disturbing and obsessive behaviors, Maravelias understandably feels

violated, uncomfortable, and utterly creeped-out. But, he dares not file another honest and truthful

Stalking petition – even as a victim of true stalking – since this Court has proven its undeniable

# EXHIBIT B

prejudicial hostility against Maravelias in forcing him to pay an opponent's attorney's fees in a

factually corroborated, truthful Petition filed against David DePamphilis.

47.   Thus, at the very least, this Court ought not to unlawfully expand the abusive "terms of

protection" in the same extant Stalking Order it knows to be originated in falsification.

48.   Furthermore, Respondent Maravelias has been absolutely magnanimous up to this point in

declining to exercise his right to disseminate DePamphilis's outrageous social media postings. The

Court should perceive Maravelias's good-character benevolence, and not further abuse his speech

rights through unilateral acts of judicial tyranny.

49.   To prove this, Maravelias represents to have been sent the following social media postings

made by Christina DePamphilis, which he has opted never to share heretofore in any context:

a.   A post showing Christina conspiring with her brother Nicolas DePamphilis over SMS
     about where the two may consume an illegal drug without David DePamphilis
     knowing;

b.   A video of Christina forcing the slurred exclamation "I'm. So. High!" through an
     intoxicated blur while sitting on a toilet at a party;

c.   A highly inappropriate, suggestive video of Christina genuflecting on her knees and
     sucking a frothy white fluid (hypothesized to be whipped cream) into her mouth which
     then appears smeared on her face;

d.   Photographs and videos of Christina climbing out of her second-story bedroom
     window late at night to escape to a party in secret;

e.   A video wherein Christina brags of "passing" a field sobriety test a police officer
     administered to her when pulled over returning from said party;

f.   A photograph proving she was indeed at her Salisbury beach house in February 2017,
     and therefore feloniously perjured before this Court on 5/4/18 when so denying; and

g.   A video picturing Christina intoxicated on a ski lift and casually joking about the
     danger thereof, revealing she later took rescue snowmobile escort down the mountain.

50.   Maravelias is not "obsessed" with a delinquent law-breaker. His mind has not been

"preoccupied at all with [her]", as written to Attorney Brown in the November 2017 letter. He has

# EXHIBIT B

not disseminated any of the aforementioned exhibits. This shows his clemency and non-obsession.

<u>If this Court will illegally injunct further against Maravelias's free speech rights through shameful</u>
<u>diktats, he will make broader exercise of the free speech rights he still has.</u>

51.    Furthermore, since Maravelias has been sent the social media exhibits in question by independent third parties who support him, the instant Motion to further abuse Maravelias is an incredibly foolhardy act by the Petitioner. It is suspected that these third parties too will discontinue their independent magnanimity in allowing Christina DePamphilis to grow in her delinquency without public correction or documentation of the said.

## <u>CONCLUSION</u>

*"To extend the Stalking Order in this case would show plaintiffs all across the great State of New*
*Hampshire that you can come to court to get a restraining order against someone – to shut them up when*
*they say things you disagree with." – Paul Maravelias, 6/8/18 Hearing Closing Argument*

52.    Mr. Maravelias enjoys enormous validation of his trenchant determination from months ago that the DePamphilis bad-faith "stalking order" abuse against him has been but a cowardly attempt to restrict his speech, having nothing at all to do with a "fear for personal safety".

53.    The Petitioner's shameful, panicked, and obscurantist Motion decisively confirms this.

54.    The said is a but veiled attempt to criminalize Maravelias's quotidian existence. It is a nefarious scheme to conduce an innocent human life into doubtless imprisonment. It is a cowardly contrivance birthed of the perverse validation this Court's errors have tortiously bestowed upon Maravelias's abusers, and lacks any legal merit.  It is beyond shameful that David and Christina DePamphilis still machinate against the victim such dishonest abuse-stratagems which cowardly masquerade under the misleading optics of protectivism.

# EXHIBIT B

55. To echo familiar language from yesterday's national holiday, in every stage of this Court's oppressions, Mr. Maravelias has petitioned for redress in the most humble terms. His repeated petitions have been answered only by repeated injury. A Court whose character is thus marked by every act which may define a tyrant, is unfit to be the judiciary of a free people.

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Court:

I.      Grant this Motion;

II.      Grant Respondent's 6/25/18 *Motion for Reconsideration*, which will terminate the Stalking Order and dismiss Petitioner's instant Motion as well as this Objection thereto,

III.      Deny Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions*; and

IV.      Hold a Hearing, if necessary, on this matter.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

July 5th, 2018

13

PAUL MARAVELIAS — 34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

# EXHIBIT C

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-124

Christina DePamphilis

v.

Paul Maravelias

## PETITIONER'S REPLY TO RESPONDENT'S OBJECTION TO MOTION FOR MODIFICATION OF STALKING FINAL ORDER OF PROTECTION TO INCLUDE FURTHER CONDITIONS

NOW COMES the Petitioner Christina DePamphilis, by and through her attorneys, Preti Flaherty PLLP, and respectfully submits the within Reply to Respondent's Objection to Motion for Modification of Stalking Final Order of Protection to Include Further Conditions and, in support thereof, states as follows:

1.      Respondent conflates the concept of "constitutionally protected activity." While such activity cannot be utilized to prove a "course of conduct" in connection with a stalking petition proceeding, *see* RSA 633:3-a, II (a), one's right to travel and contact/associate with other persons certainly may be restricted by the Court in a Final Stalking Order of Protection.  For instance, the Final Stalking Order of Protection now in effect against Respondent prohibits him from "stalking or abusing" Petitioner; from appearing in proximity to her residence, place of employment, or school; and from "stalking or abusing" her household members or relatives. *See* Final Order of Protection.  The Order also prohibits Respondent from purchasing or obtaining firearms.

1

13208168.1

# EXHIBIT C

2.      Respondent cannot legitimately claim that these standard restrictions violate his free speech rights or ability to associate with others, as they were implemented after a judicial finding that he stalked the victim and are designed to protect the stalking victim.

3.      RSA 633:3-a, III-c states that the Court "shall review the order, and each renewal thereof and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff."

4.      Given Respondent's prior threat to harm Petitioner's academic and professional career, his actual attempt to harm her academically at Windham High School, and his apparent threat to post further allegedly embarrassing artifacts about her on the Internet if he does not have his way,[1] a restriction prohibiting Respondent from contacting Petitioner's employers and academic providers is reasonable and necessary to ensure her safety and well-being. RSA 633:3-a, III-c.

5.      Petitioner would assent to further refining its requests to prohibit Respondent from _knowingly_ contacting Petitioner's employers and academic providers _concerning her._

6.      Petitioner maintains her request that Respondent be prohibited from accessing her social media communications either directly or through a third party, and would assent to a requirement that he not _knowingly_ do so.

7.      The latter restriction is reasonable and not an infringement of Respondent's ability to use computers, conduct work, and pursue legitimate Internet activity. For a person who repeatedly has claimed to no longer have any use for Petitioner (and has a Stalking Final Order

---

[1] In Respondent's Objection to Motion for Modification at ¶50, he wrote, "If this Court will illegally injunct further against Maravelias's free speech rights through shameful diktats, he will make broader exercise of the free speech rights he still has" (emphasis by Respondent), meaning, it appears to Petitioner, the publication of a list of unflattering posts and videos of Petitioner he lists at ¶ 49 of his Motion.

# EXHIBIT C

of Protection against him protecting her), compliance with this reasonable restriction should not be difficult and will promote the victim's well-being and safety.

WHEREFORE, for the reasons set forth above and in the Motion for Modification of Stalking Final Order of Protection to Include Further Conditions, Petitioner respectfully requests this Honorable Court to:

A.     Grant Petitioner's original Motion by adding the three conditions requested;

B.     Modify the Stalking Final Order of Protection to include the following three conditions:

1.  Respondent shall not <u>knowingly</u> gain access to or possess any of Petitioner's social media communications either directly or through a third party;

2.  Respondent shall not <u>knowingly</u> communicate with Petitioner's current or future academic providers <u>about her</u>; and

3.  Respondent shall not <u>knowingly</u> communicate with Petitioner's current or future employers <u>about her</u>; and

C.     Grant such other relief as may be just and proper.

Respectfully submitted,

CHRISTINA DePAMPHILIS

By her attorneys,

PRETI, FLAHERTY, BELIVEAU & PACHIOS, PLLP

Dated: July 12, 2018          By: _____
Simon R. Brown, NH Bar #9279
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1500

3                                    13208168.1

# EXHIBIT D

55. To echo familiar language from yesterday's national holiday, in every stage of this Court's oppressions, Mr. Maravelias has petitioned for redress in the most humble terms. <u>His repeated petitions have been answered only by repeated injury.</u> A Court whose character is thus marked by every act which may define a tyrant, is unfit to be the judiciary of a free people.

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Court:

I.     Grant this Motion;

II.     Grant Respondent's 6/25/18 *Motion for Reconsideration*, which will terminate the Stalking Order and dismiss Petitioner's instant Motion as well as this Objection thereto,

III.     Deny Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions*; and

IV.     Hold a Hearing, if necessary, on this matter.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

7/13/18
Respondent's Objection
is Denied.

John J. Coughlin

July 5th, 2018

13

# EXHIBIT E

## CERTIFICATE OF SERVICE

I hereby certify this 2nd day of July 2018 a copy of the foregoing Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* has been forwarded via U.S. First Class Mail, postage pre-paid, to Respondent, Paul Maravelias, *pro se*.

Simon R. Brown

8/7/18
Granted as to
Petitioner's Request for Relief
A.; B 1; B 2; B 3

John J. Coughlin

4

13188052.1

# EXHIBIT F

## CERTIFICATE OF SERVICE

I hereby certify this 12th day of July 2018 a copy of the foregoing *Petitioner's Reply to Respondent's Objection to Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* has been forwarded via U.S. First Class Mail, postage pre-paid, to Respondent, Paul Maravelias, *pro se*.

Simon R. Brown

8/7/18 The Court
granted the
The Petitioner's
Motion for Modification
of Stalking Final
Order of Protection
on 8/7/18

John J. Coughlin

4

13208168.1