1
2
3
4

PAUL J. MARAVELIAS, *pro se*
34 Mockingbird Hill Rd
Windham, NH 03087
Telephone: (603) 475-3305
Email: paul@paulmarv.com

U.S. ... ... ...
D... ... ...
FILED

2019 MAY -6  A 10: 29

5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| PAUL MARAVELIAS,<br>    a natural person,<br><br>          *Plaintiff,*<br><br>     v.<br><br>JOHN J. COUGHLIN,<br>    a natural person, in his individual and<br>    official capacities,<br><br>GORDON J. MACDONALD,<br>    a natural person, in his official capacity as<br>    Attorney General of New Hampshire,<br><br>PATRICIA G. CONWAY,<br>    a natural person, in her official capacity as<br>    Rockingham County Attorney,<br><br>TOWN OF WINDHAM, ex rel.,<br>WINDHAM POLICE DEPARTMENT,<br>    municipal entities,<br><br>GERALD S. LEWIS,<br>    a natural person, in his official capacity as<br>    Chief of Police of the Town of Windham,<br><br>          *Defendants.* | Civil No. 1:19-CV-143(SM)<br><br>Date Action Filed:  2/11/2019<br><br>**JURY TRIAL DEMANDED**<br><br><br><br><br><br><br><br>**FIRST AMENDED VERIFIED**<br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

24

## PRELIMINARY STATEMENT

25
26
27
28

1.     NOW COMES Plaintiff PAUL MARAVELIAS ("Plaintiff") with Complaint

and brings this action joining two substantially related claims. The first matter is predominant

and exigent: this action seeks a preliminary injunction against Defendants to enjoin them from

enforcing an illegal state court order abusing Maravelias's federal constitutional rights.

Defendants issued a baseless court order against Maravelias *ultra vires,* in total absence of statutory or equitable authority, masquerading as "extended terms" of a preexisting civil protective order, to newly criminalize his "possession" of public internet "social media communications" necessary as exhibits in ongoing state court proceedings for his own defense. **Defendants have threatened they will enforce these illegal "extended terms" to the protective order and will arrest Maravelias for his imminently anticipated lawful speech activity, causing irreparable injury in catastrophic violation of his civil rights**. *See* Plaintiff's forthcoming Motion for Preliminary Injunction. This action seeks declaratory relief and a permanent injunction preventing enforcement of Defendants' said unlawful order against Plaintiff. The second component of this action seeks declaratory judgment that NH RSA 633:3-a, III-c., pertaining to the legal standard for extending civil stalking protective orders after initial expiration, is facially invalid in violation of the First and Fourteenth Amendments to the Constitution of the United States of America.

## JURISDICTION AND VENUE

2.      This action arises under 42 U.S.C. § 1983 and the United States Constitution. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343 in that the instant case arises under questions of federal constitutional law.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4.      Personal jurisdiction exists whereas all individual parties are natural citizens within the federal boundaries of the United States of America.

5.      Claims herein for injunctive relief are authorized pursuant to 28 U.S.C. § 1343 and Rule 65 of the Federal Rules of Civil Procedure.

6.      Claims herein for declaratory relief are authorized pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

7.      Venue is appropriate per 28 U.S.C. § 1391 as Defendants' material conduct has occurred and is occurring substantially within the State of New Hampshire, in which all parties reside.

## PARTIES

8.      Plaintiff PAUL MARAVELIAS is a natural person over 18 years of age residing within the Town of Windham and Rockingham County in the State of New Hampshire. He is a recent Dartmouth College graduate in Economics and employed as a software engineer. He resides with his parents and sister at 34 Mockingbird Hill Road, Windham, NH 03087.

9.      Defendant JOHN J. COUGHLIN is a natural person and judicial officer within the judicial branch of the State of New Hampshire. He is a Senior Active Status judge at 10th Circuit Court – District Division – Derry, 10 Courthouse Ln, Derry, NH 03038. Defendant JOHN J. COUGHLIN was acting under color of New Hampshire state law at all times material. JOHN J. COUGHLIN is being sued in his individual and official capacities.

10.      All other Defendants are being sued in their official capacities only.

11.      Defendant GORDON J. MACDONALD is the Attorney General of the State of New Hampshire with the official address of 33 Capitol St, Concord, NH 03301. Under NH RSA 7:6, he "shall have and exercise general supervision of the criminal cases pending before the supreme and superior courts of the state" and "with the aid of the county attorneys" … shall enforce the criminal laws of the state." He has authority to enforce the illegal order against Maravelias in question.

12.     Defendant PATRICIA G. CONWAY is the County Attorney for Rockingham County, NH with the official address 10 NH-125, Brentwood, NH 03833. She has authority to enforce the illegal order against Maravelias in question in Rockingham County.

13.     Defendant TOWN OF WINDHAM is a municipal entity in the State of New Hampshire which maintains and operates the Windham Police Department ("WPD"), a law enforcement agency. WPD is responsible for the training, conduct, employment, supervision, and retention of its officers and employees. The TOWN OF WINDHAM is responsible for overseeing WPD and ensuring its personnel comply with the laws and constitution of the United States of America. At all times material, the officers, personnel, and employees of the TOWN OF WINDHAM were acting and continue to act under color of New Hampshire state law as applied through the customs, usages, and policies of said town.

14.     Defendant GERALD S. LEWIS is an employee of the TOWN OF WINDHAM as Chief of Police at the Windham Police Department. The three aforesaid entities are hereinafter referred to as the "Windham Defendants". Defendant GERALD S. LEWIS is responsible for the training, conduct, employment, supervision, and retention of his subordinate officers and employees and has a duty to ensure said personnel comply with the laws and constitution of the United States of America. Defendant GERALD S. LEWIS has been acting and continues to act under color of state law as applied through the customs, usages, and policies of the Town of Windham at all times material.

1

## FACTUAL ALLEGATIONS

2

**Procedural Background**

3

    15.    In January 2018, Plaintiff was subject to a preexisting New Hampshire civil

4

stalking protective order restraining him from contacting the petitioner in that action,

5

Christina DePamphilis. The underlying state Circuit Court case is <u>Christina DePamphilis v.</u>

6

<u>Paul Maravelias</u> (473-2016-CV-00124). On 1/5/18, DePamphilis moved to extend the stalking

7

order against Maravelias another year to February 2019, pursuant to RSA 633:3-a, III-c.

8

    16.    Maravelias has long maintained the said "protective" order litigation is an

9

illegitimate, bad-faith campaign of malicious harassment orchestrated by DePamphilis's

10

father David DePamphilis. Maravelias claims DePamphilis committed perjury to obtain the

11

order. During cross-examination, DePamphilis even admitted that Maravelias never actually

12

spoke certain words to her which she claimed (maliciously) in her petition he said.

13

    17.    The Windham Defendants possess an audio recording proving that Maravelias

14

never spoke certain words that DePamphilis falsely put into Maravelias's mouth to obtain the

15

stalking order. They are aware of the content and significance of said audio recording.

16

    18.    The Windham Defendants took part in the establishment of said fraudulent

17

stalking order and have a credibility-related interest in its existence. David DePamphilis

18

testified on 1/5/17 that WPD officers told him "you need to file a restraining order [against

19

Maravelias]" after Maravelias had asked Christina DePamphilis on a date, got rejected, then

20

never once contacted her ever after that day. On 4/20/17, Windham officer Christopher van

21

Hirtum remorselessly told Maravelias in person he "doesn't blame" DePamphilis for filing the

22

(false) restraining order and boldly claimed he "would have done the same".

23

24

25

26

27

28

19.     In June 2017, Christina DePamphilis posted incitative bullying/harassment social media posts identifying and directed against Paul Maravelias, middle-fingering him with her father and boyfriend. Maravelias's final contact with DePamphilis had been asking-her-out once to dinner, which she declined. Maravelias commented at trial she was trying to "bait" him to violate her "bad-faith" "stalking order". She was trying to provoke a jealous reaction and cruelly cause more trouble for Maravelias.

20.     Maravelias collected screenshots of DePamphilis's public internet social media harassment conduct to use for his self-defense at the protective order extension hearing. Other individuals shared with him other "social media exhibits" from DePamphilis which supported Maravelias's case against the civil protective order.

21.     In May and June 2018, Defendant JOHN J. COUGHLIN presided over a three-day trial at Derry, NH District Court on DePamphilis's extension motion.

22.     Defendant JOHN J. COUGHLIN admitted many of Maravelias's social media image evidentiary exhibits, including DePamphilis's vulgar cyberbullying post against Maravelias, *inter alia*.

23.     On 6/15/18, Defendant JOHN J. COUGHLIN granted the stalking order extension against Maravelias, extending said order to 2/5/19.

**The Orwellian Summer 2018 "Extended Terms" or "Further Conditions"**

24.     On 7/2/18, DePamphilis filed a certain Motion in the District Court which is the critical foundation of this action. She filed a "Motion for Modification of Stalking Final Order of Protection to Include Further Conditions", attached as **Exhibit A**.

25.     In said Motion, she sought that Defendant JOHN J. COUGHLIN modify her

stalking order against Maravelias to include the following additional criminally-enforceable

provision:

> **"Respondent [Maravelias] shall not gain access to or possess any**
> **of Petitioner's [DePamphilis's] social media communications**
> **either directly or through a third party;"**

26.     Hereinafter, Plaintiff refers to the above provision as the "extended terms". Two

other such "further conditions" were sought and granted, but this action disregards them.

27.     On 7/5/18, Maravelias filed an Objection to DePamphilis's Motion. Maravelias

pointed-out that she was attempting to criminalize Maravelias's mere possession of her

"social media exhibits" – by then, record-admitted evidentiary public court exhibits which

proved, in one part, that she was incitatively cyberbullying Maravelias with vulgar gestures,

and therefore lied about having "fear" of him for the stalking order.

28.     Maravelias's 7/5/18 Objection (**Exhibit B** – redundant exhibits therefrom

omitted) spoke of the unconstitutional overbreadth and vagueness of the requested terms,

noting that Defendant JOHN J. COUGHLIN had no legal authority to grant such draconian,

Orwellian "extended terms" against Maravelias by the procedural mechanism of a civil

stalking order, which is purposed to prevent physical following/stalking.

29.     In response to Maravelias's 7/5/18 Objection, DePamphilis filed a Reply on

7/12/18 which proposed a minor concession in her requested "further conditions", that

Maravelias should not "knowingly [gain access to or possess…]". This 7/12/18 Reply is

attached as **Exhibit C**.

30.     On 7/16/18, Maravelias filed a Surreply to DePamphilis's 7/12/18 Reply (**Exhibit G**), noting that her requested further terms were still outrageously illegal, unconstitutional, unwarranted, and draconian.

**Defendant JOHN J. COUGHLIN Scribbles "Granted" on The Lawyer-Represented Female Petitioner's Unprecedented "Extended Terms" Motion**

31.     On 8/7/18, Defendant JOHN J. COUGHLIN **DENIED** Maravelias's Objection (**Exhibit D**) and **GRANTED** (**Exhibit E**) DePamphilis's original 7/2/18 Motion criminalizing Maravelias to "gain access to or possess" his accuser's "[public] social media communications", even including public court exhibits where she made vulgar, incitative cyberbullying posts to harass Maravelias, which proved she lied about having "fear" of Maravelias to get a false, vindictive "stalking" order against him.

32.     In his Order granting the "extended terms", Defendant JOHN J. COUGHLIN did not write a single word of statutory authority or legal reasoning for his shocking, reckless order, nor wrote any response to Maravelias's objection arguments whatsoever. Judge Coughlin merely scribbled, "Respondent's objection is **DENIED**", on Maravelias's 7/5/18 Objection and criminalized Maravelias to possess his own court exhibits.

33.     Unlike issuing regular Stalking/DV civil protective orders and hearing occasional extension requests thereof, granting indiscriminate "social media possession" "extended terms" to such civil orders is not a task commonly performed by judicial officers.

34.     Never in the entire life of Defendant JOHN J. COUGHLIN nor in the entire history of the State of New Hampshire has a trial court previously granted "extended terms" to an RSA 633:3-a civil protection order forbidding a respondent from "possessing" "directly or through a third party" a petitioner's "social media" as Defendants did on 8/7/18.

35.     Paragraph 41 of Maravelias's 7/5/18 Objection explicitly forewarned Defendant COUGHLIN that granting the "extended terms" would constitute an extrajurisdictional act divesting of absolute judicial immunity.

**The Inexplicable Procedural Anomalies of Defendant JOHN J. COUGHLIN's Heedless Post-Trial Orders, Showing His Bad-Faith and Patently Unreasonable Conduct**

36.     Defendant JOHN J. COUGHLIN, *sua sponte,* granted DePamphilis's original 7/2/18 Motion and not even DePamphilis's concessively ameliorated "further condition" as conceded in her subsequent 7/12/18 Motion, in light of the 7/5/18 Objection. *See* **Exhibit F**.

37.     The date "**8/7/18**" appears on Defendant COUGHLIN's "granting" (**Exhibit E**) DePamphilis's original 7/2/18 Motion and on Defendant COUGHLIN's denying-as-moot DePamphilis's 7/12/18 Reply containing her concessively ameliorated terms (**Exhibit F**).

38.     However, inexplicably, the date "**7/13/18**" appears on Defendant COUGHLIN's four-word "Respondent's objection is DENIED" ruling on Maravelias's 7/5/18 Objection.

39.     The day prior, on 7/12/18, Maravelias appeared before Defendant COUGHLIN in a civil case as non-lawyer representative for Maravelias's friend, a true stalking victim.

40.     These facts suggest the mere renewed sight of Maravelias animated Defendant COUGHLIN to 1) rub-out an immediate vindictive, mercurial "denied"-scribbling on Maravelias's pending objection within 24 hours of seeing Maravelias's face and 2) later return to the matter, after nearly one full month, to formalize his automatic granting DePamphilis's "extended terms" pleading: the more punitive version, even, which she herself had amended.

41.     The non-responsive four-word nature of Defendant COUGHLIN's 7/13/18 order and all other foregoing facts indicate Maravelias was deprived his right to be fully heard.

42.     The totality of his judicial acts with Maravelias in 2018 uncovers a fact-pattern suggesting Defendant COUGHLIN acted with hostile bias and in bad-faith. In further support, Plaintiff repeats and incorporates by reference the judicially noticeable 10/31/18 pleading filed in the 10th Circuit Court – Dist. Div. – Derry, entitled "Respondent's Motion to Set Aside Judgement" in 473-2016-CV-124 (available at the web URL: https://bit.ly/2VNfpsp).

**Defendants' Live and Imminent Threats as of May 2019, Since February 2019, to Arrest Maravelias and Enforce the Illegal Order**

43.     On 1/24/19, DePamphilis moved the Circuit Court to extend her order again, granted the same day. Defendants' 8/7/18 "extended terms" are still in-effect.

44.     In fall 2018, Plaintiff Maravelias had been a *pro se* litigant in two related appeal cases in the New Hampshire Supreme Court regarding the DePamphilis/Maravelias parties.

45.     On 2/8/19, Plaintiff Maravelias met with Sgt. Bryan Smith at the Windham Police Department. Sgt. Smith, a WPD officer and Town of Windham employee, revealed Defendants are now investigating Maravelias for violating the "extended terms" of the order.

46.     For compelling detail on the threat of irreparable injury expected from impending enforcement of these unlawful "extended terms", Plaintiff Maravelias incorporates by reference his forthcoming Motion for Preliminary Injunction and attached "Declaration in Support" to be filed therewith, containing an assortment of verbatim quotes from the recent 2/8/19 conversation at WPD between Maravelias and Sgt. Smith.

47.     In said conversation, Sgt. Smith produced a copy of an exhibit Maravelias attached to a December 2018 Reply Brief Maravelias filed in one of his NH Supreme Court appeals. Sgt. Smith asserted that it was one of DePamphilis's social media communications and that he would likely "arrest" Maravelias if his investigation fails to establish that the said Exhibit had been part of any earlier court hearing.

48.      The Exhibit in question is an image which proves DePamphilis boldly lied about another part of her "stalking" accusations against Maravelias, where she falsely asserted it was socially inappropriate for Maravelias to say hello to her at a 2015 graduation ceremony Maravelias attended for his sister.

49.      Sgt. Smith specifically identified Defendants' 8/7/18 extended terms to the protective order and explained he may arrest Maravelias for violating said terms.

50.      Sgt. Smith said that he would likely "arrest" Maravelias if Maravelias was in "possession" of certain public materials from "social media", ostensibly referring Maravelias's own Supreme Court Reply Brief exhibit. In such an event, Defendants will criminally prosecute Maravelias for violating the "extended terms" by possessing what they claim is a public social media communication by DePamphilis, which is lawful for any other person to possess.

51.      Responding to Plaintiff's Original Complaint, the Windham Defendants filed an Answer on 4/17/19 itself confirming their unlawful enforcement threat is still ongoing, live, and imminent. Maravelias is subject to a current criminal investigation for violating the "extended terms". Defendants will arrest Maravelias on "probable cause" that he rightfully possessed public social media exhibits. *See* Answer, ECF Doc. #8, ¶¶83, 92, 97, 109, 118.

**Past and Present Actual Harm and Injury Suffered by Maravelias As a Result of Defendants' Illegal Enforcement Threats**

52.      Ever since Defendants imposed the "extended terms", Maravelias has feared criminal prosecution and felt compelled to chill his public speech. In the 2/8/19 conversation, Maravelias indicated he has felt compelled to forfeit defending his falsely maligned reputation (from the underlying protective order) in certain ways he would pursue were the illegal "extended terms" not constantly threatening his free speech with criminal penalties.

53.     Defendants have stated to Maravelias their intention to engage in a course of conduct affecting his constitutional interest. They have proven they are actively and imminently threatening said interests by virtue of their current criminal investigation.

54.     Maravelias has trembled in fear of punishment to take acts amounting to the introduction of otherwise-lawful public internet images into his state court briefs/pleadings which would otherwise benefit his position, because of the unlawful "extended terms".

55.     In order to attempt to comply with the unlawful "extended terms", Maravelias has been compelled to destroy and dispose of his own property as well as take elaborate pains that other "third parties" do not cause Maravelias to commit a crime by virtue their own "possession" or "gaining access" conduct.

56.     Maravelias has suffered extreme emotional distress and trauma in connection with being subject to such unlawful, arbitrary terms and not even being able to know the precise legal functioning or definition of its vague terms "social media communication", "through a third party", and "possess". He lives in constant confusion and fear as a result.

**Maravelias Has Possessed His Own Court-Admitted Evidentiary Exhibits and Plans to Make Imminent Lawful Speech Acts Violating The Illegal "Extended Terms"**

57.     Maravelias delivered his 11/1/18 Appellant's Brief to the Supreme Court. It contained an appendical trial court exhibit depicting Christina DePamphilis's incitative middle-finger cyberbullying post, a "social media communication", to Maravelias.

58.     Maravelias denies "possessing" such "social media" which was not a previously admitted court exhibit. However, Maravelias openly admits he has possessed the "middle-fingers" social media post trial court exhibit.

59.     The Windham Defendants' Answer alleges they have "communicated to Plaintiff that [they] would not construe the possession of previously submitted court exhibits to be a violation of the 'extended terms.'" Answer, ¶69. However, the Windham Defendants' previous "communications" (*i.e.*, the 2/8/19 Sgt. Smith-Maravelias meeting at WPD) arguably entailed no legal requirement of truthfulness. *See e.g., Frazier v. Cupp*, 394 U.S. 731 (1969).

60.     The Windham Defendants' Answer declines to stipulate that they will not construe the extended terms as including "possession of previously submitted court exhibits"; rather, only that they "have communicated" the said "to Plaintiff" in the past. This alarming fact further prognosticates an imminent unlawful enforcement.

61.     The "extended terms" contain no implicit exception for public court exhibits.

62.     Maravelias will not chill his speech forever. He intends soon to violate the "extended terms" by obtaining certain "social media" artifacts and using them in public speech acts to prove the DePamphilis stalking order is nothing but a fraudulent legal harassment mechanism extended in 2018 by a biased, rogue judge.

**The Windham Defendants Are Acting in Bad-Faith with Disregard of Statutory and Constitutional Law**

63.     Plaintiff respectfully alleges the Windham Defendants are acting in bad-faith due to their personal credibility-interest in the false stalking order they themselves ignorantly encouraged DePamphilis to pursue in December 2016, to the extent that they did.

64.     The Windham Defendants enforce a stalking order they know was fraudulently obtained, due to their possession and awareness of the aforementioned 2016 audio recording.

65.     All Defendants have an obligation to know and follow the law, including the United States Constitution, the "supreme law of the land". U.S. CONST., Art VI, cl. 2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

66.     Given Maravelias's 2/8/19 conversation with Sgt. Smith and, irrefutably, the content of this very lawsuit, the Windham Defendants are now knowledgeably aware that enforcing the "extended terms" is irredeemably unlawful in violation of the U.S. Constitution.

67.     Despite this, the Windham Defendants' Answer reconfirms their live, unabated investigation and promises to enforce the "extended terms" by arrest on probable cause Maravelias has violated said "extended terms". They admit they are contemplating criminal prosecution of Maravelias under RSA 633:3-a, I(c) as the statutory enforcement vehicle of the "extended terms" and reveal that they are aware of the contents of said statute. Answer, ¶71.

68.     The Windham Defendants' non-existent excuse even within state law to persist in threatening federally unconstitutional enforcement entails a further aspect of their alleged bad-faith. The state civil stalking order criminal enforcement statute, RSA 633:3-a, I(c)., confers standing upon Defendants to criminally prosecute "a single act of conduct that both violates the provisions of the [civil] order **and** is listed in paragraph II(a)." (Emphasis added)

69.     "Paragraph II(a)" of RSA 633:3-a does not include "possession" nor anything remotely similar. It is a fully exclusive listing for purposes of RSA 633:3-a, I(c).

70.     The Orwellian "extended terms" are criminally unenforceable, as Defendants know, yet they persist in their imminent threats to arrest Maravelias on probable cause he has engaged in constitutionally protected conduct violating the "extended terms".

71.     While violation of the "extended terms" is enforceable through a motion for contempt in Derry Circuit Court, Defendants should be aware they are not underlined criminally enforceable because Paragraph 7 of Maravelias's 7/16/18 Surreply (**Exhibit G**) noted this.

72.     It is unknown by what legal authority Windham Defendants purport to derive their alleged limiting construction of the "extended terms" to exclude "possession of

previously submitted court exhibits". Understandably baffled by the nightmarish disaster

Defendant JOHN J. COUGHLIN has created for them by his reckless abuse of power, the

Windham Defendants are enforcing the "extended terms" under an arbitrary set of halfway

principles consistent with neither federal constitutional law nor state statutory law.

73.    The Windham Defendants threaten to institute criminal proceedings against

Maravelias they do not believe they could ever possibly result in a valid criminal conviction.

**The 2018 NH Supreme Court Appeal and The Inapplicability of *Rooker-Feldman***

74.    In the underlying case, Maravelias appealed the 2018 stalking order extension to

the New Hampshire Supreme Court (No. 2018-0483). They affirmed the extension.

75.    The overriding thrust of the appeal was to vacate the 2018 extension of the

stalking order, not to challenge the constitutionality of Defendants' "extended terms".

76.    The Supreme Court's Final Order did not adjudicate any claim regarding the

"extended terms". They neither affirmed nor reversed the "extended terms". They affirmed

the extension of the underlying stalking order without ever addressing the "extended terms".

77.    Maravelias briefed his challenge to the "extended terms", giving the NH

Supreme Court an opportunity to review the said. However, the they predictably excused

themselves from adjudicating these claims, retorting that the issue was not adequately briefed.

78.    Maravelias had previously filed a 10/12/18 Motion in the appeal for an increased

brief word limit due to the necessity of compressing essentially two separate appeals into one

(both the overall extension of the order and the "extended terms"). The Supreme Court

DENIED the modest word limit increase request on 10/24/18 with no explanation.

79.    Maravelias's incorporates by reference his "Brief of Appellant" in 2018-0483.

80.     The Supreme Court denied Maravelias a full and fair opportunity to challenge the "extended terms". This is irrelevant for *Rooker-Feldman* inquiry. Questions of whether Maravelias could have, should have, or actually did raise issues belong to preclusion law. *Rooker-Feldman*, however, is a jurisdictional bar rendered inapplicable by the non-existence of any final state court judgment adjudicating the constitutionality of the "extended terms".

81.     At the filing of this action, no state court, appellate or otherwise, had expressed an opinion nor rendered any judgment on the constitutionality of the "extended terms".

82.     Maravelias's said appeal also afforded the NH Supreme Court an opportunity to adjudicate Maravelias's facial overbreadth and void for vagueness challenges to RSA 633:3-a, III-c. As with the "extended terms", the Supreme Court declined to adjudicate these claims.

83.     At the filing of this action, no state court, appellate or otherwise, had rendered any judgment on Maravelias's arguments that RSA 633:3-a, III-c. is facially overbroad and void for vagueness.

84.     The New Hampshire Supreme Court has been acting against Maravelias in bad-faith. They have mysteriously redacted or self-censored their Final Orders in both of Maravelias's appeals from the public Supreme Court website in seeming shyness to disclose their tyrannical sophistry against Maravelias to the public. They have retaliated against Maravelias's speech through an unprecedented punitive "Rule 23" order amounting to extortion against Maravelias in the amount of $4,900.00. Maravelias hereby repeats and incorporates by reference his forthcoming suit in this Honorable Court challenging Supreme Court Rule 23, *Paul Maravelias v. Supreme Court of New Hampshire, et al.*

85.     The NH Supreme Court has been failing to obey the proper *de novo* standard of review to federal constitutional claims. Accordingly, even if the New Hampshire Supreme

Court had, in fact, adjudicated the claims Maravelias now brings here to challenge the "extended terms", *Rooker-Feldman* would still not apply.

86.     Christina DePamphilis committed fraud and criminal falsification to obtain the stalking order, the extension thereof, and the "extended terms". Maravelias alleged the same in the underlying proceedings.

87.     Since the filing of this action, DePamphilis obtained another final extension of the stalking order in Derry Circuit Court on 3/8/19. Multiple motions are pending. The underlying case is <u>ongoing</u> and <u>not "ended"</u>.

88.     Maravelias has not initiated an appeal of the recent 2019 extension. The "extended terms" are still in effect, never having been adjudicated in the NH Supreme Court.

89.     Defendant JOHN J. COUGHLIN, as an officer of the New Hampshire Circuit Court, had no general equitable powers within the RSA 633:3-a civil protective order case.

90.     DePamphilis had a clearly defined statutory right to petition Defendant COUGHLIN to extend the stalking order in 2018. However, she had no state or federal statutory, constitutional, equitable, or common-law right to the "extended terms" granted.

91.     Defendant JOHN J. COUGHLIN's 8/7/18 Order granting the "extended terms" is not a judicial act nor a state court "judgment". It did not adjudicate any claim to a "right".

92.     Defendant JOHN J. COUGHLIN's 8/7/18 Order contained no opinion or finding on the constitutionality of the "extended terms" granted therein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT 1
## VIOLATION OF THE FIRST AMENDMENT TO THE
## UNITED STATES CONSTITUTION (42 U.S.C. §1983)

### Defendants' "Extended Terms" Within a Standard Civil
### Stay-Away Order Abridge Maravelias's Free Speech and Press Rights

93.     All paragraphs hereinabove are repeated herein as though fully set forth.

94.     The First Amendment to the U.S. Constitution guarantees that "Congress shall

make no law . . . abridging the freedom of speech". It is incorporated against the states.

95.     Defendants' civil "stalking" "protective" order against Maravelias in its current

form, through their "extended terms" granted on 8/7/18 with no explanation at all, violates

Maravelias's constitutionally protected free speech and press rights.

96.     The "extended terms" constitute a prior restraint against Maravelias exercising

his protected freedoms to speech and press, even absent the imminent enforcement threat. By

possessing, publicizing, or expressing himself with certain evidentiary exhibits deemed

DePamphilis's "social media communications", Defendants will punish Maravelias with

criminal prosecution – nominally, for violating a civil stalking protective order pursuant to

RSA 633:3-a.

97.     Defendants are now likely to arrest Plaintiff Maravelias because of his

publication to the New Hampshire Supreme Court of a Reply Brief containing an appendical

exhibit alleged to be a "social media communication" of DePamphilis. This exhibit shows that

DePamphilis lied to obtain a false "stalking" protective order by which Defendants' 8/7/18

Order against Maravelias, imposing the "extended terms", operates to begin with.

98.     Defendants' 8/7/18 "extended terms" are not narrowly tailored to serve a

significant governmental interest. The governmental interest behind civil stalking protective

orders is to protect true victims of stalking from violent acts, not to criminalize the process of a respondent in such a proceeding from defending himself in the court system, using public evidentiary exhibits from "social media" to defend himself against claims of "stalking".

99.     Defendants' 8/7/18 extended terms do not appropriate any alternative channel by which Maravelias could defend himself in the legal system where his accuser's public "social media exhibits" are profitable for his legal self-defense in the court system.

100.    Defendants' 8/7/18 extended terms do not appropriate any alternative channel by which Maravelias could publicly share said "social media" evidentiary materials (e.g., on the internet) to defend his name and reputation from defamatory and false "stalking" accusations, without fearing criminal prosecution by the State of New Hampshire.

101.    Defendants' extended terms therefore implicate Maravelias's right to be free from reputational and social stigma. Said terms have chilled Maravelias's public speech which he would have otherwise made to defend his name from the false stalking accusations both in the court system and on the internet, where necessitating exhibits from "social media". They also implicate his right to be left alone, since Defendants will arrest him for "possession" and any lawful expression evidencing "possession".

102.    The above is neither theory nor speculation: Sgt. Smith asserted to Maravelias on 2/8/19 his Supreme Court Reply Brief exhibit is inculpatory evidence of "possession".

103.    Defendants' extended terms are unconstitutionally overbroad because they prohibit, chill, and regulate a significant amount of legitimate speech even if some possible applications of them could prevent unlawful speech.

104.    Defendants' extended terms are unconstitutionally overbroad for being both overinclusive and underinclusive. As-applied, the extended terms do not prohibit any

unprotected criminally threatening or obscene speech, but rather prohibit public speech necessary for Maravelias to defend himself within the New Hampshire court system.

105.     The United States Supreme Court's decision in *Packingham v. North Carolina*, 582 U. S. ___ (2017) illustrates the irredeemably unlawful nature of Defendants' despotic "social media possession" prohibition against Plaintiff. The *Packingham* court nullified a North Carolina criminal statute prohibiting convicted sex offenders from accessing certain social media sites. By comparison, Plaintiff here is subject to a civil "stalking" "protective" order – issued without even the <u>allegation</u> of any criminal conduct – and is thereby bound to Defendant JOHN J. COUGHLIN's arbitrary "extended terms" themselves <u>more restrictive</u> than the nullified North Carolina statute in *Packingham* (*i.e.*, prohibiting Maravelias's mere ongoing "<u>possessing [any]</u>" "social media" screenshots or exhibits, as opposed to newly "<u>accessing [certain]</u>" social media, as with the North Carolina statute).

106.     Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his First Amendment rights to freedom of speech and press.

107.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

**COUNT 2**
**<u>VIOLATION OF PART I, ARTICLE 22</u>**
**<u>OF THE NEW HAMPSHIRE CONSTITUTION</u>**

108.     All paragraphs hereinabove are repeated herein as though fully set forth.

109.    Plaintiff repeats the aforecited authorization for his state law claims under this Court's supplemental jurisdiction, which arise from the same set of facts and transactions/occurrences giving rise to the federal causes of action in this Complaint.

110.    Part I, Article 22 of the New Hampshire Constitution offers even broader protections for free speech rights than the U.S. Constitution.

111.    Accordingly, the Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his rights under Part I, Article 22 of the NH Constitution.

112.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

### COUNTS 3, 4, AND 5
### VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE-PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)

113.    All paragraphs hereinabove are repeated herein as though fully set forth.

114.    The Fourteenth Amendment guarantees that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law…".

**Count 3: The "Extended Terms" Violate Due Process Since They Are Unconstitutionally Vague**

115.    Defendants' nominal "extended terms" against Maravelias violate and disparage his rights guaranteed by the Fourteenth Amendment to the U.S. Constitution. Said terms are

unconstitutionally vague, in violation of due process protections, for failing to define what counts as "possession" of a "social media communication", what counts as "third party" "possession" of the same, what counts as "direct" "possession" of the same, or even what counts as a "social media communication" to begin with (*e.g.*, whether usage of a social media app itself is necessary to "possess" such a "communication", or whether a static photographic "screenshot" reproduction of a "social media communication" visualized on another's device is itself a "communication" or merely an indication or record of such a "communication" existing elsewhere).

116.     The vagueness of Defendant's extended terms terms invites arbitrary and discriminatory enforcement, and they are unintelligible a person of average intelligence.

117.     Defendants' present and imminent threat to criminally enforce the illegal order already underscores the untenable problems of vagueness in their extended terms. In Maravelias's 2/8/19 conversation with Sgt. Smith, there was disagreement whether the Reply Brief exhibit is a "social media communication".

118.     On its face, the extended terms appear to criminalize Maravelias's mere "possession" of public court exhibits, necessarily "depriving" him of that property by forcing him to relinquish and discard said property lest he face criminal punishment.

119.     Defendants' extended terms against Maravelias also produce the absurd result that Christina DePamphilis's possessing *her own* "social media communications" automatically criminalizes Maravelias, since he has access to public court documents where her said "communications" are already entered as exhibits and/or since he has a legal right subpoena them from her; therefore, Maravelias could be said to "possess" by a "third-party"

(DePamphilis herself) the said "communications", according to reasonable interpretation of the vague term "third-party [possession]" in Defendants' outrageous 8/7/18 extended terms.

120.    The same can be said for virtually any instance of Maravelias's friend or family member merely reading a copy of his Supreme Court briefs or viewing the record of the case.

121.    Defendants' vague extended terms contain zero due-process protection mechanisms by which Maravelias would not be require automatically to discard and not "possess" any items which might be "social media communications" even if they are public court exhibits for his own cases.

**Count 4: The "Extended Terms" Violate Procedural Due Process Since They Contained No Advanced-Noticed Starting Effective Date and Therefore Inescapably Entrap Their Subject into Committing a Crime**

122.    Defendants' extended terms against Maravelias are worded such that it would be impossible to obey them. Since they contain no effective starting date, they took-effect and began to criminalize any "possession" of public court exhibits as soon as Judge Coughlin signed the Order, before notifying Maravelias that the extended terms were granted. The extended terms contain no practical procedures for compliance, such as a provision that certain things currently in "possession" must be destroyed or relinquished by a certain time.

123.    Since Maravelias cannot un-destroy destroyed items, it cannot be argued that Maravelias could have temporarily destroyed such exhibits pending Judge Coughlin's ruling.

**Count 5: The "Extended Terms", Masquerading Under the Procedural Guise of a Common Civil Protective Order, Violate Substantive Due Process Since They are *Ultra Vires* Issued in Complete Absence of Legal Authority**

124.    *First*, Defendant JOHN J. COUGHLIN acted in reckless defiance of statutory authority on 8/7/18 when he ordered the extended terms against Maravelias by and through

"further conditions" to a civil stalking protective order. New Hampshire state law precisely regulates said civil protective orders and enumerates the types of relief which may be granted.

125.     Defendants' extended terms are in excess of the permitted forms of relief for NH civil stalking protective orders. The local NH district courts have jurisdiction over civil stalking protective orders under RSA 633:3-a. RSA 633:3-a, III-a states, "The types of relief that may be granted [with such civil protective orders] … shall be the same as those set forth in RSA 173-B [the similar statute controlling Domestic Violence protective orders]".

126.     RSA 173-B:5 exclusively enumerates the forms of additional relief New Hampshire state courts may grant in such DV or stalking protective orders, as follows:

"(a) Protective orders:
(1) Restraining the defendant from abusing the plaintiff.
(2) Restraining the defendant from entering the premises and curtilage where the plaintiff resides, except when the defendant is accompanied by a peace officer and is allowed entry by the plaintiff for the sole purpose of retrieving personal property specified by the court.
(3) Restraining the defendant from contacting the plaintiff or entering the plaintiff's place of employment, school, or any specified place frequented regularly by the plaintiff or by any family or household member.
(4) Restraining the defendant from abusing the plaintiff, plaintiff's relatives, regardless of their place of residence, or plaintiff's household members in any way.
(5) Restraining the defendant from taking, converting, or damaging property in which the plaintiff may have a legal or equitable interest.
(6) Directing the defendant to relinquish to the peace officer, in addition to the relief specified in RSA 173-B:5, I, any and all deadly weapons…
(7) Granting the petitioner exclusive care, custody, or control of any animal owned, possessed, leased, kept, or held by the petitioner….
(b) Other relief including, but not limited to:
(1) Granting the plaintiff the exclusive use and possession of the premises and curtilage of the plaintiff's place of residence…
(2) Restraining the defendant from withholding items of the plaintiff's personal property specified by the court. A peace officer shall accompany the plaintiff in retrieving such property to protect the plaintiff.
(3) Granting to the plaintiff the exclusive right of use and possession of the household furniture, furnishings, or a specific automobile…
(4) Ordering the defendant to make automobile, insurance, health care, utilities, rent, or mortgage payments.
(5) Awarding temporary custody of the parties' minor children to either party or, where

appropriate, to the department, provided that: …
(6) Establishing visitation rights with regard to the parties' minor children. …
(7) Directing the defendant to pay financial support to the plaintiff or minor children, unless the defendant has no legal duty to support the plaintiff or minor children.
(8) Directing the abuser to engage in a batterer's intervention program or personal counseling. …
(9) Ordering the defendant to pay the plaintiff monetary compensation for losses suffered as a direct result of the abuse which may include, but not be limited to, loss of earnings or support, medical and dental expenses, damage to property, out-of-pocket losses for injuries …
(10) Ordering the defendant to pay reasonable attorney's fees."

127.    Absolutely nowhere in either the New Hampshire civil stalking protective order statute nor the procedurally-controlling DV protective order statute are Defendants authorized to enjoin broad prophylactic injunctions against the free speech and due process rights to "possess" public "social media communications" from the internet for one's legal defense.

128.    *Second*, as an officer of the NH local Derry District Court, Defendant JOHN J. COUGHLIN did not have any general equitable jurisdictional power to enjoin such terms against Maravelias even if they were not otherwise unconstitutional. The NH local District Court has jurisdiction over such civil stalking protective order cases pursuant to RSA 502-A:14, "Civil Causes. – I. Exclusive Jurisdiction" which states, "all district courts shall have original and exclusive jurisdiction of civil cases in which the damages claimed do not exceed $1,500". The NH District Court does not have general equitable powers, which is reserved to the NH Superior Court. *See* RSA 498:1, "Jurisdiction", which states "the superior court shall have the powers of a court of equity in … cases in which there is not a plain, adequate and complete remedy at law; and in all other cases cognizable in a court of equity". Thus, Defendant JOHN J. COUGHLIN, within a civil stalking protective order case, had no legal authority to grant relief not specifically authorized by the controlling statute(s) therefor.

129.     Accordingly, Defendant JOHN J. COUGHLIN'S 8/7/18 order granting the extended terms against Maravelias constitutes an arbitrary, despotic act done *ultra vires* in total absence of constitutional, statutory, and jurisdictional authority.

130.     <u>Defendant JOHN J. COUGHLIN'S conduct was extreme and outrageous, malicious, wanton and reckless, shocking to the conscience, completely outside the boundaries of propriety and lawfulness, and contemptuous of the moral ethos of the State of New Hampshire and the United States of America.</u>

131.     Defendants acted <u>willfully, knowingly, and maliciously</u> in a coordinated effort to disparage *pro se* Paul Maravelias's federal constitutional rights by unilateral acts of judicial tyranny: Maravelias's 7/5/18 Objection <u>articulately warned</u> Defendants of the illegality of the proposed extended terms and that granting them would be in excess of legal authority. *See* Paragraphs 23 through 25 of Maravelias's 7/5/18 Objection. (**Exhibit B**)

132.     Jointly regarding Counts 3, 4, and 5, the Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his Fourteenth Amendment due process rights.

133.     Jointly regarding Counts 3, 4, and 5, as a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## COUNT 6
### VIOLATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)

134.     All paragraphs hereinabove are repeated herein as though fully set forth.

135.    The Fourteenth Amendment guarantees that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws."

136.    Never before in history has a NH Circuit Court ordered a civil stalking order respondent not to "possess" "directly or through a third-party" "social media communications" of a petitioner.

137.    Since Defendants' extended terms were issued without any legal authority (*See supra*), other NH civil stalking protective order respondents are not – nor ever have been – ordered in a fashion which similarly-situated Maravelias has been ordered here.

138.    Equivalently, no other petitioners in such actions are enabled to have their opponents "ordered" to not "possess" public internet evidence as part of their opposing case, as similarly-situated DePamphilis has been enabled here.

139.    Defendant JOHN J. COUGHLIN did not even attempt to justify his 8/7/18 order nor make any specific findings of fact or law harmonizing the extended terms to the particular contours of the Maravelias-DePamphilis case. He just reflexively scribbled "DENIED" on Maravelias's Objection and "GRANTED" on DePamphilis's original Motion.

140.    Accordingly, Defendants' extended terms violate the Equal Protection clause, since similarly situated petitioners and respondents in New Hampshire civil stalking protective order proceedings are currently accorded inconsistent, unequal rights.

141.    Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his Fourteenth Amendment equal protection rights.

142.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

### COUNT 7
### EX POST FACTO LAW UNDER ARTICLE II § 10 cl. 1 OF
### THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)

143.     All paragraphs hereinabove are repeated herein as though fully set forth.

144.     Since Defendants' extended terms did not contain any effective start date, they became enforceable with the underlying stalking order in relation to <u>all times</u> said stalking order was in effect, whether before the 8/7/18 granting of said terms or not.

145.     The extended terms therefore violate the Ex Post Facto clause of the U.S. Constitution, criminalizing Maravelias for any "possession" after the protective order was extended but before the "extended terms" were granted.

146.     Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of the Ex Post Facto clause of the U.S. Constitution.

147.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

### COUNT 8
### NH RSA 633:3-A, III-C. IS FACIALLY OVERBROAD IN
### VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

148.     All paragraphs hereinabove are repeated herein as though fully set forth.

149.     Defendants' unlawful extended terms against Maravelias are in-effect by the existence of an extended civil stalking protective order, extended pursuant to RSA 633:3-a, III-c. In relevant part, the said statute reads:

> "Any order under this section shall be for a fixed period of time not to exceed one year, but may be extended by order of the court upon a motion by the plaintiff, showing good cause, with notice to the defendant, for one year after the expiration of the first order and thereafter each extension may be for up to 5 years, upon the request of the plaintiff and at the discretion of the court. The court shall review the order, and each renewal thereof <u>and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff.</u>" (Emphasis added)

150.     Maravelias has standing to bring this facial challenge. He was affected by RSA 633:3a, III-c. in the past and could likely be in the future. However, he is not currently subject to any current criminal prosecutions under RSA 633:3-a.

151.     This statute permits extension of such protective orders if plaintiff's "well-being" primarily would be jeopardized without an extension, even if concern for "safety" is minimal. The Oxford English Dictionary defines "well-being" as "the state of being comfortable, healthy or happy." <u>Therefore, if a petitioner merely alleges she would be "uncomfortable" or "unhappy" without the extension, the state court is required to extend it.</u>

152.     Said protective orders inflict extensive restrictions against a subject's constitutional rights, such as no-contact and firearms relinquishment orders.

153.     The statute is therefore facially overbroad in violation of the First Amendment, because it enables trial courts to extend such protective orders based on a respondent's constitutionally protected non-threatening public speech which could "discomfort" the petitioner, thereby triggering the overbroad "well-being" standard for extension.

154.     The statute's language is therefore not narrowly-tailored to serve a significant governmental interest. It does not grant respondents any alternative channels to express

themselves in public which could "discomfort" or "displease" petitioners without being punished by extended-duration restrictions of their constitutional rights. The overbroad statute therefore has a chilling effect against appropriate speech to such protective order respondents.

155.    The "well-being" standard in the statute is overbroad also because it is not narrowly-tailored to serve the actual governmental interest of the statute, which is not preventing "displeasure" or "discomfort" of petitioners, but rather protecting them from "stalking" – conduct causing a "reasonable person to fear for their physical safety". *See* RSA 633:3-a, I.

156.    The "well-being" standard in the statute inescapably renders it a content-based speech regulation, since a respondent's public expression which is "displeasing" to the petitioner would alone satisfy the "well-being" standard for extending it, whereas agreeable public speech not upsetting the petitioner would not trigger the "well-being" standard.

157.    The statute is both overinclusively and underinclusively not narrowly tailored. *First*, it punishes respondents' acts of public expression which are not contrary to the governmental interest of preventing stalking (e.g., publicly disagreeing with the fact that a stalking order was issued). *Second*, it fails to equally punish *new* stalking order defendants with its overbroad "well-being" extension standard. *Cf.* RSA 633:3-a, III-a, the more stringent legal standard for initial issuance of a stalking order requiring a "stalking course of conduct", as opposed to mere indication that granting the order serves a petitioner's "well-being".

158.    This overbroad "well-being" standard is applied in every single stalking order extension case under RSA 633:3-a, III-c. There are no constitutionally valid ways for NH courts to implement this statute without disobeying it. Even if the statute simply read "safety *or* well-being" instead of "safety *and* well-being", courts would at least have some leeway to

avoid an unconstitutionally broad application in every case. However, the statute's plain language implies it is substantially overbroad necessarily for every single application thereof.

159.     Defendants, acting under color of state law, are enforcing a facially overbroad statute, RSA 633:3-a, III-c., in violation of the First Amendment to the U.S. Constitution. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

**COUNT 9**
**NH RSA 633:3-A, III-C. IS FACIALLY VOID FOR VAGUENESS IN VIOLATION**
**OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

160.     All paragraphs hereinabove are repeated herein as though fully set forth.

161.     "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703,732 (2000).

162.     The language of RSA 633:3-a, III-c. is unintelligible and so loosely constrained that arbitrary, discriminatory enforcement thereof is inevitable. Not only is the term "well-being" too vague, but also the extent to which the preceding term "safety" narrows or qualifies "well-being".

163.     This vagueness is substantially likely or guaranteed to complicate every stalking order extension case brought before NH state courts, regardless of the particular facts of such cases. The statute provides zero guidance on how trial court judges should interpret "well-being", or on what conduct beyond threatening speech or actual violence would permit extension not necessarily to serve a plaintiff's "safety", but rather their "well-being".

164.    For instance, one judge might consider a "well-being" order ridiculous and far in-excess-of the legislative counter-stalking intent, calibrating his or her judgements to the statute's broad "safety" context, even applying *ejusdem generis* to constrain "well-being" thereby. However, another judge might reject this interpretation, "safety and well-being" not being a list, and adopt the plain meaning of the word "well-being".

165.    The statute's vagueness is not only semantic but also syntactic, fraught with meaningful ambiguity between the co-possible constructions "shall grant such relief as may be necessary to provide for the (safety and well-being)" and "… relief as may be necessary to provide for the safety, and (relief as may be necessary to provide for the) well-being". The former interpretation begets tautology, the latter overbroad plaintiff-sycophancy. Both interpretations are reasonable but produce vastly different legal outcomes.

166.    The comparable protective order laws of <u>no other US state discard the initial-issuance-standard for something pointlessly different for extension</u>, as does New Hampshire's unconstitutionally defective statute. For example, the analogous Massachusetts statute for extension of Civil Harassment Orders, M.G.L. 258E §3(d), states in relevant part that "the court [may extend the] [<u>harassment</u>] order … as it deems necessary <u>to protect the plaintiff from harassment</u>." *Id*. It does not switch the legal standard to something different and overbroad when it concerns extension, requiring a "stalking course of conduct" for an original order but only vague "interest in well-being" for subsequent extensions, as with the defective New Hampshire statute. *Cf. also* 19-A M.R.S. 4007(2), the analogous Maine statute controlling extension of DV protective orders following civil adjudications of "<u>abuse</u>": "the court may extend an order, upon motion of the plaintiff, for such additional time as it determines necessary to protect the plaintiff … <u>from abuse</u>."

167. That a statute's unintelligibility to an average person and propensity for arbitrary enforcement violates the due process rights guaranteed by the Fourteenth Amendment is pellucid – especially here, where said vague statute controls the extension of court orders severely limiting other federal constitutional rights.

168. Defendants, acting under color of state law, are enforcing an unconstitutionally vague statute, RSA 633:3-a, III-c., in violation of the Fourteenth Amendment to the U.S. Constitution. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court:

I. Issue a preliminary injunction prohibiting all non-judicial Defendants and their officials, employees, and agents from implementing or enforcing the said "extended terms" to the civil protective order against Maravelias in New Hampshire Circuit Court Case No. 473-2016-CV-00124;

II. Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's civil constitutional rights as guaranteed by the First Amendment to the U.S. Constitution;

III. Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's civil constitutional rights as guaranteed by Part I, Article 22 of the New Hampshire Constitution;

IV. Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's due process and equal protection rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution;

V. Enter a declaratory judgment that Defendants' said "extended terms" to the civil protective order are in excess of NH state statutory protective order law;

VI. Enter a declaratory judgment that Defendants' said "extended terms" to the civil protective order violate the Ex Post Facto clause of the U.S. Constitution;

VII.   Enter a declaratory judgment that New Hampshire RSA 633:3-a, III-c. is unconstitutionally overbroad on its face in violation of the First and Fourteenth Amendments to the U.S. Constitution;

VIII.   Enter a declaratory judgment that New Hampshire RSA 633:3-a, III-c. is unconstitutionally vague on its face in violation of the Fourteenth Amendment to the U.S. Constitution;

IX.   Enter a permanent injunction to prevent future unlawful conduct by Defendants;

X.   Award Plaintiff the reasonable costs and disbursements of this action;

XI.   Grant any further relief as may be deemed just and proper.

_____

I, Paul Maravelias, declare that all factual stipulations within the foregoing First Amended Verified Complaint are true and accurate to the best of my knowledge as of 5/6/2019.

Respectfully submitted,

PAUL J. MARAVELIAS

*in propria persona*

/s/ Paul J. Maravelias, *pro se*            Dated: May 6th, 2019

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

## **CERTIFICATE OF SERVICE**

I, Paul Maravelias, certify that a timely provided copy of this document is being sent on this date to all counsel of record for the Defendants pursuant to the rules of this Court.

/s/ Paul J. Maravelias, *pro se*                    Dated: May 6th, 2019

**Paul J. Maravelias**