# EXHIBIT B

Robin E. Pinelle, Circuit Clerk
NH Circuit Court
10th Circuit – District Division – Derry
10 Courthouse Lane
Derry, NH 03038

July 5th, 2018

Paul Maravelias
34 Mockingbird Hill Rd
Windham, NH 03087

RE: **Christina DePamphilis vs. Paul Maravelias**
Docket No. 473-2016-CV-00124

Dear Clerk Pinelle,

Enclosed please find Respondent's *Objection to Petitioner's Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* to be filed in the above-referenced case.

Thank you for your attention to this matter.

Sincerely,

Paul J. Maravelias

CC: Simon R. Brown, Esq.

I, Paul Maravelias, certify that a copy of the present *Objection to Petitioner's Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* was forwarded on this day through USPS Certified Mail to Simon R. Brown, Esq., counsel for the Petitioner, P.O. Box 1318, Concord, NH, 03302-1318.

# EXHIBIT B

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS          10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-00124

Christina DePamphilis

v.

Paul Maravelias

### RESPONDENT'S OBJECTION TO PETITIONER'S MOTION FOR MODIFICATION OF STALKING FINAL ORDER OF PROTECTION TO INCLUDE FURTHER CONDITIONS

NOW COMES the Respondent, Paul Maravelias, and moves this Court to deny Petitioner's baseless *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* dated 7/2/18. In support thereof, he represents as follows:

1. On 7/2/18, David DePamphilis's daughter, the Petitioner, filed the aforementioned Motion to impose even more severe court-ordered restrictions on Maravelias's public free-speech rights, even after her outright lies, inconsistent statements, and vulgar acts of harassment against Maravelias were undeniably exposed in numerous ways during hearings before this Court on 5/3, 5/4, and 6/8 of this year.

**A. PETITIONER CHRISTINA DEPAMPHILIS'S MOTION AIMS TO EXCUSE HER DOCUMENTED ILLEGAL BEHAVIORS AND EMPOWER HER TO CONTINUE VIOLATING THE LAW, AND IS BUT ANOTHER PREDICTABLE ACT IN HER CONTINUED CAMPAIGN OF LEGAL HARASSMENT AGAINST MARAVELIAS**

# EXHIBIT B

2.  As this Court will remember, Christina DePamphilis has cruelly bullied the victim, Mr. Maravelias, with incitative, vulgar, and insulting posts on her <u>public</u> social media profile(s) during the pendency of her criminally falsified "stalking" order against the victim/Respondent.

3.  She now seeks to have this Court outlaw Maravelias's mere possessing a record of her behavior.

4.  In particular, in June 2017, Petitioner posted an inflammatory picture of her boyfriend *directly addressing* the victim and making incitative comments against him (6/19/18).

5.  After failing to elicit any response from Maravelias that would violate her bad-faith "stalking" order against him, she then posted a rehearsed image of herself, her father David DePamphilis, and her 21-year-old boyfriend Matthew LaLiberte, all middle-fingering the victim, and also making an incitative comment against the victim which identified him.

6.  Viewed in the light of her acts of criminal harassment (RSA 644:4) against Mr. Maravelias, the Petitioner's present motion to prohibit Maravelias from "gaining access" to or even "possessing" these public posts, even from "third parties", is a risible perversion of propriety.

7.  Essentially, <u>Christina DePamphilis wishes to be legitimated by this Court to continue her vulgar harassment of Mr. Maravelias while injunctively restraining him from even using her outrageous public social media exhibits for legal purposes to defend himself</u>. This Court should feel insulted by such a disrespectful and inappropriate attempt to abuse its power.

8.  The Petitioner's continued conduct of filing baseless motions against the victim is for no valid purpose beyond solely to harass him; this Court should impose sanctions against her accordingly for such repeated and patently unreasonable motions against Mr. Maravelias.

# EXHIBIT B

9. Furthermore, the Petitioner's motion attempts to excuse her generic illegal behaviors, past and future, demonstrated on her social media, in which Mr. Maravelias is not the victim.

10. In the Motion to Extend Hearing, this Court accepted *inter alia* a relevant evidentiary exhibit of the "minor" Petitioner – a picture from her social media. In this post, she had pictured herself, at age 16, holding a purse in her right hand and an open bottle of vodka in her left while leaving a party at "4:43am", with her parked, about-to-be-driven car in the background.

11. Christina DePamphilis also documented her psychoactive substance abuse, her private sexual behaviors[1], and her further underage alcoholic consumption in other social media postings.

12. Thus, <u>the Petitioner's current desire to handcuff Maravelias in his public free speech rights to third-parties is but a panicked "futile attempt" to avoid responsibility for her pictured acts of law-breaking and perjury</u>[2], should Maravelias discontinue his magnanimous decline so-far to lawfully document said public postings on the web, as he lawfully threatened to do in a November 2017 response to Attorney Brown's out-of-the-blue threatening letter[3].

---

[1] If this Court were to grant Petitioner's Motion and thereby enter the enterprise of unlawfully policing private conducts of speech, it would at least be equitable for the Court to order Christina DePamphilis to cease and desist making improper posts revealing her private sexual behaviors before peers. Upon information and belief, this behavior is socially unacceptable, and is considered disturbing by her peers. It is not practiced by other youth, even by ones who picture themselves violating state laws on alcohol/marijuana consumption. While the latter is at least somewhat socially acceptable, the Petitioner has caused discomfort to her peers with her unwanted social media indications of her private sex life. These should never be publicly posted on social media, especially given her age.

[2] Christina DePamphilis maintained her false claim under oath on 5/3/18 that she has "fear for her physical safety" of Mr. Maravelias, despite her abusive, harassing, and unlawful conduct victimizing Mr. Maravelias. Indeed, this Court has validated Christina DePamphilis's hurtful law-breaking, in wrongfully granting an extension on her Stalking Order. That matter is pending this Court's review in a reconsideration pleading filed by Respondent.

[3] Maravelias has every right to publicly republish her legally-public postings, as acknowledged by the mere existence of the instant motion by Petitioner, the daughter of David DePamphilis, to injunct against said right.

# EXHIBIT B

13.   The Petitioner requests that it be unlawful for Maravelias to even "possess" her social media postings. This is so absurd that it would criminalize Mr. Maravelias for merely owning his copy of this Court's own public evidence exhibits from this case which he used at Hearing.

14.   Thus, it would also violate the "Right to Know" law (91-A), guaranteeing access to public court records, *e.g.* Christina DePamphilis's posting of herself middle-fingering her victim.

15.   While it is strongly speculated that there are many photographs in existence of the 17-year-old female Petitioner which are already quite unlawful for anyone to even possess[4], these are most certainly not the public social media postings in question, which are fully lawful for legal use.

### B. <u>PETITIONER'S MOTION DISHONESTLY OMITS PARTS OF MARAVELIAS'S ALLEGED "THREATNING QUOTE" TO OBFUSCATE THE FACT THAT HE WAS MERELY COUNTER-THREATENING LAWFUL DETERRENT RETALIATION IF LEGALLY ATTACKED</u>

16.   The Petitioner seems quite fixated on the fact that Maravelias merely *responded to* Attorney Brown's provocative, threatening letter to him. Maravelias made a comment along the lines that he would "go nuclear and utterly destroy [Christina's] academic and professional future".

17.   Conveniently, Petitioner omits the second part of Maravelias's actual sentence: "[share her own public social media artifacts], <u>should David dare challenge [Maravelias] legally</u>".

18.   Thus, Petitioner's counsel <u>first provoked Maravelias with an absurd, causeless threat of lawsuit</u>, and Maravelias then <u>lawfully counter-threatened</u> to share Petitioner's already-public social media posts, which might have a negative effect on her future due to <u>her own</u> outrageous behaviors.

---

[4] 18 U.S.C. § 2251, RSA 649-A:3

# **EXHIBIT B**

C. **PETITIONER'S MOTION HAS NO BASIS IN THE LAW WHATSOEVER, AS THE REQUESTED RELIEF FAR EXCEEDS THE POWERS GRANTED TO THIS COURT BY THE LAW AND WOULD FURTHER BLATANTLY ABUSE MARAVELIAS'S BASIC CONSTITUTIONAL RIGHTS TO FREE SPEECH, PRESS, AND PETITION, AMONG OTHERS**

*"Free speech and Liberty of the press are essential to the security of Freedom in a State: They ought, therefore, to be inviolably preserved."* – N.H. Const., Part I, Article 22

19. A Stalking Order – whether lawfully issued or not – does not grant a trial court unspecified powers to enjoin broad prophylactic injunctions on First Amendment-protected speech against Respondent. Petitioner's Motion seeks no relief whatsoever regarding Maravelias's conduct *with her*, but rather his speech to third-party actors. This is shameful and cowardly.

20. "Only narrow categories of speech, such as defamation, incitement and pornography produced with real children, fall outside the ambit of the right to free speech." State v. Zidel, 156 N.H. 684, 686, 940 A.2d 255 (2008). As Petitioner's requested terms seek to injunct against Maravelias's free speech rights in none of the aforecited unprotected categories[5], but rather would proscribe any and all communications with large classes of third party individuals, her motion must be unquestionably denied.

21. If this Court were to abuse its power by granting such latitudinous injunctions against Mr. Maravelias's public speech to parties other than Petitioner, it would incur liability in federal – let alone state-level – lawsuits for damages on the grounds of willful, reckless First Amendment transgression. Since this Court is well-aware of the facts and circumstances of this case and has demonstrated a repeated pattern of inexcusable conduct evincing a clear bias against Respondent, it

---

[5] Insofar as the Petitioner falsely claims Maravelias's 12/10/17 email regarding her conduct was "libelous", the proper remedy for defamation is recovery of damages through civil equity litigation – not a personal-safety-exclusive Stalking Order. Mr. Maravelias is the victim, not the author, of libelous/slanderous expression.

# EXHIBIT B

would be liable for Section 42 U.S.C. § 1983 federal damages in violating Respondent's constitutional rights while acting under color of state law.

22. That such violations be knowing or willful is not a prerequisite element for § 1983 action.

23. While the Court has authority to issue specific orders of protection as enumerated on the standard form for Stalking Orders requested by Petitioner *prior to and not after* any hearing, the Court may do so only "as is necessary to bring about a cessation of stalking". *See* RSA 633:3-a, III-a. Furthermore, 633:3-a, II. narrows the legal definition "stalking" such that it "shall not include constitutionally protected activity, nor shall it include conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person".

24. Therefore, the requested modifications to the Stalking Order are absolutely illegal. They overwhelmingly exceed the Court's statutory authority to prohibit solely acts of further "stalking", of which constitutionally protected speech (*e.g.,* to own/use public social media postings or communicate with public employees independent of contacting Petitioner) is not.

25. Furthermore, if the Court nonetheless asserted an undefined power to grant these expanded injunctions against Respondent, it would violate plainly established protections on constitutional, legitimate speech to third-parties who are not plaintiffs in any civil protective order. Such a court order would be contemptuous of Part I, Article 22 of the State Constitution and the First and Fourteenth Amendments of the Federal Constitution, *inter alia*.

26. The relief sought in Petitioner's motion is unconstitutional for being impossibly vague and woefully overbroad. "Courts are suspicious of broad prophylactic rules in the area of free expression, and therefore precision of regulation must be the touchstone in an area so closely touching our most precious freedoms". <u>Montenegro v. New Hampshire Div. of Motor Vehicles</u>, 166 N.H. 215, 220 (2014). The sought expanded terms of protection fail to sustain any "precision of

# EXHIBIT B

regulation" standard, as they are impermissibly overbroad and confusingly vague. A statute is considered unconstitutionally "'overbroad' in violation of the First Amendment if in its reach it prohibits constitutionally protected conduct." Grayned v. City of Rockford, 408 U.S. 104, 114 (1972).

27. The second and third sought orders of protection forbid that the Respondent should contact Petitioner's "present or future" "academic providers" or "employers". In imposing such groundless authoritarian sanctions against Maravelias, the Court would expect him to conjure a supernatural ability to presciently discern through a crystal ball who might be her "future employer(s)" or who might be her future/current "academic provider(s)", a term which is in itself impossibly vague.

28. Clearly, these measures are wickedly crafted <u>to outlaw any and all acts of constitutionally protected, self-defensive speech Maravelias may take on the web or elsewhere to defend his own wrongfully discredited name, traduced in envy by the Petitioner-attention-seeker, as any public act of speech whatsoever could be visible to an "employer" or "academic provider"</u>.

29. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." Ashcroft v. Free Speech Coal., 535 U.S. 234, 237 (2002). Even if the requested additional injunctions did function to prevent further acts of "stalking", they are still egregiously overbroad and therefore unactionable manifestations of the statute, due to the copious protected speech that would be simultaneously criminalized. *See* Doyle v. Comm'r, N.H. Dep't. of Resources & Economic Dev., 163 N.H. 215, 221 (2012), which holds laws facially overbroad under Part I, Article 22 of the State Constitution where "a substantial number of its applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep". Id.

# EXHIBIT B

30. This Court must observe the brutally evident reality that Christina DePamphilis finds herself in a guilt-ridden panic-mode state, now that her outrageous acts of protective order falsification have been documented by Maravelias at the Hearing, that the wrong order was actually extended against him (perpetuating the injustice), and that he still has full right to make public speech acts to document her crimes. This Court issues jail sentences routinely in its official duties: why then should it protect a nefarious perjurer-criminal from natural consequences as comparatively tepid as having the objective facts of her own public words further publicized?

**D. PETITIONER'S CITATION OF RSA 173-B:5 IS INCOMPLETE, DECEPTIVE, AND INVALID**

31. Paragraph 9 of David DePamphilis's daughter's Motion attempts to deceive this Court into believing it has any legal authority whatsoever to grant her request. This is another act of the Petitioner's storied obscurantism and willful misrepresentation of facts.

32. RSA 173-B is the domestic violence statute, in which the operative legal term is "abuse".

33. "Abuse" is defined in 173-B:1, I as certain acts performed exclusively "by a family or household member or by a current or former sexual or intimate partner" of the victim.

34. Mr. Maravelias has never been a "family or household member" of Petitioner, nor one of the many men who may honestly claim to have been her "sexual or intimate partner", thankfully.

35. Thus, 173-B <u>terminology pertaining to "abuse" is thoroughly inapplicable to the instant case.</u>

36. Although the procedural stipulations of 173-B are applied to Stalking protective orders under 633:3-a, III-a, this does not mean specific language pertaining to physically violent domestic "abuse" in 173-B may be absorbed into a very different case pertaining to alleged "stalking".

37. The Petitioner attempts to fool this Court into adopting a strange interpretation of 173-B:5 by obscurantistically omitting the full text of the statute for essential context:

# EXHIBIT B

"I. A finding of abuse shall mean the defendant represents a credible threat to the safety of the plaintiff. <u>Upon a showing of abuse of the plaintiff by a preponderance of the evidence</u>, the court shall grant such relief as is necessary to bring about a cessation of abuse." (Emphasis added)

38. The Petitioner dishonestly cherry-picks the last 8 words of the statute in Paragraph 9 of her Motion – omitting even the majority of the quoted sentence, let alone the surrounding context – to advance a preposterous interpretation thereof before this Court.[6]

39. That is, the Petitioner deceitfully conflates the statute controlling *the original issuance of a domestic violence restraining order* with a nonexistent power of this Court *to issue further stalking-related injunctions against Mr. Maravelias* without any form of due process inherent to the original issuance of Stalking order terms of protection, such as a full and fair trial, the notice of criminal consequences for perjurious accusations in the petition form, and a public notary taking the oath of the Petitioner certifying the truth of his or her allegations.

40. The dishonesty of Petitioner's Paragraph 9 conduct is extreme and willful. This Court should impose sanctions for such blatant attempts to fool it into breaking the law, and the bar association should be contacted regarding a potential Code of Attorney Conduct violation[7].

41. Absolute judicial immunity exists where a judge acts within a "judicial capacity". <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978). Since issuing unlawful injunctions against Respondent on the basis of an inapplicable legal standard for a separate cause of action (as documented above) establishes a framework in which the Court <u>knows</u> it acts outside of the law, such an act would be in excess of any legitimate "judicial capacity" and would dissolve the ordinary shield of absolute judicial immunity from federal Section 1983 and/or other litigation.

---

[6] See the parallel language specific to Stalking orders in 633:3-a, III-a, which differs from 173-B's text and again pertains to the initial process of Stalking Petition filing and subsequent court order post-hearing, not an unfettered right to grant further unnoticed prayers for relief found nowhere in the Petition nor ever raised at the Hearing.

[7] See New Hampshire Rules of Professional Conduct Rule 1.1 (b)(1), Rule 4.1, and the 2004 ABA Model Rule Comment on Rule 4.1

# EXHIBIT B

42. In further support of the Court's inability to impose unlawful, unconstitutional restrictions on the public speech of Respondent, see Exhibit A (Respondent's May 2018 Motion to Dismiss filed in the baseless criminal case against Respondent for his 12/10/17 National Honor Society ethics complaint email, which Petitioner references in her Motion).

E. **THE LEGAL SCOPE AND LEGISLATIVE HISTORY OF THE STALKING STATUTE CONCERN PERSONAL SAFETY PROTECTION EXCLUSIVELY – NOT ENFORCING CRIMINAL SANCTIONS FOR ACTS OF DISAGREEABLE SPEECH OR EVEN DEFAMATORY SPEECH.**

43. The expanded terms requested by Christina DePamphilis have absolutely nothing to do with protecting her physical safety. They are fretful, neurotic exasperations that the Court order Maravelias 1) not possess public legal exhibits and 2) not make any communications to third-parties. Even if this were a legitimate "protection" of someone's "career" or "academics", the law affords this Court no ability to enforce random "protection" injunctions at its own despotic, nanny-state volition, as requested.

44. The Stalking statute permits physical-violence-prevention-related protections exclusively.

F. **PETITIONER'S ABUSIVE MOTION FALSELY ACCUSES THE RESPONDENT EXACTLY OF HER OWN DISTURBING BEHAVIORS**

45. When taking breaks from secretly collecting pictures of Maravelias's private bedroom without his knowledge and harassing him with vulgar middle-finger posts with her boyfriend, the Petitioner Christina DePamphilis has been monitoring Maravelias's online activity and gaining access to material she is not intended to see. In a recent filing, she revealed that she has likely hacked into Maravelias's private business product support forum and accessed Maravelias's private postings on an off-topic discussion section therefrom.

46. Given the Petitioner's disturbing and obsessive behaviors, Maravelias understandably feels violated, uncomfortable, and utterly creeped-out. But, he dares not file another honest and truthful Stalking petition – even as a victim of true stalking – since this Court has proven its undeniable

# EXHIBIT B

prejudicial hostility against Maravelias in forcing him to pay an opponent's attorney's fees in a factually corroborated, truthful Petition filed against David DePamphilis.

47. Thus, at the very least, this Court ought not to unlawfully expand the abusive "terms of protection" in the same extant Stalking Order it knows to be originated in falsification.

48. Furthermore, Respondent Maravelias has been absolutely magnanimous up to this point in declining to exercise his right to disseminate DePamphilis's outrageous social media postings. <u>The Court should perceive Maravelias's good-character benevolence, and not further abuse his speech rights through unilateral acts of judicial tyranny.</u>

49. To prove this, Maravelias represents to have been sent the following social media postings made by Christina DePamphilis, which he has opted <u>never to share heretofore in any context</u>:

   a. A post showing Christina conspiring with her brother Nicolas DePamphilis over SMS about where the two may consume an illegal drug without David DePamphilis knowing;

   b. A video of Christina forcing the slurred exclamation "I'm. So. High!" through an intoxicated blur while sitting on a toilet at a party;

   c. A highly inappropriate, suggestive video of Christina genuflecting on her knees and sucking a frothy white fluid (hypothesized to be whipped cream) into her mouth which then appears smeared on her face;

   d. Photographs and videos of Christina climbing out of her second-story bedroom window late at night to escape to a party in secret;

   e. A video wherein Christina brags of "passing" a field sobriety test a police officer administered to her when pulled over returning from said party;

   f. A photograph proving she was indeed at her Salisbury beach house in February 2017, and therefore feloniously perjured before this Court on 5/4/18 when so denying; and

   g. A video picturing Christina intoxicated on a ski lift and casually joking about the danger thereof, revealing she later took rescue snowmobile escort down the mountain.

50. Maravelias is not "obsessed" with a delinquent law-breaker. His mind has not been "preoccupied at all with [her]", as written to Attorney Brown in the November 2017 letter. He has

# EXHIBIT B

not disseminated any of the aforementioned exhibits. This shows his clemency and non-obsession. <u>If this Court will illegally injunct further against Maravelias's free speech rights through shameful diktats, he will make broader exercise of the free speech rights he still has.</u>

51.   Furthermore, since Maravelias has been sent the social media exhibits in question by independent third parties who support him, the instant Motion to further abuse Maravelias is an incredibly foolhardy act by the Petitioner. It is suspected that these third parties too will discontinue their independent magnanimity in allowing Christina DePamphilis to grow in her delinquency without public correction or documentation of the said.

## CONCLUSION

*"To extend the Stalking Order in this case would show plaintiffs all across the great State of New Hampshire that you can come to court to get a restraining order against someone – to shut them up when they say things you disagree with."* – Paul Maravelias, 6/8/18 Hearing Closing Argument

52.   Mr. Maravelias enjoys enormous validation of his trenchant determination from months ago that the DePamphilis bad-faith "stalking order" abuse against him has been but a cowardly attempt to restrict his speech, having nothing at all to do with a "fear for personal safety".

53.   The Petitioner's shameful, panicked, and obscurantist Motion decisively confirms this.

54.   The said is a but veiled attempt to criminalize Maravelias's quotidian existence. It is a nefarious scheme to conduce an innocent human life into doubtless imprisonment. It is a cowardly contrivance birthed of the perverse validation this Court's errors have tortiously bestowed upon Maravelias's abusers, and lacks any legal merit.  It is beyond shameful that David and Christina DePamphilis still machinate against the victim such dishonest abuse-stratagems which cowardly masquerade under the misleading optics of protectivism.

# EXHIBIT B

55. To echo familiar language from yesterday's national holiday, in every stage of this Court's oppressions, Mr. Maravelias has petitioned for redress in the most humble terms. <u>His repeated petitions have been answered only by repeated injury</u>. A Court whose character is thus marked by every act which may define a tyrant, is unfit to be the judiciary of a free people.

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Court:

I. Grant this Motion;

II. Grant Respondent's 6/25/18 *Motion for Reconsideration*, which will terminate the Stalking Order and dismiss Petitioner's instant Motion as well as this Objection thereto,

III. Deny Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions*; and

IV. Hold a Hearing, if necessary, on this matter.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

July 5th, 2018