Paul J. Maravelias, *pro se*
34 Mockingbird Hill Rd
Windham, NH 03087
(603) 475-3305
paul@paulmarv.com



2019 MAY 13 P 1: 18

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PAUL MARAVELIAS,<br>*Plaintiff*,<br>v.<br><br>JOHN J. COUGHLIN, in his individual and official capacities, GORDON J. MACDONALD, in his official capacity as Attorney General of New Hampshire, PATRICIA G. CONWAY, in her official capacity as Rockingham County Attorney, TOWN OF WINDHAM, *ex rel.* WINDHAM POLICE DEPARTMENT, and GERALD S. LEWIS, in his official capacity as Chief of Police.<br>*Defendants*. | Civil No. 1:19-CV-143(SM)<br><br>JURY TRIAL DEMANDED<br><br><br><br>**MEMORANDUM OF LAW<br>IN SUPPORT OF PLAINTIFF'S<br>MOTION FOR PRELIMINARY<br>INJUNCTION** |

NOW COMES Paul Maravelias ("Plaintiff") and applies for a preliminary injunction to prevent imminent deprivation of civil rights. In further support, Plaintiff states as follows:

## I.    INTRODUCTION

1.    Plaintiff's 5/6/19 Amended Complaint, submitted as a matter of course, credibly alleges Defendants are threatening to bring an unlawful enforcement against Maravelias. *See generally*, Amended Complaint. There is a real and imminent risk thereof. *Ibid.*, ¶¶43-51, 60, 62, 67; *See* Plaintiff's attached "Declaration in Support of Motion for Preliminary Injunction".

2. Defendants are persisting with said enforcement threats in bad-faith, knowing there is zero legal possibility, under state statutory law, to convict Maravelias of violating the "extended terms" about "possession" of "social media". See <u>Amended Complaint</u>, ¶67-73.

3. Plaintiff applies for a preliminary injunction enjoining all non-judicial defendants from enforcing the 8/7/18 "extended terms" pending the trial of this action. <u>This injunction will benefit all parties, perhaps Defendants even more greatly than the Plaintiff.</u>

## II. LEGAL STANDARD

4. To obtain a preliminary injunction, a plaintiff must establish "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements*, 794 F.3d 168, 171 (1st Cir. 2015); *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014); *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981).

5. Likelihood of success on the merits is the predominant factor in this inquiry. *Corporate Technologies v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013). Especially "[i]n the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorriqueno de Trabajadores v. Fortuno,* 699 F.3d 1, 10 (1st Cir. 2012).

## III. ARGUMENT

6. It does not take a legal scholar to recognize Defendants' unprecedented "extended terms" prohibiting Maravelias from "possessing" public "social media" exhibits are palpably, irredeemably unconstitutional beyond the pale. Defendants' sole plausible hope of prevailing in this action is to elude the merits on jurisdictional or abstention grounds.

7. Accordingly, to inform The Honorable Court's preliminary injunction analysis, Plaintiff reviews the inapplicability of the *Younger* abstention and *Rooker-Feldman* doctrines.

### A. *Younger* **Abstention Does Not Apply**

8. Principles of comity and federalism prohibit federal courts from "enjoin[ing] pending state criminal prosecutions except under extraordinary circumstances". *Younger v. Harris*, 401 U.S. 37 (1971). However, the *Younger* court "express[ed] no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun". *Id.* (Emphasis added)

9. Plaintiff's Amended Complaint seeks prospective relief only; Defendants have not yet instituted any "pending" criminal prosecutions. *See generally*, Amended Complaint. Before the Court is the question of whether Plaintiff must fulfill certain narrow recognized "Younger exceptions" (such as a pattern of harassment or bad-faith enforcements) where the alleged unlawful state criminal proceedings are only "threatened" but not "pending".

10. The case law is clear Plaintiff need not show any such extraordinary exceptions in this circumstance. Further, even if he did, Plaintiff overwhelmingly satisfies multiple "Younger exceptions" forbidding application of the doctrine to this case.

    i) **Plaintiff Need Not Satisfy Any Special Exceptions to *Younger* Where State Criminal Proceedings Are Only "Threatened" and Not "Pending"**

11. To interpolate *Younger* abstention to "threatened", but not "pending", state criminal proceedings is to expressly violate the United States Supreme Court's bedrock decision on the matter in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013). The *Sprint* Court affirmed federal courts' "virtually unflagging" "'obligation' to hear and decide a case" (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U. S. 800, 817 (1976)) and

stressed federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).

12. *Sprint* confined application of the *Younger* abstention doctrine to three narrow situations previously formulated in *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U. S. 350, 364 (1989) ("NOPSI"). The Supreme Court's terminology in *Sprint* held these three situations as "exceptions" to the general rule that "only exceptional circumstances ... justify a federal court's refusal to decide a case in deference to the States." *Id*.

13. Namely, *Sprint* limited *Younger's* scope exclusively to (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "pending civil proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial functions." *Sprint*, *supra*, at 591 (citing *New Orleans Public Service, Inc.* at 368).

14. It is undisputed in this case that Defendants have not initiated any "criminal prosecutions" nor "enforcement proceedings" of any type. The third NOPSI category entails <u>pending</u> contempt of court proceedings in "quasi-criminal", though technically civil, state court contempt proceedings. *See Juidice v. Vail*, 430 U.S. 327 (1977). Likewise, there are no civil nor criminal "contempt proceedings" pending against Maravelias.[1] Accordingly, none of the three permissible categories for *Younger* abstention are remotely applicable to this case.

15. Since there are no "pending" proceedings against Maravelias, *Younger* is inescapably inapplicable. *Quod erat demonstrandum.* Even if Defendants had initiated state enforcement proceedings a month ago, "the date for determining whether Younger applies is the

---

[1] Nor could the Defendants-bound even claim standing to bring anything other than a criminal protective order violation charge against Maravelias for violating the "extended terms" in the first place.

date the federal action is filed", *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014), and *Younger* would still not apply.

16.     Notably, *Sprint* explicitly rejected a common misinterpretation within some federal circuits that *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) imposed a three-factor test to determine *Younger* abstention. The Supreme Court rejected the so-called *Middlesex* factors as dispositive for *Younger* analysis, namely, that "[t]here is (1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) . . . provide[s] an adequate opportunity to raise [federal] challenges." *Sprint*, 134 S.Ct. at 593. Since Maravelias concedes there is arguably an "ongoing state judicial proceeding" (the existence of a civil protective order), but not a pending criminal prosecution, *Younger* abstention could be (incorrectly) invoked were the second and third improper *Middlesex* factors fulfilled. However, the principle of *stare decisis* requires this Court to obey the current Supreme Court precedent, binding since at least 2013, precluding application of *Younger* to this case.

17.     In fact, the Supreme Court has forbidden application of *Younger* abstention to Plaintiff's present requested relief since long before *Sprint*. Instructive on this point is *Steffel v. Thompson*, 415 U.S. 452 (1974), which pointedly addressed whether "relief is precluded when a state prosecution has been threatened, but is not pending, and a showing of bad-faith enforcement or other special circumstances has not been made." *Id.* The *Steffel* court highlighted the impropriety of abstention in circumstances remarkably analogous to the instant case:

> "When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, while a pending state prosecution provides the federal plaintiff

with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel*, 415 U.S. at 462 (reversing improper application of *Younger* abstention where state prosecution was only "threatened" but not "pending")

18.     Accordingly, Maravelias need not show any special circumstances such as "bad-faith" enforcement or the absence of an adequate state forum to bring federal challenges.

### ii)    Notwithstanding The Above, This Case Squarely Satisfies Multiple Extraordinary "Younger Exceptions" Forbidding Abstention

19.     Even in fundamentally different cases where <u>there are</u> "pending" state criminal proceedings, *Younger* remains inapplicable if one of a few narrow, extraordinary exceptions applies. This Court should not abstain even if *Younger* abstention possibly could apply to "threatened"-only state criminal proceedings, absent one such exception.

#### 1) *Younger* Cannot Apply Because The Enforcer-Defendants Are Acting in Bad-Faith, With No Possible Hope of Obtaining a Valid Conviction

20.     *Younger* cannot apply in any circumstances because the Amended Complaint alleges Defendants are acting in bad-faith, threatening to institute proceedings without any expectation of securing a valid conviction. *See* <u>Amended Complaint</u>, ¶60-73. The plain language of NH RSA 633:3-a, I-c. (the criminal enforcement statute for violation of stalking protective orders) requires that the "single act" be 1) a violation of a civil protective order, ***and*** 2) "listed" in RSA 633:3-a, II(a). However, "possession" (*i.e.*, the "social media possession" prohibition of the "extended terms") appears nowhere in this exclusive list. The "extended terms" are thus irrefutably <u>criminally unenforceable</u>, yet Defendants have persisted in bold threats – daringly,

even in the Windham Defendants' very Answer before this Court – to arrest Maravelias on "probable cause" he has violated the "extended terms" by "possessing" "social media".

21. "'[B]ad faith' in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction". *United Books, Inc. v. John J. Conte*, 739 F.2d 30 (1st Cir. 1984) (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531 n. 6, 44 L.Ed.2d 15 (1975)). "Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction ... is federal ... relief against pending state prosecutions appropriate." *Perez v. Ledesma*, 401 U.S. 82, 83, 85, 91 S.Ct. 674, 676, 677, 27 L.Ed.2d 701 (1971). *See also* Dombrowski v. Pfister, 380 U.S. 479 (1965).

22. Accordingly, Defendants' enforcement threats amount to nothing but vexatious and futile saber-rattling, fitting squarely within the "bad-faith" exception from exercising *Younger* abstention where state criminal proceedings are "pending".

> 2) *Younger* Cannot Apply Because Maravelias Fully Exhausted His Ability to Pursue Federal Constitutional Claims in State Court and Was Not Given a Fair and Full Opportunity

23. The New Hampshire courts are an inadequate forum for Maravelias's federal constitutional claims. Throughout this case, state judicial officers have kindled a puerile *esprit de corps* rooted upon their fraternal roguery of observing *pro se* Maravelias's well-crafted federal constitutional claims and later utterly ignoring said claims, refusing to rule upon them, merely casting them aside insouciantly, as if doing so is a humorous recreational opportunity of exploitative *schadenfreude* and self-entertainment. *See* Amended Complaint, ¶32, 74-85. In Maravelias's 2018 New Hampshire Supreme Court appeal of the extension of the underlying protective order, he 1) brought federal challenges to the "extended terms" before the state's

highest court (*Ibid.*, ¶¶77, 79), 2) made a modest motion for a reasonable appellate brief word limit increase to fit this addition content (*Ibid.*, ¶78), 3) was denied the word increase without explanation (*Ibid.*, ¶¶78, 80), and 4) observed that the state appellate court completely eluded and neglected to adjudicate his federal challenges to the "extended terms" (*Ibid.*, ¶¶76, 80, 81). The New Hampshire Supreme Court's behavior regarding Maravelias's facial challenge to RSA 633:3-a, III-c. was no different: they refused to adjudicate the federal constitutional claim. *Id.*

24.     "Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings." *Huffman v. Pursue, Ltd.*, 420 U.S. 592. "[A] a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court." *Id.* at 608.

25.     By comparison, Maravelias has <u>exhausted</u> his "state appellate remedies" and his 2018 "state appellate proceeding" is <u>finished</u>, in which the state courts <u>refused to adjudicate</u> this federal claim. Thus, abstention is inappropriate "because the requested [prospective injunctive] relief would neither interfere with any pending state proceedings nor 'annul the results of a state trial.'" *United Books, supra*, quoting *Huffman*. See also *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (upholding federal District Court's refusal to apply *Younger* abstention, granting injunctive relief against unconstitutional New Hampshire criminal statute – not by much dissimilar to the instant case). "Here, however, the suit is in no way 'designed to annul the results of a state trial' since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate appellees' constitutional rights" *Id.* at 711.

>    3) <u>*Younger* Cannot Apply Because There Is No Pending State Appeal This Court's Adjudication Would Frustrate</u>

26. The above principles counsel strongly against applying *Younger* abstention additionally because no new or current state appellate action exists which this Court's adjudication could possibly frustrate. *See* Amended Complaint, ¶87, 88. Maravelias has shown tremendous deference to the state court system and afforded it ample opportunity to do its job. To this end, *Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252, 262 (1st Cir. 1993) is instructive on the inapplicability of *Younger*:

> "Rather, we are confronted by persons ... who have attempted to engage themselves, without response. Quite simply, we do not feel that these plaintiffs have shown the kind of disrespect for state judicial proceedings that were present in *Juidice* and *Pennzoil* and which would warrant this court's abstention. ... We are not dealing here with individuals who have simply ignored judicial process as in *Juidice*. Nor did the directors of Casa Marie, with respect to the original judgment, fail to exhaust appeals to the Puerto Rico Supreme Court as in *Huffman*. Nor will we be interfering with pending state proceedings that deal with state interests similar to those of child welfare as in *Moore*." (declining to abstain under *Younger*)

27. Accordingly, *Younger* could not apply to the case at bar even if "pending" state criminal proceedings did exist.

### 4) *Younger* Cannot Apply Because the State Courts Are Objectively, Demonstrably Biased Against Maravelias

28. An extension of the "fair and full opportunity" exception, a showing of hostile bias within the state's applicable decision-making entity precludes application of *Younger*. *See e.g., Gibson v. Berryhill*, 411 U.S. 564 (1973). Plaintiff enumerates multiple retaliatory, unusual, and potentially unlawful acts recently taken against him by the New Hampshire Supreme Court. Amended Complaint, ¶84. This spans incorporation-by-reference of Maravelias's Original Verified Complaint in *Maravelias v. NH Supreme Court, et al.*, 1:19-CV-00487-JL, alleging the

state's highest court has fraudulently extorted $4,900.00 from Maravelias in retaliation for Maravelias's critical public speech against them.

29.     These circumstances are extraordinary, inexplicable, and doubtlessly "unusual" enough to "call for equitable relief". *Younger*, 401 U.S. at 45. Even if state proceedings were, in fact, "pending", this unique case would require federal courts to intervene where Maravelias's federal constitutional claims are hopelessly moribund the second they appear on paper inside New Hampshire state courts.

> 5)   *Younger* Cannot Apply Because The "Extended Terms" Are "Flagrantly and Patently Violative of Express Constitutional" Rights

30.     Besides the fact there are no "pending" criminal proceedings and that Defendants have zero legitimate state governmental interest in prohibiting someone's "possession" of public lawful internet speech artifacts, *Younger* abstention could never apply to this case. The "extended terms" are so risibly unconstitutional and beyond any conceivable interpretation of state statutory authority that Defendants' moot Motions to Dismiss thoroughly disregarded the underlying merits of this action – despite the chiefly legal, not factual, nature of this dispute.

31.     The "extended terms" criminalizing Maravelias from possessing his own court exhibits are so "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply [them]" that no abstention doctrine – under any set of circumstances – could apply. *Younger*, 401 U.S. at 53, 54.

32.     In summary, even if this Court were to defy the Supreme Court's holding in *Sprint* that *Younger* abstention cannot apply to prospective injunctive relief, the doctrine would still be inapplicable due to multiple independently disqualifying extraordinary circumstances.

### B. The *Rooker-Feldman* Doctrine Does Not Bar This Suit

33. Defendants' mooted Motion to Dismiss the Original Complaint invoked an undeveloped reference to the *Rooker-Feldman* doctrine, including inaccurate characterizations of the underlying case which run afoul of the Amended Complaint's well-pleaded allegations.

34. The *Rooker-Feldman* doctrine prevents federal district courts from having review of final state court judgments in cases which have ended. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); Amended Complaint, ¶74-92.

35. There is not the shadow of plausibility to the notion that Plaintiff's sought prospective injunctive relief is barred by *Rooker-Feldman*. The Supreme Court clarified and narrowed the applicability of the controversial doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), holding it only precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*

    i) ***Rooker-Feldman* Cannot Apply Because There Is No Final State Court Judgment in Existence on The Constitutionality of The "Extended Terms"**

36. As stated above, the New Hampshire Supreme Court <u>declined to adjudicate</u> Maravelias's challenge to the "extended terms". There is no "state court judgment" whatsoever possibly to contest. *See* <u>Amended Complaint</u>, ¶76, 80. Maravelias is not a "state court loser", nor a "winner", because his state's highest court ignored this federal claim, never issuing any "judgment" thereon. Plaintiff verifiably alleges "at the filing of this action, no state court, appellate or otherwise, had expressed an opinion nor rendered any judgment on the

constitutionality of the "extended terms". Amended Complaint, ¶81. This alone could satisfactorily terminate the *Rooker-Feldman* discussion.

37.     Independently, however, *Rooker-Feldman* is impossibly applicable because the underlying litigation is not "ended". Under New Hampshire law, a civil protective order can be renewed year-to-year upon petition. It thus maintains a unique temporal structural nature and meaningfully differs from a traditional linear "point-A-to-point-B" civil lawsuit or criminal case. In effect, the underlying civil protective order case is a *seriatim* history of multiple distinct cases for the initial one-year issuance and all such further extension requests.

      **ii)**    ***Rooker-Feldman* Cannot Apply Because the Underlying Proceedings Are Ongoing and Not "Ended"**

38.     In the wake of *Exxon*, the First Circuit has left no ambiguity as to when a case becomes "ended" for purposes of *Rooker-Feldman*, formulating a three-prong test in *Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17 (1st Cir. 2005).

39.     "First, when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have 'ended.'". *Id*. Here, in Maravelias 2018 state appeal, the New Hampshire Supreme Court affirmed the extension of the protective order without ever adjudicating Maravelias's federal constitutional challenge to the "extended terms", leaving the issue open and "[un]resolved" to this day. *See* Amended Complaint, ¶¶75-77.

40.     "Second, if the state action has reached a point where neither party seeks further action, then the state proceedings have also 'ended.'" *Federación, supra*. Here, Maravelias's opponent in the underlying protective order has sought another extension which was granted on

3/8/19 and currently remains pending both parties' cross-motions for reconsideration. Both parties intend further action. *See* Amended Complaint, ¶87-88.

41. "Third, if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue." *Federación*, *supra*. Here, the state courts have neglected to finally adjudicate the federal questions presented in this case even when Maravelias explicitly briefed them for the state's highest court. *See* Amended Complaint, ¶75-85.

### iii) *Rooker-Feldman* Could Not Apply Even If a Conflicting State Court Judgment Did Exist, As The "Extended Terms" Are Non-Judicial and Obtained by Fraud

42. Given the above, there can be no sincere aspiration of a *Rooker-Feldman* bar to Plaintiff's claims. Even absent the above independent disqualifications, *Rooker-Feldman* would still not apply since the "extended terms" are a non-judicial, extrajurisdictional act done *ultra vires* and not a legal "judgment", having involved no "rights", Amended Complaint, ¶75-77, 32-34, 89-92, 124-130, and because Maravelias's opponent in the civil case committed fraud and falsification to obtain the "extended terms" and the underlying protective order, *Ibid.* ¶86.

43. Although, at the time this suit was filed, the history of the universe did not contain any New Hampshire state court "judgment" on Plaintiff's federal constitutional challenges brought forth here, the Court could still "entertain a collateral attack on [such a] state court judgment" since Plaintiff has credibly "alleged [it] to have been procured through fraud, deception, accident, or mistake". *Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986), quoting *Resolute Ins. Co. v. State of North Carolina*, 397 F.2d 586, 589 (4th Cir. 1968).

### C. Plaintiff Is Likely to Succeed on the Merits

44. To show a likelihood of success on the merits, it is enough that the movant raises "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Brandeis Mach. & Supply Corp. v. Barber-Greene Co.*, 503 F.2d 503, 505 (6th Cir. 1974). *See also Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2nd Cir. 1953).

45. The well-pleaded allegations of Plaintiff's Amended Complaint establish an overwhelming likelihood of success on the merits of his causes of action relating to the unconstitutionality of the "extended terms" provision. *See, e.g.,* Amended Complaint, ¶105, comparing Defendants' extrajurisdictional, broad, vague "social media possession" "extended terms" in a civil case with a nullified North Carolina criminal statute preventing convicted felon sexual offenders from accessing "social media" in *Packingham v. North Carolina*, 582 U. S. ___ (2017). In *Packingham*, the Supreme Court nullified the "social media" restriction statute on First Amendment grounds where said restriction was infinitely more reasonable, narrowly tailored, cogently worded, and lawfully implemented than Defendants' civil "extended terms".

### D. Plaintiff Will Suffer Immediate Irreparable Injury Absent a Preliminary Injunction

46. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Sammortano v. First Jud. Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002). Any loss of constitutional rights is presumed to be an irreparable injury. *Colon-Marrero v. Conty Perez*, 698 F.3d 46, 47 (1st Cir. 2012). Here, the facts and arguments within the Amended Complaint require no further explanation. There is an imminent criminal enforcement against Maravelias of a

woefully unconstitutional, arbitrary set of "extended terms", issued in complete absence of legal authority, purposed to criminalize Maravelias's own legal self-defensive speech in state court.

47. Plaintiff repeats herein and incorporates by reference his attached "Declaration in Support of Motion for Preliminary Injunction".

48. Plaintiff does not have an adequate remedy at law. Money damages are unable to compensate the imminent injury and harm which Defendants have credibly threatened to cause Maravelias, nor are such damages available.

### E. The Balance of Equities and The Public Interest(s) Served Both Favor Granting The Preliminary Injunction

49. It is in the public's interest to protect constitutional rights. "[O]bviously, should the statute be unconstitutional, the public interest would be adversely affected by denial of … an injunction". *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 854 (1st Cir. 1988).

50. The sought preliminary injunction enjoins state officers from enforcing an extrajurisdictional court order which the trial of this action will conclude is illegal and itself promulgated under an unconstitutional statute. An injunction enjoining Defendants from enforcing the said unlawful "extended terms" does not cause any harm or injury whatsoever to them. It is well-established that no one, the government included, has an interest in the enforcement of an unconstitutional law. *See ACLU v. Reno*, 929 F. Supp. 824, 849 (1996).

51. In fact, the preliminary injunction greatly benefits Defendants. Defendants will avoid wasteful, pointless, futile, and costly state-level criminal litigation if enjoined from enforcing the Order, also serving the New Hampshire public' s (*i.e.*, taxpayer's) interests.

52.     Title 18 U.S.C. § 242 imposes severe federal criminal penalties upon any state officer who, under color of law, "willfully subjects any person ... to the deprivation of any rights ... secured or protected by the Constitution or laws of the United States". Absent injunction, Defendants' imminent unlawful enforcement action against Maravelias will inevitably constitute exactly the aforesaid crime, as Maravelias has apprised them of the illegality of their conduct sufficiently as to render their imminent illegal action "willful".

53.     In particular, the Windham Defendants find themselves locked in a labyrinthine pickle to be remedied by the requested preliminary injunction. "All laws, rules and practices which are repugnant to the Constitution are null and void." *Marbury v. Madison*, 5th US (1st Cranch) 137, 180. The Windham Defendants claim they "are involved in this matter solely due to [their] duty under RSA 633:3-a with regard to the investigation and enforcement of violations of stalking orders". <u>Answer</u>, ¶82. However, the "extended terms" are <u>simply unenforceable</u> under RSA 633:3-a, *see supra*, and violate clearly established federal rights. Windham will benefit from this Court's authoritative guidance that the supreme law of the land is controlling.

54.     As such, there are no equity considerations opposing the issuance of a preliminary injunction. The balance of equities strongly counsels the Court to grant the injunction.

## IV.     CONCLUSION

55.     For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted.

56.      A Proposed Order is attached pursuant to LR 65.1 and Fed. R. Civ. P. 65.

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court:

I. Issue a preliminary injunction prohibiting Defendants Gordon J. MacDonald, Patricia G. Conway, the Town of Windham, Gerald S. Lewis, and their officials, employees, and agents from implementing or enforcing the "extended terms" to the civil protective order against Maravelias in New Hampshire Circuit Court Case No. 473-2016-CV-00124 as identified in Plaintiff's 5/6/19 First Amended Complaint, ¶25; and

II. Grant any further relief as may be deemed just and proper.

Dated: May 13th, 2019

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

/s/ Paul J. Maravelias, *pro se*

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

**CERTIFICATE OF SERVICE**

I, Paul Maravelias, certify that a timely provided copy of this document is being sent on this date to all counsel of record for the Defendants pursuant to the rules of this Court.

/s/ Paul J. Maravelias                                                                 Dated: May 13th, 2019

**Paul J. Maravelias**