THE STATE OF NEW HAMPSHIRE

SUPREME COURT

2018 TERM

Case No. 2018-0483

---

CHRISTINA DEPAMPHILIS

Plaintiff-Appellee

vs.

PAUL MARAVELIAS

Defendant-Appellant

---

RULE 7 MANDATORY APPEAL OF STALKING FINAL ORDER
OF PROTECTION

From 10th Circuit Court – District Division – Derry

**<u>BRIEF OF DEFENDANT</u>**

Submitted by Defendant,

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

ORAL ARGUMENT
REQUESTED

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................ 6

TEXT OF RELEVANT AUTHORITIES ............................ 9

QUESTIONS PRESENTED ............................................. 10

STATEMENT OF THE CASE ........................................ 12

STATEMENT OF FACTS .............................................. 17

SUMMARY OF ARGUMENT ......................................... 30

ARGUMENT ................................................................ 31

**I. RSA 633:3-A, III-C. IS UNCONSTITUTIONAL FACIALLY AND AS-APPLIED** ...................................... 31

   A. The "Safety and Well-Being" Language of 633:3-a, III-c. is Overbroad ................................................. 31

      i. The Statute Regulates and Burdens Protected Speech ........................................................................ 32

         1. Maravelias's 12/10/17 Email to Mrs. Smith is Protected Speech .................................................. 34

         2. Maravelias's 11/2/2017 Response to Attorney Brown is Protected Speech ...................................... 34

         3. The March 2017 Nasty Letter to David DePamphilis ............................................................ 35

      ii. The Statute Triggers Strict Scrutiny ........................ 35

         1. The Regulation is Content-Based ....................... 36

2. The Regulation Isolates Disfavored Speakers and is Not Viewpoint-Neutral ............................................ 36

3. Forum Analysis .................................................. 37

iii. The Statute Fails Even Intermediate Scrutiny ........ 38

1. Tailoring Analysis .............................................. 38

2. The Governmental Interest Served is not "Compelling" .......................................................... 42

3. Alternative Channels ............................................ 43

B. The "Safety and Well-Being" Language of 633:3-a, III-c. is Impermissibly Vague ............................................... 43

i. Semantic Vagueness .................................................. 43

ii. Syntactic Vagueness ................................................. 44

**II. WHERE CHRISTINA DEPAMPHILIS INCITATIVELY BULLIED PAUL MARAVELIAS ON HER SOCIAL MEDIA AFTER LAUGHIBLY LYING ABOUT HAVING "FEAR" OF HIM, EVIDENCE SUPPORTING THE TRIAL COURT'S FINDING OF "REASONABLE FEAR" WAS INSUFFICIENT** ............ 46

**III. THE TRIAL COURT COMMITTED AN UNSUSTAINABLE EXERCISE OF DISCRETION IN GRANTING THE STALKING ORDER EXTENSION** .. 46

A. Good Cause for Stalking Order Extension was Not Shown by a Preponderance of Evidence .......................... 46

PAUL MARAVELIAS — 34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

B. The Trial Court Made Honest Verbal Comments at Trial Proving its Subsequent Written Order was Shamefully Disingenuous ................................................................. 49

**IV. THE TRIAL COURT VIOLATED MARAVELIAS'S DUE PROCESS RIGHTS** ................................................... 51

A. Reversal is the Necessary Remedy to the Trial Court's Blatant Violation of the "30 Days" Hearing Requirement of 633:3-a, III-c. .......................................................... 51

B. The Trial Court Illegally Limited Defendant's Guaranteed Right to Videotape the Entire Public Hearing ................................................................................. 52

C. The Trial Court Violated the Statutory Advance Notice Requirement and/or Other Substantive Due Process Rights ................................................................................. 53

i. "Obsession" and the 6/8/18 Surprise-Photographs-Exhibit ........................................................................ 53

ii. Ignored Motion to Dismiss ...................................... 53

**V. JOHN J. COUGHLIN, THE TRIAL COURT JUDGE, COMMITTED A RAMPANT SPREE OF BIASED AND UNJUST CONDUCT AGAINST MARAVELIAS, BEING LARGELY UNACCOUNTABLE TO AUTHORITY, SINCE HE RETIRED DAYS LATER** .............................. 54

**VI. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S POST-TRIAL MOTION FOR EXTENDED PROTECTIVE ORDERS** ........................... 54

A. The Trial Court Transgressed Constitutional Rights and Unsustainably Exercised Discretion ................................ 56

4

B. John J. Coughlin Personally Committed a Class B
Criminal Felony Violation of 641:5, I.(B) in Granting
Plaintiff's Obscurantist Assault Against Maravelias's
Public Freedom of Expression ........................................... 57

CONCLUSION ...................................................................................... 58

PRAYER FOR ORAL ARGUMENT ................................................... 60

APPENDIX ............................................................................................ 61

# TABLE OF AUTHORITIES

## Cases

**STATE OF NEW HAMPSHIRE**

Appeal of Martino, 138 N.H. 612 (1994) ..................................................... 52

Doyle v. Comm'r, N.H. Dep't. of Resources & Economic Dev., 163 N.H.
   215,221 (2012) ................................................................................. 32, 38

Kenison v. Dubois, 152 N.H. 448,451,879 A.2d 1161 (2005) .................... 32

MacPherson v. Weiner, 158 N.H. 6,10 (2008) ....................................... 40, 49

McCarthy v. Wheeler, 152 N.H. 643,645 (2005) ........................... 33, 51, 52

State v. Allard, 148 N.H. 702 A.2d 506,510 (2002) ................................... 38

State v. Brobst, 151 N.H. A.2d 1253 (2004) ............................................... 33

State v. MacElman, 154 N.H. 304,307 (2006) ............................... 31, 32, 33

State v. Porelle, 149 N.H. 420 (2003) ........................................................ 33

State v. Zidel, 156 N.H. 684, 686 (2008) ................................................... 34

Stewart v. Murdock, (2015-0448) .............................................................. 42

**COMMOMWEALTH OF MASSACHUSETTS**

O'Brien v. Borowski, 461 Mass. 415 (2012) ............................................... 37

**UNITED STATES OF AMERICA**

American Legion Post 7 of Durham, N.C. v. City of Durham, 239 F.3d
   601,607 (4th Cir. 2001) ........................................................................ 35

Ashcroft v. Free Speech Coal. 535 U.S. 234, 245 (2002) .................... 34, 38

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

Boos v. Berry, 485 U.S. 312,322 (1988) ........................................................ 35

Broadrick v. Oklahoma, 413 U.S. 601 (1973) ............................................... 33

Citizens United v. Fed. Election Comm'n, 130 S. Ct. 882,883 (2010). 36, 37

Cohen v. California, 403 U.S. 15 (1971) ........................................................ 34

Doe v. Harris, 772 F.3d 563 (2014) ............................................................... 38

Florida Star v. B.J.F., 491 U.S. 524,540 (1989) ........................................... 41

Hill v. Colorado, 530 U.S. 703,732 (2000) ................................................... 43

Pleasant Grove City v. Summum, 555 U.S. 460 129 S.Ct. 1125,172 L.Ed.2d
    853 (2009) ............................................................................................... 37

Rutan v. Republican Party, 497 U.S. 62,74 (1990) ..................................... 40

Showtime Entertainment, LLC v. Town of Mendon, 769 F.3d 61,73 (1st Cir.
    2014) ................................................................................................... 41, 42

Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502
    U.S. 105 (1991) ....................................................................................... 33

Sorrell v. IMS Health Inc., 131 S. Ct. 2664 (2011) ..................................... 36

Terminiello v. City of Chicago, 337 U.S. 1,4 (1949) ................................... 35

Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622,658,114 S.Ct.
    2445, 129 L.Ed.2d 497 (1994) ............................................................... 37

Ward v. Rock Against Racism, 491 U.S. 791 (1989) ................................... 38

**Constitutional Provisions**

First Amendment to the Federal Constitution .......................... 32, 33, 34, 36

Fourteenth Amendment to the Federal Constitution ................................... 32

New Hampshire Constitution Part I, Article 22 .................................... 32, 38

**Statutes**

M.G.L. 258E §3(d) ................................................................... 45

M.G.L. 265 §43 ..................................................................... 45

RSA 173-B *in genere* ............................................................... 32

RSA 173-B:3 ......................................................................... 53

RSA 633:3-a *in genere* .......................................................... 32, 42

RSA 633:3-a, III-a ........................................................ 38, 40, 41, 42

RSA 633:3-a, III-c ........................................................... *passim*

RSA 641:5, I.(B) .................................................................... 57

**New Hampshire Rules of the Circuit Court - District Division**

Circuit Court Rule 1.4 ............................................................. 52

**Academic Literature**

Newberg and Waldman, 2012

   (https://www.psychologytoday.com/us/blog/words-can-change-your-
   brain/201208/the-most-dangerous-word-in-the-world) .......................... 39

Rook, K.S. (1984) .................................................................... 39

## TEXT OF RELEVANT AUTHORITIES

### Statutes

RSA 633:3-a ........................................................................ A223

RSA 173-B:3 ...................................................................... A226

RSA 641:5 .......................................................................... A227

M.G.L. 258E § 3 ................................................................ A227

M.G.L. 265 § 43 ................................................................ A227

### New Hampshire Court Rules

Circuit Court Rule 1.4 ......................................................... A229

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

## QUESTIONS PRESENTED

1. Is RSA 633:3-a, III-c. constitutional?

    (T302;A48,A50,A162-163,A99-100)[1]

2. Was there sufficient evidence to support the trial court's finding that Christina DePamphilis had "reasonable fear" of Maravelias?

    (T307,471,478,479,485,486;A43,46,118)

3. Did the trial court commit an unsustainable exercise of discretion and/or an error of law in granting Plaintiff's motion to extend stalking order and/or her 7/2/18 post-trial motion for expanded protective orders?

    (A43,44,45,47,50,158,118,186)

4. Did the trial court violate Respondent's procedural and/or substantive due process rights?

---

[1] T = Consecutively-numbered transcripts of May-June 2018 trial court Hearing.
A = Appendix herewith.
Example format: (Tx:*y-z,a-b*;A10-20) where *y-z* reference lines on transcript page *x* and *a-b* reference whole consecutive transcript pages.

10

(T5-7,9:1-3,484:17-18,487-489;A48-50,63-65,111-114)

5. Did Judge John J. Coughlin commit a rampant pre-retirement spree of unjust conduct marked by hostile prejudicial bias against Maravelias and reflexive, typhlotic rejection of all his arguments, *quidquid sint*?

> (A45,51,115-126); Plain-error; Supreme Court Justices as supervisory judges per Rule 54 and Code of Judicial Conduct Rule 2.12 (B)

11

# STATEMENT OF THE CASE

### *Overture*

This appeal is a righteous young man's exasperated plea for justice. Maravelias apologizes in advance to this Honorable Court for wherever he may fail in this legal brief to restrain his understandable righteous indignation. He recites here a breviloquent case-summary with the bare minimum of necessary facts, relegating further facts into the following section.

### *DePamphilis's December 2016 Delusions*

In December 2016, David DePamphilis got angry with Paul Maravelias. Paul had asked-out David's daughter to dinner on 12/12/16. (T27,276-277) Paul Maravelias <u>never once spoke to or communicated with her ever after that day</u>. (T27,28,35-36,451:17-18) On 12/23/16, after 11 days of frightening, harassing conduct by David DePamphilis discussed in the related case (2018-0376), Maravelias texted David DePamphilis to "stop harassing [Maravelias's] parents please". (A197) As a result of this text, David texted Paul's parents the same night, promising, "that's the last straw". (A186,198) Five days thereafter, on 12/28/16, Maravelias was served a Stalking Temporary Order of Protection. But DePamphilis's *daughter Christina*, nominally, had filed a "stalking petition" against Maravelias (473-2016-CV-124). Maravelias hadn't interacted with her once since 12/12/16 weeks prior (T226:15,27,28,35-36,451:17-18), the first and only time Maravelias expressed an interest in her.

### The Legal Abuse Begins

Outraged, Maravelias expedited the hearing and boldly appeared *pro se* as a legally untrained, falsely accused 21-year-old college student. (T64) His innocence and rhetorical skills were no match for the polished legal scheming of Jerome Blanchard, DePamphilis's first attorney-henchman.

### Tyrant I: Robert S. Stephen

The DePamphilis actors got their stalking order on 2/7/17. It was Judge **Robert S. Stephen** who granted this stalking petition against a dignified and level-headed gentleman named Paul Maravelias. (A40)

### The Censored Exculpatory Audio Recording

Maravelias happened to have a sentimental audio recording of his 12/12/16 dinner-date-proposal exchange, proving his gentlemanly verbal appropriateness. (T276;A98) After Christina DePamphilis lied under oath about what Maravelias had said, to make him sound like a "creepy" or socially deficient person, Maravelias was disallowed to play his exculpatory recording in court. (T277) Robert S. Stephen defied Maravelias's every vociferous assertion to the contrary, falsely claiming in his Orwellian Order that Maravelias had mentioned the "age of consent" while asking-out David's 16-year-old daughter! (A40)

### The First Arrest

David DePamphilis complained to the police about Maravelias's suppressed recording after abusing Maravelias with a falsified restraining order. Robert S. Stephen approved search warrants and Windham PD raided Maravelias's Windham home and Dartmouth dorm room on 4/6/17,

whisking-away all Maravelias's digital property *in toto* (cellphones, PCs, USB-drives, etc). The police-state arrested Maravelias on 6/13/17 for "wiretapping" (RSA 570-A): the crime of pressing a button on your smartphone <u>outdoors</u> to voice record yourself the first time you ask out a girl in your life, with the intention of sharing it with her, and later wanting to play it to disprove contemptible false accusations. (T43,443)

### The Futile Appeal

Maravelias was an economics major and a bright kid. But, he had no idea what "issue preservation" was. He didn't know he had 10 days to preserve legal arguments in a motion for reconsideration. (T63:25) Once he hired a top-notch attorney to appeal the ridiculous stalking order (2017-139), it was apparently too late. This Court was compelled to affirm, declining to review the appeal's substance because its arguments were unpreserved.

### The Second Arrest

Maravelias emailed his beloved Windham High School mentor and civics teacher, Mrs. Smith, on 12/10/17. (A91) Alas: Mrs. Smith runs the WHS National Honor Society chapter. Maravelias attached evidence of Christina DePamphilis's legal falsification and substance-abuse crimes, which disqualify her from ongoing NHS membership. (T419;A91-92) Now Greg Iworsky, the WHS WPD resource officer, had married Heather Newell, WPD's prosecutor. Heather and another small, third-rate WPD officer-tyrant caught wind of Maravelias's private email to a public employee. They pleasured themselves by arresting Maravelias on 12/15/17

for "stalking" DePamphilis's daughter, whom Maravelias hadn't seen for almost a year nor knew even still existed. (T331,336-337)

They threw Maravelias in jail, purposely on a Friday night. Maravelias had just bought his family a Christmas tree and was planning to decorate it with his two siblings. An obese fat-acceptance-feminist nurse at Rockingham County Jail forced Maravelias into solitary confinement after he politely mentioned he'd be doing a three-day fast until the Monday arraignment, so the jail didn't need to waste food he wouldn't eat. Rapists and murderers inside the same jail enjoyed a bed to sleep on that night. Heather Iworsky vitriolically slandered Maravelias at arraignment before Tyrant I. They held the bizarre, illogical charge over Maravelias for as long as they could, dropping it months thereafter in late May 2018. (T331,337,384:9-12;A37)

*The Extension*

After repeated mid-order acts of cruel bullying, harassment, and indeed stalking against Paul Maravelias (T278-280,299,307) (*see also* 2018-0376), the relentless DePamphilis actors motioned the court on 1/5/18 to extend their precious "stalking order" another year to February 2019. (A72) Judge Sharon DeVries granted the preliminary extension on 1/12/18. (A10) The trial court scheduled a hearing for 2/15/18 on Maravelias's objection thereto, 34 days after 1/12/18, and actually gave Maravelias his first opportunity to proceed with the hearing on 2/20/18. (A222,151)

*Tyrant II: John J. Coughlin*

There was in those days a judge named John J. Coughlin.

Now John was presiding at Derry, fulfilling the last-days of his career: for the extension case was transferred thither from Salem after Judge Stephen's recusal. A three-day hearing commenced 5/3/18 and finished 6/8/18. **Judge John J. Coughlin** granted the stalking order extension on 6/15/18. (A1)

*Coughlin's Career-Capstone Summer 2018 Orders against Maravelias*

It came to pass that John J. Coughlin authored a written finding with said Order. (A2) Before retiring on 9/5/18, Judge Coughlin also granted DePamphilis's post-trial motion requesting even more severe restrictions on Maravelias's public free-speech rights (A7), terrified that Maravelias could expose the character of David DePamphilis's perjuring (T275:25,370;A21,24,28,189,192,201), substance-abusing (T60,364,371-372,418,450;A18,84,167), bullying (T299:3,301:13,307:2-4,339,346-347,371,476,483;A11,13,43,118), harassing (T164:21, T299:3,482:25,485;A43,49,91), stalking (T70:10;A61-62,166), physically unrecognizable (T353-355;A46¶20), lying (T275:25,340:21,368:12,483:25;A62,91,187,189), law-breaking (T421:18,A167-196), "independent" (T74:14,233:8) daughter Christina.

This appeal follows.

## STATEMENT OF FACTS

David DePamphilis begat a daughter in 2000: Christina DePamphilis ("Plaintiff-Appellee"), a high school senior turning 18 in a few days.

Paul Maravelias ("Defendant-Appellant") is a 23-year-old author and recent college graduate who is presently employed as a software engineer. (A42) He's had an unusual experience stemming from the first time he ever asked a girl on a date. Maravelias does not drink alcohol, consume illegal drugs, or commit perjury to abuse those who showed him kindness and respect. (A43) He believes he differs from Christina DePamphilis in these regards. (A43)

### Social Pretext to December 2016

Both parties are Windham residents and were good friends before David DePamphilis's direful December 2016 devolution into the legal abuser of Paul Maravelias. (T274,275;A98,102) David and his daughter came to Maravelias's house on 6/18/2016 for a family party. (T275:24,276) David was "smoking cigars" with Maravelias's dad (T38,39): this was the last time Maravelias saw Christina DePamphilis prior to the 12/12/16 dinner-invitation. During cross-examination, Christina struggled to justify her coming over Paul's house mere months before calling him a "stalker" with dramatic retellings of being "scared" by him since 2013. (T39)

### The December 2016 Origin of the Stalking Petition

Maravelias needs not belabor the details of his 12/12/16 birthday-exchange with DePamphilis's daughter, by now reviewed *ad nauseum* in

both appellate cases. According to laborious design, Maravelias invited her to dinner with an outlandish sports-car, which she said was "very sweet".[2] (A98) But DePamphilis's wife clarified her daughter perceived Maravelias as "a nice friend". He left once rejected, saying, "I respect your feelings" and "have a beautiful Christmas". (T278:4;A98) There was not a hint of impropriety, the slightest indication the daughter felt "scared", nor the most remote semblance of "stalking" whatsoever. (A98,31) In fact, Christina DePamphilis had invited Maravelias back to her house on 12/12/16 for this interaction, after he first came to the door and her mommy was in the shower. (T157:21-158:12;A31) Maravelias, ever the gentleman, awaited Mrs. DePamphilis.

Nor does Maravelias re-explain the history of David DePamphilis's subsequent December 2016 course of explosive, threatening, harassing, profane, and frightening conduct against him and his parents – likewise detailed in the related appeal (*See* 2018-0376).

The undeniable fact is Paul Maravelias had a normal family friends relationship to Christina DePamphilis (T275) and transitory romantic attraction which manifested in a cute birthday dinner date proposal and ostentatious stunt with a fancy car. The undeniable fact is "she" filed a stalking petition 16 days after Maravelias's final contact with her, after her

---

[2]By 2018, DePamphilis falsely portrayed Maravelias as some "spoiled rich kid", and John Coughlin "ordered" Maravelias to pay his abuser "9,000 dollars" which Maravelias didn't "even have … in his bank account", still paying off "2016 taxes". (T332)

father was angered by Maravelias's challenging David DePamphilis's emotionally and verbally abusive antagonism.

*Foolhardy Falsity: The Original Stalking Petition*

The stalking petition dreamed up a host of absurd, malicious dramatizations of history against Maravelias. He was falsely accused of having "grabbed [her] arm" at "cheer practice" three years prior in 2013 (A150). It is telling that even in David's December 2016 telephonic tirades, where he accused Maravelias to his face of everything short of raping the Sabine women, David never mentioned this alleged "arm-grabbing" incident with his daughter nor the word "stalking" whatsoever.

Appellant bores-not this Court by reviewing similar defamatory drivel from DePamphilis's original stalking petition. A neurotic admixture of [paraphrasing] "I think he hacked into my Twitter account" (T174:13), "he was looking at me in his backyard" (T185:11), "he tried to talk to me at the Turkey Trot once and I was scared" (A39) and similar cringeworthy absurdities sustained the witch-hunt against Maravelias, an innocent suitor.

*Judge Robert S. Stephen Slanders Maravelias a "Stalker"*

On 2/7/17, Judge **Robert S. Stephen** confirmed once-more the reputation he had already earned himself within the New Hampshire legal community is deserved. Stephen granted the stalking petition, issuing an Order against Maravelias scribbled in barely-legible chicken-scratching penmanship. (A40) Judge Stephen opened his Order accusing that the "Defendant has been obsessed with the Defendant". (A40)

After failing to remember way back from law school the word "Plaintiff", Judge Stephen accused Maravelias's stalking course of conduct was based in two acts: that Maravelias

1) "drove [David's daughter] home and attempted to drop the other person off first" in 2013, and

2) "waited until she turned 16 which he referred to as the 'age of consent' to her mother, offered [*sic*] her a brand new mazzaretti [*sic*]". (A40)

**Paul Maravelias humbly demands this Court and anyone reading this document meditate upon the disturbing fact that the above two reasons are why a New Hampshire family court judge labeled Maravelias a "stalker".**

In recklessly libeling Maravelias, Judge Stephen only memorialized his own incompetence: in 2013, David DePamphilis himself had asked Paul Maravelias to give his daughter a ride home from a restaurant they were at, as a favor. (T286:21-13) If Paul Maravelias had truly been perceived as a "stalker", David DePamphilis would not have explicitly consigned his own daughter into Maravelias's vehicle, volunteering Maravelias to serve as Mr. DePamphilis's own filial *spedizione* chauffeur! (T287)

Secondly, Maravelias never "referred" to the young woman's birthday as her "age of consent". (T101:20,370:11,484:5,484:12,487:4;A29,31,98,106,192) Only a perverse tyrant fully divorced from the most elementary tenets of justice would dare

to judicially shove words into a good young man's mouth[3] never spoken,
which said-young-man categorically denied ever speaking
(T101:20,370:11,484:5,484:12,487:4), and for which he assertively offered
indisputable physical evidence (his audio recording) as proof. Maravelias
lawfully played this audio recording for his parents on 10/21/17 in
Vermont; they testified in letters to the contents: that Maravelias never once
said anything remotely close to the disturbing "age of consent" comment
DePamphilis falsely accused. (A28-32) Further, the lie that Maravelias had
said this appeared nowhere in the stalking petition. (T489:14,491:6,492:7)
A stalking order thus exists against Maravelias because of a disprovable lie
that wasn't even noticed in the petition.

### *Hypocrisy and Harassment: Christina DePamphilis's Middle-Finger Post Against Maravelias with her New 21-Year-Old Boyfriend*

Having secured their falsified restraining order, the savage
DePamphilis actors escalated their psychological terrorism against Paul
Maravelias to a new level. On 6/19/17, Christina posted a picture on her
public social-media showing her new college-age boyfriend Matthew
LaLiberte making challenging comments against "P M". (T79-82;A13)

Then, on 6/21/17 at 9:13pm, she posted a picture showing David
DePamphilis, herself, and her boyfriend standing together and middle-
fingering the camera, with the caption, "Did Dartmouth teach you how to
do this? [middle-finger emoji]" (T69,70,72-77;A11), which she confessed

---

[3] Hurtfully, Judge Stephen's libelous order-text in this regard appears as Mr. Maravelias's
first public Google search result, being cited in this Court's 7/28/17 Order in 2017-0139

was obviously targeted at Maravelias. (T74,76) This was days after she got Maravelias arrested on 6/13/17 for trying to defend himself against her false stalking accusations with his censored cell-phone voice recording. (T349) She and her father were rubbing-in the all their legal abuse while taunting Maravelias with Christina's new 21-year-old (T146,147) boyfriend -- Maravelias's age -- endeavoring to create an even more provocative aspect of jealousy. (T476)

Weeks prior, Christina DePamphilis had whined under-oath she was "scared" of Maravelias and "afraid" "to set him off" -- that "it's like walking on eggshells with him" (T67:10-11) -- to get the stalking order she later unsuccessfully baited him into violating. (T232:10-13)

### Christina DePamphilis's "Tipsytina69" Activities: A Rare Flash of Honesty

In summer 2017, outraged female entities within the campus of Windham youth supplied Maravelias with Christina DePamphilis's postings on her legally-public Instagram account she named "tipsytina69", a reference to drunken oral intercourse. (T239:16,359) These exhibits were referenced frequently at hearing. They showed Christina DePamphilis was quite beyond her green-age of 16 years: she would alcoholically (T60,364;A18,167) and narcotically (T450:21;A167) intoxicate herself, and brag about how far she and her 21-year-old boyfriend would displace the bed during sexual intercourse, whereupon Christina visually emphasized in red ink that the intercourse kinetically translated their bed over two feet from the wall. (A221,159) Maravelias argued these posts contradicted the deceptive "young-and-innocent" optics DePamphilis had falsely conjured

against Maravelias to win a "stalking" order, that they undermine her dubious professions of "fear", and that great irony exists in light of older-Maravelias's comparatively rectitudinous lifestyle.

### Liar Caught Red-Handed: Maravelias's May 2018 Cross-Examination of Christina DePamphilis

Maravelias cross-examined DePamphilis at the 5/3/18 and 5/4/18 hearings.

On 5/3/18, Christina DePamphilis confessed that Maravelias has never attempted to interact with her since December 2016. (T27:18) Maravelias asked, "Please tell this Court the last time you were stalked by me." (T28:18-19) Christina memorably responded, "I continue to being [*sic*] stalked every day." (T28:20)

Christina said she believes Maravelias making any in-public comment she would consider defamatory is an instance of "stalking" her. (T34) When asked how she could possibly sustain her burden that Maravelias "threat[ens]" her "personal safety", she responded: "You just don't stop… [*pause*] you continue to… [*pause*] to send letters threatening to ruin my career", referencing Maravelias's single November 2017 reply to David DePamphilis's outrageous legal bluff-threat letter to Maravelias. (T46:22-24)

Paul Maravelias asked Christina DePamphilis: "Isn't there a difference between stalking, and people speaking their free minds about your actions and accusations against them?" (T57:16-18) Christina slipped and tellingly replied, "you can't do that when I have a stalking order against you."

(T57:19-20) Christina clarified Maravelias's third-party self-defensive speech-acts disagreeing with her stalking accusations are themselves further acts "stalking", because he is "further talking about me [her]". (T58)

Maravelias challenged David DePamphilis's daughter to name <u>one single incident</u> he had actually stalked her. (T59) She replied, "such as my eighth-grade graduation". (T59:14) Maravelias then asked if she considered his "casually coming up to [her] [at Maravelias's *sibling's* graduation] and saying 'hey, congratulations'" in 2015 to be "stalking". Christina DePamphilis failed to answer the question; she turned to the Court and defeatedly opined, "he has a way of misinterpretating [*sic*] situations". (T59:17)

Christina DePamphilis lied multiple times: *e.g.*, she first claimed she "was the only one" "who knew" her harassing 6/21/17 middle-fingers post was directed at Maravelias. (T72:16-17) Later, she admitted she "and [her] [five-years-older] boyfriend" also knew. (T79:23-24) Another lie about the post was noted: initially, she claimed it was just to "let [Maravelias] know" that she knew he was viewing her page. (T70:15) Then Maravelias pulled-out her 6/19/17 post which had *already* identified him. (T77:12-14,79:3-7,79:21-24)

<u>Some of Christina DePamphilis's vile lies were exposed spectacularly</u>. Maravelias played a cell-phone video for the trial court his younger sister happened to be taking at the 11/28/2013 Windham Turkey Trot walk-run event. Christina had alleged in her stalking petition and while testifying that Maravelias "came up to her" at this event and "tried to talk to [her]",

24

making her "scared". (T220:3-9;A38,39) Coincidentally, the video captured this whole interaction[4]: Christina DePamphilis had actually noticed Maravelias from across the crowd along with his sister, <u>walked over to him</u> with a premeditated intention to find him shared by Maravelias's sister (T215:15-17, Video 0:47-1:24), and <u>interrupted</u> Maravelias's conversation with his friends, assertively exclaiming "Hi Paul!" (Video at 1:24) Christina was even wearing a sweatshirt with the name of Maravelias's college on it and tried to win his approval by boasting, "I'm promoting your college!" (Video at 1:28) <u>Yet in her petition, this whole exchange was</u> <u>dramatized into a delusional canard of *Maravelias* "stalking" *DePamphilis*</u>! (A39)

### *Christina DePamphilis's Inaffidable Imaginations*

In a frantic scurry of subsequent damage-control, Christina DePamphilis further evidenced her lack of credibility – whether from lying or deficient memory. She asserted Maravelias's sister had said the words "will you come see him with me" in the video she'd just watched. (T222) Maravelias corrected her, since his sister never spoke those words (Video at 0:47), but Christina DePamphilis was so confident in her false, revisionist memory that she challenged Maravelias, "you can replay it". (T223) Maravelias later argued that if she could "so extraordinarily contort and misremember something that she observed five minutes prior, imagine, just imagine [her stalking accusations from up to] three years prior". (T343:1-9)

---

[4] Appellant has uploaded the video to YouTube, currently in private (unlisted) mode, for this Court to access: https://youtu.be/EAawoOcFGVg

The telling Turkey Trot video elicited another indication of the teenage-girl-Plaintiff's capacity for creative, reconstructive memory – the component of her falsity *not* begotten of willful lying. She was convicted Maravelias had mentioned somewhere in the record he "had a friend" take the 2013 Turkey-Trot video, which his sister incidentally happened to take. (T218,219) Maravelias later reminded he'd never said anything like this anywhere, despite Christina DePamphilis's steadfast certainty otherwise. (T341,342) That Christina DePamphilis testified falsely to a highly specific representation while firmly convicted of the truth thereof will be undeniable when she inevitably fails in her opposing brief to cite where in the "transcripts" Maravelias said that which she had a vivid though false memory of him saying. (T219)

Christina DePamphilis also testified she "has suspicions" Maravelias "flew a remote-controlled surveillance drone" to her "bedroom window" during the stalking order. (T171) Her basis was that, one night, she "was seeing lights in [her] window" around "12:30" (T171), but when she "would open the window ... nothing was there" (T172). She believed since Maravelias "was the valedictorian" and "went to an Ivy League school" he could have been "smart" enough to do this (T173,175), although she never saw any such flying device (T181). She also checked to ensure Maravelias had not installed "very microscopic" "hidden cameras" in her bedroom. (T194)

*Motion to Extend Allegation #1: Maravelias Was Mean on 11/2/17 in Replying to Attorney Brown's Threatening Letter*

DePamphilis's Motion to Extend the stalking order accurately alleged Maravelias had made offensive communications to third-parties. (A72) In replying to an outrageous legal threat by David DePamphilis, Maravelias had responded to Attorney Brown that Christina was an "ugly and disreputable whore". (T409;A48,89) Deterring a lawsuit, Maravelias asserted his right to publicize Christina's social-media-documented acts of lawlessness, which could "ruin her academic and professional career", if David sued him. Despite DePamphilis further "pursuing Maravelias legally", Maravelias never followed-through with the lawful retaliation he mentioned only when provoked by DePamphilis's threatening letter. (T415:7)

*Motion to Extend Allegation #2: Maravelias Wrote a Private Email to His Own WHS Teacher*

As mentioned *supra*, Maravelias emailed on 12/10/17 his close mentor, Mrs. Smith, who runs the NHS chapter. (A91) Maravelias CC'd three others of his close mentors; he <u>did not</u> communicate to the Plaintiff, nor to any of her friends or family members. (A91)

*Motion to Extend Allegation #3: Maravelias Had Communications with the Author of a Nasty Letter Sent to David DePamphilis in March 2017*

Maravelias did not write the nasty March 2017 letter but "knew about it". (T393;A17) A "girl from Windham" wrote David DePamphilis the letter, purporting to be a "friend" of Maravelias. (A76) The author attacked David DePamphilis for legally abusing Maravelias. (A76) In Maravelias's impolite 11/2/17 response letter to Attorney Brown, Maravelias corrected

DePamphilis's false speculation that Maravelias was the author of the March 2017 letter:

> "Unlike the author, I had known in March that David's wild daughter had already been fucked raw by the man in secret at David's beach house in February, days before her 'confirmation mass' at my church." (A88)

In responding to Attorney Brown's vexatious legal threat, Maravelias's words were unwise and regrettably blunt. However, they were both truthful and notable in proving Maravelias did not write the nasty March letter – the author of which forewarned of a *potential* sexual relationship as an overarching theme of her letter. *I.e.*, the author was ignorant of what was happening between DePamphilis's barely-16-year-old daughter and her college-age boyfriend. If Maravelias had written this letter, surely he would have alluded to this salacious gossip of which the author was apparently unaware.

### *Maravelias's Self-Defense in the Extension Hearing*

Maravelias elucidated that none the motion-to-extend accusations, true or false, pertained to "stalking" the Plaintiff. (T476) Maravelias testified a confirmed trial-court-level clerical error had given him the false impression the stalking order had been vacated, during which time Maravelias did not contact the Plaintiff whatsoever. (T475) Maravelias had filed two trial-court motions: 1) a wrongly-denied motion for discovery (A110), and 2) a motion to dismiss (A107), given the original order's basis upon an unnoticed allegation, arguing that due-process is again violated by extending such an order. Judge Coughlin utterly ignored the motion to dismiss; he never

issued a ruling on it whatsoever, nor addressed its legal arguments anywhere. (A49-50)

*Judge John J. Coughlin's Orders*

On 6/15/18, after hearing all the facts propounded hereinabove, John Coughlin composed an Order extending the stalking order. The full libel-text of Judge Coughlin's emetic judicial terrorism is appended. (A2) Then DePamphilis motioned for extremified injunctive terms against Maravelias on 7/2/18. (A152) John Coughlin predictably scribbled-off his seven-word approval. (A7) Ostensibly insulted by Maravelias's ten-page Motion for Reconsideration, John Coughlin scribbled "denied" and retired on 9/5/18. (A3)

## SUMMARY OF ARGUMENT

Where the continued stalking order is birthed of unconstitutional law, abuse of discretion, revisionist memory, criminal falsification, violation of due process, and judicial misconduct (A115), Judge Coughlin's 2018 Orders should be vacated, and the entire original stalking order retroactively annulled *ab initio*.

Maravelias should get his freedom and reputation back. Between the parties, finally, should be peace.

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

**ARGUMENT**

I.    **RSA 633:3-A, III-C. IS UNCONSTITUTIONAL
      FACIALLY AND AS-APPLIED**

Questions of constitutional law receive *de novo* review. State v.
MacElman, 154 N.H. 304,307 (2006).

A.  The "Safety and Well-Being" Language of 633:3-a, III-c. is
    Overbroad

RSA 633:3-a provides at III-c.,

> "Any order ... may be extended by order of the court upon a
> motion by the plaintiff, showing good cause, with notice to the
> defendant, for one year after the expiration of the first order and
> thereafter each extension may be for up to 5 years, upon the request of
> the plaintiff and at the discretion of the court. The court shall review
> the order, and each renewal thereof and shall grant such relief as may
> be necessary to provide for the safety and well-being of the plaintiff.
> ..."

Here, the statute can be reasonably interpreted to permit extension upon
a showing of "good-cause" that a plaintiff's "well-being" primarily would
be jeopardized without extending the protective order, even if concern for
"safety" is minimal. Any other reading is impossibly tautological, as a
threat to an individual's "safety" is also a threat to their "well-being". The

legislature could have omitted the word "well-being", but intentionally appended it after "safety".

Neither RSA 633:3-a nor RSA 173-B define the term "well-being"; thus, dictionary reference is appropriate. *See* <u>Doyle v. Comm'r, N.H. Dep't. of Resources & Economic Dev.</u>, 163 N.H. 215,221 (2012). On review, this Court ascribes "the plain and ordinary meaning to regulatory text". <u>Kenison v. Dubois</u>, 152 N.H. 448,451,879 A.2d 1161 (2005). The Oxford English Dictionary defines "well-being" as "the state of being comfortable, healthy or happy."[5]

Insofar as the trial court found Maravelias's specifics acts of speech jeopardized the comfort, health, or happiness ("well-being") or "safety" of the Plaintiff and therefore granted the extension, the statute is unconstitutionally overbroad in violation of the First and Fourteenth Amendments to the federal constitution and Part I, Article 22 of the state constitution, as-applied and, concerning the "fundamental right" of free speech, facially. *See* <u>MacElman</u> at 307.

### i. *The Statute Regulates and Burdens Protected Speech*

By operation of the "safety and well-being" language of 633:3-a, III-c., the trial court extended a stalking order on the basis of Maravelias's acts of speech. Since civil stalking orders criminalize possession of firearms and prohibit defendants from communicating directly or indirectly to plaintiffs, the statute restricts constitutional rights. Further, the stalking statute

---

[5] https://en.oxforddictionaries.com/definition/us/well-being

"implicates the fundamental right to freedom of movement". <u>State v. Porelle</u>, 149 N.H. 420 (2003). "It hardly bears mentioning that a restraining order restrains one's liberty ... from a number of legal activities." <u>McCarthy v. Wheeler</u>, 152 N.H. 643,645 (2005). In Maravelias's case, the extended stalking order criminalizes appearing at his own and his sister's high school, as well as his legitimate automobile passage through one of only two roads connecting his Windham neighborhood to the outer world. Though not a criminal prohibition, the stalking statute undeniably burdened the exercise of Maravelias's lawful speech through a civil restraining order extension resultant of his lawful speech, as it does in general for all such defendants.

The ambit of the federal First Amendment surpasses categorical prohibitions and extends to such "statutes attempting to restrict or burden the exercise of First Amendment rights." <u>Broadrick v. Oklahoma</u>, 413 U.S. 601 (1973). *Cf.* <u>State v. Brobst</u>, 151 N.H. A.2d 1253 (2004) at 422-425, applying the same under the state constitution. In New Hampshire, "a statute is void for overbreadth if it attempts to control conduct by means which invade areas of protected freedom." <u>MacElman</u> at 310. In the context of lawful-speech-related stalking order extension, 633:3-a, III-c. burdens the exercise of protected freedoms. *Cf.* <u>Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.</u>, 502 U.S. 105 (1991), invalidating a law which imposed merely a "financial disincentive" to certain speech, let alone a stalking order as incapacitating as the one against Maravelias.

Here, the regulated speech is protected. Since constitutionally protected, non-threatening speech to third-parties permits extension under

the statute, the statute is overbroad. Facially, the overbroad language of the statute is not narrowly tailored to serve the government's interest in effecting the cessation of stalking, discussed *infra*. As applied, Maravelias's three acts cited by the trial court and noticed in Plaintiff's Motion to Extend are protected, legitimate, lawful speech.

1. *Maravelias's 12/10/17 Email to Mrs. Smith is Protected Speech*

An email to a public employee expressing a viewpoint that alleged criminal actions disqualify a person from said public employee's honor society does not fall into any of the recognized exceptions to constitutionally protected speech. "As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." Ashcroft v. Free Speech Coal. 535 U.S. 234, 245 (2002); *see also* State v. Zidel, 156 N.H. 684, 686 (2008). Maravelias's email – specifically requesting that it not be shared with the Plaintiff – does not fall into any recognized First-Amendment exception, such as "violence"-incitation or "obscenity". Ashcroft at 245; Zidel at 686.

2. *Maravelias's 11/2/2017 Response to Attorney Brown is Protected Speech*

Maravelias's private responsive communication to Attorney Brown advancing a deterrent legal counterthreat does not constitute any form of unprotected speech. While Maravelias incorporated a few scattered profanities, this does not come close to "obscene" speech. *Cf.* Cohen v. California, 403 U.S. 15 (1971), holding the phrase "fuck the draft" displayed inside a courthouse as protected. "A function of free speech

under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." Terminiello v. City of Chicago, 337 U.S. 1,4 (1949).

### 3.  The March 2017 Nasty Letter to David DePamphilis

Maravelias did not write the letter (*See supra*).  It was not sent to the Plaintiff. (T14) Maravelias's private verbal communications with the letter's author are protected. Further, the letter itself does not contain any obscene content nor fighting-words; it is protected speech regardless of authorship. The US Supreme Court has noted that "citizens must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." Boos v. Berry, 485 U.S. 312,322 (1988).

### ii.  The Statute Triggers Strict Scrutiny

"The amount of burden on speech needed to trigger First Amendment scrutiny as a threshold matter is minimal." American Legion Post 7 of Durham, N.C. v. City of Durham, 239 F.3d 601,607 (4th Cir. 2001). Here, Maravelias's constitutional rights are manifoldly restricted because of lawful speech. This far-exceeds the threshold of triggering constitutional scrutiny. As the statute implicates "fundamental rights", intermediate scrutiny in-the-least applies. Further, strict scrutiny is the only valid form review here, since 633:3-a, III-c. is content-based, discriminatory against a disfavored group, and not viewpoint-neutral.

*1. The Regulation is Content-Based*

"The First Amendment requires heightened scrutiny whenever the government creates 'a regulation of speech because of disagreement with the message it conveys.'" <u>Sorrell v. IMS Health Inc.</u>, 131 S. Ct. 2664 (2011). "The First Amendment stands against attempts to disfavor certain subjects or viewpoints or to distinguish among different speakers, which may be a means to control content." <u>Citizens United v. Fed. Election Comm'n</u>, 130 S. Ct. 882,883 (2010).

Facially, that the statute invites courts to evaluate whether a defendant's public or third-party speech-acts undermine a plaintiff's "happiness" or "comfort" ("well-being"), and is therefore content-based, is plain. Here, if Maravelias had responded to Attorney Brown on 11/2/17 saying, "in parting ways, I respect David's daughter", doubtlessly the response would not have been used against Maravelias. Likewise, if Maravelias's 12/10/17 email to Mrs. Smith had been a generic salutation email mentioning, "I have some legal problems with Ms. DePamphilis, but she's still a great person", then the ridiculous accusation of "following-up" on a "threat" within WPD's baseless charge could not have existed (A37); the email would be irrelevant to extension.

Therefore, the regulation is content-based, triggering strict scrutiny.

*2. The Regulation Isolates Disfavored Speakers and is Not Viewpoint-Neutral*

The regulation's lack of content-neutrality closely resembles its lack of viewpoint-neutrality. Whereas Christina DePamphilis's obscene, incitative (unprotected[6]) middle-finger post (A11) *directed to Maravelias* entitled Maravelias to no recourse under the statute, the same statute permitted Maravelias's *non-incitative-nor-obscene* (protected) speech in public or to third-parties to motivate stalking order extension. Moreover, the statute's viewpoint-discrimination afflicts a certain group (stalking order defendants) doubtlessly "disfavored" by society. *See* Citizens United, *ibid.*, applying strict-scrutiny review to laws that "disfavors specific speakers". *See also* Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622,658,114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). "Speaker-based laws demand strict scrutiny when they reflect the Government's ... aversion to what the disfavored speakers have to say". *Id.*

### 3.  *Forum Analysis*

Maravelias's 12/10/17 communication to Mrs. Smith's public high-school email account commands further protection as speech within a "nonpublic forum" or, arguably, "limited public forum". *See* Pleasant Grove City v. Summum, 555 U.S. 460 129 S.Ct. 1125,172 L.Ed.2d 853 (2009). Even in a nonpublic forum, lack of viewpoint-neutrality triggers strict scrutiny.

---

[6] *Cf.* O'Brien v. Borowski, 461 Mass. 415 (2012). "Raising the middle finger may constitute fighting words or a true threat." *Id* at 429.

Because the "State Constitution provides at least as much protection as the Federal Constitution", strict-scrutiny-review is appropriate under both corpora of law. State v. Allard, 148 N.H. 702 A.2d 506,510 (2002).

### iii.   The Statute Fails Even Intermediate Scrutiny

Even content-neutral regulations subject to intermediate scrutiny must be "narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information". Doe v. Harris, 772 F.3d 563 (2014), citing Ward v. Rock Against Racism, 491 U.S. 791 (1989). A statute fails intermediate scrutiny if burdening "substantially more speech than is necessary to further the government's legitimate interests". Ward at 799. Applying strict scrutiny, the governmental interest advanced must be not only "significant", but "compelling".

### 1.   Tailoring Analysis

Where the statute's standard for stalking order extension atrociously exceeds the government's presumed interest in the "cessation of stalking" (See RSA 633:3-a, III-a.), it is overinclusively not-narrowly-tailored. Although arguably intending to regulate unprotected (e.g., threatening) speech, "the overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." Ashcroft at 237. See also Doyle at 221, invalidating laws as facially overbroad under Part I, Article 22 of the State Constitution where "a substantial number of its applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep".

RSA 633:3-a, III-c. permits trial courts to extend any stalking order where a plaintiff testifies she'd feel "uncomfortable" or "unhappy" otherwise, since this alone shows by "good-cause" that an extension would "provide for" her "state of being comfortable, happy, or healthy" (the definition of "well-being", *supra*). The language renders the facts of the case – a defendant's history of stalking, the level of expected unlawful future behavior, etc. – completely irrelevant where a plaintiff's mere "comfort" or "happiness" is served by granting extension.

The draconian statute disowns any realistic model of human psychology or sociology, in which one person's lawful third-party-or-public expressions might incidentally distress an individual holding different views – even though the suppression of *minor annoyance alone* triggers the dictionary definition of serving "well-being". Negative social experiences disfavor well-being. Rook, K.S. (1984)[7] Seeing the word "no" alone triggers unhealthy, uncomfortable, and unhappy neurotransmitters and hormones.[8]

The statute burdens a woefully latitudinous fetch of protected speech far beyond that necessary to promote "a cessation of stalking". A potential rebuttal pits the controlling context of "safety" and the generic context of the statute against "well-being" as altogether constituting a legal standard for extension higher than prevention of minor annoyance. But, such an interpretation is tautologically illogical, since the legislature added the word

---

[7] http://psycnet.apa.org/record/1984-25835-001
[8] Newberg and Waldman, 2012 (https://www.psychologytoday.com/us/blog/words-can-change-your-brain/201208/the-most-dangerous-word-in-the-world)

"well-being" and, thus, intently did not stop at "safety". Regardless, such a reading would separately demonstrate the statute's unacceptable vagueness, discussed *infra*.

Separately, reasonable alternatives to the "safety and well-being" language which would equally advance the counter-stalking governmental-interest evince the statute's lack of narrow-tailoring. *See* <u>Rutan v. Republican Party</u>, 497 U.S. 62,74 (1990). The statute could alternatively permit stalking order extension upon a good-cause-showing such would provide for a plaintiff's "safety" only, or, better-yet, "as is necessary to bring about a cessation of" (or simply "prevent") "stalking", to mirror the language in subsection III-a. No possible circumstance currently allowing extension would fail this more-narrowly-tailored test wherein the governmental-interest involved is truly one of *counter-stalking,* rather than of *silencing annoying speech* and effectively criminalizing a defendant's self-defensive speech <u>itself caused by the stalking order</u>, as in Maravelias's case. Such a narrowly-tailored alternative would <u>not amount to the necessity of re-proving new acts of stalking or showing protective-order non-compliance to obtain extension, since the "good-cause" standard *already requires* that the trial court consider the underlying circumstantial provenance of the original stalking-order</u>. *See* <u>MacPherson v. Weiner</u>, 158 N.H. 6,10 (2008).

Rather, RSA 633:3-a, III-c. surreptitiously supplants the original-stalking-order legal standard (III-a) with a patently absurd legal standard catering to "well-being" (III-c.), unrelated to the narrow counter-stalking governmental-interest, when extension is concerned. Naturally, therefore,

the statute is also *underinclusively* not-narrowly-tailored. Statutes *failing* to restrict an amount of harmful-to-the-governmental-interest speech comparable to the amount restricted are not narrowly-tailored. *See* Showtime Entertainment, LLC v. Town of Mendon, 769 F.3d 61,73 (1st Cir. 2014); Florida Star v. B.J.F., 491 U.S. 524,540 (1989). Here, if "safety and well-being" actually is otherwise narrowly-tailored to serve the governmental-interest, then so should the initial-stalking-order-issuance legal standard of III-a adopt the lower good-cause-provision-for-"safety and well-being" standard, rather than the higher-burden, more-stringent standard currently within subsection III-a positively requiring "stalking" and granting relief only as necessary "to bring about a cessation" thereof.

Instead, the illogical "safety and well-being" conundrum at III-c. radically discriminates between groups of potentially indifferentiable stalking order defendants. III-c. assaults the liberty-interests of extant defendants through a much-lower "well-being" legal standard, while III-a coddles the liberty-interests of new defendants, even though the liberty-restricting nature of the one-year injunction-at-hand remains identical both at III-a and III-c. Though civil, this villainously contravenes the precepts of double-jeopardy. In fact, III-c. permits further extensions "for up to 5 years", despite imposing a far lower legal standard than III-a!

In failing to be narrowly-tailored, the statute also discriminates against stalking *victims*. Why should the State expect legitimate stalking victims newly-seeking protective injunction to sustain a much higher burden than those already granted a stalking order – for the same one-year protection? If any difference in legal standard is appropriate between the two groups,

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

equity requires the reverse. This concern is exacerbated by New Hampshire trial courts' "extending" stalking orders by III-c. – lawfully or unlawfully – months after their expiration. *See* <u>Stewart v. Murdock</u>, (2015-0448). The overbroad language at III-c. creates an inequitable advantage for prior-order-wielding plaintiffs and an indefensible disadvantage for prior-order-subject defendants.

2.  *The Governmental Interest Served is not "Compelling"*

The underinclusiveness aforementioned casts doubt on whether the statute's "proffered interest is truly forwarded by the regulation, or is in fact substantial enough to warrant such regulation." <u>Showtime Entertainment, LLC</u>, *supra*. That is, if the "safety and well-being" standard were narrowly-tailored to the interest, the interest would be compelling enough to warrant usage of the same legal standard for original-stalking-order-issuance at subsection III-a. This suggests the governmental-interest served is not "compelling", forming separate causal grounds for failure of strict-scrutiny.

Furthermore, wherever the "well-being" language could possibly remain narrowly-tailored to the governmental-interest, such interest could never be "significant", and the statute would fail intermediate scrutiny regardless. The presumed *counter-stalking* governmental-interest motivating 633:3-a might be "significant", but the *obsequiously-catering-to-the-epicurean-"comfort"-and-"happiness"-of-a-plaintiff* interest (the only interest to which "well-being" is narrowly-tailored) surely is not.

PAUL MARAVELIAS  –  34 MOCKINGBIRD HILL RD., WINDHAM, NH 03087

### 3. Alternative Channels

Nor does the legal standard at III-c. appropriate any imaginable alternative manner a defendant may dare disagree with a plaintiff's stalking order within his public-or-third-party communications without suffering greater likelihood of stalking order extension, where the plaintiff's "comfort" should be disturbed by knowing the defendant's mere contrary opinion.

### B. The "Safety and Well-Being" Language of 633:3-a, III-c. is Impermissibly Vague

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703,732 (2000). Here, the language of RSA 633:3-a, III-c. is unintelligible and so loosely constrained that arbitrary, discriminatory enforcement thereof is inevitable. Not only is the term "well-being" too vague, but also the extent to which the preceding term "safety" narrows or qualifies "well-being".

### i. Semantic Vagueness

As applied, Paul Maravelias lacks the intelligence to discern which behaviors are reasonably expected to minimize chances of order extension. Whether he is simply to obey the order, avoiding/ignoring the Plaintiff as

he has, or must somehow appease her psychological "well-being" by tacitly congratulating her felony-perjury-fueled legal abuse, is unclear.

Facially, the language creates even worse problems for trial courts. One judge might think a "well-being" order ridiculous and far in-excess-of the legislative *counter-stalking* intent, calibrating his or her judgements to the statute's broad "safety" context, even applying *ejusdem generis* to constrain "well-being" thereby. However, another judge might reject this interpretation, "safety and well-being" not being a list, and adopt the plain meaning of the word "well-being" as this Court does on review.

   *ii.  Syntactic Vagueness*

The statute is fraught with meaningful syntactic ambiguity between the co-possible constructions "shall grant such relief as may be necessary to provide for the (safety and well-being)" and "… relief as may be necessary to provide for the safety, and (relief as may be necessary to provide for the) well-being". The former interpretation begets tautology, the latter overbroad plaintiff-sycophancy. This tremendous interpretation-dependent leeway afforded trial courts in applying subsection III-c. sponsors capricious, arbitrary extensions as perversely fact-amnestic as John Coughlin's against Maravelias in this case.

------

The Old Man's 2003 death was not of natural causes. From on-high he beheld the land before him. He witnessed not a frugal New England citizenry of individualist "Live Free or Die" self-reliance, but rather the

infantilistic, progressivist corruption of all for which he stood. He glanced farther to Boston and envied the dutiful balance of liberty-interest in Massachusettensian law – embarrassingly, unlike its tyrannical Novahantonian analog. He contemplated M.G.L. 265 §43, which sensibly necessitates an actual "threat with the intent to place the person in imminent fear of <u>death or bodily injury</u>" for "stalking". Betrayed by his own people, he then beheld M.G.L. 258E §3(d): the analogous civil "harassment" order extension standard; for civil "stalking" orders do not exist. The Commonwealth irrationally-abdicates-not its legitimate *counter-harassment* governmental-interest, nor embellishes with flowery "well-being" sophistry. Amazingly, it permits "the court [extend] the [*harassment*] order … as it deems necessary to protect the plaintiff from *harassment*." *Id.* The more-proximate golden dome at Concord then robbed the Old Man's gaze. The insidious travesty of RSA 633:3-a, III-c. agonized his senile consciousness. He threw himself down, ending his own life in ashamed despair: for "death is not the worst of evils".[9]

---

[9] Upon extensive individual research, Appellant <u>cannot find one single other state</u> of comparable protective-order-procedure which magically discards the initial-issuance-standard for something pointlessly different for extension.

II.    WHERE CHRISTINA DEPAMPHILIS INCITATIVELY
       BULLIED PAUL MARAVELIAS ON HER SOCIAL
       MEDIA AFTER LAUGHIBLY LYING ABOUT HAVING
       "FEAR" OF HIM, EVIDENCE SUPPORTING THE
       TRIAL COURT'S FINDING OF "REASONABLE FEAR"
       WAS INSUFFICIENT

Fortunately for him, the Old Man never lived to see the day where a
New Hampshire trial court would continue criminalizing a young man's
firearm-ownership because the 17-year-old girl who incitatively targeted
and bullied said citizen with her and her boyfriend's middle-fingers on
social media claims to "fear" him. Judge John Coughlin's peppering-in a
finding of "reasonable fear" (A2) was gratuitous under subsection III-c.,
obviously rooted upon insufficient evidence, and further indicative of his
biased, dismissive judicial misconduct against Maravelias, days before
retirement.

III.   THE TRIAL COURT COMMITTED AN
       UNSUSTAINABLE EXERCISE OF DISCRETION IN
       GRANTING THE STALKING ORDER EXTENSION

   A.  Good Cause for Stalking Order Extension was Not Shown by a
       Preponderance of Evidence

The trial court's order is risibly ludicrous. This stalking order has
become an absurd and pointless self-fulfilling prophecy if Maravelias's

non-Plaintiff-directed speech-acts decrying the injustice of the "staking" order themselves cause it to be extended.

Analytically, the logic of the trial court's order is as follows:

**Premise #1**   Paul Maravelias, believing himself falsely accused of stalking and possessing an audio recording disproving the accusations sustaining our original stalking order, dared communicate privately to third-parties, not Christina DePamphilis, about the injustice he believed we did against him.

**Premise #2**   These private third-party communications of Paul Maravelias protesting his own innocence somehow caused Christina DePamphilis to have "reasonable fear", even though she only even found-out about them by-accident, and even though she admitted to middle-fingering Maravelias with her new boyfriend on public social media to assert her "independency [*sic*]" (T74:14,233:8) to Maravelias.

**Premise #3**   Despite Maravelias's vociferous asseverations to be repulsed by and disinterested in Christina DePamphilis, including his inability to even physically recognize her in the court parking lot and intuition that "she deserves to be [his] girlfriend like Osama bin Laden deserves to be mayor of Manhattan" (T357:14-16), and despite her own attorney's calling Maravelias's a "previous obsession"

(A36), we are justified to fantasize Maravelias has a "continuing" "obsession" "to this day" (A2) with DePamphilis.

**Premise #4**   We should ignore Maravelias's evidence of Christina DePamphilis's extreme falsity, such as the Turkey Trot video, and our in-person comments to Maravelias were lies. (*See infra*)

**Conclusion**   Therefore, there is "good cause" to extend the stalking protective order. Further, we include gratuitous, amplified language about a "perverse obsession", "sole purpose of harassing/stalking" and "reasonable fear" in our order, because *pro se* Paul Maravelias knew the law, dared hold us accountable thereto, and generically pisses us off.

Premises 2-4 above are false. Any sensible adult having read the trial court's order, knowing the facts of this case, would find it illogical, unsustainable, and simply outrageous. Furthermore:

- Christina DePamphilis's relied-upon, obsessively-collected 1.5-year-old photographs of Maravelias's private home bedroom/office pictured a *pre-stalking-order state*, since Maravelias was living away at college immediately after December 2016. (T447:3-14,455:7-10;A46-47)
- After Maravelias exposed her innumerable inconsistencies, willful lies, and false memory, the trial court erred to attribute a

scintilla of credibility to Christina DePamphilis's
representations, such as relying upon her self-serving assertion
she "fears" Maravelias. (A44)

- Upon Maravelias's showing DePamphilis had submitted
countless false-or-otherwise-unfruitful police reports trying to
get him arrested mid-order (T483,A20), the trial court insensibly
failed to dismiss the obvious legal-harassment-purposed
"stalking" order against Maravelias.

- Given the early-May 2018 phenomenon where Maravelias
wrongly believed the order was annulled and went for a peaceful
victory-"walk" instead of contacting the Plaintiff whatsoever
(T357:2-5,303:17-22), only an unscrupulous tyrant like John
Coughlin would later libel him an "obsessed" "stalker" causing
"reasonable fear".

- If the upheld-extension in <u>MacPherson v. Weiner</u>, *ibid.*, was "a
close case" even where the defendant had *actually violated* the
stalking order and committed far-less-questionable original acts
of "stalking" (not asking-out a girl once, thereafter eternally
ignoring her), then the instant case miserably fails to even
approach warranting extension.


B.  <u>The Trial Court Made Honest Verbal Comments at Trial Proving
its Subsequent Written Order was Shamefully Disingenuous</u>

Judge Coughlin revealed his honest impressions of Maravelias toward
the end of the Hearing, commenting to Maravelias:

"Well, let me ask you, is there any potential that this case could settle? Because it looked like you're willing to stay away and not have any contact and otherwise comply with what is the order." (T479)

"it appears that you do not want to have any contact and that you're going to do that on a voluntary basis." (T479)

"you indicated that, you don't want to have anything to do with the family, you don't want to have anything to do with this young woman, and you just want to be left alone and you're going to leave her alone. At least that's my impression" (T480)

Having listened to Maravelias testify, any rational adult would endorse Judge Coughlin's candid Billy-Joel-esque characterization of Maravelias's pacifist "leave-me-alone" outlook concerning the Plaintiff and her family. However, seven mere days later in his demented 6/15/18 order, John Coughlin took to a vomitous display of self-contradicting libel, bullshitting that Maravelias has a "strange, perverse and unhealthy obsession" with the Plaintiff "which … continues to this day". (A2)

Additional self-contradictions *aliunde* in the transcript (T58:7-9,73:13-19,308:12-18,468:19-20) are likewise indicative that John Coughlin's 6/15/18 libelous abomination extension order was about as genuine as the 1919 World Series.

## IV.   THE TRIAL COURT VIOLATED MARAVELIAS'S DUE PROCESS RIGHTS

A. <u>Reversal is the Necessary Remedy to the Trial Court's Blatant Violation of the "30 Days" Hearing Requirement of 633:3-a, III-c.</u>

Given the trial court's illegal abrogation of Maravelias's due-process "right" "to a hearing on the extension of any order under this paragraph to be held within 30 days of the extension" as mandated by 633:3-a, III-c.., the subsequent stalking order extension must inescapably be reversed. This Court was abundantly clear in <u>McCarthy v. Wheeler</u>, 152 N.H. 643 (2005) that dismissal of domestic violence petitions is the required remedy when trial courts fail to obey statutory time-limit requirements. Such requirements are compellingly necessary to provide defendants a baseline level of due-process fairness where their basic liberties are at stake.

<u>McCarthy</u> bears striking factual similarity hereto and is doubtlessly dispositive. Firstly, it was a domestic violence order reversed on appeal, certainly more serious than a "stalking" order here where Defendant invited Plaintiff and her mommy on a date while offering her a fancy car, got rejected, and then never spoke to her ever again. Secondly, the <u>McCarthy</u> trial court scheduled the first excess-of-30-day-requirement hearing for 9/16/04, 4 days beyond the 30-days-post-10/13/04-petition date. Here, Maravelias's rights were repudiated by the stalking order for *9 days* after 2/11/18, the date 30-days post-1/12/18-extension.

"Where the legislature, out of liberty interest concerns, has mandated time limits for holding hearings, we have held that personal jurisdiction over a defendant is lost, absent waiver, if the case is not heard within the statutory period." *Id.*, quoting <u>Appeal of Martino,</u> 138 N.H. 612 (1994). The stalking statute is functionally identical to the domestic violence statute in stipulating the court "shall" obey the time-limit. "Since these hearings are designed to protect a defendant's substantive rights, the court's failure to hold them must result in dismissal of the domestic violence petition." <u>McCarthy</u>, *ibid.* Accordingly, this Court must reverse the stalking order extension.

B. <u>The Trial Court Illegally Limited Defendant's Guaranteed Right to Videotape the Entire Public Hearing</u>

The trial court illegally limited Maravelias's right to videotape the entire proceeding. (T9:1-3;A48) After Plaintiff objected to Maravelias's perfunctory videorecording-notice-motion, the trial court violated Circuit Court Rule 1.4 by formally prohibiting Maravelias from including the Plaintiff in his videotape of her own public court hearing. (A48,60) Maravelias objected contemporaneously (T5-7) and *post-facto* through pleadings (A48,60-64), identifying the further-Plaintiff's-lying-enabling prejudicial nature of letting her testify off-camera. Thus, reversal is the appropriate remedy, exactly as Maravelias presciently apprehended at trial. (T484)

C.  <u>The Trial Court Violated the Statutory Advance Notice
    Requirement and/or Other Substantive Due Process Rights</u>

### i.  *"Obsession" and the 6/8/18 Surprise-Photographs-Exhibit*

The trial court erred by relying upon Plaintiff's unnoticed surprise-
photographs with which she ambushed Maravelias on the hearing's last-day
to advance an unnoticed allegation of "obsession", in violation of 173-B:3,
I. (A2), applicable to stalking cases. Both that allegation and the
Maravelias-privacy-assaulting bedroom-photographs themselves were
noticed nowhere in Plaintiff's extension motion. Further, the absurd
"obsession" allegation should have been estopped. (A67-70)

### ii.  *Ignored Motion to Dismiss*

Maravelias invites this Honorable Court to ignore this paragraph if
disagreeing the "good-cause" standard could permit a trial court to refuse to
extend a stalking order because of a subsequent showing it was predicated
on totally-unnoticed, extra-petition allegations, even where said order won
this Court's obligatory affirmation on the technicality-grounds of
insufficient issue preservation. Maravelias here repeats the facts and
arguments (T487-489) his ignored 3/29/18 Motion to Dismiss (A107)
rehearsed.

## V.   JOHN J. COUGHLIN, THE TRIAL COURT JUDGE, COMMITTED A RAMPANT SPREE OF BIASED AND UNJUST CONDUCT AGAINST MARAVELIAS, BEING LARGELY UNACCOUNTABLE TO AUTHORITY, SINCE HE RETIRED DAYS LATER

Taken altogether, Judge Coughlin's judicial acts from both 2018 Maravelias-DePamphilis cases reveal a consistent pattern of bias and prejudice. Put lightly, no remotely honest judge would order a stalking-petitioner to pay his opponent's itemized expense incurred and dated *before said petition was even filed* and then utterly ignore the error after said petitioner's motion for reconsideration complained thereof (referencing 2018-0376). Lacking space here to analyze Judge Coughlin's abounding even-worse instant-case misconduct, Appellant Maravelias requests this Court review his recent trial-court-level motion explicating the noted disturbing phenomena. (A115)

This Court should reverse, as Maravelias was obviously not given a fair shot.

## VI.   THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S POST-TRIAL MOTION FOR EXTENDED PROTECTIVE ORDERS

On 7/2/18, Plaintiff motioned for vastly expanded "protective" orders against Maravelias. (A152) She hoped to criminalize Maravelias's mere possessing her "social media" artifacts wherein she bullied and harassed

Maravelias, which indicated her malicious prosecution and bold lack of "fear" (A154). Maravelias extensively litigated against this outrageous motion in responsive pleadings (A156), asserting the requested terms' unconstitutionality (A161) and illegality (A182).

In predictable fashion, Judge John J. Coughlin, the natural-rights-calpestating rebel and effeminate, sequacious houseboy-servant to daddy David's vindictive lust, scribbled-off his approval. Spineless Coughlin might as well have prepended his Order, "Don DePamphilis, I am honored and grateful that you have invited me to your daughter's restraining order hearing. I will extend it and grant any further requests. Don DePamphilis, I pledge my ever-ending loyalty."

John Coughlin pleasured himself with a last-laugh of recalcitrant judicial abuse against Maravelias by not even granting Plaintiff's concessively amended, slightly-less-overbroad terms proposed in her responsive 7/12/18 pleading (A180,8). Rather, Judge Coughlin ignored Maravelias's weighty responsive pleadings and affirmed *motu proprio* the irrationally draconian terms in Plaintiff's original 7/2/18 motion, which even she was willing to partially ameliorate in light of Maravelias's subsequent counterarguments. (A7)

Maravelias's meritorious legal counterarguments in these pleadings endured a familiar fate: defenestrated into the wind, ignored insouciantly by the trial court. Unsurprisingly, Judge Coughlin did not cite a word of legal authority for his final judicial act against Maravelias. (A6) The temerarious tyrant did not whim to betray the slightest indication he'd even read

Maravelias's counter-pleadings at all, wherein Maravelias hopelessly attempted to hold Judge Coughlin accountable to written laws and constitutions guaranteeing certain rights.

Rather, John Coughlin whored himself on the exhilarating thrill of his trademark "denied" and "granted" go-to scribblings (A3,4,5,6), knowing himself sacrosanctly above the law, unobliged to offer a single further word of justification for ablating Maravelias's right to possess public court exhibits profitable to his defense. After all, at that time, September 5th was just days away. That plump post-retirement pension was so close John Coughlin could taste it.

That such corrupt court-sponsored further-trampling of Maravelias's basic freedom of speech could occur in a nominally free country is surreal. Judge Coughlin only profaned the public's memory of his lackluster career by consummating such cavalier insanity as one of his final judicial acts. Is Maravelias a criminal for "possessing" "social media exhibits" in this very brief for his own legal defense?

Maravelias here re-invites this Honorable Court to contemplate the tragic absurdity that all this is transpired solely because he once invited a girl to dinner and never once spoke to her after the day she rejected him. (T27,28,35-36,451:17-18)

A. <u>The Trial Court Transgressed Constitutional Rights and Unsustainably Exercised Discretion</u>

Maravelias satisfactorily explicated the unconstitutionality and unsustainable improvidence of granting Plaintiff's motion for expanded

terms in his responsive pleadings thereto (A161-163), especially regarding the first term prohibiting Maravelias from directly or indirectly "possessing" his legal abuser's "social media communications" (A154). In this brief, Maravelias advances similar arguments against the underlying stalking order extension which are equally applicable to this separate order granting expanded protective order terms. Lacking space for repetition thereof, Maravelias here incorporates by reference those arguments. (A157,182)

B. <u>John J. Coughlin Personally Committed a Class B Criminal Felony Violation of 641:5, I.(B) in Granting Plaintiff's Obscurantist Assault Against Maravelias's Public Freedom of Expression</u>

Maravelias respectfully requests this Court address that Judge Coughlin personally violated a criminal statute in granting the motion, as Maravelias emphatically forewarned in his objection pleadings in this matter. (A182,183)

## **CONCLUSION**

WHEREFORE the foregoing compels the Defendant-Appellant, Paul Maravelias, humbly to pray this Honorable Court:

I.    Reverse the trial court's 6/15/18 extension order, ending this case;

II.    Reverse the trial court's 8/7/18 order granting further injunctions; and

III.    Retroactively annul the original stalking order dated 2/7/17, if possible, issuing declaratory relief that it was error to find Paul Maravelias had ever stalked the daughter of David DePamphilis.

―――――――――――

I, Paul Maravelias, certify that copies of the Derry District Court decisions being appealed are attached hereto. *See* N.H. Sup. Ct. R. 16(3)(i).

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

Paul J. Maravelias
34 Mockingbird Hill Road
Windham, New Hampshire 03087
paul@paulmarv.com
(603) 475-3305

THE FIRST DAY OF NOVEMBER
IN THE YEAR OF OUR LORD MMXVIII

## CERTIFICATE OF SERVICE AND RULE 16(11) COMPLIANCE

I, Paul Maravelias, hereby certify that on this day were sent via first-class mail two copies of the within Defendant's Brief and accompanying Appendix, postage prepaid, to Simon R. Brown, Esquire, Counsel for the Plaintiff-Appellee, Christina DePamphilis, P.O. 1318 Concord, New Hampshire, 03302-1318.

I, Paul Maravelias, hereby certify that this document was not drafted by a limited-representation attorney. *See* N.H. Sup. Ct. R. 16(10).

Certification, further, is made of the foregoing document's compliance to word-count limitation, 9,493 words being contained, exclusive of the herein addendum-certificate and of other addenda. *See* N.H. Sup. Ct. R. 16(11), 26(7).

November 1st, 2018

_____
Paul J. Maravelias

## PRAYER FOR ORAL ARGUMENT

The Appellant, Paul Maravelias, respectfully requests Oral Argument before the full court pursuant to Rule 16(h). 15 minutes are requested.

# APPENDIX

## Trial Court Decisions

6/15/18 Order Granting DePamphilis's Motion to Extend Duration of Final Stalking Order of Protection.................... A1

Denial of Maravelias's Motion for Reconsideration .............. A3

Denial of Maravelias's Motion for Discovery ......................... A4

Denial of Maravelias's Motion to Strike................................. A5

Denial of Maravelias's Objection to DePamphilis's Motion for Further Stalking Order Terms .............................................. A6

8/7/18 Order Granting DePamphilis's First Motion for Further Stalking Order Terms .......................................................... A7

8/7/18 Order Not Even Granting DePamphilis's Responsive, Ameliorated Motion for Further Stalking Order Terms....... A8

1/12/18 Initial Extension of Stalking Order ............................ A9

## Trial Court Exhibits

Christina DePamphilis's 6/21/17 Middle-Finger Provocation Posts Against Paul Maravelias on Social Media................ A11

Christina DePamphilis's 6/19/17 Social Media Post With Her Boyfriend Targeting Maravelias ........................................ A13

Christina DePamphilis's 12/12/16 Text Message to Paul Maravelias Showing She Did Not Have "Fear" of Him .... A14

Evidence of Christina DePamphilis's Social Media Accounts Deleted Right Before Hearing........................................... A15

Maravelias's April 2018 Statement to WPD About the March 2018 Nasty Letter Sent to David DePamphilis ................. A17

Christina DePamphilis's Age-16 "4:43am" Vodka Post ....... A18

Photograph of Christina DePamphilis Casually Socializing with Paul Maravelias ................................................................ A19

Maravelias's January 2018 Memo to WPD Regarding False and Fruitless Stalking-Order-Violation Accusation ................. A20

Maravelias's Criminal Complaint Against DePamphilis Perjury and Theodore and Caroline Maravelias Letter-testimonies On the Contents of Maravelias's 12/12/16 Audio Recording They Listened to In Vermont ...................................................... A24

Excerpt from Christina DePamphilis's Attorney's April 2018 Pleading Alleging Maravelias Had a "Previous Obsession" With Her ........................................................................... A36

May 2018 *Nolle Prosequi* of Baseless 12/15/17 WPD Arrest of Maravelias ........................................................................ A37

Transcript Excerpt From 1/5/17 Hearing Indicating Christina DePamphilis's "Turkey Trot" Accusation Proven False by the Cell-Phone Video .............................................................. A38

Excerpt from Original 12/28/16 Stalking Petition Copy Showing Christina DePamphilis's Claims about Being "Stalked" by Maravelias at the 2013 Turkey Trot, Later Revealed to be a Total Lie by His Sister's Incidental Cell-Phone Video Thereof, and Other False Accusations ............................... A39

## Original Stalking Order

Judge Stephen's 2/7/17 Stalking Order Finding of Facts Against Maravelias ........................................................................ A40

## <u>Motion for Reconsideration Litigation</u>

Maravelias's 6/25/18 Motion for Reconsideration ............... A41

DePamphilis's 7/2/18 Objection ........................................... A52

Maravelias's 7/5/18 Reply to DePamphilis's 7/2/8 Objection
........................................................................................... A58

Maravelias's 7/5/18 Motion to Strike Part of DePamphilis's
7/2/8 Objection .................................................................. A67

## <u>Underlying Stalking Order Extension Motion</u>

DePamphilis's 1/5/18 Motion to Extend Duration of Stalking
Final Order of Protection.................................................... A72

Maravelias's 1/18/18 Objection to DePamphilis 1/5/18 Motion
to Extend............................................................................ A97

## <u>Other Trial Court Motions</u>

Maravelias's 3/29/18 Motion to Dismiss and Vacate (Redundant
Exhibits Omitted) ............................................................ A107

Maravelias's 5/29/18 Motion for Discovery........................ A110

Maravelias's 10/31/18 Motion to Set Aside Judgement ...... A115

## <u>Transcript Excerpts of Related Proceedings</u>

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

Transcript Excerpt from 1/5/17 Hearing Showing "Arm-Grabbing" Lie Against Maravelias ................................. A150

Transcript Excerpt from 2/15/18 Hearing in Paul Maravelias v. David DePamphilis Indicating the Trial Court Scheduled That Hearing Before the Renewal Motion in This Case, Further Violating the 30-Days Requirement................................ A151

**Summer 2018 Post-Extention Litigation on DePamphilis's Motion for Expanded Protective Order Terms**

DePamphilis's 7/2/18 Motion to Amend Final Stalking Order of Protection to Include Further Terms ................................ A152

Maravelias's 7/5/18 Objection ............................................. A156

DePamphilis's 7/12/18 Reply to Maravelias's 7/2/8 Objection ...................................................................................... A178

Maravelias's 7/16/18 Reply to DePamphilis's 7/12/18 Reply and Criminal Complaint against Christina DePamphilis . A182

**Miscellaneous**

Maravelias's 12/23/16 Text Message to David DePamphilis Asking Him to "Stop Harassing" Maravelias's Parents... A197

Transcript Excerpt from the Paul Maravelias v. David DePamphilis Hearing Indicating the Bad-Faith, Vindictive Provenance of the Stalking Order in This Case by David DePamphilis's 2016 "Last Straw" Quote ........................ A198

Maravelias's 4/13/18 Reply to DePamphilis's Brief on Motion for Award of Attorney's Fees in Paul Maravelias v. David DePamphilis, Showing Initial Falsification and Theft-Attempt ...................................................................................... A199

Trial Court's First Notice of Hearing for 2/15/18 ............... A222

### Text of Relevant Authorities

New Hampshire Revised Statutes Annotated ..................... A223

General Laws of Massachusetts .......................................... A227

New Hampshire Rules of the Circuit Court – District Division
........................................................................................ A229