# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

*****************************************

| | |
|---|---|
| Paul Maravelias, | * |
| | * |
| Plaintiff, | * |
| v. | *     Civil No. 1:19-cv-00143-SM |
| | * |
| John J. Coughlin, et al., | * |
| | * |
| Defendants. | * |
| | * |

*****************************************

## <u>DEFENDANT GORDON J. MACDONALD'S OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION</u>

Gordon J. MacDonald, in his official capacity as New Hampshire Attorney General ("Attorney General"), by and through his counsel, the New Hampshire Office of the Attorney General, hereby objects to the plaintiff's motion for preliminary injunction. In support of this objection, the Attorney General states as follows:

## <u>INTRODUCTION</u>

1.      Through his amended complaint, plaintiff Paul Maravelias asks this court to declare unconstitutional: (1) a modification to a final stalking order entered against him in New Hampshire Circuit Court prohibiting him from accessing or possessing the victim's social media communications (the "social media modification"), and (2) the statute governing, *inter alia*, the procedure for extending stalking orders, N.H. Rev. Stat. Ann. § ("RSA") 633:3-a, III-c. He also asks the court to enjoin the Attorney General, among others, from enforcing the terms of the social media modification and the underlying stalking order. He now moves for a preliminary injunction prohibiting all defendants other than the judicial officer who extended the underlying

stalking order and granted the social media modification from enforcing the terms of the modification.[1]  ECF Doc. #23.

2.      The court should deny Maravelias's motion.  As explained in the Attorney General's motion to dismiss the amended complaint, ECF Doc. #26, and further discussed below, this court lacks subject-matter jurisdiction over Maravelias's claims based on the *Rooker-Feldman* doctrine.[2]  The court is therefore not empowered to issue the injunction Maravelias seeks.

3.      But even if subject-matter jurisdiction did exist, Maravelias would still not be entitled to preliminary injunctive relief.  As explained below, Maravelias has failed to meet his burden as to any of the factors courts consider when determining whether to issue a preliminary injunction.  This stands as an independent basis to deny Maravelias's motion.

## STANDARD OF REVIEW

4.      "To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest."  *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015).  Maravelias, as the party seeking the preliminary injunction, bears the burden of

---

[1] In addition to his official-capacity claims against the Attorney General, Maravelias also brings this action against Circuit Court Judge John J. Coughlin in his individual and official capacities, the Rockingham County Attorney in her official capacity, the Town of Windham, and the Chief of the Windham Police Department in his official capacity.  Maravelias seeks preliminary injunctive relief against all defendants except Judge Coughlin.  *See* ECF Doc. #23-1 at 2, ¶ 3; *id.* at 17 (Prayer for Relief).

[2] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

demonstrating that each of these elements is met.  *March v. Mills*, 867 F.3d 46, 52–53 (1st Cir. 2017).

<u>**ARGUMENT**</u>

I.    <u>**This court lacks subject-matter jurisdiction over Maravelias's claims.**</u>

5.    The First Circuit has suggested that a district court must first consider the "antecedent question" of jurisdiction before analyzing whether a preliminary injunction is appropriate under the relevant factors.  *See Sunshine Dev., Inc. v. F.D.I.C.*, 33 F.3d 106, 111–12 (1st Cir. 1994) ("This [four-factor] formulation can only be used in circumstances in which the district court is empowered to issue an injunction.  It is this antecedent question—the question of judicial power, sometimes called 'jurisdiction'—that comprises the centerpiece of this appeal.").

6.    As explained in the Attorney General's motion to dismiss the amended complaint, which the Attorney General incorporates into this objection by reference, the *Rooker-Feldman* doctrine deprives this court of subject-matter jurisdiction over Maravelias's claims. Accordingly, this court is not empowered to grant Maravelias the injunctive relief he seeks.[3]

---

[3] Some courts, including courts in the First Circuit, have considered the *Rooker-Feldman* doctrine when determining likelihood of success on the merits rather than as a separate threshold issue.  *See, e.g.*, *Barretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26, 28 (2d Cir. 2017) ("The district court properly concluded that Barretta did not establish a likelihood of success on the merits because her challenge to the bankruptcy court's order was likely barred by the *Rooker-Feldman* doctrine[.]"); *Grant v. Ross*, No. CV 18-12601-RGS, 2018 WL 6682768, at *3 (D. Mass. Dec. 19, 2018) ("Because the Court finds that the *Younger* abstention and *Rooker-Feldman* doctrines bar this Court's jurisdiction, Grant has not shown a reasonable likelihood of success on the merits."); *see also RW Norfolk Holding, LLC v. CBRE, Inc.*, No. 17-cv-370-LM, 2017 WL 4861936, at *4 (D.N.H. Oct. 25, 2017) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)) ("In the context of a preliminary injunction, 'the merits on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction.'")).  Should this court do the same, it still must deny Maravelias's motion for the reasons stated in this section.

7.     Maravelias makes several arguments in his preliminary injunction motion as to why *Rooker-Feldman* does not apply to his claims.  Each of these arguments is unavailing.

8.     First, Maravelias contends that there is no final state-court judgment on the constitutionality of the social media modification because the New Hampshire Supreme Court declined to adjudicate his challenge to that modification.  As explained in the Attorney General's motion to dismiss, Maravelias is simply wrong.  The New Hampshire Supreme Court record conclusively demonstrates both that Maravelias challenged the social media modification on appeal and that the New Hampshire Supreme Court rejected that challenge.  *See* ECF Doc. ##26-1 at 1; 26-2 at 3; 26-3 at 4–5, 54–57.  And even if Maravelias had not challenged the modification on appeal, the Circuit Court's order granting the modification (or its subsequent order denying Maravelias's motion for reconsideration) would constitute a final state-court judgment with respect to the modification.  *See Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 66 (1st Cir. 2016) (holding that a lower-court judgment was a final state-court judgment for *Rooker-Feldman* purposes when a plaintiff forfeited her right to appeal by failing to post the required appeal bond).  Because Maravelias's contrary arguments overlook or misconstrue the state-court record, they must be rejected.

9.     Next, Maravelias argues that *Rooker-Feldman* does not apply because the state-court proceedings are ongoing.  He premises this argument on his assertion that civil stalking orders can be extended on a year-to-year basis and that the stalking order to which he is subject has been extended multiple times.  This argument also fails for the reasons stated in the Attorney General's motion to dismiss.  In short, the First Circuit rejected a similar argument in *Tyler v. Supreme Judicial Court of Massachusetts*, concluding that there was "no suggestion that the [state court would] ever reconsider the federal claims" at issue on appeal. 914 F.3d 47, 52 (1st

Cir. 2019) (citation omitted).  There is likewise no suggestion in this case that the Circuit Court

or the New Hampshire Supreme Court will reconsider Maravelias's constitutional challenges to

the social media modification or RSA 633:3-a, III-c.  Thus, like in *Tyler*, the state-court

judgments with respect to the modification and RSA 633:3-a, III-c are final state-court

judgments for the purposes of *Rooker-Feldman*.

       10.     Maravelias acknowledges the finality of the state-court judgments elsewhere in

his motion for preliminary injunction, noting that he "<u>exhausted</u> his state appellate remedies" and

that his "2018 state appellate proceeding is <u>finished</u> . . . ."  ECF Doc. # 23-1 (emphasis in

original).  But he again argues that the New Hampshire Supreme Court "<u>refused to adjudicate</u>

this federal claim."  *Id.* (emphasis in original).  As previously discussed, this assertion is

inconsistent with the New Hampshire Supreme Court record and, in any event, would not render

the state-court judgment with respect to the social media modification or RSA 633:3-a, III-c

insufficiently final to evade *Rooker-Feldman*.  But Maravelias's argument is flawed for an even

more fundamental reason: the issues actually litigated in state court and the issues subsequently

raised in federal court need not be the same for *Rooker-Feldman* to apply.  *See Tyler*, 914 F.3d at

51 (citations and internal quotation marks omitted).  "Instead, the critical datum is whether the

plaintiff's federal suit is, in effect, an end-run around a final state-court judgment."  *Id.* (same

omissions).  This action is, at its core, an attempt by Maravelias to use this federal forum to

invalidate state-court judgments with which he disagrees.  It therefore fits squarely within

*Rooker-Feldman*'s jurisdictional bar.

       11.     Maravelias also argues that *Rooker-Feldman* does not apply because the

underlying stalking order was obtained through fraud.  In support of this argument, Maravelias

relies on *In re Sun Valley Foods Co.*, 801 F.2d 185 (6th Cir. 1986), and *Resolute Insurance*

*Company v. State of North Carolina*, 39 F.2d 586 (4th Cir. 1968).  His reliance on these

decisions is misplaced.  The latter case did not involve *Rooker-Feldman* at all, but rather the

doctrine of res judicata, *see Resolute Ins. Co.*, 39 F.2d at 589, and is therefore inapplicable in the

present context.  And while *In re Sun Valley Foods Co.* did recognize a fraud exception to the

*Rooker-Feldman* doctrine, the Sixth Circuit has never found that exception applicable in a

subsequent case, *see Dale v. Selene Fin. LP*, No. 3:15-CV-1762, 2016 WL 1170772, at *4 (N.D.

Ohio Mar. 25, 2016) (collecting cases), other Courts of Appeals have declined to recognize a

similar exception, *see, e.g.*, *Scott v. Frankel*, 606 F. App'x 529, 532 n.4 (11th Cir. 2015); *West v.

Evergreen Highlands Ass'n*, 213 F. App'x 670, 674 n.3 (10th Cir. 2007); *Velazquez v. S. Fla.

Fed. Credit Union*, 546 F. App'x 854, 859 (11th Cir. 2013), and several courts—including courts

in the Sixth Circuit—have called into question the continuing validity of that exception, *see

West*, 213 F. App'x at 675 n.3; *Iannucci v. State of Mich.*, No. 16-CV-10255, 2016 WL 4089215,

at *4 (E.D. Mich. Aug. 2, 2016), *aff'd sub nom. Iannucci v. State*, No. 16-2214, 2017 WL

3951849 (6th Cir. Mar. 22, 2017); *Dale v. Selene Fin. LP*, No. 3:15-CV-1762, 2016 WL

1170772, at *4 (N.D. Ohio Mar. 25, 2016).  Further, neither the First Circuit nor this court has

ever cited (let alone adopted) either decision on which Maravelias relies.  These decisions

accordingly have no precedential value and have little, if any, persuasive value in this case.

Thus, this court should not apply them.

      12.     Yet, even if the court were to adopt or create a fraud exception to *Rooker-

Feldman*, there remain at least two reasons why such an exception would not save Maravelias's

claims.  First, to the extent Maravelias contends that the underlying stalking order was obtained

through fraud, the New Hampshire Supreme Court held that any such claim was precluded by its

earlier decision upholding the underlying stalking order on direct appeal.  *See* ECF Doc. #26-1 at

3 (citing *DePamphilis v. Maravelias*, No. 2017-0139, 2017 WL 3468651 (N.H. July 28, 2017)).

"Under federal law, a state court judgment receives the same preclusive effect as it would receive under the law of the state in which it was rendered."  *Dillon v. Select Portfolio Servicing*, 630 F.3d 75, 80 (1st Cir. 2011).  Additionally, Maravelias's allegations in his amended complaint that DePamphilis obtained the social media modification through fraud are wholly conclusory and therefore do not approach the level of particularity necessary to plead fraud under Federal Rule of Civil Procedure 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) ("[W]here fraud lies at the core of the action, Rule 9(b) applies."); *see also N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) ("Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter.").  Consequently, even if this court recognized a fraud exception to *Rooker-Feldman*, there are no allegations in the amended complaint that would trigger such an exception.

13.     For all of these reasons, and for the reasons stated in the Attorney General's motion to dismiss, the *Rooker-Feldman* doctrine bars Maravelias's claims.  Accordingly, this court lacks subject-matter jurisdiction over this action and is not empowered to grant Maravelias the preliminary injunction he seeks.

**II.     <u>Maravelias has not demonstrated that he is likely to succeed on the merits of his claims.</u>**

14.     Even if this court had subject-matter jurisdiction over this action, however, Maravelias has failed to demonstrate that he is likely to succeed on the merits.  In the First Circuit, "proving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction."  *Arborjet, Inc.*, 794 F.3d at 173 (citations omitted).  "If the moving party cannot

demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Id.* (bracketing and citations omitted). "To demonstrate likelihood of success on the merits, plaintiffs must show more than mere possibility of success—rather, they must establish a strong likelihood that they will ultimately prevail." *Sandicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F3d. 1, 10 (1st Cir. 2012) (citations and internal quotation marks omitted).

15.     Maravelias argues that there is an "overwhelming likelihood of success on the merits" in light of the United States Supreme Court's decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017).  He is incorrect.  The circumstances in *Packingham* bear little resemblance to those in this case.  *Packingham* involved a North Carolina statute that made it a felony "for a registered sex offender 'to access a commercial social networking Web site where the offender knows that the site permits minor children to become members or to create or maintain personal Web pages.'"  *Id.* at 1733 (quoting N.C. Gen. Stat. Ann. §§ 14-202.5(a), (e) (2015)).  The Supreme Court invalidated the statute, reasoning that its broad scope and the fact that it "foreclose[d] access to social media altogether" were incompatible with the Free Speech Clause.  *Id.* at 1736–38.  Here, in contrast, the social media modification applies only to Maravelias and does not prohibit Maravelias from accessing social media altogether, but rather from accessing or possessing a single person's social media communications.  The Supreme Court contemplated in *Packingham* that a specific, narrowly tailored restriction on social media access would pass constitutional muster.  *See id.* at 1737.  Thus, the Supreme Court's reasoning in *Packingham* does not *ipso facto* invalidate the social media modification.  As Maravelias does not raise any other argument as to why the social media modification violates his rights under the Federal or State Constitutions, he has failed to meet his burden under the first preliminary injunction factor.

- 8 -

III. **Maravelias has not met his burden under any of the other preliminary injunction factors.**

16.     Because Maravelias has not demonstrated a likelihood of success on the merits, his motion necessarily fails.  *See Arborjet, Inc.*, 794 F.3d at 173 (bracketing and citations omitted) ("If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.").  Nevertheless, Maravelias has also failed to meet his burden on any of the other preliminary injunction factors.

17.     With respect to irreparable harm, Maravelias contends that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  ECF Doc. #23-1 ¶ 46 (quoting *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) and citing *Sammortano v. First Jud. Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002)).  Be that as it may, Maravelias has failed to demonstrate in his motion for preliminary injunction how the social media modification violates his First Amendment rights.  His only developed argument to that end—that the reasoning in *Packingham* necessarily invalidates the social media modification— fails for the above-stated reasons.  Maravelias does not have a First Amendment constitutional right to intimidate, harass, and abuse other individuals, including DePamphilis.  He has therefore failed to demonstrate that he will suffer irreparable harm.

18.     Maravelias's arguments as to the balance of equities and the public interest fail along these same lines.  Maravelias contends, in essence, that it is in the public interest to enjoin the enforcement of an unconstitutional law.  This argument once again necessarily assumes that the social media modification is unconstitutional.  Maravelias has failed to establish a likelihood (let alone a strong likelihood) that this is the case.  His repeated, conclusory assertions to the contrary do not alter this fact.

19.     Maravelias also suggests that there is no public interest served by enforcing the

social media modification.  This suggestion overlooks the larger context in which the social

media modification was issued.  In its order upholding the social media modification and the

extension of the underlying stalking order, the New Hampshire Supreme Court summarized the

evidence in the record as follows:

> [A]fter having been found to have stalked [DePamphilis], a minor who was still in high
> school, and after having been restrained from further stalking her or members of her
> family, the defendant: (1) accessed the minor's social media accounts, to which she had
> not granted him access, by using the login credentials of other persons; (2) learned that
> the minor was in a relationship with a man whom he know, and believed that the
> relationship was sexual in nature; (3) collected "troves" of digital images from the social
> media accounts that he believed were "reputationally damaging"; (4) "aided" in writing a
> letter to the minor's father that accused the father of allowing the minor to engage in a
> sexual relationship with an adult, accused the minor of being a "whore" and a "slut" and
> engaging in underage drinking, and attached photographs from the minor's "quasi-
> private" social media accounts; (5) wrote a letter to the minor's attorney accusing the
> minor, in highly profane terms, of having a sexual relationship with the adult, calling her
> a "slut" and "disreputable whore," and threatening to publish, online, "troves of
> reputationally damaging images" from her social media accounts; (6) wrote an e-mail to
> teachers at the minor's high school accusing her of being a criminal, engaging in
> underage drinking, and abusing drugs, offering to share evidence of her drug use,
> demanding that she be expelled from National Honor Society, and encouraging the
> teachers to share the e-mail with other teachers; (7) created a webpage, to which a
> "Google" search of the minor's name directs, on which he linked digital images of the
> letters and e-mail; (8) referred to the minor, in open court, as a "criminal," "fornicating
> daughter," and "lying pig," and insinuated that she was intoxicated; (9) threatened, in
> open court, to publish the "troves of reputationally damaging" images from the minor's
> social media accounts if the trial court extended the order; and (10) admitted, in open
> court, that he is "very . . . preoccupied with what [the minor] does."

ECF Doc. #26-1 at 7–8.  The New Hampshire Supreme Court concluded that "[u]nder these

circumstances, the trial court reasonably could have determined that, without a protective order,

[DePamphilis's] safety and well-being would be in jeopardy.  *Id.* at 8 (citation omitted).

20.     In light of these facts, enforcing the social media modification and the underlying

stalking order serves the public interest by protecting DePamphilis, a member of the public, from

stalking and harassment.  Moreover, the public at large has an interest in discouraging the type of

conduct described in the New Hampshire Supreme Court's order.  And given the behaviors in question, the balance of equities weighs against enjoining the enforcement of the social media modification while this case is pending.  This is especially true given Maravelias's assertion that he intends to violate the social media modification "by obtaining certain 'social media' artifacts and using them in public speech acts to prove the DePamphilis stalking order is nothing but a fraudulent legal harassment mechanism extended in 2018 by a biased, rogue judge."  ECF Doc. #22 ¶ 62.  Thus, Maravelias has not only failed to meet his burden under the public interest and balance of equities elements of the preliminary injunction analysis, but both elements strongly support leaving the social media modification in place.

21.     In sum, Maravelias has also failed to meet his burden under the second, third, and fourth preliminary injunction factors.  For these reasons, too, his motion for preliminary injunction must be denied.

## CONCLUSION

22.     Because the *Rooker-Feldman* doctrine deprives this court of jurisdiction over this action, the court is not empowered to grant the preliminary injunction Maravelias seeks.  But even if the court could grant such an injunction, Maravelias has failed to demonstrate that he is likely to succeed on the merits, that he will suffer irreparable harm absent a preliminary injunction, that the balance of equities tips in his favor, or that a preliminary injunction would serve the public interest.  For all of these reasons, and the reasons given above, the court should deny Maravelias's motion for preliminary injunction.

23.     No separate memorandum of law is required in support of this motion as all of the relevant legal authority relied upon is cited herein.  LR 7.1(a)(2).

WHEREFORE, Gordon J. MacDonald respectfully requests that this Honorable Court:

A.  Deny Maravelias's motion for preliminary injunction;

B.  Grant such further relief as this court deems just and proper.


Respectfully submitted,

GORDON J. MACDONALD,

By his attorneys


Date: May 28, 2019                   /s/_Samuel R. V. Garland_____
                                     Samuel R.V. Garland, Bar #266273
                                     Attorney
                                     Anthony J. Galdieri, Bar # 18594
                                     Senior Assistant Attorney General
                                     New Hampshire Dept. of Justice
                                     33 Capitol Street
                                     Concord, NH 03301
                                     (603) 271-3650
                                     anthony.galdieri@doj.nh.gov
                                     samuel.garland@doj.nh.gov


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed this day, postage prepaid, to Paul Maravelias, 34 Mockingbird Hill Rd., Windham, NH 03087.


Date:   May 28, 2019
                                     /s/ Samuel R. V. Garland_____
                                     Samuel R.V. Garland