## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| PAUL MARAVELIAS, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| JOHN J. COUGHLIN, in his individual and official capacities, GORDON J. MACDONALD, in his official capacity as Attorney General of New Hampshire, PATRICIA G. CONWAY, in her official capacity as Rockingham County Attorney, TOWN OF WINDHAM, *ex rel.* WINDHAM POLICE DEPARTMENT, and GERALD S. LEWIS, in his official capacity as Chief of Police. | ) ) ) ) ) ) ) ) ) ) ) |
| *Defendants.* | ) |

Civil No. 1:19-CV-143(SM)

JURY TRIAL DEMANDED

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO GORDON J. MACDONALD'S MOTION TO DISMISS AMENDED COMPLAINT

NOW COMES Paul Maravelias ("Plaintiff") and respectfully submits the within Memorandum

of Law in support of his Objection to Defendant MacDonald's 5/17/19 Motion to Dismiss. Plaintiff

shows the *Rooker-Feldman* doctrine does not bar any of his claims as follows in this memorandum.

Dated: June 3rd, 2019

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

By: /s/ Paul J. Maravelias
Paul J. Maravelias
34 Mockingbird Hill Road
Windham, NH 03087
paul@paulmarv.com
603-475-3305

**HEARING REQUESTED**

## TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................ 4

STANDARD OF REVIEW .............................................................................................. 10

PROCEDURAL HISTORY .............................................................................................. 11

    I.     The Initial 2018 "Extended Terms" Protective Order and Non-Conflicting State Appeal Thereof ............................................................................................. 11

    II.    New Hampshire State Courts' Repeated Refusal to Adjudicate Maravelias's Challenges to the "Extended Terms" and to RSA 633:3-a, III-c. .......................... 12

        A.  8/7/18: The First Time NH State Courts Declined to Render Any Judgment on the Constitutionality of the "Extended Terms" ............................................. 12

        B.  2/21/19: The Second Time NH State Courts Declined to Render Any Judgment on the Constitutionality of the "Extended Terms" .......................................... 12

    III.   The Distinct, Ongoing 2019 "Extended Terms" Protective Order and Newly Pending State Appeal Thereof .............................................................................. 13

SUMMARY OF ARGUMENT .................................................................................... 13

    I.     The Attorney General's Argument ...................................................................... 13

    II.    Plaintiff's Argument Herein ............................................................................... 14

ARGUMENT ................................................................................................................. 15

    I.     The State Court Proceedings Are Not Ended; Thus, Rooker-Feldman Cannot Apply ................................................................................................................... 16

        A.  This Case Fails The First Circuit's Three-Prong Test for Rooker-Feldman Finality of State Proceedings Developed in *Federación de Maestros de P.R.* 17

        B.  The Instant Case Entails Parallel State-Federal Litigation Which Rooker-Feldman Does Not Prohibit .............................................................................. 18

        C.  *Tyler* Is Easily Distinguishable ...................................................................... 19

    II.    Even If The State Proceedings Were "Ended", Plaintiff's Requested Relief On The "Extended Terms" Does Not Overturn Any Final State Court Judgment ............ 19

A. This Federal Action Was Initiated Before the 2/21/19 Mandate in the 2018 NHSC Appeal ................................................................................ 21

B. The Relief Requested Does Not Require the 2018 NHSC Appeal to be Ineffectual or Erroneous ................................................................. 21

C. The NHSC Declined to Address The Merits of Maravelias's 2018 Challenge to The "Extended Terms", Separately Disqualifying Rooker-Feldman ............. 23

D. The Lower State Court's Original 8/7/18 Imposition of The "Extended Terms" Was Not a Federal Jurisdiction-Depriving "Final State Court Judgment" ..... 24

E. Rooker-Feldman Cannot Apply As the "Extended Terms" Are Void *Ab Initio*. ................................................................................................ 26

    *i. The Rooker-Feldman Doctrine Has Never Negated Federal Jurisdiction Over Claims Challenging Extrajurisdictional State Judgments* ................................................................................ 27

    *ii. John J. Coughlin Granted The "Extended Terms" Without Any Statutory or Jurisdictional Authority to Exercise Discretion in the Matter* ................................................................................... 28

F. The "Extended Terms" Are Not Judicial ............................................ 30

    *i. The "Extended Terms" Are Not The Product of Any "Judicial Inquiry"* ................................................................................... 31

    *ii. The Legal Definition of a "Judgment" Isolates the "Extended Terms" from Rooker-Feldman's Reach* ................................................ 31

    *iii. The Extrajurisdictional Etiology of the "Extended Terms" Alone Deprives Them of Judicial Nature* ............................................ 32

III. Plaintiff's Amended Complaint Alleges Injury and Constitutional Violations Separate From Any State Court Judgment, Though It Need Not ........................ 33

IV. Even If It Did Preclude His Other Claims, The *Rooker-Feldman* Doctrine Cannot Bar Plaintiff's General Constitutional Challenge To RSA 633:3-A, III-C ........... 34

PRAYER FOR RELIEF ................................................................................ 36

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................................... 11

*Bass v. Butler*,
  116 F. App'x 376 (3d Cir. 2004) ..................................................................................... 20, 24

*Bel-Air Nursing & Rehab Ctr., Inc. v. Town of Goffstown, 2018 DNH 001*,
  2018 U.S. Dist. LEXIS 239 ................................................................................................. 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................................... 11

*Boyd v. Wells Fargo Bank, N.A., 2018 DNH 102*,
  2018 U.S. Dist. LEXIS 83067, 2018 WL 2272781 ............................................................... 24

*Brown v. United Airlines, Inc.*,
  720 F.3d 60 (1st Cir. 2013) .................................................................................................. 30

*Carroll v. United States*,
  661 F.3d 87 (1st Cir. 2011) .................................................................................................. 10

*Celaya v. Schriro*,
  691 F. Supp. 2d 1046 (D. Ariz. 2009) .................................................................................. 21

*Coggeshall v. Mass. Bd. of Registration of Psychologists*,
  604 F.3d 658 (1st Cir. 2010) ................................................................................................ 16

*Coles v. Granville*,
  448 F.3d 853 (6th Cir. 2006) ................................................................................................ 33

*Cruz v. Melecio*,
  204 F.3d 14, 21 n.5 (1st Cir. 2000) ...................................................................................... 24

*D.C. Court of Appeals v. Feldman*,
  460 U.S. 462, 103 S. Ct. 1303 (1983) ............................................................................ *passim*

*Donahue v. Connolly*,
  890 F. Supp. 2d 173 (D. Mass. 2012) ................................................................................... 32

*Dynamic Image Techs., Inc. v. United States*,
  221 F.3d 34 (1st Cir. 2000) .................................................................................................. 11

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ........................................................................................................ *passim*

*Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*,
410 F.3d 17 (1st Cir. 2005) ........................................................................... *passim*

*Fontana Empire Ctr., Ltd. Liab. Co. v. City of Fontana*,
307 F.3d 987 (9th Cir. 2002) ........................................................................ 34

*Foss v. Hall Cty. Child Support Office*
(In re Foss), 328 B.R. 780 (B.A.P. 8th Cir. 2005) ................................... 19

*Gener-Villar v. Adcom Grp., Inc.*,
530 F. Supp. 2d 392 (D.P.R. 2007) ............................................................. 24

*Gulla v. North Strabane Twp.*,
146 F.3d 168, 1998 U.S. App. LEXIS 11909 .................................... 23-24

*Guttman v. G.T.S. Khalsa*,
446 F.3d 1027 (10th Cir. 2006) ................................................................. 26

*Hill v. Town of Conway*,
193 F.3d 33 (1st Cir. 1999) ...................................................................... 22-23

*In re James*,
940 F.2d 46 (3d Cir. 1991) ........................................................................ 27

*Kashner Davidson Sec. Corp. v. Mscisz*,
601 F.3d 19 (1st Cir. 2010) ....................................................................... 21

*Kiowa Indian Tribe of Oklahoma v. Hoover*,
150 F.3d 1163 (10th Cir. 1998) ................................................................ 34

*Klimowicz v. Deutsche Bank Nat'l Tr. Co.*,
907 F.3d 61 (1st Cir. 2018) ....................................................................... 25

*Lubben v. Selective Serv. Sys. Local Bd. No. 27*,
453 F.2d 645, 649 (1st Cir. 1972) ............................................................. 27

*McClellan v. Carland*,
217 U.S. 268, 30 S. Ct. 501, 54 L. Ed. 762, 1910 U.S. LEXIS 1960 ..................................... 21

*Nicholson v. Shafe*,
558 F.3d 1266 (11th Cir. 2009) ................................................................ 26

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*,
499 U.S. 117, 129, 111 S. Ct. 1156, 113 L. Ed. 2d 95 (1991) ................ 30

*NLRB v. Goodless Bros. Elec. Co.*,
285 F.3d 102 (1st Cir. 2002) ..................................................................... 21

PAUL MARAVELIAS  –  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

*Prentis v. Atl. Coast Line Co.,*
   211 U.S. 210, 29 S. Ct. 67 (1908) ....................................................................... 31

*Rederford v. U.S. Airways, Inc.,*
   589 F.3d 30, 35 (1st Cir. 2009) ................................................................... 10, 13

*Reppert v. Marvin Lumber & Cedar Co.,*
   359 F.3d 53, 56 (1st Cir. 2004) ............................................................................ 24

*Rooker v. Fid. Tr. Co.,*
   263 U.S. 413, 44 S. Ct. 149 (1923) .............................................................. *passim*

*Sheehan v. Marr,*
   207 F.3d 35 (1st Cir. 2000) .......................................................................... 21, 22

*Simes v. Huckabee,*
   354 F.3d 823, 2004 U.S. App. LEXIS 2046 ......................................................... 23

*Soares v. Brockton Credit Union*
   (In re Soares), 107 F.3d 969 (1st Cir. 1997) ..................................................... 32

*Storyville Dist. New Orleans, LLC v. Canal St. Dev. Corp.,*
   785 F. Supp. 2d 579 (E.D. La. 2011) ................................................................ 26

*Target Media Partners v. Specialty Mktg. Corp.,*
   881 F.3d 1279 ..................................................................................................... 20

*Torromeo v. Town of Fremont,*
   438 F.3d 113 (1st Cir. 2006) .............................................................................. 15

*Tyler v. Supreme Judicial Court of Mass.,*
   914 F.3d 47 (1st Cir. 2019) ................................................................... 14, 19, 35

*United States v. Levin,*
   186 F. Supp. 3d 26 (D. Mass. 2016) ................................................................... 30

*United States v. Reyes,*
   49 F.3d 63 (2d Cir. 1995) ................................................................................... 21

*Velazquez v. S. Fla. Fed. Credit Union,*
   546 Fed. Appx. 854, 2013 U.S. App. LEXIS 22848, 2013 WL 5977166 ............... 17

*Whiteford v. Reed,*
   155 F.3d 671 (3d Cir. 1998) ............................................................................... 24

*Williams v. Individual Justices of the Supreme Judicial Court,*
   245 F. Supp. 2d 221, LEXIS(D. Me. 2003) ( ........................................................ 30

*Wilson v. HSBC Mortg. Servs., Inc.,*
   744 F.3d 1 (1st Cir. 2014) ............................................................................ 10-11

6

**Federal Statutes**

18 U.S.C. § 922 ................................................................................................................ 30

**State Cases**

*State v. Blackmer*,
    149 N.H. 47 (2003) .................................................................................................... 22

*Carleton v. Balagur*,
    162 N.H. 501 (2011) .................................................................................................. 21

*State v. Brobst*,
    151 N.H. 420, 857 A.2d 1253 (2004) ...................................................................... 35

*State v. Gauthier, No. 2014-0405*,
    2015 N.H. LEXIS 253 (Mar. 16, 2015) .................................................................. 35

*State v. Gubitosi*,
    153 N.H. 79 (2005) .................................................................................................... 21

**State Statutes**

RSA 173-B ........................................................................................................................ 29

RSA 173-B:5, I ......................................................................................................... 28, 30, 31

RSA 481:1 ........................................................................................................................ 28

RSA 502-A:14 .................................................................................................................. 28

RSA 633:3-a .......................................................................................................... 29, 34, 35

RSA 633:3-a, I. ...................................................................................................... 28, 33, 34

RSA 633:3-a, II. ............................................................................................................ 28, 34

RSA 633:3-a, III-a. ........................................................................................................... 28

RSA 633:3-a, III-c ........................................................... 12, 13, 14, 18, 20, 22, 28, 29, 34, 35

## **FACTUAL BACKGROUND**

1.      Paul Maravelias ("Plaintiff") filed this federal action during an ongoing state proceeding, a civil restraining order case, asking this Court to do what its New Hampshire state counterparts mulishly refuse: to hear and adjudicate alleged infringements on federal constitutional rights by Defendant's John J. Coughlin's arbitrary "extended terms", issued *ultra vires* absent any authorization in New Hampshire state law, which criminalize Maravelias to "possess" his own court exhibits for legal self-defense. Maravelias has not even been *accused* of any crime, yet he suffers rife deprivation of fundamental rights more greatly than do many convicted felons.

### **I.      Christina DePamphilis's Cruel Social Media Cyberbullying Against Maravelias and Illegitimate "Stalking Order" Legal Abuse**

2.      Maravelias is the first person in human history to be threatened with criminal prosecution if he should continue to "possess" or use public internet social media screenshots published by his opponent, under the guise of violating a civil "stalking" "protective order".

3.      The opponent, Christina DePamphilis, used her "social media" in 2017 to make vulgar, incitative harassment posts against Maravelias using her and new boyfriend's middle-fingers to attempt to elicit a disorderly reaction from Maravelias. *See graphically* **Exhibit C**, at 16 – 18 (A11 – A13).[1] *See also* ECF Doc #26, <u>Attachment 3</u> at 21 – 22. The context of DePamphilis's derisive harassment enlisting her new boyfriend was that, a few weeks prior, Maravelias had made a failed romantic invitation to DePamphilis. *Id.* DePamphilis committed this cruel, abusive conduct

---

[1] **Exhibit C** attached hereto contains approximately the first third of Maravelias's 230+ page Appendix to his 2018 NHSC Merits Brief. The Attorney General's 5/17/19 Motion to Dismiss curiously omits the Appendix in entirety, which contains numerous relevant materials in the portion included herewith. (The remainder of the document, if needed, is available at https://bit.ly/2wA6UTi) These materials are fully incorporated by reference into Plaintiff's <u>Amended Complaint</u> at ¶79 ("Maravelia[s] incorporates by reference his 'Brief of Appellant' in 2018-0483.")

over social media at a time when (1) she had a so-called "stalking" "protective order" against Maravelias and when (2) she laughably claimed to have "fear" of Maravelias – that is, while cyberbullying him. *Id.* Maravelias never spoke a word to DePamphilis after he was rejected; her incitative vulgar bullying weeks-later was inexplicable and causeless. *Id.* Unsurprisingly, Maravelias printed copies of DePamphilis's profane social media posts and used them as legal exhibits at a May-June 2018 Hearing before Defendant Coughlin on DePamphilis's remorseless motion to extend the same "protective" order she had wantonly abused while herself cyberstalking and bullying Maravelias. *Id.*

## II.    Christina DePamphilis's Overtly Criminal Conduct She Depicted on Public Social Media, Distinct From Her Cyberbullying, Admitted as Evidence by The Trial Court

4.    Christina DePamphilis also made public internet social media posts documenting her illegal underage drinking and narcotic activities, some of which Maravelias likewise entered as legal exhibits at the 2018 Hearing where legally relevant. *See* ECF Doc #22, <u>Attachment 2</u> at ¶49. *See e.g. graphically* **Exhibit C**, at 23 (A18). In July 2018, DePamphilis's attorney moved Defendant Coughlin to criminalize Maravelias's "possession" of these same public "social media" exhibits where Christina DePamphilis depicted her own harassment, bullying, and illicit controlled-substance usage. *See* <u>Amended Complaint</u>, ECF Doc #22, <u>Attachment 1</u>. These "extended terms" to the restraining order even prohibit Maravelias from possessing such public internet "social media communications" "through a third party". *Id.*

## III.    Defendant Coughlin Blesses Christina DePamphilis's Cyberbullying and Pictured Criminal Conduct on 8/7/18, Prostrating Himself to The Lawyer-Represented Party

5.    As one of his final pre-retirement acts, Defendant John J. Coughlin scribbled "granted" on DePamphilis's request without giving so much as a word of explanation. *See* ECF

Doc #22, <u>Attachment 5</u>; <u>Amended Complaint</u>, ¶31. He cited no legal authority for his act nor indicated he had even read a lick of Maravelias's thorough Objection. *Id.* at ¶32. Certain inexplicable procedural irregularities eliminated any doubt of Defendant Coughlin's bad-faith malice and patently unreasonable conduct against Maravelias. *Id.* at ¶36 – 42.

## IV.   <u>Defendants' Challenge to This Court's Subject Matter Jurisdiction</u>

6.      Defendant Gordon J. MacDonald has filed a 5/17/19 Motion to Dismiss (ECF Doc #26) for lack of subject matter jurisdiction pursuant to F.R.C.P 12(b)(1) under the Rooker-Feldman doctrine. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983). All co-defendants have joined in the Attorney General's Rule 12(b)(1) Motion. *See* ECF Docs #25, 27, 28. The Windham Defendants have separately moved to dismiss all claims as to them for lack of standing, to which Plaintiff is responding in a separate pleading. *See* ECF Doc #25.

## STANDARD OF REVIEW

7.      While ruling upon a Rule 12(b)(1) Motion to Dismiss, the Court may consider "whatever evidence has been submitted". *Carroll v. United States*, 661 F.3d 87, 94 (1st Cir. 2011) (quotation omitted). This includes documents incorporated by reference into the pleadings, matters of public record, and other "matters susceptible to judicial notice." *Bel-Air Nursing & Rehab Ctr., Inc. v. Town of Goffstown*, 2018 DNH 001, 2018 U.S. Dist. LEXIS 239 (quoting *Rederford v. U.S. Airways, Inc.,* 589 F.3d 30, 35 (1st Cir. 2009)). *See Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014); *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000). The Court determines whether the Complaint alleges "enough facts to state a claim that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## PROCEDURAL HISTORY

### I.   The Initial 2018 "Extended Terms" Protective Order and Non-Conflicting State Appeal Thereof

8.     The 2018 state civil protective order began on 2/6/18 and expired on 2/5/19. *See* **Exhibit C**, at 7 (A2). Only within this now-expired 2018 protective order had the initial "extended terms" taken force. Defendant Coughlin's original 8/7/18 Order granting the "extended terms" had the effect only of imposing said terms from the period 8/7/18 to 2/5/19 – not beyond. *Id.* at 7, 12.

9.     Defendant Coughlin's imposition of the "extended terms" was a separate act (8/7/18) postdating by nearly two months his prior granting the 2018 restraining order extension to begin with, pursuant to N.H. Rev. Stat. Ann. § ("RSA") 633:3-a, III-c., on 6/15/18. See **Exhibit C**, at 6 – 7 (A1 – A2). Maravelias appealed the renewed 2018 protective order ("2018 NHSC Appeal") and lost. *See* ECF Doc #26, Attachment 1 ("NHSC Final Order"). The NHSC rejected Maravelias' request to vacate the 2018 protective order. *Id.* However, the NHSC did not adjudicate his distinct challenge, amalgamated into the same appeal, to the 8/7/18 "extended terms". *Id.*

10.     After the 2018 protective order expired on 2/5/19, Maravelias filed the instant federal suit on 2/11/19, a time when DePamphilis had requested another protective order into 2019. *See infra*. As such, even if the past 2018 NHSC appeal actually had decided Maravelias's federal constitutional claims against the "extended terms", Rooker-Feldman would still not apply to the

federal claims herein. Said claims herein necessarily pertain only to the distinct 3/8/19 state judgment reapplying the "extended terms" to the ongoing 2019 case. *See infra*. But the aforesaid need not even be contemplated, since the 2018 NHSC appeal <u>did not adjudicate any of Maravelias's federal claims</u> regarding the unconstitutionality and extrajurisdictional nature of the "extended terms". *See* <u>Amended Complaint</u> ¶76 – 81; ECF Doc #26, <u>Attachment 1</u>.

## II.  <u>New Hampshire State Courts' Repeated Refusal to Adjudicate Maravelias's Challenges to the "Extended Terms" and to RSA 633:3-a, III-c.</u>

11.    As of the 2/11/19 filing of this suit, no New Hampshire court had ever adjudicated the legal questions Maravelias now asks this Court to decide. <u>Amended Complaint</u>, ¶81. This holds true to this very day, even though post-2/11/19 state judgments could not trigger Rooker-Feldman.

### A.    8/7/18: The First Time NH State Courts Declined to Render Any Judgment on the Constitutionality of the "Extended Terms".

12.    Defendant Coughlin's 8/7/18 Order does not contain any finding with respect to Maravelias's constitutional claims. *See* <u>Amended Complaint</u>, ¶32, 41; ECF Doc #22, <u>Attachment 5</u>. Instead of conducting any judicial inquiry, Defendant Coughlin wrote an exiguous, reflexive scribbling of the words "*granted as to Petitioner's request for relief A.;B1;B2:B3*" without resolving neither Maravelias's constitutional arguments nor DePamphilis's response thereto. *Id.*

### B.    2/21/19: The Second Time NH State Courts Declined to Render Any Judgment on the Constitutionality of the "Extended Terms"

13.    The 2/21/19 NHSC Mandate in the 2018 state appeal gave legal effect to the NHSC 1/16/19 Final Order. *See* **Exhibit B**. The NHSC Final Order did not consider Maravelias's challenge to the "extended terms". *See* ECF Doc #26, <u>Attachment 1</u>. Additionally, the NHSC

declined to adjudicate Maravelias's general facial challenge to the constitutionality RSA 633:3-a, III-c., claiming it was insufficiently "preserved". *Id.*

## III.    The Distinct, Ongoing 2019 "Extended Terms" Protective Order and Newly Pending State Appeal Thereof

14.    The instant federal suit was filed on 2/11/19. *See* ECF Doc #1. At said time, Derry District Court had a temporary protective order in effect pending its 2/12/19 Hearing on DePamphilis's <u>new</u> 2019 protective order request. <u>Amended Complaint</u>, ¶43. Almost one month <u>thereafter</u>, on 3/8/19, the Derry District Court granted a new extension of the underlying protective order to 2/4/2020. *See* **Exhibit A**, at 7 – 8. Said 3/8/19 lower state court Order granted DePamphilis's request to <u>reapply the past "extended terms" to this new 2019 restraining order</u>. *Id.* The "extended terms" maintain no other legal vessel by which to have effect besides the new, ongoing 2019 protective order, granted on 3/8/19 <u>after</u> this federal case was initiated on 2/11/19.

15.    Maravelias recently <u>initiated a new, pending state appeal to the NHSC on 5/31/19</u> of this new 2019 protective order and the reapplied 2019 "extended terms". *See* **Exhibit A**. At the 5/6/19 filing of his Amended Complaint, Maravelias was unable to claim to have initiated a new state appeal because the lower state court has taken until 5/21/19 to resolve post-trial motions, delaying the initiation of the now-pending 2019 state appeal until now.[2] *Id.* at 10.

## SUMMARY OF ARGUMENT

## I.    The Attorney General's Argument

---

[2] As it goes without saying, Maravelias's new 5/31/19 state appeal is a judicially noticeable matter of public record for purposes of a Rule 12(b)(1) Motion to Dismiss. *See Rederford*, *supra*, 589 F.3d at *39.

16.     The Attorney General submits four cognizable arguments why the Rooker-Feldman doctrine should prohibit this case. First, he argues both Plaintiff's claims to the unconstitutionality of the "extended terms" and Plaintiff's facial challenge to RSA 633:3-a, III-c. are improper "end run[s] around" a "final state court judgment", and that the requested relief necessarily requires this Court to review and overturn such judgments in violation of the doctrine. See ECF Doc #26, ¶17 – 18. Second, he argues the New Hampshire Supreme Court's failure to reach the merits of Maravelias's challenge to the "extended terms" in the 2018 appeal does not insulate Plaintiff's claims from the Rooker-Feldman doctrine. Id. at ¶20 – 21. Third, he argues that even without considering what the 2018 NHSC appeal did and did not determine, the lower state court's initial 8/7/18 Order imposing the "extended terms" alone activates Rooker-Feldman. Id. at ¶22. Fourth, he argues the underlying state proceedings are sufficiently "ended" to allow the doctrine to apply, because he feels the facts and circumstances here are similar enough to Tyler v. Supreme Judicial Court of Mass., 914 F.3d 47, 50 (1st Cir. 2019). Id. at ¶23.

## II.     Plaintiff's Argument Herein

17.     The Rooker-Feldman doctrine does not prohibit parallel state-federal litigation. The ongoing non-finality of the state proceedings alone defeats the Attorney General's arguments in toto; the Court need go no further. Mere days ago, on 5/31/19, Maravelias has filed a "Rule 7 Notice of Mandatory Appeal" in the New Hampshire Supreme Court challenging the 2019 extension of the protective order and the constitutionality of the "extended terms", removing any question as to the "ongoing", un-ended nature of the state proceedings. See **Exhibit A**.

18.     Further, the "extended terms" only continue to take effect because of a 3/8/19 lower state court order issued after this suit was initiated, disabling all Rooker-Feldman considerations.

19.    In the 2018 appeal, the NHSC made the narrow determination that they would not disturb the "extended terms" for <u>that protective order</u>, which expired on 2/5/19. Maravelias now faces a <u>new protective order</u> where the state court <u>reapplied</u> the "extended terms" on 3/8/19, <u>after</u> this federal suit was initiated on 2/10/19. Accordingly, no Rooker-Feldman issue is possible.

20.    Furthermore, even if the proceedings <u>were</u> "ended", there is no state court judgment Plaintiff's requested relief asks this Court to overturn. The 2018 NHSC Order never adjudicated Plaintiff's similar constitutional challenges to the 2018 "extended terms", nor did the lower state trial court. Moreover, even if the proceedings <u>were</u> "ended" <u>and</u> there was any state court judgment which Plaintiff's requested relief asks this Court to overturn, Rooker-Feldman could still not apply because it does not extend to non-judicial nor extrajurisdictional enactments falsely masquerading as "judgments" which were automatically void *ab initio*, as with the unique "extended terms".

21.    Finally, even if it did bar claims herein pertaining to the "extended terms", Rooker-Feldman does not disturb the viability of Plaintiff's general facial constitutional challenge.

## **ARGUMENT**

22.    The United States Supreme Court's current binding case law on the Rooker-Feldman doctrine is *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), confining application thereof to "cases brought by state-court losers complaining of injuries caused by state-court judgments <u>rendered before the district court proceedings commenced</u> and inviting district court review and rejection of those judgments". (Emphasis added) The First Circuit recognizes *Exxon* "substantially limited the reach of the Rooker-Feldman doctrine." *Torromeo v. Town of Fremont*, 438 F.3d 113 (1st Cir. 2006).

## I.    <u>The State Court Proceedings Are Not Ended; Thus, Rooker-Feldman Cannot Apply</u>

23.    "It is a condition precedent to the application of the Rooker-Feldman doctrine that, at the time the federal-court suit is commenced, the state-court proceedings have ended." *Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658 (1st Cir. 2010) at *643 – 644. "Here, the state-court proceedings had not yet ended, so the Rooker-Feldman doctrine was inapposite". *Id.* at *644.

24.    The U.S. Court of Appeals for the First Circuit formulated its operative Rooker-Feldman case law in *Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17 (1st Cir. 2005). It interpolated the *Exxon Mobil* limitations into a three-prong test to determine the finality of the state court proceedings and, as such, whether the doctrine can apply:

> "Exxon Mobil tells us when a state court judgment is sufficiently final for operation
> of the Rooker-Feldman doctrine: when 'the state proceedings [have] ended.' <u>125 S.
> Ct. at 1526</u>. If federal litigation is initiated before state proceedings have ended,
> then – even if the federal plaintiff expects to lose in state court and hopes to win in
> federal court – the litigation is parallel, and the Rooker-Feldman doctrine does not
> deprive the court of jurisdiction. See <u>id. at 1526-28</u>. On the other hand, if federal
> litigation is initiated after state proceedings have ended, and the plaintiff implicitly
> or explicitly 'seeks review and rejection of [the state] judgment,' <u>id. at 1526</u>, then
> a federal suit seeking an opposite result is an impermissible attempt to appeal the
> state judgment to the lower federal courts, and, under Rooker-Feldman, the federal
> courts lack jurisdiction."

*Federación de Maestros de P.R.,* 410 F.3d at *24.

25.    The case at bar overwhelmingly fails to satisfy such metrics determining the state court proceedings' finality and, as such, the Rooker-Feldman doctrine cannot apply.

A.     **This Case Fails The First Circuit's Three-Prong Test for Rooker-Feldman Finality of State Proceedings Developed in *Federación de Maestros de P.R.***

26.     "First, when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have 'ended.'" *Federación de Maestros de P.R.,* 410 F.3d at *18. Here, Maravelias has just days-ago initiated a state appeal to the New Hampshire Supreme Court on 5/31/19 to challenge the "extended terms" recently re-imposed on 3/8/19 into the new, ongoing 2019 protective order, almost one month after this suit was initiated. *See* **Exhibit A** (NHSC Notice of Appeal) at 3, ¶13 ("Did the trial court violate Maravelias's state or federal constitutional rights by re-imposing the summer 2018 'extended terms'?"). Accordingly, <u>everything</u> is "left to be resolved" by the state appellate court at this time. The state proceedings are unquestionably ongoing and not "ended".[3]

27.     "Second, if the state action has reached a point where neither party seeks further action, then the state proceedings have also 'ended.'" *Federación de Maestros de P.R.,* 410 F.3d at *19. It hardly bears repeating that, here, Maravelias (a "party" in the state proceeding) has initiated a currently-pending state appeal where he "seeks further action" and solicits the NHSC to review the "extended terms", *inter alia*. Nor are the state proceedings "ended" under this prong.

28.     "Third, if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue." *Federación de Maestros de P.R.,* 410 F.3d at *20. Likewise, the

---

[3] *Accord Velazquez v. S. Fla. Fed. Credit Union*, 546 Fed. Appx. 854, 2013 U.S. App. LEXIS 22848, 2013 WL 5977166. "[L]ogic dictates that if a state court issues a judgment and the losing party … does not allow the time for appeal to expire (but instead, files an appeal), then the state proceedings have not ended." *Id.*

pending state appeal aims to resolve federal constitutional questions both on the "extended terms" and on the facial overbreadth and/or vagueness of RSA 633:3-a, III-c. *See* **Exhibit A**, at ¶1 ("Is RSA 633:3-a, III-c. unconstitutionally overbroad or void for vagueness on its face or as-applied to this case?"), ¶2-3, ¶13 (*see supra*), ¶14.

B.     **The Instant Case Entails Parallel State-Federal Litigation Which Rooker-Feldman Does Not Prohibit**

29.     Given the newly pending state appeal in the ongoing state proceedings, to claim said proceedings are "ended" (a prerequisite to Rooker-Feldman application) does not pass the straight-face test. The instant case bears no similarity to other cases prohibited by Rooker-Feldman where the state proceedings were ended, nor to cases where, though not ended, there was no indication state courts would again reach the federal questions.[4]

30.     "When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Exxon Mobil Corp.*, 544 U.S. 280 at \*1526 – 1527 (quoting *McClellan v. Carland*, 217 U.S. 268, 30 S. Ct. 501, 54 L. Ed. 762, 1910 U.S. LEXIS 1960). "[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.*

---

[4] Even absent the new pending state appeal initiated by Maravelias on 5/31/19, the state proceedings would still not be "ended". The parties therein have separately declared their intention to seek further action. *E.g.*, DePamphilis signed a sworn affidavit on 3/18/19, attached to her post-trial 3/18/19 "Verified Motion to Reconsider" in Derry District Court, asseverating her ruthless blind-intention to obtain further renewals. Paragraph 20 of said pleading states: "[I]t will be expensive and disruptive for Christina to return to this Court in February 2020 – during the second semester- to again seek renewal of the Order."

31.     Here, it is impossible for Plaintiff to complain of "injuries caused by state-court judgments rendered before the district court proceedings commenced" because the lower state court's 8/7/18 Order only imposed the "extended terms" for the duration of the past 2018 protective order expired almost four months ago on 2/5/19. The only possible state court judgment currently injuring Maravelias by applying the "extended terms" is dated 3/8/19, after this case commenced. "The Rooker-Feldman doctrine is a jurisdictional rule that applies to final judgments or orders, not to pending litigation in state courts." *Foss v. Hall Cty. Child Support Office (In re Foss)*, 328 B.R. 780 (B.A.P. 8th Cir. 2005)

### C.     *Tyler* **Is Easily Distinguishable**

32.     A misplaced comparison to *Tyler, supra,* constitutes the Attorney General's sole apparent argument against the non-finality of the underlying state proceedings. He argues the circumstances of *Tyler*, where Rooker-Feldman was properly applied, are dispositive in this case.

33.     The Attorney General is incorrect. The First Circuit indicated the state proceedings in *Tyler* satisfied the third prong of the finality test in *Federación de Maestros de P.R.,* 410 F.3d at *20. "[Tyler] offers no suggestion that the family court will ever reconsider the federal claims she presses here." *Tyler*, 914 F.3d 47 at *52. Here, Maravelias alleges the NHSC will adjudicate the federal claims in his pending state appeal, as his 5/31/19 Notice of Appeal (**Exhibit A**) makes incontrovertible. In fact, the NHSC will not even be "reconsidering" these claims, but rather adjudicating them for the first time ever. Consequently, *Tyler* is not remotely comparable.

## II.     **Even If The State Proceedings Were "Ended", Plaintiff's Requested Relief On The "Extended Terms" Does Not Overturn Any Final State Court Judgment**

34.     The Supreme Court commands that Rooker-Feldman cannot apply unless an action "invit[es] district court review and rejection of [preexisting final state] judgments". *Exxon*, *supra*.

35.     There does not exist, nor has the Attorney General pointed to, any "state court judgment" on the constitutionality of the "extended terms" prior to the filing of this federal suit. "For Rooker-Feldman purposes, courts must look to the situation as it existed when the federal suit was commenced." *Coggeshall*, 604 F.3d at *664 n.6. "In applying Rooker-Feldman, the important determination is not necessarily what was argued before the state court, but what was decided by the state court. Thus, the first step in a Rooker-Feldman analysis is to determine exactly what the state court held." *Bass v. Butler*, 116 F. App'x 376 (3d Cir. 2004). The Attorney General turns this inquiry upon its head by emphasizing what Maravelias "argued" in the 2018 NHSC appeal (constitutional challenges to the "extended terms") as opposed to the NHSC's "holding" that said arguments were allegedly "not sufficiently developed to warrant" any decision on their merits. *See* ECF Doc #26, Attachment 1 at 11.

36.     Furthermore, even if there was a 2018 "state-court judgment" conflicting with the relief sought here, this suit was initiated before the new, current, and ongoing 2019 protective order re-applied the "extended terms" on 3/8/19. This separate legal continuity, by New Hampshire state law (RSA 633:3-a, III-c.), guarantees Maravelias's right to fresh appellate review of the new protective order in its entirety – distinct from any past protective orders – and clears the *Rooker-Feldman* slate regardless of whether the prior 2018 NHSC appeal adjudicated Maravelias's instant federal claims, which it did not. "A challenge can be contextually similar to an issue adjudicated in state court without activating Rooker-Feldman." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 27 Fla. L. Weekly Fed. C 584, WL 706524 (11th Cir. 2018).

**A.** **This Federal Action Was Initiated Before the 2/21/19 Mandate in the 2018 NHSC Appeal**

37.    The parties have been informally referring to the "1/16/19" NHSC Final Order in Maravelias's past appeal of the 2018 protective order. While the unofficial, preliminary NHSC Final Order was dated "1/16/19", it did not take legal effect until the NHSC's 2/21/19 official Mandate. *See* **Exhibit B** (NHSC Case Summary).

38.    "[T]he date of the mandate, not the date of the issuance of the decision, is the effective date of an appellate court's decision, that the mandate is the order and that the court's opinion merely gives the reason supporting the order." *Carleton v. Balagur*, 162 N.H. 501 (2011) (quoting *State v. Gubitosi*, 153 N.H. 79 (2005) at *81 – 82). The New Hampshire Supreme Court is not alone in following this common rule. *See e.g.*, *Celaya v. Schriro*, 691 F. Supp. 2d 1046 (D. Ariz. 2009); *United States v. Reyes*, 49 F.3d 63 (2d Cir. 1995). "An appellate court's mandate controls all issues that were actually considered and decided by the appellate court". *Kashner Davidson Sec. Corp. v. Mscisz*, 601 F.3d 19, 23 (1st Cir. 2010); *NLRB v. Goodless Bros. Elec. Co.*, 285 F.3d 102, 107 (1st Cir. 2002).

39.    The instant federal suit was initiated eleven (11) days prior to the NHSC's mandate in the 2018 state appeal. Ergo, even if the NHSC <u>had adjudicated</u> and rejected Maravelias's constitutional challenges to the "extended terms", Rooker-Feldman would still not bar this suit.

**B.** **The Relief Requested Does Not Require the 2018 NHSC Appeal to be Ineffectual or Erroneous**

40.    Prior to *Exxon*, a more expansive *Rooker-Feldman* standard was controlling. It "foreclose[d] lower federal court jurisdiction over claims that are 'inextricably intertwined' with the claims adjudicated in a state court." *Sheehan v. Marr*, 207 F.3d 35 (1st Cir. 2000). "A federal

claim is inextricably intertwined with the state-court claims 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Id.* (quoting *Hill v. Town of Conway*, 193 F.3d 33 (1st Cir. 1999)).

41.     Even this antiquated, broader standard would fail to implicate Rooker-Feldman herein. As the Attorney General admits (ECF Doc #26 at ¶10),  the NHSC's Final Order in the 2018 state appeal affirmed the extension of the protective order while offering nothing more than the following threadbare sentence in response to Maravelias's "extended terms" challenge:

> "Each of the defendant's remaining arguments is not sufficiently developed to warrant further review. See Blackmer, 149 N.H. at 49."

42.     Whether or not Maravelias "sufficiently developed" an argument in a past state court appeal brief is a question unrelated to the legal merits themselves of said argument(s). Consequently, declaratory judgment on the constitutionality of the "extended terms" issued by this Court cannot possibly contradict the NHSC's sole finding in the matter that an appeal brief written by Maravelias did not "sufficiently develop" similar arguments in a 2018 appeal case.

43.     The Attorney General not only admits the NHSC "did not discuss Maravelias's specific challenge to the social media modification" but also confesses the NHSC "concluded that Maravelias's facial challenges to RSA 633:3-a, III-c were not adequately preserved" and, thus, never adjudicated them.[5] *Id.*

---

[5] The Attorney General irrelevantly notes the NHSC considered and rejected the merits of Maravelias's as-applied challenge to the protected-speech-motivated grounds for the 2018 renewal of the protective order. The said legal contention has nothing to do with the issues and claims in this 2019 federal case. This case targets the unlawful "extended terms"; it in no way aims to vacate the protective order itself.

44.      Accordingly, Plaintiff's claims here are not "inextricably intertwined". They do not require the Court to find "that the state court wrongly decided the issues before it". *Hill*, *supra*. The NHSC's resolution of Maravelias's 2018 appeal comports in entirety with the relief sought here. No matter how desperately the Attorney General's duplicitous linguistic machinations on this point attempt to negate reality, the NHSC's 1/16/19 Final Order declined to render any judgment on any federal claims relatable to the ones brought herein before this Court.

### C.      The NHSC Declined to Address The Merits of Maravelias's 2018 Challenge to The "Extended Terms", Separately Disqualifying Rooker-Feldman

45.      Federal courts have previously handled the present situation where the state's highest court affirmed a judgment below without reaching the merits of every aspect raised for appeal therein. Invariably, Rooker-Feldman has been held not to bar such federal claims left un-adjudicated in state appellate courts from subsequent federal litigation.

46.      "[I]f [litigants] do raise federal claims in their state court defense, and the state court declines to address them, then according to the district court in this case they are also barred from bringing those claims in federal court. No principle of federalism suggests or requires such a result." *Simes v. Huckabee*, 354 F.3d 823, 2004 U.S. App. LEXIS 2046. "[T]o woodenly apply the doctrine where the state court passed on the constitutional issues is to divorce the doctrine from its rationale." *Id.* (Emphasis added) "[T]he Rooker-Feldman doctrine does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits". *Id.* (Emphasis added)

47.      Such has been the ambit of Rooker-Feldman even since before *Exxon Mobil* further narrowed it. *See e.g., Gulla v. North Strabane Twp.*, 146 F.3d 168, 1998 U.S. App. LEXIS 11909

(vacating improper application of *Rooker-Feldman* because the state court "did not adjudicate the merits of [plaintiff's] constitutional claims"). "[T]his court has consistently held that where a state action does not reach the merits of a plaintiff's claims, then Rooker-Feldman does not deprive the federal court of jurisdiction." *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998). "Therefore, the facial constitutionality of Section 415 was not actually decided by the [state] Commonwealth Court, and the issue is not barred by Rooker-Feldman on that basis." *Bass v. Butler*, 116 F. App'x 376, 383 (3d Cir. 2004).

48.     To contradict this persuasive panoply of case law would disparage the Rooker-Feldman doctrine's jurisprudential underpinning. "First Circuit precedent on this matter states that only court adjudications with <u>preclusive effect</u> can bring the Rooker-Feldman doctrine into play." *Gener-Villar v. Adcom Grp., Inc.*, 530 F. Supp. 2d 392 (D.P.R. 2007) (punctuation omitted) (quoting *Cruz v. Melecio*, 204 F.3d 14, 21 n.5 (1st Cir. 2000)). In the preclusion law context of *res judicata*, it is beyond peradventure that "a final judgment <u>on the merits</u>" is prerequisite for a claim to have any preclusive effect. *Boyd v. Wells Fargo Bank, N.A.*, 2018 DNH 102, 2018 U.S. Dist. LEXIS 83067, 2018 WL 2272781 (emphasis added) (quoting *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004)). Ergo, the NHSC's failure to adjudicate Plaintiff's "extended terms" challenge on its merits inescapably voids any federal jurisdictional bar to such claims.

**D.     The Lower State Court's Original 8/7/18 Imposition of The "Extended Terms" Was Not a Federal Jurisdiction-Depriving "Final State Court Judgment"**

49.     Even if the underlying state proceedings were now "ended", only the 1/16/19 NHSC Final Order – not the lower state court's <u>appealed</u> 8/7/18 Order – could constitute a "final state court judgment" active for purposes of Rooker-Feldman analysis. The Attorney General attempts to discredit this unfavorable reality. He appears to suggest that, even discounting the 2018

state appeal and the NHSC's declination to adjudicate Maravelias's federal claims brought therein, the initial 8/7/18 trial court order (granting the "extended terms") would itself count as a preclusive "final state court judgment" regardless. *See* ECF Doc #26 at ¶22; ECF Doc # 30 at ¶8.

50.     This argument, post-*Exxon,* is meritless. Even assuming Defendant Coughlin's 8/7/18 Order granting the "extended terms" was, in fact, a non-void judicial "judgment", which is not granted (*see infra*), the Attorney General still misses the point: the 8/7/18 Order could only be a "final state court judgment" for Rooker-Feldman purposes had Maravelias <u>not</u> appealed it. Since Maravelias did, the NHSC Final Order became the sole eligible "final state court judgment".

51.     The Attorney General cites *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 66 (1st Cir. 2018) to support his position. However, *Klimowicz* merely recited the non-responsive fact "the plaintiff could have pursued an appeal of the Housing Court's judgment" but "forfeited that opportunity". Only with forfeiture of state appeal did the lower state court's judgment become "final", *viz.*, operative for Rooker-Feldman purposes. *Accord Federación de Maestros de P.R.*, 410 F.3d at *24 (stating "if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended") *with Klimowicz*, 907 F.3d 61.

52.     Here, Maravelias <u>did appeal</u> the state trial court's 8/7/18 Order. It was the NHSC – not Maravelias – which "forfeited th[e] opportunity" to have his constitutional claims against the "extended terms" adjudicated. This does not upheave the Rooker-Feldman inertness of the <u>appealed</u> lower state court order. "After Exxon Mobil, … the relevant inquiry is not whether the Rooker-Feldman doctrine applies to state trial court judgments but whether the entry of judgment in a state trial court marks the end of state proceedings for purposes of Rooker-Feldman."

*Nicholson v. Shafe*, 558 F.3d 1266 (11th Cir. 2009). "[T]he Rooker-Feldman doctrine does not apply where a state court loser has appealed to the state appellate court". *Id.*

53.     "Under Exxon Mobil, it is clear that the district court does have subject matter jurisdiction to hear the case because, although Guttman filed his [federal] claim <u>after it was resolved by a New Mexico court</u>, it was filed before the end of the state courts' appeal process." *Guttman v. G.T.S. Khalsa*, 446 F.3d 1027 (10th Cir. 2006) (emphasis added) (reversing improper application of Rooker-Feldman to appealed lower state court judgment).

54.     Insofar as a circuit split exists on this topic, the First Circuit properly obeys the Supreme Court's precedent in *Exxon*. "Two camps have emerged post-Exxon Mobil. One camp is comprised of courts that have found Rooker-Feldman inapplicable unless all state proceedings, including appeals, have been resolved before the federal suit begins." *Storyville Dist. New Orleans, LLC v. Canal St. Dev. Corp.*, 785 F. Supp. 2d 579 (E.D. La. 2011). "'At the time that the [plaintiffs] commenced this federal action, the state court adjudication was not complete' because state appellate proceedings were pending after the filing of the federal action". *Id.* (quoting *Federación de Maestros de P.R.*, 410 F.3d at 27 an n.13). "[T]he first camp — in requiring that the state proceedings have ended, which includes the requirement that the appellate process has been exhausted (if undertaken) — is the most supportable." *Storyville Dist.*, at *589.

55.     Accordingly, even if the state proceedings were somehow "ended", there was not a pending 2019 state appeal, and no further action was taken after the 2018 protective order, only the non-conflicting 2018 NHSC Final Order would be controlling in Rooker-Feldman analysis.

   **E.     Rooker-Feldman Cannot Apply As the "Extended Terms" Are Void *Ab Initio***

56.     Rooker-Feldman does not apply where the underlying state judgment is void *ab initio*. *In re James*, 940 F.2d 46 (3d Cir. 1991). Although this suit does not even ask the Court to do so (*see supra*), federal district courts indeed "have the power to vacate … state court judgments that are considered void ab initio." *Id.* at *52. "Sound jurisprudential reasons underlie this concept. Because a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests". *Id.*

57.     The distinction between an <u>erroneous</u> judgment and an extrajurisdictional <u>void</u> judgment is paramount. While even blatantly erroneous state judgments are preclusive under Rooker-Feldman, a void judgment "is one which, from its inception, was a complete nullity and without legal effect" and does not trigger the Rooker-Feldman bar. *Ibid.* (quoting *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972)).

        i.     <u>The Rooker-Feldman Doctrine Has Never Negated Federal Jurisdiction Over Claims Challenging Extrajurisdictional State Judgments</u>

58.     As the Third Circuit explained in *James,* it exceeds the doctrine's rationale to handicap federal courts' ability to correct state court actions which are without jurisdiction and, as such, void *ab initio*. The history of the doctrine implies the same. In *Rooker* itself, the plaintiffs argued the state court did not have jurisdiction to issue the underlying judgment. The Supreme Court did not reject plaintiffs' legal argument that such a circumstance would not deprive federal courts of jurisdiction; the Court merely disagreed with plaintiffs' factual characterization of the underlying state judgment. "[P]arts of the bill speak of the judgment as given without jurisdiction and absolutely void: but this is merely mistaken characterization." *Rooker*, 263 U.S. at *416. The Supreme Court has subsequently reminded that, in *Rooker*, it "noted preliminarily that the state

court had acted within its jurisdiction". *Exxon Mobil*, 544 U.S. at *284. Where the state judgment

is credibly shown to be without jurisdiction, applying Rooker-Feldman is legal error.

> ii.     John J. Coughlin Granted The "Extended Terms" Without Any Statutory or
> Jurisdictional Authority to Exercise Discretion in the Matter

59.     Here, Defendant Coughlin enacted his "extended terms" in defiance of New

Hampshire statutory authority and in complete absence of jurisdiction. *See* Amended Complaint,

¶35, ¶124 – 129. This can be proven quite easily from the bare legal record alone.

60.     Prohibiting "possession" of anything (other than "firearms") is <u>not</u> one of the

specific, limited forms relief the New Hampshire legislature has enabled trial courts to grant as

part of civil protective orders. *See* RSA 173-B:5, I.; RSA 633:3-a, III-a. ("The <u>types of relief that</u>

<u>may be granted</u> … shall be the same as those set forth in RSA 173-B"); Amended Complaint,

¶126. Nor is "possession" listed anywhere in the exclusive "single acts" enumerated in RSA 633:3-

a, II.(a) for which the state may criminally enforce violations of such civil protective orders under

RSA 633:3-a, I.(c). Nor did Defendant Coughlin have any general equitable powers as the NH

Circuit Court is a court of limited jurisdiction. *Compare* RSA 481:1 (equitable powers reserved to

Superior Court) *with* RSA 502-A:14 (establishing Circuit Court's limited jurisdiction).

61.     Plaintiff anticipates that Defendants will argue that RSA 633:3-a, III-c. bestows

upon circuit court judges limitless jurisdiction to impose unfettered "extended terms" to such civil

protective orders, because it reads, "… [t]he court shall review the order … and shall grant such

relief as may be necessary to provide for the safety and well-being of the plaintiff." Were such an

argument to be valid, whether the "extended terms" violate the U.S Constitution would only

determine whether they were legal error – but they would not be void *ab initio* (*i.e.*, without jurisdiction).

62.     The argument is meritless for two independent reasons. <u>First</u>, RSA 633:3-a, III-c.[6] controls temporal extensions/renewals of existing stalking protective orders <u>only</u>. Assuming the unqualified "shall grant such relief as may be necessary" language does grant jurisdiction to impose unlimited "relief", such a supercharging of the trial court's jurisdiction is circumscribed <u>solely</u> around the proceeding associated with a motion to extend an RSA 633:3-a civil stalking order – a circumstance the legislature has duly accompanied with certain extra due process protections (*e.g.*, a mandatory hearing) not available within general motions for relief during the pendency of a protective over. But here, Defendant Coughlin's 8/7/18 Order imposing the "extended terms" was <u>not</u> in connection with the prior 2018 extension request in said case, which was granted on 6/15/18 after a three-day Hearing. Rather, the "extended terms" were granted in response to a distinct 7/2/18 motion by DePamphilis <u>months after</u> she petitioned for a renewal of the protective order pursuant to RSA 633:3-a, III-c.

63.     <u>Second</u>, basic statutory interpretation necessitates that the "shall grant such relief as may be necessary" language <u>does not</u> grant jurisdiction, at any time, to enjoin unfettered terms against civil respondents. This language is subordinate to the controlling provision above at section III-a. that "[t]he <u>types of relief that may be granted</u> … <u>shall</u> be the same as those set forth in RSA 173-B". The legislature developed a rigorously specific listing of permissible forms of relief at

---

[6] "Any order under this section shall be for a fixed period of time not to exceed one year, but may be extended by order of the court upon a motion by the plaintiff, showing good cause, with notice to the defendant, for one year after the expiration of the first order and thereafter each extension may be for up to 5 years, upon the request of the plaintiff and at the discretion of the court. The court shall review the order, and each renewal thereof and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff. …" *Id.*

RSA 173-B:5, I. for the exact purpose of preventing such anomalous atrocities as Defendant Coughlin's 8/7/18 Order.

64.     Even if said listing at RSA 173-B:5, I. were not exclusive, the statutory construction canon of *eiusdem generis* mandates that it cannot include the prohibition of "possession of [social media] communications". "This doctrine teaches that 'when a general term follows [] specific one[s], the general term should be understood as a reference to subjects akin to the one[s] with specific enumeration.'" *Brown v. United Airlines, Inc.*, 720 F.3d 60 (1st Cir. 2013) (quoting *Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 129, 111 S. Ct. 1156, 113 L. Ed. 2d 95 (1991)). The only valid prohibition against "possession" is of "firearms" – a deadly weapon.[7] As it goes it without saying, an inanimate digital screenshot of a vexatious litigant middle-fingering her legal abuse victim on the internet is not an object "akin" to a "firearm".

65.     Where a judge acts without jurisdiction, his order is void *ab initio*. *See e.g. United States v. Levin*, 186 F. Supp. 3d 26 (D. Mass. 2016). Accordingly, where Defendant Coughlin issued his 8/7/18 Order imposing the "extended terms" in total absence of jurisdiction, it has been null-and-void *ab initio*. Rooker-Feldman cannot bar the claims herein in such an event, regardless of any other traditional factors.

**F.     The "Extended Terms" Are Not Judicial**

66.     "Significantly, the Rooker-Feldman doctrine bars review only of those state court decisions that are judicial in nature." *Williams v. Individual Justices of the Supreme Judicial Court*, 245 F. Supp. 2d 221, LEXIS 2123 (D. Me. 2003) (quoting *Feldman*, 460 U.S. at 476.) "[I]t is a

---

[7] Even the statute's standalone "possession" prohibition against *firearms* is inapplicable to the underlying protective order here and only exists to comport with a specific federal statute, 18 U.S.C. § 922(g)(8), requiring it in some types of different intimate-partner restraining orders.

question of federal law whether 'a particular proceeding before another tribunal was truly judicial' for purposes of ascertaining the jurisdiction of a federal court." *Feldman*, 460 U.S. at *476 n.13.

i.   The "Extended Terms" Are Not The Product of Any "Judicial Inquiry"

67.   "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. ... Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Feldman*, 460 U.S. 462 at *477 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 29 S. Ct. 67 (1908)).

68.   As previously explained, there are no "laws" in existence granting a New Hampshire civil restraining order petitioner the right to have arbitrary self-serving commandments appended to his or her order of protection at a mere whim to repress their opponent's legal self-defense. New Hampshire state law, RSA 173-B:5, I., specifies the narrow "types of relief" which may be granted. DePamphilis's 7/2/18 motion to Defendant Coughlin did not cite one single enumerated form of relief in RSA 173-B:5, I. authorizing the request. *See* ECF Doc #22, Attachment 1. Defendant Coughlin's 8/7/18 Order cited no statutory, constitutional, precedential, nor common-law authority for his act. He did not "investigate" nor "declare" the rights and "liabilities" of the parties under extant "laws". The way the "extended terms" came into effect was not "judicial" nor resembled any "judicial inquiry". Rather, Defendant Coughlin's palpably non-judicial act was squarely legislative as he "[made] a new rule to be applied thereafter" which had never formerly existed.

ii.   The Legal Definition of a "Judgment" Isolates the "Extended Terms" from Rooker-Feldman's Reach

69.     *Exxon* reminds that only "state-court judgments" trigger the Rooker-Feldman doctrine. A "judgment" is "[t]he official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination." *Donahue v. Connolly*, 890 F. Supp. 2d 173 (D. Mass. 2012) (quoting <u>Black's Law Dictionary</u> (4th ed. 1951) at *977). Consequently, Defendant Coughlin's shameful failure to conduct any "judicial inquiry" in relation to the "extended terms" separately disqualifies his 8/7/18 Order from constituting a "judgment" for Rooker-Feldman purposes. As DePamphilis did not occasion her request for the "extended terms" with any explicit claim to a defined legal "right", and as there indeed was no such "right" in existence, the resulting Order is not a legal "judgment".

70.     Likewise, when Maravelias claimed constitutional rights in response to DePamphilis's request (ECF Doc #22, <u>Attachment 2</u>), Defendant Coughlin proffered no "decision" thereupon. He simply ignored Maravelias's pleadings and constitutional arguments to scribble "granted". Even the slightest bit of effort (*e.g.*, quipping "the Court finds the modified terms are narrowly tailored and do not unreasonably chill Maravelias's protected activities") – no matter how legally erroneous – would have at least reined Defendant Coughlin's 8/7/18 Order into the realm of a "judgment", though erroneous. Defendant Coughlin made no such effort.

        iii.    <u>The Extrajurisdictional Etiology of the "Extended Terms" Alone Deprives Them of Judicial Nature</u>

71.     "[T]he essence of a judicial act is the exercise of discretion or judgment." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir. 1997) (quoting Black's Law Dictionary 996 (6th ed. 1990) at *846). As there was no jurisdiction nor statutory authority available for Defendant Coughlin in which to grant the "extended terms" (*see supra*), there could be no "exercise of discretion" in weighing the sufficiency of the movant's legal claims against any

written rules, statutes, or laws by which said claims could have claimed relief. The "extended terms" could not be further from a legitimate "judicial inquiry" which *Feldman* held as prerequisite to applying the doctrine.

## III.  Plaintiff's Amended Complaint Alleges Injury and Constitutional Violations Separate From Any State Court Judgment, Though It Need Not

72.      As explained extensively hereinabove, Plaintiff could attack conflicting state court judgments from the 2018 protective order <u>without</u> implicating Rooker-Feldman since the instant federal suit here is <u>parallel</u>, not enacted after any "finality" of the ongoing state proceedings. However, as separate grounds, this action would elude Rooker-Feldman's reach regardless. Plaintiff credibly alleges state enforcement officials are threatening to enact enforcements of the "extended terms" which are, separately, 1) brought in bad-faith without any statutory authority in state law, lacking standing under RSA 633:3-a, I.(c), having no possibility of obtaining a valid conviction, and 2) injurious to Maravelias's federal constitutional rights. *See* <u>Amended Complaint</u>, ¶43 – 51, ¶63 – 73, ¶93 – 147.

73.      The injunctive relief sought, to enjoin the Defendant state officials from enacting their threatened unlawful criminal enforcements, does not require this Court to review the "extended terms" themselves.[8] *See Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006) ("On appeal, the court first found that the Rooker-Feldman doctrine did not apply to the situation before the court, because the landowners were not complaining about the state court judgment *per se*, but rather the agency's interpretation thereof.") Likewise, Plaintiff's Amended Complaint complains

---

[8] *E.g.*, said terms could, in theory, be validly enforced through a civil motion for indirect contempt filed in the lower state court by DePamphilis, the civil plaintiff, a process which would afford Maravelias a hearing and sufficient due process protections before any deprivation of liberty, as opposed to a criminal arrest initiated by the state.

the Windham Defendants have threatened (*viz.*, at ECF Doc #8, ¶83, 92, 97, 109, 118) to institute criminal proceedings under RSA 633:3-a, I.(c) to enforce the "extended terms": bad-faith proceedings automatically invalidated as a matter of law because "possession" is not a "single act" enumerated in RSA 633:3-a, II.(a). "Thus, under the teachings of Pennzoil, Kiowa Indian Tribe, and Catz, FEC's claims are not barred because they are 'separable from and collateral to' the merits of the state-court judgment." *Fontana Empire Ctr., Ltd. Liab. Co. v. City of Fontana*, 307 F.3d 987 (9th Cir. 2002) (quotation marks omitted) (distinguishing review of underlying state court judgment with unlawful post-judgment enforcement thereof).

74.    Nor does the declaratory relief sought on the <u>federal unconstitutionality</u> of said "extended terms" amount to an appellate reversal thereof; there is no indication Defendant Coughlin considered any constitutional arguments in granting said terms. *See e.g. Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1170 (10th Cir. 1998). "[O]n its facts, Pennzoil demonstrates that asking a federal court to enjoin post-judgment collection procedures that allegedly violate a party's federal rights <u>is distinguishable</u> from asking a federal court to review the merits of the underlying judgment." *Id.* (Emphasis added)

## IV.    <u>Even If It Did Preclude His Other Claims, The *Rooker-Feldman* Doctrine Cannot Bar Plaintiff's General Constitutional Challenge To RSA 633:3-A, III-C.[9]</u>

75.    Little remains to be said in response to the Attorney General's unsupported errancy in alleging Maravelias's general facial constitutional challenge to RSA 633:3-a, III-c. is somehow "in fact merely another attempt to undo the social media modification and the underlying stalking

---

[9] For the benefit of the Court's review, Plaintiff notes the Attorney General's unabated errant references to the nonexistent statute "RSA 644-a [*sic*]" and submits that the Attorney General means to refer to RSA 633:3-a in all such instances. *See e.g.* ECF Doc #10, ¶13; ECF Doc #26, ¶18

order". ECF Doc #26 at ¶18. To support this contention, the Attorney General offers nothing more than bald assertions mischaracterizing the nature of the relief sought. Plaintiff's general facial challenge is fully divorced from the facts and circumstances of his case and has absolutely nothing to do with the "extended terms". Plaintiff's Amended Complaint tenders 20 paragraphs of legal argumentation on this point where not a single reference to his personal case appears, save for a brief statement showing his standing to bring said challenge. *See* Amended Complaint, ¶148 – 168.

76.     A declaratory judgment that this narrow yet problematic sliver (section III-c.) of RSA 633:3-a is facially unconstitutional would not "undo" the protective order against Maravelias, nor the "extended terms" thereto, no more than the passage of the 21st Amendment freed convicted felon bootleggers. The Attorney General's rushed contention strains credulity and lacks any legal merit. Only future applications of RSA 633:3-a, III-c. would be unconstitutional until (1) the state legislature redresses its evils or (2) the state courts adopt a constitutional "limiting construction" to cure its defects. "If a statute is found to be substantially overbroad, the statute must be invalidated unless the court can supply a limiting construction or partial invalidation that narrows the scope of the statute to constitutionally acceptable applications." *State v. Gauthier*, No. 2014-0405, 2015 N.H. LEXIS 253 (Mar. 16, 2015) (quoting *State v. Brobst*, 151 N.H. 420, 857 A.2d 1253 (2004)).

77.     Accordingly, Plaintiff's generic facial challenge to the constitutionality of RSA 633:3-a, III-c. stands resolute even if the Rooker-Feldman doctrine could somehow bar claims herein against the "extended terms". "[T]he Rooker-Feldman doctrine does not bar a 'general attack on the constitutionality' of a state law that 'do[es] not require review of a judicial decision in a particular case.'" *Tyler*, *supra*, 914 F.3d at *51 (quoting *Feldman*, 460 U.S. at 487).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court:

A.      Deny Defendant Gordon J. MacDonald's 5/17/19 Rule 12(b)(1) Motion to Dismiss joined by all co-defendants;

B.      Hold a Hearing on this matter; and

C.      Grant any further relief as may be deemed just and proper.

Dated: June 3rd, 2019

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

/s/ Paul J. Maravelias, *pro se*

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

## CERTIFICATE OF SERVICE

I, Paul Maravelias, certify that a timely provided copy of this document is being sent on this date to all counsel of record for the Defendants pursuant to the rules of this Court.

/s/ Paul J. Maravelias                        Dated: June 3rd, 2019
**Paul J. Maravelias**