**EXHIBIT C**
**"Appendix to Maravelias's**
**NHSC Merits Brief in Case No.**
**2018-0483"**
**1:19-CV-00143(SM)**
**Mem. of Law in Support of**
**Plaintiff's 6/3/19 Opp. to Def.**
**MacDonald's MtD.**

## APPENDIX

### Trial Court Decisions

6/15/18 Order Granting DePamphilis's Motion to Extend
   Duration of Final Stalking Order of Protection.................... A1

Denial of Maravelias's Motion for Reconsideration ............... A3

Denial of Maravelias's Motion for Discovery .......................... A4

Denial of Maravelias's Motion to Strike.................................. A5

Denial of Maravelias's Objection to DePamphilis's Motion for
   Further Stalking Order Terms .............................................. A6

8/7/18 Order Granting DePamphilis's First Motion for Further
   Stalking Order Terms ........................................................... A7

8/7/18 Order Not Even Granting DePamphilis's Responsive,
   Ameliorated Motion for Further Stalking Order Terms....... A8

1/12/18 Initial Extension of Stalking Order ............................ A9

### Trial Court Exhibits

Christina DePamphilis's 6/21/17 Middle-Finger Provocation
   Posts Against Paul Maravelias on Social Media ................ A11

Christina DePamphilis's 6/19/17 Social Media Post With Her
   Boyfriend Targeting Maravelias ........................................ A13

Christina DePamphilis's 12/12/16 Text Message to Paul
   Maravelias Showing She Did Not Have "Fear" of Him .... A14

Evidence of Christina DePamphilis's Social Media Accounts
   Deleted Right Before Hearing ........................................... A15

Maravelias's April 2018 Statement to WPD About the March 2018 Nasty Letter Sent to David DePamphilis .................. A17

Christina DePamphilis's Age-16 "4:43am" Vodka Post ....... A18

Photograph of Christina DePamphilis Casually Socializing with Paul Maravelias ................................................................... A19

Maravelias's January 2018 Memo to WPD Regarding False and Fruitless Stalking-Order-Violation Accusation.................. A20

Maravelias's Criminal Complaint Against DePamphilis Perjury and Theodore and Caroline Maravelias Letter-testimonies On the Contents of Maravelias's 12/12/16 Audio Recording They Listened to In Vermont...................................................... A24

Excerpt from Christina DePamphilis's Attorney's April 2018 Pleading Alleging Maravelias Had a "Previous Obsession" With Her .............................................................................. A36

May 2018 *Nolle Prosequi* of Baseless 12/15/17 WPD Arrest of Maravelias ........................................................................ A37

Transcript Excerpt From 1/5/17 Hearing Indicating Christina DePamphilis's "Turkey Trot" Accusation Proven False by the Cell-Phone Video .............................................................. A38

Excerpt from Original 12/28/16 Stalking Petition Copy Showing Christina DePamphilis's Claims about Being "Stalked" by Maravelias at the 2013 Turkey Trot, Later Revealed to be a Total Lie by His Sister's Incidental Cell-Phone Video Thereof, and Other False Accusations ............................... A39

**Original Stalking Order**

Judge Stephen's 2/7/17 Stalking Order Finding of Facts Against Maravelias ........................................................................ A40

## Motion for Reconsideration Litigation

Maravelias's 6/25/18 Motion for Reconsideration ................ A41

DePamphilis's 7/2/18 Objection ............................................. A52

Maravelias's 7/5/18 Reply to DePamphilis's 7/2/8 Objection
............................................................................................. A58

Maravelias's 7/5/18 Motion to Strike Part of DePamphilis's
7/2/8 Objection .................................................................. A67

## Underlying Stalking Order Extension Motion

DePamphilis's 1/5/18 Motion to Extend Duration of Stalking
Final Order of Protection ..................................................... A72

Maravelias's 1/18/18 Objection to DePamphilis 1/5/18 Motion
to Extend ............................................................................ A97

## Other Trial Court Motions

Maravelias's 3/29/18 Motion to Dismiss and Vacate (Redundant
Exhibits Omitted) ............................................................ A107

Maravelias's 5/29/18 Motion for Discovery ........................ A110

Maravelias's 10/31/18 Motion to Set Aside Judgement ...... A115

## Transcript Excerpts of Related Proceedings

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

Transcript Excerpt from 1/5/17 Hearing Showing "Arm-Grabbing" Lie Against Maravelias ................................. A150

Transcript Excerpt from 2/15/18 Hearing in <u>Paul Maravelias v. David DePamphilis</u> Indicating the Trial Court Scheduled That Hearing Before the Renewal Motion in This Case, Further Violating the 30-Days Requirement................................. A151

## Summer 2018 Post-Extention Litigation on DePamphilis's Motion for Expanded Protective Order Terms

DePamphilis's 7/2/18 Motion to Amend Final Stalking Order of Protection to Include Further Terms ................................. A152

Maravelias's 7/5/18 Objection ............................................. A156

DePamphilis's 7/12/18 Reply to Maravelias's 7/2/8 Objection ....................................................................................... A178

Maravelias's 7/16/18 Reply to DePamphilis's 7/12/18 Reply and Criminal Complaint against Christina DePamphilis . A182

## Miscellaneous

Maravelias's 12/23/16 Text Message to David DePamphilis Asking Him to "Stop Harassing" Maravelias's Parents... A197

Transcript Excerpt from the <u>Paul Maravelias v. David DePamphilis</u> Hearing Indicating the Bad-Faith, Vindictive Provenance of the Stalking Order in This Case by David DePamphilis's 2016 "Last Straw" Quote........................ A198

Maravelias's 4/13/18 Reply to DePamphilis's Brief on Motion for Award of Attorney's Fees in <u>Paul Maravelias v. David DePamphilis</u>, Showing Initial Falsification and Theft-Attempt ....................................................................................... A199

Trial Court's First Notice of Hearing for 2/15/18 ................ A222

**Text of Relevant Authorities**

New Hampshire Revised Statutes Annotated ...................... A223

General Laws of Massachusetts ........................................... A227

New Hampshire Rules of the Circuit Court – District Division
.......................................................................................... A229

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

10th Circuit - District Division - Derry
10 Courthouse Lane
Derry NH 03038

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

*AMENDED*

## ORDER ON FURTHER EXTENSION OF
## DOMESTIC VIOLENCE OR STALKING FINAL PROTECTIVE ORDER
### Pursuant to RSA 633:3-a or 173-B

Case Number:  **473-2016-CV-00124**                          PNO: **4731620124**

| Christina DePamphilis | 12/12/2000 | V. | Paul Maravelias | 05/24/1995 |
|---|---|---|---|---|
| Plaintiff | Plf Date of Birth | | Defendant | Def Date of Birth |

Pursuant to the provision of New Hampshire RSA 173-B:5, VI or RSA 633:3-a, III-c, the Plaintiff requests a further extension of the Final Protective Order issued on <u>February 07, 2017</u>, the Plaintiff having been originally granted a one-year extension.

[X] The Court finds, based upon the Plaintiff's representations, that good cause exists to extend the order.  Accordingly, the Final Protective Order is hereby further extended to ~~2/5/19~~. The Defendant shall be given notice of Plaintiff's request and this order.  If the Defendant objects to the extension, he/she shall file a written objection within 10 ~~days of the date~~ of the Clerk's Notice of Decision and a hearing shall be conducted ~~within 30 days~~ of this order.  At such hearing, the Court may either reaffirm, ~~modify or vacate~~ this extension order.  If a hearing is scheduled, both parties ~~shall appear.~~ *The Court completed a contested hearing on the Merits*

[ ] The Court finds, based upon the Plaintiff's representations, that good cause does not exist and the request to extend the order is denied.

**Recommended:**

_____
Date

_____
Signature of Marital Master

_____
Printed Name of Marital Master

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

_____6/15/18_____
Date

_____
Signature of Judge

**John J. Coughlin**
_____
Printed Name of Judge

A1

06/21/2018 14:47   #705 P.002/002

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

Court Name:   10th Circuit court – District Division – Derry

Case Number:   473-2016-CV-124
Case Name:   Christina DePamphilis v. Paul Maravelias

## ORDER

On 5/3/18, 5/4/18, and 6/8/18 the Court held a hearing on the Petitioner's Motion to Extend Duration of Stalking Final Order of Protection and the Petitioner's Objection thereto. Both parties were present, sworn and testified. Upon consideration of the testimony and numerous exhibits, the Court finds that the Petitioner sustained her burden of proof by a preponderance of the evidence for "good cause". Further, the Court finds that the Petitionee composed or aided in the composition of letters to the Petitioner's family (Petitioner's Exhibit 1); to Attorney Brown (Petitioner's Exhibit 2); email to Petitioner's school (Petitioner's Exhibit 3). Also, the Petitionee collected coke bottles with the Petitioner's name and kept them in his room (Petitioner's Exhibits 5 and 6) and had duplicated inspirational phrases on the wall of the Petitioner's bedroom in his own bedroom (Petitioner's Exhibits 7 and 8). That such letters, emails, coke bottles, and duplicate inspirational phrases clearly demonstrate a strange, perverse and unhealthy obsession by the Petitionee towards the Petitioner which appears to have begun when the Petitioner was approximately 11-12 years old and the Petitionee was approximately 17-18 years old and continues to this day. Further, the Petitionee's behavior is without any legitimate purpose and for the sole purpose of harassing and stalking the Petitioner. Further, the Petitioner has a reasonable basis to fear for her personal safety and that of her family members and does, in fact, so fear for her personal safety and that of her family members.

Therefore, pursuant to NH RSA 633:3-a III-c the Court grants the Petitioner's Motion to Extend Duration of Stalking Final Order of Protection until 2/5/19.

The Court denies the Petitionee's objection thereto.

So Ordered:

Date   6/15/18

Judge   John J. Coughlin

A2                                                                A2

48. This Court attempts to obfuscate such behaviors by acting in a fair, impartial, and permissive fashion during public hearings to admit all sorts of evidence it later categorically discards when making findings, pretending such evidence never existed and neglecting its duty to rule on key Motions.

49. Seen in conjunction with the baseless defamatory comments of fine-tuned verbal posturing in this Order, clear signs of systematic judicial corruption are noted. This Court, an office whose duty is the impartial arbitration of justice, has cowardly prostrated itself before the authoritarian altar of false victim advocacy and feminist incapacity to favor a male *pro se* Respondent against a younger lawyer-represented female Petitioner, even with a mountain of irrefutable facts and laws so necessitating.

WHEREFORE, the foregoing compels the Respondent to pray this Court:

I.    Grant this Motion;

II.   Reverse its 6/15/18 Order granting Petitioner's Motion to Extend Stalking Order;

III.  Painstakingly review legal theory and case law in this area to appreciate the severity of infringement against Respondent's free speech rights which said Order does impose until corrected, with the suggested literature[4,5,6], to prevent further unconstitutional errors; and

IV.   Issue an Order of declaratory relief apologizing to Mr. Maravelias for the baseless defamatory comments against him in this Court's 6/15/18 Order and recanting the same.

Signed and submitted,

    PAUL J. MARAVELIAS,

    *in propria persona*

7/13/18

Denied

John J. Geary

June 25th, 2018

---

[4] Volokh, Eugene. "One-to-One Speech vs. One-to-Many Speech, Criminal Harassment Laws, and Cyberstalking." *Nw. UL Rev.* 107 (2012): 731.

[5] Buchhandler-Raphael, Michal. "Overcriminalizing Speech." *Cardozo L. Rev.* 36 (2014): 1667.

[6] Volokh, Eugene. "The Freedom of Speech and Bad Purposes." *UCLA L. Rev.* 63 (2016): 1366.

A3                                                                A3

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

| | |
|---|---|
| Court Name: | **10th Circuit - District Division - Derry** |
| Case Name: | **Christina DePamphilis v. Paul Maravelias** |
| Case Number: | **473-2016-CV-00124** |
| (if known) | |

### MOTION: MOTION FOR DISCOVERY

I, **Paul Maravelias,**

state the following facts and request the following relief:

**See attached.**

---

| | |
|---|---|
| 5/29/18 | _(signature)_ |
| Date | Signature |
| 603-475-33 15 | 34 Mock INGBIRD HILL RD, WINDHAM |
| Telephone | Address |

I certify that on this date I provided a copy of this document to _Simon R. Brown, ESQ._ (other party) or to
_____ (other party's attorney) by: ☐ Hand-delivery OR ☑ US Mail OR
☐ E-mail (E-mail only by prior agreement of the parties based on Circuit Court Administrative Order).

| | |
|---|---|
| 5/29/18 | _(signature)_ |
| Date | Signature |

---

## ORDER

☐ Motion granted.  ☒ Motion denied. _Motion Denied on 6/8/18 SK_

**Recommended:**

_____  _____
Date                              Signature of Marital Master/Referee

                                      _____
                                      Printed Name of Marital Master/Referee

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

_6/12/18_  _____
Date                              Signature of Judge

                                      _____
                                      Printed Name of Judge

A4                                                                                           A4

20. This is not a legal argument; it is false assumption of fact non-existent in the record. Thus, it should be stricken.

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Honorable Court:

I.     Grant this Motion;

II.    Strike Paragraph 11 of Petitioner's *Objection to Respondent's Motion for Reconsideration* from the Court's record; and

III.   Grant such other relief as may be just and proper.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

July 5th, 2018

7/13/18
Denied

John J. Coughlin

PAUL MARAVELIAS — 34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

A5                                                                                                    A5

55.   To echo familiar language from yesterday's national holiday, in every stage of this Court's oppressions, Mr. Maravelias has petitioned for redress in the most humble terms. <u>His repeated petitions have been answered only by repeated injury.</u> A Court whose character is thus marked by every act which may define a tyrant, is unfit to be the judiciary of a free people.

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Court:

I.       Grant this Motion;

II.      Grant Respondent's 6/25/18 *Motion for Reconsideration*, which will terminate the Stalking Order and dismiss Petitioner's instant Motion as well as this Objection thereto,

III.     Deny Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions*; and

IV.      Hold a Hearing, if necessary, on this matter.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

7/3/18
Respondent's Objection
is Denied.

*John J. Coughlin*

July 5th, 2018

**A6**                                                                      **A6**

## CERTIFICATE OF SERVICE

I hereby certify this 2ⁿᵈ day of July 2018 a copy of the foregoing Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* has been forwarded via U.S. First Class Mail, postage pre-paid, to Respondent, Paul Maravelias, *pro se*.

Simon R. Brown

8/7/18
Granted as to
Petitioner's Request for Relief
A.; B1; B2; B3

John J. Coughlin

4

13188052.1

**A7**                    **A7**

## CERTIFICATE OF SERVICE

I hereby certify this 12th day of July 2018 a copy of the foregoing *Petitioner's Reply to Respondent's Objection to Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* has been forwarded via U.S. First Class Mail, postage pre-paid, to Respondent, Paul Maravelias, *pro se*.

Simon R. Brown

8/7/18 The Court granted the The Petitioner's Motion for Modification of Stalking Final Order of Protection on 8/7/18

John J. Coughlin

4

13208168.1

**A8**     **A8**

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

10th Circuit - District Division - Salem
35 Geremonty Dr.
Salem NH 03079

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## DV/STALKING NOTICE OF DECISION

**PAUL MARAVELIAS**
**34 MOCKINGBIRD HILL RD**
**WINDHAM NH 03087**

Case Name:    **Christina DePamphilis v. Paul Maravelias**          PNO: 4731620124
Case Number:  **473-2016-CV-00124**

Please be advised that on <u>January 12, 2018</u> Hon <u>Sharon N. DeVries</u> made the following order relative to:

☐ Petition      ☐ Final Order      ☒ Other  <u>1 Year Extension</u>

☐ Notice of Interstate Enforcement
  and Compliance with VAWA for
  Use with Final Order

January 16, 2018

_____
Kathleen E. Tripp, Clerk of Court

(244)

C:  Simon Robert Brown, ESQ

NHJB-2400-DF (07/01/2011)

**A9**                                                                                          **A9**

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

10th Circuit - District Division - Salem
35 Geremonty Dr.
Salem NH  03079

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## ORDER ON INITIAL EXTENSION OF
## DOMESTIC VIOLENCE OR STALKING FINAL PROTECTIVE ORDER
Pursuant to RSA 633:3-a or 173-B

Case Number: **473-2016-CV-00124**                    PNO: **4731620124**

| Christina DePamphilis | 12/12/2000 | V. | Paul Maravelias | 05/24/1995 |
|---|---|---|---|---|
| Plaintiff | Plf Date of Birth | | Defendant | Def Date of Birth |

Pursuant to the provision of New Hampshire RSA 173-B:5, VI or RSA 633:3-a, III-c, the Plaintiff requests an initial extension of the Final Protective Order issued on <u>February 07, 2017</u>.

☒ The Court finds, based upon the Plaintiff's representations, that good cause exists to extend the order. Accordingly, the Final Protective Order is hereby extended to **2/7/19**  The Defendant shall be given notice of Plaintiff's request and this order. If the Defendant objects to the extension, he/she shall file a written objection within 10 days of the date of the Clerk's Notice of Decision and a hearing shall be conducted within 30 days of this order. At such hearing, the Court may either reaffirm, modify or vacate this extension order. If a hearing is scheduled, both parties shall appear.

☐ The Court finds, based upon the Plaintiff's representations, that good cause does not exist and the request to extend the order is denied.

**Recommended:**

_____
Date

_____
Signature of Marital Master

_____
Printed Name of Marital Master

**So Ordered:**

I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

_____1/12/18_____
Date

_____
Signature of Judge

DeVries
_____
Printed Name of Judge

On 6/21/17, the Plaintiff Christina DePamphilis pictured herself in the following post on her public social media making vulgar gestures against the Defendant, Paul Maravelias.

It was targeted against Maravelias, and its caption read "Did Dartmouth [Defendant's college] teach you how to do this ☝" [Middle finger "emoji"].

This act of harassment was to taunt Maravelias that DePamphilis had successfully abused him with a falsified restraining order, and cruelly bait Maravelias into violating it.

The man on the right is Matthew LaLiberte, DePamphilis's boyfriend in his 20s.

Permalink for verification: http://bit.ly/2y0JFEF



**A11**                                                                                                          **A11**

VSCO - Did Dartmouth :    ×

http://vsco.co/christinamamaria/media/594b1998f4777d51?b9196da

VSCO    Feed    Store    Sign in         Get the App



christinamamaria    Follow

Did Dartmouth teach you how to do this?👏

**A12**                                                                                    **A12**

Christina DePamphilis posted the following image on the same public social media account on 6/19/17 at 8:54pm, immediately prior to the vulgar incitation post pictured in the preceding exhibit. This post pictures the boyfriend calling-out Defendant by initials "PM", further removing any doubt the posts were directed unto him.



The following is from Defendant's Gmail SMS text-message backup and shows that the Plaintiff actually texted him after his inviting her to dinner on 12/12/16 to "thank" him for the words and kind gesture. The Plaintiff's cell-phone number (603-965-5478) is indicated. This shows there was never any "fear", and the subsequent "stalking" accusations have been completely fraudulent.





**6039655478**
to me
Hide details

From:    6039655478 6039655478@unknown.email
To:      paulmarvdroid@gmail.com
Date:    Dec 12, 2016, 2:48 PM
View security details

thank you paul!

Reply          Reply all          Forward

**A14**                                                      **A14**

Evidence tampering documentation: social media account deleted right before 1/3/18 hearing in which DePamphilis targeted Maravelias with the aforecited provocative, inciting gesture (6/21/17).



Evidence tampering documentation: deletion of both Instagram accounts of DePamphilis's daughter ("tipsytina69" and then renamed "tipssyytina") containing other referenced postings:



Maravelias 4/18/17 statement about the letter received by David DePamphilis which was cited/reproduced in Plaintiff's motion to extend stalking order:

"I'm writing to cooperate with your investigation about a letter sent to David Depamphilis in March. While I did not personally write the letter to David, I fully knew about i being written and sent to him, and I did aid in parts of its composition. I didnt' think such a letter was against the protective order. I regret that it seems to have really aggravated David and cause unnecessary trouble. I promise I'll be more prudent going forward. I am sorry for any inconvenience I caused for you. Thank you"

In July of 2017, 16-year-old Christina DePamphilis pictured herself in this posting. She is evidently about to return home in her grey 2013 Jeep Wrangler (pictured in background) openly carrying hard liquor in left hand in her possession. "gn" stands for "good night", and the caption reads, "in need of walk of shame number 2 lmk".

The winter prior she complained about "fear" for "personal safety" while making false accusations of "stalking".



**A18**                                                                                          **A18**

Cell-phone picture (and screenshot of metadata) taken by Maravelias at his own house on 6/29/13 depicting the comfortable and normal social dynamic between him and the liar Plaintiff (pictured) at Defendant's HS graduation party, contrary to her mendacious claim to this Court about being "really nervous and uncomfortable" (Page 7 of 1/5/17 transcripts) in this same social encounter, which was made to support her falsified Stalking Petition.



↓ **Info**

June 29, 2013
Saturday 7:05 PM

/storage/FF27-1DFA/DCIM/Camera/
IMG_20130629_190550_765.jpg
6.0MP   1836 x 3264   2.0 MB

Motorola DROID RAZR HD
f/2.4   1/24   4.36mm

Windham, NH
42.823, -71.278

**A19**

**A19**

The following is a 1/25/2018 statement Maravelias submitted to Windham Police upon another of DePamphilis's malicious false accusations that Defendant had violated the protective order. The police dismissed the frivolous, vexatious complaint, as they had done with other similar DePamphilis false complaints made in March and September 2017. This shows DePamphilis's "protective" order is intended as nothing but a weapon of harassment and legal abuse against Maravelias.

Paul Maravelias

1/25/18

Re: Statement on newest DePamphilis false accusation

On 1/25/18, Officer Dzierlatka called my cell to relay that David DePamphilis (or family member) had accused me of violating the fraudulent stalking order with regards to his daughter. The accusation was that on 1/20/18 I had seen one of DePamphilis's automobiles on my street while driving myself and that I aggressively accelerated at high-speed to reach and tailgate their vehicle at close-range at the same time as David's daughter was in his car. This is completely false as I did nothing of the sort. In fact, I didn't even see David's vehicle this night.

The fraudulent stalking order forbids knowingly approaching the Plaintiff (David's criminal perjurer daughter) within 300 feet. Whenever I have seen the criminal, David, out driving, or his complicit daughter, I have ignored their presence and minded my own business. I shall do the same if I ever encounter them in public, which fortunately has not happened.

I informed Officer Dzierlatka that the accusation seemed malicious, given David's past lies to police and given my absolute lack of memory of seeing his vehicle on that night. I also stated that I am highly aware of David's vehicles when I do see them, and I would certainly remember if one was in front of me this night.

I searched my Google phone location history records and found that I had returned to my house at 2206 EST for the last time that day. I did not leave my house again until around 0800 EST the following morning. David alleges the incident occurred an hour and a half later around 2330 EST. I had been inside my house for 1.5 hours at this point. My last excursion that day was to purchase a non-alcoholic fermented beverage at Shaw's before they closed at 10pm. My attached phone location history and credit card transaction record all corroborate these memories. Even without this proof of my physical absence, there is no proof beyond hearsay of any aggressive driving behaviors.

Some of David's past accusations against me have been delusional, and some others intently malicious. I will be collecting information from my family members on whether the car David associates with me was even out on the road at all at this time. It is possible my sister was driving it, as it is a car I purchased primarily for her usage and not mine. Depending on what I find, I may submit a criminal complaint against David DePamphilis for violation of RSA 641:4, which criminalizes he who "knowingly gives or causes to be given false information to any law enforcement officer with the purpose of inducing such officer to believe that another has committed an offense". David has already violated this law on multiple occasions, from his initial falsified stalking petition against me to his bully-like sophistry on 9/5/17 that my seeing his wife at the supermarket was a violation of the "stalking" order which involves only his utilized revenge-puppet daughter. This department needs to enforce this law against David by arresting him and clarifying that police resources are not to be exploited to bully peaceful 22-year-olds.

Regards,

Paul Maravelias

**A21**                                                                 **A21**



Bank of America | Online Banking | Accounts | Account Details | SB Car...     https://secure.bankofamerica.com/myaccounts/brain/redirect.go?

**Bank of America**                                                    Online Banking

**Account Name: Business Advantage Cash Rewards - 3598 Transaction Details**

|  |  |
|---:|:---|
| **Merchant:** | #07686 SHAW'S |
| **Transaction date:** | 01/20/2018 |
| **Transaction amount:** | $6.98 |
| **Balance:** | ▮▮▮▮▮▮▮ |
| **Reference number:** | 05140488020720021229410 |
| **Transaction type:** | Purchase |
| **Merchant category:** | GROCERY STORES, SUPERMARKETS |
| **Expense category:** | Retail Stores |
| **Code:** | 5411 |

The following is a criminal complaint Maravelias submitted to the Salem Police Department regarding DePamphilis's willful criminal perjury made to Salem District Court in order to obtain the protective order in the present case. David DePamphilis suborned the Plaintiff, Christina DePamphilis, to make materially false statements in a 1/5/2017 Hearing and in the original falsified, bad-faith, vindictive Stalking Petition filed 12/28/2016.

November 1st, 2017

Paul J. Maravelias

34 Mockingbird Hill Rd
Windham, NH 03087

To:  Windham Police Department

Cc:

Detective Jason Dzierlatka
Detective Christopher van Hirtum

*In re*  **David DePamphilis Criminal Complaint** (felony Perjury under 641:1, felony
Conspiracy under 629:3, misdemeanor Defamation under 644:11, and misdemeanor
False Reports to Law Enforcement under 641:4)

---

Fair and impartial public servants of Windham:

It has come to pass that my abuser David Nicholas DePamphilis of ██████████ has severely
violated four criminal laws to wage his ongoing course of undue harassment against me.

The felon, David DePamphilis, lied to your police department in December 2016 when he filed a
false "stalking" petition against me through his daughter, to satisfy his own lust for revenge.

I submit proof that the crime of felony Perjury occurred decisively on January 5th, 2017 at Salem
District Court at around 1:30pm when David caused "a false material statement under oath or
affirmation" to be made when he did not "believe the statement to be true" (RSA 641:1 I. (a)).

My complaint is not semantic hairsplitting, petty revenge, or fighting over facts.

**David's willful crime has directly caused tremendous financial and emotional damage to
me, as well as the marked abuse of my property rights and destruction of my good record.**

At the 1/5/17 stalking hearing, David suborned his attorney Jerome Blanchard and daughter
Christina to perjure the following falsehood about my normal, kind words to her while asking the
young woman out to dinner on her 16th birthday, before I left after her respectful decline:

> "Q Did he use the phrase at any point during this conversation, age of
> consent?
>
> **A Yes**
>
> Q What did he say?
>
> **A He said I was age of consent at 16.**" (Page 27 of transcripts for Christina
> DePamphilis vs. Paul Maravelias, Case No. 473-2016-CV-00124, attached as Exhibit C)

Though it is difficult for me to refrain from writing about how shockingly inaccurate their whole
dramatic canard about "stalking" was (we had been normal family friends), I need to stay
focused here on this certain specific criminal perjury.

**A25**                                                                                    **A25**

Under the Perjury statute (641:1), only *material* willfully false representations are punishable. The knowingly false accusation above was material: **it directly caused** the issuance of the restraining order, in the words of Judge Stephen's finding of stalking:

> "[Maravelias] referred to [that day, her 16th birthday] as **the 'age of consent'**" and "mentioned he will wait until she is ready and **be back when she is 18 years old**"
> (Stephen, Robert S. in Final Order 473-2016-CV-00124, attached as <u>Exhibit D</u>).

These specific false claims which caused the order (that I said I'd "be back" in two years and mentioned a creepy sexual motivation behind my kind gesture) were **not once mentioned in David's initial written "stalking" petition** he had his daughter write on 12/28, nor during his own verbal explosions and tirades against me and my family on 12/12 and 12/14. It is crystal clear this was an intentional, willful "buzz-word" dreamed-up maliciously to get the order.

Now, let actionable proof be submitted of David's outrageous perjury:

I had actually been taking a sentimental cell-phone recording of the 12/12/16 verbal exchange in question. It was disallowed as evidence in the stalking hearing under the "wiretapping" statute.

Your department possesses this recording from when David vindictively had me arrested for it.

I played the recording for my parents in Norwich, VT on 10/21/2017, and I attach two letters from them (<u>Exhibits A and B</u>) which indicate the contents of this audio recording: that I **absolutely never said the alleged things above**. (Also that there was never any "fear", etc.)

Unlike the recording itself, this testimony is indubitably admissible, actionable evidence.

My parents and I are happy to testify in person at court or come to the station to make a recorded statement about the contents of this audio recording, which proves what I had and hadn't spoken.

Thus I have hereunto submitted proof for all three elements of criminal perjury: that the false statement was 1) material, 2) maliciously, knowingly false, and 3) indeed factually untrue.

David has additionally committed criminal Conspiracy under RSA 629:3. The statute reads,

> "A person is guilty of conspiracy if, with a purpose that a crime defined by statute be committed, he agrees with one or more persons to commit or cause the commission of such crime, and an overt act is committed by one of the conspirators in furtherance of the conspiracy."

David conspired with his daughter Christina and lawyer Jerome Blanchard to deliver the referenced illegal and defamatory perjuries into the stalking hearing at Salem District Court.

Furthermore, he is guilty of a separate count of Conspiracy for suborning the falsehoods written in the initial "stalking" petition, including that I had "insisted" with his daughter and even made the creepy statement "you will learn to love me". I had never said any such thing, as my audio recording proves.

These certain malicious lies were misdemeanor crimes of False Reporting (641:4) but fell just short of an additional count of felony Perjury, since they were not "material" representations,

**A26**                                                                                     **A26**

unlike the aforementioned perjuries cited by the judge in the false finding of stalking. <u>Exhibit E</u> shows the inclusion of these outrageous lies, among others, in the petition.

David has also committed criminal Defamation (644:11) against me, since the same referenced act of Perjury also satisfies 644:11's lower standard of Defamation, occurring when a person:

> "purposely communicates to any person, orally or in writing, any information which he knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule".

As a victim of his false accusation and massive resulting injustice, I respectfully demand David DePamphilis be arrested and prosecuted for felonious Perjury and Conspiracy, and misdemeanor Defamation and False Reporting.

*Nota bene*: Although the daughter Christina DePamphilis orally delivered David's perjury, David suborned it to happen having premeditated the aforecited direct examination. He is liable under accepted legal maxims *respondeat superior* and *quid facit per alium facit per se*. Still, his daughter is knowingly complicit, and I request a warrant be issued for her arrest as well.


Thank you for your impartial professionalism as you attend to justice in this criminal matter.


Respectfully,

Paul J. Maravelias

10/23/2017

Theodore Maravelias

34 Mockingbird Hill Rd, Windham, NH 03087


To: Windham Police Department
Cc: Detectives Jason Dzierlatka and Christopher van Hirtum


**Re:**    **David DePamphilis Criminal Complaint** (felony "Perjury" under 641:1 and
misdemeanor "False Reports to Law Enforcement" 641:4)


To whom it may concern:

We are respectfully requesting an arrest warrant be issued for David N. DePamphilis (██████
███ in Windham). We are outraged that he has delivered intentional lies to your department to
corrupt the course of justice, among other crimes.

On December 28th, 2016 David filed a "stalking" petition against our son Paul Maravelias
through his daughter Christina. David and his wife Laurie were unquestionably the originators of
this action, and even your prosecutor admitted this in court (10/6/17) during an unrelated matter.

David DePamphilis concocted a slew of intentional lies in the "stalking" petition against our son,
and then even more lies during the hearing. He suborned his daughter to perjure in court to get
revenge on our son with the stalking order.

Though DePamphilis dreamed-up too many lies to list here, Judge Robert S. Stephen cited one
particularly outrageous fallacy which directly caused the "stalking" order to be issued.


This intentional "false material statement" (the requirement in 641:1) was that, when my son had
nicely invited David's daughter and wife to dinner, he:

"referred to [that day, her 16th birthday] as the 'age of consent' to her mother"

and

"mentioned he will wait until she is ready and be back when she is 18 years old" (quotes from
Judge Stephen's finding of "stalking" in Christina DePamphilis v. Paul Maravelias, 473-2016-
CV-00124).

For sentimental reasons, my son had been audio taping the exchange in question on his cell-
phone.

On October 21st, 2017, I listened to this audio recording at Norwich in the State of Vermont.

**A28**                                                                                          **A28**

The recording clearly documents the **entirety** of my son's interaction with on them that day, and that he **never spoke anything remotely close to the disturbing, sexualizing "age of consent" reference, nor states that he would "be back when she is 18"**.

The recording also proves that David's wife and daughter outright lied about many other facts, such as saying that my son "insisted".

We know these false statements by David constituted intentional perjury since DePamphilis had screamed harassing insults and perverse expletives at me and my son over phone on December 12th (later that day) and then on December 14th: he never once then alleged that our son had said something as creepy and disturbing as referencing his kind invitation as motivated by some sort of sexual impulse on the brink of the girl's legal age. David surely would have mentioned this during his unhinged and threatening tirade, if my son had said this.

In fact, this particular damaging false accusation was not even in the original written stalking petition, which included complaints of "stalking" as foolish as "I noticed Paul was looking at me while seated in his backyard during a family party". We were good family friends. That is beyond insincere and disingenuous.

Clearly, the intentional perjury in question was only contrived by Mr. DePamphilis immediately before the 1/5/17 stalking hearing, or else it would have certainly been included in the written petition (12/28/16) and also in his verbal tirades against us on 12/12/16 and 12/14/16.

For the separate misdemeanor false police reporting charge, we refer to different falsehoods about this exchange which were in the written stalking petition: that our son said "you will love me" and "insisted" during his romantic expression.

The recording I listened to (while in the State of Vermont) proves this is false. **These specific lies caused the stalking order.**

As I understand it, my son is also producing evidence of various alcohol crimes David has committed with minors.

David DePamphilis is a vindictive and merciless man who has abused our son, caused great stress for my family, and caused a miscarriage of justice against him by intentionally perjuring to get the stalking order. I firmly believe that at the very least, this constitutes perjury.

We were family friends with this family for a long time. Instead of showing neighborly love and understanding, he chose vindictiveness and was sadly willing to employ perjury to carry his retaliatory actions out.

**A29**                                                                                           **A29**

Therefore, as your taxpaying constituent, I respectfully demand equal application of the law. We request an arrest warrant be issued for David DePamphilis and, if possible, his complicit daughter Christina as well.


Firmly,

Theodore G. Maravelias

*[signature]*                                              10/21/17

CELL: 603-770-8072

**A30**                                                          **A30**

10/23/2017

Caroline Maravelias

34 Mockingbird Hill Rd, Windham, NH 03087

To: Windham Police Department

Cc: Detectives Jason Dzierlatka and Christopher van Hirtum

Re: David DePamphilis Criminal Perjury

To whom it may concern:

I'm a stay-at-home mother from Windham. I am indignant that my neighbor David DePamphilis has slandered our son to the point of outright lying to the court (perjury) and to this police department to obtain a false "stalking" restraining order against my son.

My husband and I are respectfully requesting for David to be arrested and prosecuted for his crime of perjury and false police reporting, which we have proof of.

DePamphilis vindictively filed a "stalking" petition against our son through his daughter on 12/28/16. This was two weeks after we had settled him down from his emotional explosion. He had a verbally abusive explosion against my husband and son Paul after Paul had respectfully invited his daughter to dinner on her birthday.

David got so angry that he willfully lied to the court that our son made creepy and disturbing, sexual comments when he invited Christina to dinner and her mother as well. My son actually behaved like a gentleman, and we have an audio recording which proves David lied outrageously to get the court order.

On 10/21/17, in Norwich, VT, I listened to the sentimental cell-phone recording my son Paul made of his romantic invitation on 12/12/16 to David's daughter. David and his daughter claimed in court that Paul had said "you will learn to love me!", that he was "insistent", and that he even said downright weird, frightening things like referencing the "age of consent", suggesting sexual intercourse.

The judge actually attributed this last lie in his false finding of "stalking", proving that David's perjury was absolutely material to the case and directly caused the perversion of justice against our son.

The audio recording I listened to confirmed my son's testimony during the stalking hearings that he **absolutely never said any of these outrageous false accusations. He never once mentioned the "age of consent" or any reason for his choice of that particular day at all.** He was kind, respectful, and even said "I respect your feelings" once Christina politely rejected him. David's family members had actually been happy to see Paul. The recording proves his daughter in fact invited him back, after Paul first went to the door and her mother was in the shower.

The "stalking" petition and allegations in the court hearing paint a picture of my son so completely false that my husband and I are outraged months later. Hearing the recording for the first time has validated our outrage at David's perjury. David's wife and daughter were actually laughing and joking with Paul; I heard Christina say "that's so sweet", "thank you", "no, you're fine", etc. Laurie said she "appreciated" the gesture. The dishonesty of this family in their delusions against my son two weeks later is absolutely disturbing. To call his kind behavior "stalking" is appalling.

**A31**                                                                                           **A31**



In the nearly two weeks that passed after the incident until the police came to deliver the restraining order, my son never left the house except to go to dinner with his grandmother in Ipswich and once to Shaw's at night. Clearly, if my son was some sort of danger to Christina, he had during that time the opportunity to act upon that. Instead, he remained home virtually the whole time.

Months later, David and his daughter posted a childish, bullying picture and text on social media aimed at our son.

We waited until now so that there would not be any interactions with the settled criminal charge against our son, from when David vindictively complained to your department about this same audio recording under the "wiretapping" law. We expect fair and equal application of the law. If our son has been arrested for trying to defend himself in court with his innocent recording, we expect that David be held criminally accountable for documented felony perjury – a far more serious offense.

My and my husband's testimony about this recording's contents is admissible evidence, and no Vermont state law was broken when Paul reproduced his audio recording there (only 10 states have such a corrupted law which has caused severe miscarriage of justice against our son). We're respectfully demanding that David DePamphilis and his complicit daughter Christina be arrested and prosecuted for these crimes.

I will be happy to testify in a court of law about any of the related facts.

Sincerely,

*Caroline Maravelias*
*11/1/17*

Caroline Maravelias

Exhibit C

Summary:

This is a reproduction of the referenced page from the stalking hearing transcripts. The entire transcript is digitally attached in three separate PDF files. Please note that the transcripts are of absolutely awful quality, though no errors in transcription affect in the referenced portions on page 27 indicating DePamphilis's testimony from 1/5/17. Red box emphasis to material perjuries cited by judge is added.

```
                                              27
1    love with you since 2011?  How old were in 2011?
2         A  I was ten up until December when my birthday is
3    December 12th, so I turned 11 December 12th.
4         Q  What, if anything, else did he say at that point?
5         A  He talked about how he has been loyal and committed to
6    me and that in college he could be doing stuff to a bunch of
7    other girls, but he's committed to me and he knows how much
8    loyalty means to me.
9         Q  Did he use the phrase at any point during this
10   conversation, age of consent?
11        A  Yes.
12        Q  What did he say?
13        A  He said I was age of consent at 16.  And I had told him
14   that we did not feel -- I did not feel that way about him and
15   that the age gap was ridiculous.  And he told my mom that she
16   was narrow minded when she mentioned that and that she told him
17   he needed to move on.  He said he would never love anyone else
18   and that he would not move, because I'm the perfect girl.  And
19   then my friends actually showed up and my mom's friend showed
20   up, too, so he left.
21        Q  Okay.  Was there any conversation about him
22   transforming himself for you?
23        A  Yes.  He said it and then he said he got like fit and
24   then he said he will just be getting richer and that he'll come
25   back when I'm 18.
```

**A33**                                                                              **A33**

Exhibit D

Summary:

This is a reproduction of Judge Stephen's finding of "stalking" based upon the two specific perjuries presently discussed, proving them "material" to an "official proceeding" under 641:1's requirement for Perjury.

These are the two intentional perjuries for which we submit proof of falsity and willfulness. We do not have actionable proof of falsity and willfulness for the other material perjury referenced in this finding (about the "dropping off" incident), so we restrict our demand for arrest and prosecution to the basis of only the perjuries highlighted in red.

A scan of the full order is attached digitally.

**[The facts relied upon by the court to form the basis for its finding must be detailed below]**

The Defendant has been obsessed with the Defendant since she was 11 years old and he was 17. When she was 12 and he was 18 he drove her home and attempted to drop the other person off first but the Plaintiff refused; The Defendant testified that he loves her and would give his life to protect her. He waited until she turned 16 which he referred to as the "age of Consent" to her mother, offered her a brand new Mazzaretti. When the gift was rejected he mentioned he will wait until she is ready and be back when she is 18 years old. The level of obsession and Relentless pursuit of a girl beginning at the age of 11 or 12 gives rise to reasonable fear. In addition, the demeanor of the Defendant during his testimony demonstrated his obsession for the Plaintiff, including his constant Communication directly to the Plaintiff Commenting on her Mannerisms and Professing his love for her.

Date: 2.7.16

Signature of Judge: Ce____

Robert S. Stephen

Print/Type Name of Judge

NHJB-2003-D (08/01/2015)

A34                    A34

Exhibit E

Summary:

This is an excerpt from David DePamphilis's stalking petition filed vicariously through his daughter Christina against Maravelias on 12/28/16. It is absolutely libelous and littered with imagined, delusional false accusations against Maravelias. The area highlighted in red indicates the misdemeanor false reports to law enforcement under 641:4 which Maravelias's audio recording proves as false, corroborating his accurate memory and testimony.

Since these false reports were not directly attributed in Stephen's finding, they might not have been "material" under the definition of Perjury. However, the form does indeed state, "I understand making a false statement on this form will subject me to criminal penalties". We therefore demand imposition of such penalties for these false statements.

The full stalking petition is attached digitally. It also usefully reveals the shocking truth that the outrageous "age of consent" perjury was never once mentioned here, since it was maliciously dreamed-up right before the 1/5/17 stalking hearing but after this 12/28/16 written petition.

approach me again. Paul had also joined Anytime Fitness Gym in Windham to try to talk to my father to "buddy up" with him. My father had to quit the gym. Paul then went to college and things were quiet until my birthday 12/12/16 when he showed up at my home with a brand new Maserati car as a gift professing his love for me. My mom + me told him that he should leave + take the car with him. He insisted that we go to dinner with him and that I would learn to love him. We were scared and called my dad at work. My dad spoke with his parents and with Paul to express his concern this mood

**A35**

The following is an excerpt from Paragraph 6 of Plaintiff's counsel's defamatory *Motion to Strike* in the related stalking case against David DePamphilis. While falsely libeling Maravelias that he ever had an "obsession" or "stalked" the Plaintiff, it admits that these circumstances, true or not, were "previous". I.e., Plaintiff's own counsel admits the alleged "stalking" circumstances no longer exist.

6.       This conduct is disturbing for several reasons: (a) the Stalking Order is in effect based on Plaintiff's previous obsession for the teenage victim; (b) the Instagram account is

The following is documentation that the alleged criminal violation of the protective order (mentioned in Plaintiff's Motion to Extend) has been fully dismissed as of 5/23/18, due to the baselessness and outrageous unconstitutionality of the unlawful arrest, as Maravelias never violated the order. At bottom, see "5/23/18 N P" (*nolle prosequi*) plus initials of Windham prosecutor in the matter.

## The State of New Hampshire
### COMPLAINT

Case Number: __47317CR3516__          Charge ID: __1448431C__

| ☐ VIOLATION | ☒ MISDEMEANOR | ☒ CLASS A | ☐ CLASS B | ☐ UNCLASSIFIED (non-person) |
|---|---|---|---|---|
| | ☐ FELONY | ☐ CLASS A | ☐ CLASS B | ☐ SPECIAL | ☐ UNCLASSIFIED (non-person) |

You are to appear at the: **Salem District Court, Rockingham** Court,

Address: **35 GEREMONTY DR . SALEM PD,NH 893-4483, NH**      County: **ROCKINGHAM**

Time: o800      Date: 12-18-17

**RECEIVED**

Under penalty of law to answer to a complaint charging you with the following offense:

**THE UNDERSIGNED COMPLAINS THAT : PLEASE PRINT**      DEC 18 2017

**Salem Circuit Court**

| MARAVELIAS | | | PAUL | | |
|---|---|---|---|---|---|
| Last Name | | | First Name | | |
| 34 MOCKINGBIRD HILL RD | | | WINDHAM | | NH | 03087 |
| Address | | | City | | State | Zip |
| M | W | 5 1 1 | 1 6 0 | BROWN | BROWN |
| Sex | Race | Height | Weight | Eye Color | Hair Color |
| 05/24/95 | | 05MSP95241 | | NH | |
| DOB | | License # | | OP License State | |

| ☐ COMM. VEH. | ☐ COMM. DR. LIC | ☐ HAZ. MAT. | ☐ 16+PASSENGER |
|---|---|---|---|

AT: **4 FELLOWS RD, WINDHAM NH**

On 12/11/2017      in ROCKINGHAM County NH, did commit the offense of:

RSA Name:      Stalking - Notice of Order

Contrary to RSA:      633:3-a.I(c)

Inchoate:

(Sentence Enhancer):

And the laws of New Hampshire for which the defendant should be held to answer, in that the defendant did:

after being served an order pursuant to paragraph III-a of the stalking statute, did knowingly engage in an act of conduct that violates the provisions of the order, an act of communication as defined in RSA 644:4.II, in that he threatened to destroy C.D's academic career to her father's attorney and then followed up with an email to four (4) Windham High School faculty members attempting to get her in trouble in school and National Honor Society,

5/23/18
N P
(LL)

against the peace and dignity of the State

☐ SERVED IN HAND

| _____ | Detective CHRISTOPHER VAN HIRTUM | Windham  PD |
|---|---|---|
| Complainant Signature | Complainant Printed Name | Complainant Dept. |

**Making a false statement on this complaint may result in criminal prosecution.**

Oath below not required for police officers unless complaint charges class A misdemeanor or felony (RSA 592-A.7.I)

Personally appeared the above named complainant and made oath that the above complaint by him/her subscribed is, in his/her belief, true.

12-18-17      Justice of the Peace (12-2-22)
Date

**A37**      **A37**

1  butt, maybe accidentally, because it was a haunted house that

2  had like tubes with air that you had to push your way through,

3  so you kind of have to use your hands to get through anyways --

4      Q   Okay.

5      A   -- and it was very dark.  So I didn't feel like I was

6  sexually assaulted.

7      Q   Okay.  And so you didn't make a big deal of it at the

8  time?

9      A   No.  No.

10     Q   And how did you feel when you found out what Paul was

11 saying?

12     A   I was disturbed and disgusted, because it's not his

13 place to even say anything of that matter.

14     Q   Tell me about -- was there an incident that happened at

15 the turkey trot in Wyndham?

16     A   Yes, I was there walking with his sister and he came up

17 to me, gave me a hug, and wanted to run or walk with me.

18     Q   Okay.  And how did that make you feel?

19     A   Really uncomfortable and nervous, because I'm not there

20 to spend time with him.  I was there to spend time with my

21 family and friends.

22     Q   Okay.  And is this also 2013 that this happened?

23     A   Yes.

24     Q   Was there -- tell me about the cheer fundraiser, the

25 canning fundraiser, in November of 2013.



Case Name: v
Case Number: 473-2011-CV-124                    PNO: 473102072L4
STALKING PETITION

on many occasions that summer he tried to
set the families together to help further his
advances. In october 2013, Paul called my
mother to tell her that I was sexually
violated at Canobie Lake Park. The incident
was not true and upset my mother + father.

thanksgiving 2013) Late November at the Turkey Trot in Windham,
Paul showed up and tried to walk with
me. This was unwanted behavior and scared
me. Shortly thereafter Paul hacked into my
personal social media account and read my
private message about my feelings of Paul
stalking me and being creepy. ~~fact then wrote~~
~~me a disturbing letter and delivered it to~~
12/3/13) ~~me at~~ on 12/3/13 Paul then came to my cheer practice
the next day, grabbed my arm and wanted
to talk about my feelings. I refused to talk
to him. I had no relationship and didn't understand
why he was harassing me. Later that day, my
mom drove his sister Debbie home from cheer
practice when Paul came out of the house to
deliver a letter to me. (we have a copy for the court)

## THIS PETITION MUST BE SIGNED AT COURT BY THE PETITIONER.
## THIS PETITION WILL NOT BE ACCEPTED BY FAX, E-MAIL, OR U.S. MAIL.

I swear that the foregoing information is true and correct to the best of my knowledge. I understand that making a f
statement on this petition will subject me to criminal penalties.        Christina Depamphilis

12/28/16                                                              Plaintiff Signature
Date

        State of  N H        , County of  ROCK.

This instrument was acknowledged before me on 12/28/16 by Christina Depamphilis
My Commission Expires
Affix Seal, if any   A True Copy Attest:              Clerk of Court/Deputy Clerk/Justice of Peace/Notarial Officer

A39

A39

Case Name: <u>Christina DePamphilis v. Paul Maravelias</u>

Case Number: <u>473-2016-CV-00124</u>          PNO: <u>4731620124</u>

<u>STALKING FINAL ORDER OF PROTECTION</u>

## FINDINGS OF FACT
### Pursuant to RSA 633:3-a

Pursuant to RSA 633:3-a (I) a person commits the offense of stalking if such person is found to have engaged in any of the following acts.  The Court finds, by a preponderance of the evidence, that the defendant has committed the offense of stalking in that the defendant:

☑ Purposely, knowingly, or recklessly engaged in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear **[See specific findings of fact below]**;

☐ Purposely or knowingly engaged in a course of conduct targeted at a specific individual, which the actor knew would place that individual in fear for his or her personal safety or the safety of a member of that individual's immediate family **[See specific findings of fact below]**; or

☐ After being served with, or otherwise provided notice of, a protective order pursuant to RSA 173-B, RSA 458:16, or paragraph III-a of this section, or an order pursuant to RSA 597:2 that prohibited contact with a specific individual, purposely, knowingly, or recklessly engaged in a single act of conduct that both violated the provisions of the order and is listed in RSA 633:3-a II(a) **[See specific findings of fact below]**.

Specifically, the DEFENDANT committed the offense of stalking as follows:

**[The facts relied upon by the court to form the basis for its finding must be detailed below]**

The Defendant has been obsessed with the Defendant since she was 11 years old and he was 17. When she was 12 and he was 18 he drove her home and attempted to drop the other person off first but the Plaintiff refused; The Defendant testified that he loves her and would give his life to protect her. He waited until she turned 16 which he referred to as the "Age of Consent" to her Mother, offered her a brand new Mazzaretti. When the gift was rejected he mentioned he will wait until she is ready and be back when she is 18 years old. The level of obsession and Relentless pursuit of a girl beginning at the Age of 11 or 12 gives rise to reasonable fear. In addition, the demeanor of the Defendant during his testimony demonstrated his obsession for the Plaintiff, including his constant communication directly to the Plaintiff Commenting on her Mannerisms and Professing his Love For her.

_____2.7.16_____
Date

_____Ce_____
Signature of Judge

**Robert S. Stephen**
Print/Type Name of Judge

NHJB-2003-D (08/01/2015)

A40                                                                     A40

Robin E. Pinelle, Circuit Clerk
NH Circuit Court
10th Circuit – District Division – Derry
10 Courthouse Lane
Derry, NH 03038

June 25th, 2018

Paul Maravelias
34 Mockingbird Hill Rd
Windham, NH 03087

RE:   **Christina DePamphilis v. Paul Maravelias**
      **Docket No. 473-2016-CV-00124**

Dear Clerk Pinelle,

Enclosed please find Respondent's *Motion for Reconsideration* for filing in the above-referenced case.

Thank you for your attention to this matter.

Sincerely,

Paul J. Maravelias

CC: Simon R. Brown, Esq., Heather Iworsky

I, Paul Maravelias, certify that a copy of the present *Motion for Reconsideration* was forwarded on this day through USPS Certified Mail to Simon R. Brown, Esq., counsel for the Plaintiff, Christina DePamphilis, P.O. Box 1318, Concord, NH, 03302-1318.

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10th CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-124

Christina DePamphilis

v.

Paul Maravelias

**MOTION FOR RECONSIDERATION**

Paul Maravelias, the Respondent, in dutiful compliance with the customs necessitated by proper court etiquette, restrains his justified indignation and submits respectfully this Motion for Reconsideration of the Court's unlawful 6/15/18 Order extending the Stalking Order in the above-referenced case.

1. Christina DePamphilis (hereinafter, the "Petitioner") is a high school senior turning 18 this year. She has pictured herself consuming and/or under the influence of alcoholic and other controlled substances in social media artifacts submitted to this Court while complaining that Maravelias's non-threatening, lawful expressions made in private to other parties endanger her "personal safety". She filed a Stalking Petition against Mr. Maravelias in late 2016 after he respectfully invited her to dinner and never spoke to her ever again after the day of her rejection. She complained of his older age in the Petition and then pictured herself united to a 21-year-old boyfriend weeks later as a 16-year-old. At the 5/3/18 Hearing, she said she feels she is being "stalked" by Mr. Maravelias "every single day" because he continues to "mention [her and her legal action against him] to other people".

2. Paul Maravelias (hereinafter, the "Respondent") is a 23-year-old author and recent Ivy League graduate who is presently employed as a software engineer. The first time he asked a young woman

out to dinner, she filed a vindictive Stalking Petition weeks later against him because her father David

DePamphilis had an argument with him and was extremely angry. The Petitioner later had Mr.

Maravelias arrested for attempting to defend himself against her false accusations in her Stalking

Petition. To disprove her malignant claims about what he had actually said to her, he introduced a

sentimental, happenstance cell-phone audio recording he had made with a popular Android

smartphone app outdoors during his date proposal to her. Unbeknownst to Mr. Maravelias, the victim,

this is apparently illegal in New Hampshire and called "wiretapping". For context, unlike the "minor"

Petitioner, Maravelias has not had a drink in years, is chaste, and refrains from criminal perjury.

3. In a 6/15/18 Order signed by Judge John J. Coughlin, this Court extended Petitioner's Stalking Order.

A. THIS COURT'S FINDING THAT THE PETITIONER HAS FEARED "FOR HER PERSONAL SAFETY" IS
LAUGHABLY ABSURD, GIVEN HER DOCUMENTED CONDUCT OF CRUELLY BULLYING MR.
MARAVELIAS ON THE INTERNET WITH VULGAR GESTURES DURING THE PENDENCY OF HER
FRAUDULENT STALKING ORDER, IN A FAILED ATTEMPT TO GET HIM TO VIOLATE IT AND HAVE
HIM ARRESTED, SHOWING HER MALICIOUS BAD-FAITH AND FULL CONFIDENCE THAT HE IS A
NON-VIOLENT AND LEVEL-HEADED PERSON

4. Petitioner's testimony and Respondent's accepted exhibits in this case both established that the

Petitioner made a public social media post specifically directed at Respondent on 6/21/17.

5. Her inciting, harassing, and vulgar post against Mr. Maravelias pictured herself with her father and

21-year-old boyfriend, all three parties middle-fingering the camera to insult Mr. Maravelias that he

had failed to have a relationship with Petitioner and was then subject to her falsified restraining order.

6. At the Hearing, Petitioner also confessed to posting another image wherein her boyfriend addressed

Mr. Maravelias with incendiary remarks. This was after the Petitioner lied about having "fear" of him.

7. To put it lightly, this Court's conduct is shocking and reckless in condoning Christina DePamphilis's

and David DePamphilis's 1) willful legal abuse through a bad-faith Stalking Petition, 2) perjury about

having any "fear" of the Respondent, and 3) outright provocative bullying against Mr. Maravelias in

said social media post(s), by *actually granting* her Motion to Extend a Stalking Order wherein the

roles of victim and perpetrator are undeniably reversed.

**A43**

2

**A43**

8. This Court turns a blind eye to Petitioner's public interpersonal terrorism against Mr. Maravelias on social media and her documented illegal acts (such as her underage alcoholic intoxication pictured in Respondent's exhibit(s) and even *in her own*), but has no qualms about issuing a baseless extension against Respondent even when the "personal safety" of the Petitioner was clearly never threatened.

9. This Court then dares the audacity to uphold its recent ruling inculpating *Mr. Maravelias of "bad faith" conduct* in his honest Stalking Petition against David DePamphilis, in an Order dated 6/14/18[1].

10. This Court has woefully calpestated the natural rights of Respondent through inexcusable, biased conduct and should expect to be sanctioned accordingly by higher state and/or federal authorities.

<u>B.</u> THE PETITIONER, CHRISTINA DEPAMPHILIS, HAS ABSOLUTELY NO CREDIBILITY, AS MARAVELIAS IRREFUTABLY DOCUMENTED HER DELUSIONAL, REVISIONIST MEMORY AND/OR OUTRIGHT WILLFUL LYING AT MULTIPLE OCCASIONS DURING THE HEARING; THE COURT THEREFORE ERRS TO RELY UPON HER MATERIAL REPRESENTATIONS

11. This Court granted an extension on a Stalking Order in which the Petitioner's lies or false representations of fact, in whole or in part, are beyond dispute. Respondent submitted her testimony transcript from the 1/5/17 Hearing wherein she admitted to falsely inserting words into Maravelias's mouth, <u>confessing he never said the phrase "you will learn to love me" as she alleged in her Petition.</u>

12. The Court also saw a cell-phone video of a 2013 Turkey Trot outdoor event showing Petitioner walking across a crowd to interrupt Respondent's conversation with friends and say hello to him, when her false Petition perjuriously claimed that "*he* came up to [*her]*" and made her "scared".

13. This Court sat back and watched as the Petitioner perjured during the Hearing, as Maravelias pointed out in testimony, yet still granted her abusive extension. The Petitioner claimed the sole purpose for her demeaning middle-finger post against Mr. Maravelias was "to let him know" that she knew he could view the account. But, Maravelias then revealed a posting from her same social media account two days prior to the 6/21/17 vulgar post, which had *already directly identified* Maravelias on 6/19/17.

---

[1]Maravelias's unnecessarily polite Motion to Reconsider in that matter had documented clear facts and points of law overlooked by this Court's oppressive award of attorney's fees, even to the extent that one of the granted expenses was dated from *months before Maravelias even filed his truthful Stalking Petition*. That this Court would wholly ignore this fact and all others raised in a knee-jerk, thoughtless, nondescript, and hastily-scribbled rejection of said motion in entirety is reminiscent of its reckless finding in the instant case. Clearly, this Court automatically disregards all of Maravelias's presented facts and arguments, and is but a slave unto the contrived optics of the side flashing a 17-year-old female before the Court and whining baselessly about "victimization". Thus, judicial malpractice has obstructed a fair outcome for Mr. Maravelias.

14. The 6/19 exhibit (which Petitioner didn't know Respondent had) also shows her dishonesty in claiming to be the "only one who knew" to whom the vulgar gestures were directed. Her boyfriend addressed Maravelias in her 6/19 post; therefore, he and, by extension, David DePamphilis, all knew exactly whom they were bullying in the 6/21/17 post[2]. For this Court to validate a bold liar of such turpitude by extending her falsified order against the victim is shameful, rash, and utterly emetic.

15. This Court's Order has thus endorsed a felony crime under the perjury statute (RSA 641:1): willful misrepresentation of fact in a protective order case. Ergo, it is noted that this Court does not operate whatsoever according to the laws of the land, but rather only to its arbitrary and capricious diktats[3].

C. THE COURT'S ORDER IS BLATANTLY ERRONEOUS INSOFAR AS IT RELIES UPON A WRONG FINDING THAT RESPONDENT HAS AN "OBSESSION" WITH THE PETITIONER "TO THIS DAY", WHICH NEGLIGENTLY IGNORES A MOUNTAIN OF EVIDENCE AND TESTIMONY TO THE CONTRARY CONVENIENTLY IGNORED BY THE COURT'S ORDER

16. The Court cites Respondent's wrongly-pluralized "letters" (Maravelias's 11/2017 reply to Attorney Brown's legal threat) and "emails" (Maravelias's private complaint email to an honor society) as indications of a "strange, perverse and unhealthy obsession" he allegedly has for the Petitioner.

17. This wanton act of libel against Mr. Maravelias is highly disturbing, considering that both referenced communications 1) enthusiastically declared his *disgraced disinterest* in the Petitioner, 2) were made to parties *other than* Petitioner, and 3) fulfilled a legitimate purpose of responding to a legal threat and complaining to a public honor society in a *private email* to a close mentor of his, respectively.

18. The Court unethically abuses its judicial immunity in libeling Maravelias in this fashion, misconstruing his rightful "letter" and "email" completely out of context as "obsessive" acts. The

---

[2]Respondent also noted for the Court that Christina DePamphilis deleted her public social media account containing these posts mere days before filing her Motion to Extend on 1/5/18. Also, the Court's "obsession" finding attempts to make a medical, psychological finding when the testimony of an expert in the field would be necessary to sustain a finding of "obsession".

[3]This Court's illegal misconduct with Stalking Orders is hardly new or unusual. For instance, this Court recently granted a Stalking Final Order of Protection in *Mary Peterson v. Richard Garrigus* (431-2018-CV-0089) on 6/4/18 with a written Order containing absolutely no specific findings of fact articulating a "stalking" "course of conduct" whatsoever. This flies in the face of judicial requirements imposed by the NHSC. (*See* Fisher v. Minichiello, 155 N.H. 188, 193, 921 A.2d 385 (2007) "We have interpreted RSA 633:3-a, II(a), since it 'contains an enumerated list of prohibited conduct,' to require trial courts to make specific findings as to the course of conduct warranting a final stalking order.", South vs. McCabe, 943 A.2d 779 (2008) "The trial court failed to make such findings in this case. The final stalking order ... gives no indication of either the facts or the reasoning upon which the trial court based its decision. Both this court and the respondent are thus left to speculate as to the precise nature of the trial court's findings, and whether sufficient evidence was in fact introduced to support them. We therefore vacate the final stalking order and remand. Kiesman, 156 N.H. at 482, 937 A.2d at 919.")

record reflects they were actually *self-defensive expressions* begotten of the same false accusation of "obsessive", stalking behavior. Given these outrageous comments in its finding, it follows that the Court too has a "stalking obsession" with Mr. Maravelias, since it has engaged in the exact same act as his "letter" and "email": *i.e.,* writing in a detached, objective fashion about someone's perceived wrongdoing. If such acts of speech signify a "stalking obsession", then everyone is a "stalker".

19. Judicial estoppel prevents Petitioner from stating Respondent has an ongoing "obsession", since even her counsel termed it a "previous obsession" in a recent filing. Therefore, to fuel its verbal posturing against Mr. Maravelias in its finding, this Court asserts an unspecified liberty to make representations against him even beyond what Petitioner and counsel themselves alleged.

20. Respondent also testified amply to his disinterest in his legal abuser, the Petitioner, disclosing that her recent corpulence inhibited his ability *to even recognize her* when seen in the Court parking lot.

D. THE COURT'S WRITTEN FINDINGS OF "REASONABLE FEAR" AND AN "OBSESSION" CONFLICT WITH ITS ACCURATE STATEMENTS IN THE HEARING AND THUS FORM AN ABUSE OF DISCRETION

21. On 6/8/18, the Court accurately remarked while listening to Respondent's closing argument,

> "You indicated that you don't want to have anything to do with the family, you don't want to have anything to do with this young woman, and you just want to be left alone and you're going to leave her alone - at least that's my impression, and that's what you've indicated." (Hon. John Coughlin, 12:03:02pm 6/8/18)

22. But, on 6/15/18, the Court impetuously defamed Maravelias with the following amplified verbal posturing in its Order: "[Respondent's acts of private speech] clearly demonstrate a strange, perverse and unhealthy obsession by the Petitionee towards the Petitioner which … continues to this day."

23. This inconsistency is confusing and inexplicable. The Court's palpably insincere self-contradiction regarding a "present" "obsession" by Respondent must therefore be estopped, and its Order vacated.

24. The same is true concerning the Order's unsupported finding of "reasonable fear" given the Court's following 5/3/18 remark during cross-examination of Petitioner:

> "I think you had a good point there in terms of posting this, and where it was posted, and the circumstances, and the context, and whether or not she felt a concern for her personal safety or well-being." (Hon. John Coughlin, 2:42:57pm 5/3/18)

E. THE COURT WRONGFULLY BASED ITS EXTENSION DECISION ON PHOTOGRAPHS PETITIONER INTRODUCED OF RESPONDENT'S PRIVATE SENTIMENTAL ARTIFACTS IN HIS BEDROOM FROM YEARS AGO WHICH IN FACT DEPICTED HIS LONG-PRIOR ATTRACTION THERETO, BEFORE HER

LEGAL ABUSE OF THE VICTIM WITH A FALSE STALKING PROTECTIVE ORDER, AND NOT AT ALL NOT DURING THE PENDENCY OF THE STALKING ORDER

25. On 6/8/18, after the Petitioner had rested, she submitted four photographs of Respondent's private interior bedroom and office space, dated 4/6/17.

26. Respondent testified that the pictures snapshotted a state of existence from *prior to* his victimization in the false "stalking" matter, since <u>he had been living at college and not in the pictured space</u> substantially or entirely from late December 2016 through April 2017.

27. That the Court would bestow validation upon the Petitioner's bad-faith, malicious attempt to humiliate Mr. Maravelias with such irrelevant intrusions of his privacy by daring to libel him a further "stalker" just because he once put a motivational quote on his wall constitutes a strange, perverse, and unhealthy exercise of discretion by this Court in clear prejudice of the Respondent.

28. Respondent is victim of a corrupt judicial tyranny which violates his Fourteenth Amendment right to privacy by injunctively penalizing him for exercising his full right to have "coke bottles" in his room and "motivational phrases" on his wall, <u>even regardless of these happenstances' past-nature</u>.

29. In the past year, Christina DePamphilis has 1) incessantly, falsely complained to the police to try to get Maravelias arrested, 2) illicitly collected pictures of Maravelias's private bedroom without his knowledge, and 3) cruelly targeted Maravelias with vulgar, incitative gestures on the web – all while Maravelias remained silent to her and ignored her attempts for attention. Who is the "stalker"?

<u>F.</u> THE SAID PHOTOGRAPHS WERE UNLAWFULLY OBTAINED BY WINDHAM POLICE IN TORTIOUS EXCESS OF THE LIMITED TERMS OF THE SEARCH WARRANT GRANTED IN THE AUDIO RECORDING MATTER IN WHICH PETITIONER FURTHER ABUSED MR. MARAVELIAS; THE COURT MAY THEREFORE NOT LAWFULLY RELY UPON THEM

30. The said photographs were taken by Windham Police during an unconstitutional raid on Maravelias's house to seize his digital property for evidence of his banal sentimental cell-phone recording.

31. The terms of the search warrant were highly specific. Taking pictures of unrelated sentimental objects/fixtures on the Respondent's bedroom wall grievously exceeded the scope of the warrant and violated Respondent's Fourth Amendment and Fourteenth Amendment rights. The exclusionary rule enjoins this evidence, taken illegally by a *government agency*, from being used against Respondent.

G. THE COURT'S GRANTING PETITIONER'S EXTENSION MOTION IS ERRONEOUS SINCE HER MOTION IS PATENTLY UNREASONABLE, AS RESPONDENT'S ALLEGED CONDUCT, EVEN IF PROVEN, DOES NOT THREATEN HER "SAFETY OR WELL-BEING"

32. Petitioner's Motion to Extend is rooted in her complaint that Maravelias sent an email to one of his teachers and responded to an attorney's threatening letter, claiming that she is a "disreputable whore".

33. To find that Respondent's provoked, offensive, and accurate language to a person who is not the Petitioner could possibly constitute a threat to her "safety or well-being" is groundless and asinine.

H. THE COURT'S ORDER EGREGIOUSLY VIOLATES RESPONDENT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS SINCE IT RELIES UPON HIS TWO ACTS OF CONSTITUTIONALLY PROTECTED, LAWFUL SPEECH MADE FOR A LEGITIMATE PURPOSE

34. The Respondent denied authorship of Petitioner's Exhibit 1, which was not sent to Petitioner's whole "family" but to David DePamphilis. Respondent's only acts of speech cited in the Court's order for which he is actually responsible were made for legitimate, constitutionally valid purposes.

35. *I.e.*, Respondent's 1) response to Attorney Brown's threatening letter and 2) private email to his high school mentor who also runs the public honor society are acts of free speech lying entirely outside the narrow categories of First Amendment protection exceptions, such as "fighting words" or obscenity.

I. THE COURT'S ORDER IS NULL AND VOID SINCE RESPONDENT WAS NOT GIVEN A FAIR TRIAL

I. (a) THE COURT ILLEGALLY LIMITED HIS RIGHT TO VIDEOTAPE THE HEARING AND ENABLED PETITIONER THEREBY TO PERSIST IN HER DISHONEST, BAD-FAITH CONDUCT AGAINST THE VICTIM

36. In keeping with its known habit of delegating unto itself powers found nowhere in the law, this Court granted the Petitioner's obscurantist motion to limit Respondent's right to videotape the entirety of the public hearing on Petitioner's Motion to Extend the Stalking Order in this case.

37. Respondent had shown the Court its own rule (District Court Rule 1.4) which permits any person to "photograph, record and broadcast all court proceedings that are open to the public" and gave "advance notice" as required. The rule further states in 1.4 (e), "no court or justice shall establish notice rules, requirements or procedures that are different than those established by this rule."

38. Since this Court operates entirely outside the boundaries fixed by written rules and laws, it nonetheless granted Petitioner's request to partially limit Respondent's right to videotape, prohibiting that the "minor" Petitioner be videotaped. The Court endorsed her pictured underage illegal substance

consumption and online criminal harassment (RSA 644:4) of Maravelias by granting the extension, yet made sure to protect her face from being videotaped *in her own open-to-the-public* Hearing. <u>This error substantially interfered with Maravelias's right to a fair trial, since it enabled Petitioner to persist in her storied dishonesty while testifying, without the accountability of being videotaped.</u>

<u>I. (b)</u> THE COURT DISOBEYED THE WITHIN-30-DAYS HEARING REQUIREMENT OF 633:3-A III-c

39. The Petitioner filed her Motion to Extend on 1/5/18, with the temporary extended Stalking Order, pending hearing, issued on 1/12/18 by Judge Sharon DeVries. Respondent objected, and a Hearing was finally scheduled for Thursday 2/15/18 – <u>34 days thereafter</u>. Furthermore, the Court did not actually afford Respondent an opportunity to hold the Hearing until 2/20/18 – <u>39 days after extension</u>.

40. Since the Court violated Respondent's state and federal constitutional rights to a speedy trial, and even violated the specific statutory requirement in RSA 633:3-A III-c, the extended Order is null and void. (*see Id.*, "A defendant shall have the right to a hearing on the extension of any order under this paragraph to be held within 30 days of the extension.")

<u>J.</u> THE COURT MAY NOT EXTEND AN ALREADY-ILLEGAL STALKING ORDER ISSUED IN PLAIN-ERROR CONTRAVENTION OF PERTINENT STATUTORY LAW AS INTERPRETED BY THE SUPREME COURT; THE COURT FAILED TO EVEN RULE ON A MOTION TO DISMISS ON THIS ISSUE

41. As documented in Respondent's ignored 3/29/18 Motion to Dismiss, the original Stalking Order was issued in violation of the advance notice requirement of RSA 173-B:3 as clarified by NHSC case law.

42. Thus, it is unfair to subject Respondent to a different and lower standard of Stalking Order extension (633:3-a III-c.) predicated on a valid initial finding of stalking *in principio* (a higher standard under 633:3-a III-a.) when such an original finding of stalking was never lawfully made in this matter.

<u>K.</u> THIS COURT'S ACT OF IGNORING RESPONDENT'S TWO MOTIONS IN THIS CASE AND NEGLIGENT FAILURE TO SPECIFICALLY ADDRESS HIS ARGUMENTS AND EVIDENCE IN ITS FINDING CONSTITUTE A CLEAR VIOLATION *INTER ALIA* OF MARAVELIAS'S FOURTEENTH AMENDMENT SUBSTANTIVE AND/OR PROCEDURAL DUE PROCESS RIGHTS

43. Respondent filed a Motion to Dismiss Extension and Vacate Stalking Order dated 3/29/18 and a Motion for Discovery dated 5/29/18 in the case at bar. The opposing party filed reply briefs to both motions. The Court heard oral argument on these motions from both parties on 6/8/18 at the Hearing.

44. The Court's 6/15/18 Order granting extension completely ignores these motions, as well as the legal issues they raised. The Court simply cast them out into the wind, refusing to rule on them either way.

45. In neglecting to perform its required "ministerial act" of ruling on critical motions, the Court violated Maravelias's federal due process rights and state constitutional right "to be fully heard in his defense".

L. THE STALKING STATUTE IS FACIALLY INVALID AND/OR INVALID AS APPLIED ACCORDING TO THE STATUTORY OVERBREADTH AND/OR VAGUENESS DOCTRINES, AS THE COURT BASELESSLY FOUND LAWFUL SPEECH TO THIRD PARTIES TO CAUSE "REASONABLE FEAR" AND THREATEN PETITIONER'S "SAFETY AND WELL-BEING"

M. THE COURT'S FINDING THAT RESPONDENT'S COMMUNICATIONS CREATED "REASONABLE FEAR" IS INCORRECT AND/OR INVALID, SINCE RESPONDENT NEVER EXPLICITLY THREATENED PETITIONER NOR IMPLIED HARM TO ANYONE, AND SINCE NONE OF HIS CONDUCT WAS OBJECTIVELY LIKELY TO BE FOLLOWED BY VIOLENCE OR CRIME

N. PETITIONER'S NEW SURPRISE-ACCUSATION OF "OBSESSIVE" CONDUCT WITH THE 4/6/17 PICTURES APPEARED NOWHERE IN HER EXTENSION MOTION; THE COURT AGAIN VIOLATED RESPONDENT'S RIGHT TO ADVANCE NOTICE OF ACCUSATIONS BY RELYING ON THEM

O. THIS COURT'S ORDER IS INVALID INSOFAR AS IT IS PUNCTUATED BY AN ENTIRELY UNSUPPORTED *"SOLE PURPOSE OF HARASSING AND STALKING THE PETITIONER"* COMMENT WHICH IS BUT A PUSILLANIMOUS ACT OF VERBAL POSTURING TO MAKE THE OUTRAGEOUS EXTENSION ORDER SOUND REASONABLE; THE COURT OPERATES WELL OUTSIDE ITS GENERAL EQUITABLE POWERS IN SLANDERING MR. MARAVELIAS, THE VICTIM, AS ENGAGED IN THE CRIME OF "STALKING" WITH SUCH GRATUITOUS *OBITER DICTA* EXPRESSED ALONGSIDE NO FACTUAL BASIS THEREFOR WHATSOEVER

46. This illogical comment in the Court's Order would have one believe that Mr. Maravelias's choice *to respond to Attorney Brown's letter threatening him with a lawsuit* was not a "legitimate" "behavior", and that said act of responding to the threatening letter shows a "sole purpose" of "stalking" the daughter of Attorney Brown's client. While such a creative endeavor of absurdity might be humorous elsewhere, it is right-appalling within a context where Respondent's basic liberties are at stake.

47. This Court's automatic, reflexive rejection of any and all of Mr. Maravelias's evidence or arguments *in toto* against Petitioner and/or her father in its findings has become an irrefutable pattern, especially given its unsustainable exercise of discretion in the related Petition against Mr. DePamphilis which completely ignored all of Mr. Maravelias's truthful evidence (testimony, letters, and pictures) and instead asserted an imagined, alternate reality wherein Maravelias gave "no credible evidence".

48. This Court attempts to obfuscate such behaviors by acting in a fair, impartial, and permissive fashion during public hearings to admit all sorts of evidence it later categorically discards when making findings, pretending such evidence never existed and neglecting its duty to rule on key Motions.

49. Seen in conjunction with the baseless defamatory comments of fine-tuned verbal posturing in this Order, clear signs of systematic judicial corruption are noted. This Court, an office whose duty is the impartial arbitration of justice, has cowardly prostrated itself before the authoritarian altar of false victim advocacy and feminist incapacity to favor a male *pro se* Respondent against a younger lawyer-represented female Petitioner, even with a mountain of irrefutable facts and laws so necessitating.

WHEREFORE, the foregoing compels the Respondent to pray this Court:

I.      Grant this Motion;

II.     Reverse its 6/15/18 Order granting Petitioner's Motion to Extend Stalking Order;

III.    Painstakingly review legal theory and case law in this area to appreciate the severity of infringement against Respondent's free speech rights which said Order does impose until corrected, with the suggested literature[4,5,6], to prevent further unconstitutional errors; and

IV.     Issue an Order of declaratory relief apologizing to Mr. Maravelias for the baseless defamatory comments against him in this Court's 6/15/18 Order and recanting the same.

Signed and submitted,

PAUL J. MARAVELIAS,

*in propria persona*

June 25th, 2018

---

[4] Volokh, Eugene. "One-to-One Speech vs. One-to-Many Speech, Criminal Harassment Laws, and Cyberstalking." *Nw. UL Rev.* 107 (2012): 731.
[5] Buchhandler-Raphael, Michal. "Overcriminalizing Speech." *Cardozo L. Rev.* 36 (2014): 1667.
[6] Volokh, Eugene. "The Freedom of Speech and Bad Purposes." *UCLA L. Rev.* 63 (2016): 1366.

**A51**                                                                    **A51**

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10TH CIRCUIT - DISTRICT DIVISION - DERRY

Docket No. 473-2016-CV-124

Christina DePamphilis

v.

Paul Maravelias

**PETITIONER'S OBJECTION TO RESPONDENT'S MOTION FOR RECONSIDERATION**

NOW COMES the Petitioner Christina DePamphilis, by and through her attorneys, Preti Flaherty PLLP, and respectfully submits the within Objection to Respondent's Motion for Reconsideration and, in support thereof, states as follows:

1.      In a June 15, 2018 Order, the Court granted Petitioner's Motion to Extend the Stalking Final Order of Protection in this case until February 5, 2019.

2.      Respondent subsequently filed a Motion for Reconsideration, seeking the Court to reverse its decision on Petitioner's Motion to Extend.

3.      Under Circuit Court Rule 3.11(E)(1):

"A motion for reconsideration or other post-decision relief...shall state, with particular clarity, points of law or fact that the court has overlooked or misapprehended and shall contain such argument in support of the motion as the movant desires to present..."

4.      In granting Petitioner's Motion to Extend the Stalking Final Order of Protection, the Court neither overlooked nor misapprehended any points of law or fact.

5.      The Court heard extensive testimony from both Petitioner and Respondent over three days and had the opportunity to assess the credibility of the parties. The Court's Order is well-reasoned and documents ample "good cause" for the extension.

13170335 1

**A52**                                                            **A52**

6.      Despite the soundness of the Court's ruling, Petitioner has filed the instant motion, which is disrespectful to the Court; is riddled with inaccuracies and untruths; and does not demonstrate that the Court overlooked or misapprehended any fact or the law.

7.      Respondent relies upon the record of the hearing which overwhelmingly supports the Court's evidentiary rulings and findings that Respondent's actions "clearly demonstrate a strange, perverse and unhealthy obsession...towards Petitioner which appears to have begun when the Petitioner was approximately 11-12 years old and the (Respondent) was approximately 17-18 years old and continues to this day," and that Petitioner has a reasonable fear for her personal safety and that of her family members.

8.      In this Objection, Petitioner amplifies two points:

A. **The Court's Order Prohibiting Respondent from Videotaping the Teenage Victim Was Appropriate.**

9.      Respondent claims that the Court illegally limited his right to videotape the hearing and enabled Petitioner to persist in her "dishonest, bad-faith conduct against (him)." *See* Motion ¶¶ 36-38. This assertion is baseless.

10.     As argued in her February 20, 2018 Objection to Respondent videotaping her at the hearing - which was granted by the Court - Petitioner is a 17-year-old high school student. The record of the underlying stalking hearing reflected that Respondent was obsessed with Petitioner, professed his love for her, and tried to give her an expensive sports car on her sixteenth birthday. His testimony at the 2017 stalking hearing reflected an alarming level of infatuation and obsession for Respondent, a high school sophomore at the time.

11.     Since the Stalking Order was issued in February 2017, Respondent's obsession with Christina has persisted, but now in an even more alarming and sinister manner. Respondent has issued writings to Christina's parents, her teachers, and others which directly and profanely

**A53**                                                                                              **A53**

impugned Christina's character with bizarre sexual references and reflected an obvious hostility that is objectively frightening to her.

12.     As the Court likely recognized, Respondent's request to both audio and videotape the hearing, which would have necessarily included the filming of the teenage Petitioner, would have allowed Respondent to further intimidate and victimize her.  Upon information and belief, Respondent's intention was to disseminate the video he collected in these matters on the Internet as part of his continuing campaign to harass the DePamphilis family. [1]  It also would have allowed him to retain footage of the teenage Petitioner for his own personal devices, which is inconsistent with the terms and purpose of the stalking order of protection she sought to extend.

13.     As the Motion to Extend hearing was audio-recorded by the Court, it was not necessary or appropriate for Respondent to videotape the teenage victim, whom he has been found to have stalked, so that he could possess and retain footage of her which he could use for his own devices, including dissemination on the Internet and social media.

14.     In a stalking case, prohibiting the filming of the victim - especially a young petitioner seeking to extend the protective order (as here) - by a person found by the Court to have stalked her, was an appropriate restriction.  Such a restriction "advances an overriding public interest that is likely to be prejudiced if the relief is not granted." *See* Circuit Court Rule 1.4(f).  The relief sought also was no broader than necessary to protect that interest, and no reasonable less restrictive alternatives were available to protect the interest. *See id.*

15.     Respondent was not prejudiced by the Court's ruling.  He has access to the Court's audio record of the hearing and transcripts thereof, if he chooses to order them. Respondent also was permitted to create his own audio-recording of Petitioner's testimony.

---

[1] In postings on Respondent's company's business forum, Respondent boasted about posting the video to YouTube (http://wsv3.com/forums2/viewtopic.php?f=8&t=1929&p=18222#p18222).

13170335.1

**A54**                                                                 **A54**

Accordingly, his claim that the Court's order "enabled Petitioner to persist in her storied dishonesty while testifying without the accountability of being videotaped" by her stalker makes no sense. Her testimony is preserved and available to Respondent.

### B. The Court Did Not Violate the Hearing Requirements of RSA 633:3-A III-c.

16.     Respondent also claims the Stalking statute was not complied with and his constitutional rights to a speedy trial were violated because a hearing on the extension of the stalking order was not conducted within 30 days of the extension. Motion ¶¶39-40.

17.     This argument fails for numerous reasons. As a preliminary matter, there is no speedy trial right in non-criminal cases, and dismissal of the case is not a recognized remedy for any alleged technical violation of the statute. *See* RSA 633:3-a. Respondent, moreover, waived any right to complain by not raising this issue before the hearing was conducted.

18.     RSA 633:3-a III-c states that a "defendant shall have the right to a hearing on the extension of any order under this paragraph to be held within 30 days of the extension."

19.     The Salem District Court (*DeVries*, J.) extended the stalking order in an order dated January 12, 2018, to which Respondent objected. Because Judge Stephen in the Salem District Court had recused himself from hearing matters related to this case earlier in January, this matter was transferred to the Derry District Court, which scheduled the extension hearing for February 15, 2018.

20.     The related case of *Paul Maravelias v. David DePamphilis* (Docket No. 473-2017-CV-00150) also was scheduled for February 15, 2018 and, without objection from Respondent, was heard first. The *Maravelias v. DePamphilis* hearing was conducted on February 15, 16, and 20 without Respondent ever raising any issue about the extension hearing not being held in a timely manner.

13170335 1

**A55**

**A55**

21.     The *Maravelias v. DePamphilis* case concluded on February 20 and was ultimately decided in Mr. DePamphilis' favor.  As the extension hearing also was scheduled for February 20, the Court offered to begin that hearing.  Respondent, however, <u>declined</u>.  Thus, because Respondent declined to go forward on February 20, the extension hearing was rescheduled to May 3, 2018 <u>without objection</u>, and conducted May 3, May 4, and June 8, 2018.

22.     On these facts, Respondent waived any argument that the statute was not complied with; a litigant cannot decline to raise an issue, proceed with the hearing, and object only after he fails to prevail at that hearing.  *See Milliken v. Dartmouth-Hitchcock Clinic*, 154 N.H. 662, 663 (2006) ("[g]enerally, a [party] must make a specific and contemporaneous objection during trial to preserve an issue for appellate review.").

23.     For this reason and the fact that dismissal is not a remedy for any alleged deviation from the statute, Respondent's timeliness argument should be rejected.

WHEREFORE, for the reasons set forth above, Petitioner respectfully requests this Honorable Court to:

A.     Deny Respondent's Motion for Reconsideration; and

B.     Grant such other relief as may be just and proper.

13170335.1

**A56**

**A56**

Respectfully submitted,

CHRISTINA DePAMPHILIS

By her attorneys,

PRETI, FLAHERTY, BELIVEAU &
PACHIOS, PLLP

Dated: July 2, 2018                    By: _____
                                            Simon R. Brown, NH Bar #9279
                                            P.O. Box 1318
                                            Concord, NH 03302-1318
                                            (603) 410-1500

## CERTIFICATE OF SERVICE

I hereby certify this 2nd day of July 2018 a copy of the foregoing *Petitioner's Objection to Respondent's Motion for Reconsideration* has been forwarded via U.S. First Class Mail, postage pre-paid, to Respondent, Paul Maravelias, *pro se*.

_____
Simon R. Brown

6                                          13170335.1

**A57**                                                                    **A57**

July 5th, 2018

Robin E. Pinelle, Circuit Clerk
NH Circuit Court
10th Circuit – District Division – Derry
10 Courthouse Lane
Derry, NH 03038

Paul Maravelias
34 Mockingbird Hill Rd
Windham, NH 03087

RE:   **Christina DePamphilis vs. Paul Maravelias**
       **Docket No. 473-2016-CV-00124**

Dear Clerk Pinelle,

Enclosed herewith, please find Respondent's:

- *Reply to Petitioner's Objection to Respondent's Motion for Reconsideration,* and
- *Motion to Strike*

for filing in relation to Petitioner's 7/2/18 *Objection to Respondent's Motion for Reconsideration* in the above-referenced case.

Thank you for your attention to this matter.

Sincerely,

Paul J. Maravelias

CC: Simon R. Brown, Esq.

I, Paul Maravelias, certify that a copy of the present *Reply to Petitioner's Objection to Respondent's Motion for Reconsideration and Motion to Strike* was forwarded on this day through USPS Certified Mail to Simon R. Brown, Esq., counsel for the Petitioner, P.O. Box 1318, Concord, NH, 03302-1318.

**A58**                                                                                                  **A58**

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-00124

Christina DePamphilis

v.

Paul Maravelias

## REPLY TO PETITIONER'S OBJECTION TO RESPONDENT'S MOTION FOR RECONSIDERATION

NOW COMES the Respondent, Paul Maravelias, and replies to Petitioner's *Objection to Respondent's Motion for Reconsideration* dated 7/2/18. The Respondent prefaces this reply with his apologetic regret for the Court regarding the volume of litigation paperwork in this case which it must review. However, this is the sole fault of the Petitioner and her ongoing bad-faith conduct of legal abuse and misrepresentation of crucial facts in filings, which necessitate correction for defense of Respondent's besieged rights. In support hereof, he represents as follows:

1.   Petitioner's objection challenged two of Respondent's legal arguments within Heading I. of his Motion for Reconsideration. Assuming that Petitioner's objection to said arguments is sound, the Court should still grant Respondent's Motion for Reconsideration and vacate the Stalking Order, due to his other valid, uncontested legal arguments in Headings A, B, C, D, E, F, G, H, J, K, L, M, N, and O from the same Motion for Reconsideration.

2.     Respondent's two arguments in Heading I. of his Motion for Reconsideration were nonetheless valid, and Petitioner commits various glaring errors while contesting them.

A. **The Court's Order Limiting Respondent's Right to Videotape the Entirety of the Public Hearing Was Illegal, as Respondent's Motion for Reconsideration Accurately Argues**

3.     Paragraphs 10 through 14 of Petitioner's objection are unoriginally self-plagiarized straight from her identical 2/20/18 Motion opposing the video recording and contribute very little to the legal question at bar.

4.     Paragraph 10 of Petitioner's objection filing does well to regurgitate the familiar verbal contrivances of obscurantist posturing regarding the "minority" of the Petitioner, the "infatuation" Respondent had had for her two whole years ago, and the fact that she had been a "high school sophomore" two years ago.

5.     However, these extraneous details are relevant to a focused legal question on whether the Court violated a public recording right only in the Petitioner's delusional fantasyland.

6.     Petitioner then asserts that videotaping the full Hearing, including her, would have "intimidated and victimized her".

**(i) Christina DePamphilis Claims She Would Have Been "Intimidated and Victimized" to Have Been Recorded at Her Own Public Hearing Where She Chose to Accuse Paul Maravelias of Stalking**

7.     Petitioner fails to explain why the lawful, routine condition of being video recorded in a public building (something ubiquitously performed in everyday modern society, whether on municipal security cameras, shopping mall/storefront cameras, social usage of cell-phones, etc.) causes her to be "intimidated or victimized".

8.     Maravelias accurately inferred for the Court during the Hearing that Christina DePamphilis's confusing sensitivities regarding his recording *her own accusatory Hearing* betokened

a manifest indication of bad-faith conduct: that she is a false-accuser, knows it, and is ashamed of her abuse of Mr. Maravelias – and wants to keep it as hidden from the public eye as possible.

9.    However, the question of whether or not being recorded at someone's own public court hearing causes them to feel "intimidated and victimized" is still completely irrelevant. The legal error Maravelias's Motion for Reconsideration raised did not have anything to do with the Petitioner's feelings. It was a question of law and court rules, and the Petitioner's personal feelings sadly are not relevant. Thus, the remainder of Petitioner's objection is scrutinized for any actual legal arguments against the validity of Respondent's argument(s) concerning this question.

### (ii) Christina DePamphilis Claims Maravelias Sharing the Recording of Her Own Court Hearing Against Him is "Harassment" of Her Family

10.    The Petitioner then claims in Paragraph 12 that Maravelias posting a recording of the Hearing on the internet is "harassing" of "the DePamphilis family".

11.    The Hearing in question is a court case in which Christina DePamphilis attempts to extend a Stalking Order, which Maravelias has long-maintained was begotten of her perjury in 2017.

12.    The Hearing is already fully public, audio recorded, and open for attendance by any members of the general public. Her statement that sharing a recording of said Hearing is "harassment" therefore makes absolutely no sense. That is, unless if viewed in connection to her malicious bad-faith conduct of woeful legal abuse against Mr. Maravelias. Then it makes perfect sense.

13.    Christina DePamphilis evidences her own obsessive, stalking-type behaviors against Mr. Maravelias in this section of her filing: she includes a footnote to Mr. Maravelias's private business software product online support forum, which requires user registration to participate. She links to Maravelias's post and falsely claims that he "boasted about posting the video to YouTube". The full text of Maravelias's referenced-by-Petitioner post is as follows, and mentions "YouTube" nowhere:

"[quote="HomeTownCincy"]I knew I liked you guys!  :D NRA instructor here, certified many people for CCW licenses. Good to know some more fellow weather people that also have a knack for freedom.[/quote]

Please pray for my besieged rights to be restored to me expeditiously, along with my 2 firearms stolen by the Windham, NH oath-breaker thug police. Since December 2016 I've been dealing with a psycho family in town and their false-accusing pig daughter (first girl I ever asked on a date - big mistake) who have since been able to strip me of my firearms by perjuriously whining about "stalking" and getting a criminally falsified restraining order against me (see other thread I made).

This is how severely leftists and feminists have corrupted our system of laws: if I had shot someone dead in cold-blood, it would have rightly been <u>weeks or months</u> since the criminal system <u>proved</u> me guilty of a crime and formally deprived me my right to arms through due process of the law after a proved felony conviction of homicide.

By comparison, in the civil court (technically non-criminal) "protective order" bullshit system, this one sore vindictive man in town was able to have his fat daughter whine about "fear" in a 4-page "stalking petition" containing outrageous and unverified lies against me, and <u>6 mere hours later</u> cops came to my house to seize firearms <u>without any due process whatsoever</u>, or even any accusation whatsoever that I'd committed <u>any</u> crime (just typical whining-BS about "fear", such as, "In summer 2016 I was at Paul's house for his brother's graduation party and he was looking at me in his backyard" - I kid you not).

The whole experience has me so infuriated that I'd possibly like to change career paths down the road to fight this demented bullshit however I can, and have freedom back at least in New England. Moral of the story is to steer-clear of neurotic feminists and modern women as much as possible. I'm only 22, so it is particularly sad from my perspective to watch the sort of degenerative witch-hunt hatred continuously systematized into a cultural attack on any sort of appropriate social expression of male sexuality (such as asking for a date). I'll think twice before I ask a girl out to dinner again, and that's coming from a decently successful and physically attractive (if I do say so myself) young man. Sad time for America." – Maravelias's private 5/16/2018 post at http://wsv3.com/forums2/viewtopic.php?p=18222#p18222

14.   Thus, the Petitioner lied to this Court in her 7/2/18 filing when claiming Respondent mentioned "YouTube" in his post at the provided URL. He mentioned "YouTube" at the court hearing itself; indeed, he has uploaded the video of his public Hearing there[1], where one finds countless other videos of civil Stalking court hearings, from New Hampshire[2] and other states alike.

15.   That the Petitioner, Christina DePamphilis, has been gaining illicit access to and prowling Maravelias's private web forums clearly demonstrates a strange, perverse, and unhealthy obsession she has for the Petitionee, which continues to this day.

---

[1] https://www.youtube.com/watch?v=ErHhybEI_3w,  https://www.youtube.com/watch?v=eAIuzOJQWLY
[2] E.g. https://www.youtube.com/watch?v=N12qa6q58OM, https://www.youtube.com/watch?v=Nxbc0mZoSws, etc.

**A. (iii) Christina DePamphilis Finally Makes a Legal Argument About the Videotaping Question in Paragraph 14, That it "Advances an Overriding Public Interest"**

16.  The only actual legal argument Petitioner advances against Respondent's argument that the Court violated the rules appears in Paragraph 14. She quotes a part of Circuit Court Rule 1.4(f) and claims the injunction she requested "advances an overriding public interest".

17.  However recognizing that such an "overriding public interest" would have been necessary to show before warranting the unusual injunction, <u>the Petitioner fails to state what exactly that public interest is</u>. More importantly, neither did she ever at the Hearing nor in her 2/20/18 Motion.

18.  The Petitioner alludes to her *private* interest in keeping her baseless stalking accusations under-wraps. But, this is clearly not a "public interest", nor was any service of any "public interest" ever shown by Petitioner when debating this matter before the Court during the Hearing on this matter.

19.  Quite to the contrary, a <u>compelling public interest</u> in the reduction of wasteful false accusations and in holding accusers accountable <u>is served by the mandatory video recording of such Hearings.</u>

20.  Circuit Court Rule 1.4(f) mandates in clear language:

> "the party or person seeking to prohibit or impose restrictions beyond the terms of this rule on the photographing, recording or broadcasting of a court proceeding that is open to the public <u>shall bear the burden of demonstrating</u>: (1) that the relief sought advances an overriding public interest that is likely to be prejudiced if the relief is not granted; (2) that the relief sought is no broader than necessary to protect that interest; and (3) that no reasonable less restrictive alternatives are available to protect the interest."

21.  At no point did the Petitioner highlight for the Court an "overriding public interest" legitimizing the injunction; therefore, the Court erred in limiting the Respondent's recording rights.

22.  Furthermore, Circuit Court Rule 1.4(f) states:

"Any order prohibiting or imposing restrictions beyond the terms of this rule upon the photographing, recording or broadcasting of a court proceeding that is open to the public <u>shall be supported by particularized findings of fact that demonstrate the necessity of the court's action</u>."

23.   In granting the Petitioner's request to limit the recording rights, <u>the Court made no such particularized findings of facts</u>. Therefore, the Respondent's recording rights were violated regardless – even if an "overriding public interest" had been shown by Petitioner.

24.   To the Court's credit, it would have been impossible to author a "particularizing finding of fact" elucidating the overriding public interest which the injunction served, since there never was any indicated by Petitioner to begin with. <u>The court rules were unquestionably violated</u>.

25.   The Petitioner makes sure to address the separate topic of whether this error is grounds for reversal, likely given the palpable undeniability of said error. She advances a highly strange argument in Paragraph 15 that, just because Respondent has access to audio recording transcripts independently of his video recording, therefore the injunction against video recording did not enable Petitioner to testify without the extra accountability of being videotaped while testifying. This argument is clearly absurd. Respondent was prejudiced by the Court's error.

B.   <u>The Court Did Violate the Hearing Requirements of RSA 633:3-A, III-c., as Respondent's Motion for Reconsideration Accurately Argued</u>

26.   In this portion of Petitioner's objection, she raises all sorts of scattered, unrelated diversions frantically skirting <u>the only relevant fact that February 15th (the first Hearing date) is 34 days after January 12th (the extension date)</u>. This is the end-all-be-all of demonstrating that the Court violated the statutory requirement of holding a "hearing" "within 30 days of the extension".

27.   Petitioner points out there is no speedy trial right in non-criminal cases. While this is true within solely the Federal Bill of Rights, New Hampshire law specifically contains a statute affording the right to hearing within 30 days, which was violated. Maravelias is also prepared to

advance well-supported legal arguments on appeal, if need be, that the nature of civil Stalking injunctions and their impositions is "criminal-like", and that therefore his Sixth Amendment rights have indeed been violated. However, this endeavor is not presently necessary.

28.   The Petitioner wrongly claims that Maravelias needed to have objected to the 30-days-requirement violation, or even had an opportunity to. Maravelias was not afforded an opportunity to be heard by this Court, after the 1/12 extension, until 2/15. The only objection he could have possibly made at this point, after his right to a timely trial was already violated, would be to petition the Court to invent a time machine, reverse the date two weeks, and reschedule the Hearing before 30 days elapsed on 2/11/18. Clearly, Maravelias never had the opportunity to object, and merely expected the Court to fulfill its lawful duty after 1/12 to schedule a timely Hearing for him.

29.   Furthermore, the Court specifically scheduled the *Paul Maravelias v. David DePamphilis* Hearing for 8:30am – first on the docket – on 2/15, electing optionally to further delay the Hearing on the instant case. Attorney Brown therefore insisted in moving forward with *that* case first.

30.   Petitioner's note that Maravelias declined the 2/20/18 opportunity to go forward is absolutely misplaced; his rights under the statute to a hearing "within 30 days" had already been violated, and his Motion for Reconsideration claims nowhere that the resultant extended continuances into May and June were further violations of the rule.

31.   Contrary to the Petitioner's absolutely unsupported passing remark in Paragraph 23 that "dismissal is not a remedy for any alleged deviation from the statute", the Court is required to dismiss the order extension if it violated Respondent's rights and deprived him of a fair, timely hearing. Indeed, the Supreme Court has vacated Stalking orders simply because the judge cited unnoticed accusations found nowhere in the underlying petition in the finding of facts form – exactly as has happened to Mr. Maravelias. *See* ignored Motion to Dismiss and South vs. McCabe, 943 A.2d 779 (2008)

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Honorable Court:

     I.      Grant this Motion;

     II.     Grant Respondent's 6/25/18 Motion for Reconsideration; and

     III.    Grant such other relief as may be just and proper.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

July 5th, 2018

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

A66         A66

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                 10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-00124

Christina DePamphilis

v.

Paul Maravelias

## MOTION TO STRIKE

NOW COMES the Respondent, Paul Maravelias, and moves this Court to strike portions of Plaintiff's 7/2/18 *Objection to Respondent's Motion for Reconsideration*. In support thereof, the Respondent states:

1.     On 7/2/18, the Petitioner filed the aforementioned objection to which Respondent is replying in a separate pleading.

2.     Paragraph 11 of Petitioner's said filing must be stricken from the Court's record due to various estoppels and improper presumption of facts not in evidence.

## A. Judicial Estoppel Prohibits Petitioner's Paragraph 11

*"Allegans contraria non est audiendus"*
"A person making contradictory allegations is not to be heard." – Broom's Legal Maxims

3.   Judicial estoppel is a form of estoppel which prohibits legal actors from taking self-contradictory positions. "Courts have observed that 'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle[.]'" New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed. 2d 968 (2001) (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)).

4.   The doctrine is however adopted through a few generic elements which the Court ought to hold as applicable in this case.

5.   American courts have interpreted three core elements of judicial estoppel:

1) The later position must be clearly inconsistent with the earlier one;

2) The earlier position was judicially accepted, creating the risk of inconsistent legal determinations;

3) and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped.

*See* Wilcox v. Vermeulen, 2010 S.D. 29, ¶ 10, 781 N.W.2d 464, 468.

6.   In Paragraph 6 of Attorney Brown's 4/20/18 *Motion to Strike* filing in the related *Paul Maravelias v. David DePamphilis* case, he wrote for the Court that the "Stalking Order is in effect based on [Maravelias's] previous obsession for [the Petitioner]".

7.   But, in Paragraph 11 of his 7/2/18 filing in this case, he claims that "Respondent's obsession with Christina has persisted" since "February 2017".

8.   Clearly, it was only this Court's baseless, asinine, and unsupported act of libel on 6/15/18 to pronounce Mr. Maravelias as having a "strange, unhealthy, and perverse obsession [with

Plaintiff] to the present day" which gave Attorney Brown a sense of renewed validation to make new and inconsistent claims against Mr. Maravelias which he knows to be entirely false – so much so that he would not even bring himself to claim Maravelias has an ongoing "obsession" with the Petitioner in the same 4/20/18 filing which is itself riddled with many other false disparaging comments against Mr. Maravelias, though even they less blatantly false.

9.   The continuity of the identity of the parties is not open for debate. David DePamphilis testified that he "stands by what we [the Petitioner] said", making reference to the Stalking accusations against Mr. Maravelias. He is liable for her through the maxim of *respondeat superior*. The Petitioner did not deny any of the claims made by Attorney Brown in the Stalking case against her father. The DePamphilis legal actors have adopted fickle characterizations of Maravelias which change with the winds of what they can reasonably expect to get away with in a court filing.

10.   Thus, the Petitioner's later position (that Respondent has an "obsession", 7/2/18) is clearly inconsistent with the earlier one (that Respondent had a "previous obsession", 4/20/18).

11. Moreover, "the earlier position was judicially accepted, creating the risk of inconsistent legal determinations"; nowhere in the Court's orders on the 4/20/18 Motion to Strike was a finding of a "present obsession" made regarding Mr. Maravelias, nor in that whole case. Furthermore, the Court made verbal comments during the Hearing in the instant case indicating its recognition that there clearly is no "obsession", and never adopted this new position now advanced by Petitioner until doing so *sua sponte* in a baseless 6/15/18 Order.

12. Moreover, "the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not estopped", since Petitioner grounds her 7/2/18

objection to Respondent's Motion for Reconsideration in the absurd notion that he has a "present obsession" with her.

13. Therefore, all the requisite elements are satisfied, and a judicial estoppel is created. Thus, the Court ought to strike Paragraph 11 of Petitioner's filing from the record.

## B. Collateral Estoppel Prohibits Petitioner's Paragraph 11

14. Whether or not the Respondent had an "obsession" was a specifically litigated issue in the original 2017 hearings prior to Judge Stephen's reckless issuance of a Stalking Order against Mr. Maravelias because he invited a young woman to dinner and never spoke to her ever after the day of the rejection; his finding of fact specifically mentions the term "obsession".

15. On 1/5/18, Petitioner motioned the Court to grant an extension on the same Final Order of Protection. This Motion contained the term "obsession" absolutely nowhere. *I.e.*, it was evident by then that Maravelias was only "obsessed" with getting his basic rights restored to him and having this fraudulent legal abuse and harassment against him come to an end.

16. Therefore, a collateral estoppel is also created, since the issue of an "obsession" was first litigated and then nowhere renewed in the Petitioner's extension motion; thus, it is precluded.

17. Therefore, the Court should strike Paragraph 11 of Petitioner's 7/2/18 objection.

## C. Petitioner's Paragraph 11 Assumes Facts Not Found in Evidence

18. The text to be stricken suggests Respondent "has issued writings to Christina's parents, her teachers, and others which directly and profanely impugned Christina's character".

19. Maravelias notified an honor society about his abuser's criminal conduct and responded to Attorney Brown's threatening letter. But, he never issued writings to the Petitioner's "parents".

20. This is not a legal argument; it is false assumption of fact non-existent in the record. Thus, it should be stricken.

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Honorable Court:

I.       Grant this Motion;

II.     Strike Paragraph 11 of Petitioner's *Objection to Respondent's Motion for Reconsideration* from the Court's record; and

III.    Grant such other relief as may be just and proper.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

July 5th, 2018                   _____

**A71**                     **A71**