UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PAUL MARAVELIAS, | )  Civil No. 1:19-CV-143(SM) |
| *Plaintiff,* | ) |
| v. | )  JURY TRIAL DEMANDED |
| JOHN J. COUGHLIN, in his individual and official capacities, GORDON J. MACDONALD, in his official capacity as Attorney General of New Hampshire, PATRICIA G. CONWAY, in her official capacity as Rockingham County Attorney, TOWN OF WINDHAM, *ex rel.* WINDHAM POLICE DEPARTMENT, and GERALD S. LEWIS, in his official capacity as Chief of Police. | ) ) ) ) ) ) ) ) ) ) |
| *Defendants.* | ) |

### PLAINTIFF'S OPPOSITION TO WINDHAM DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

NOW COMES Paul Maravelias ("Plaintiff") and Objects to the Windham Defendants' 5/16/19 Motion to Dismiss. In further support thereof, Plaintiff avers the following points of fact and law:

1. The Windham Defendants filed a Motion to Dismiss and accompanying Memorandum of Law on 5/16/19. ECF Docs #24, 25. The Windham Defendants move to dismiss all claims against them pursuant to Rule 12(b)(1) under the Rooker-Feldman doctrine and separately under Rule 12(b)(6) for lack of Article III standing. *See* ECF Doc #25, at 2.

2. Maravelias ("Plaintiff") adopts herein his presentation of the facts, procedural history, and recitation of the appropriate standard of review as presented in within his contemporaneously filed 6/3/19 "Memorandum of Law in Support of Plaintiff's Opposition to Defendant Gordon J. MacDonald's Motion to Dismiss Amended Complaint".

## ARGUMENT

### I. The Rooker-Feldman Doctrine Is Inapposite

3. The Windham Defendants offer a skeletal argument that Rooker-Feldman should bar this case. The Attorney General's subsequent Rule 12(b)(1) Motion to Dismiss lodges a far more developed Rooker-Feldman attack on Plaintiff's Amended Complaint and overshadows the Windham Defendants' argumentation on this point. *Compare* ECF Doc #25, 3 – 4 *with* ECF Doc #26. The Windham Defendants do not appear to debut any unique Rooker-Feldman arguments untried within the Attorney General's Motion.

4. Plaintiff has already filed a rigorous opposition and memorandum of law in response to the Attorney General's Rooker-Feldman Motion to Dismiss, exposing the irredeemable inapplicability of Rooker-Feldman in this case. *See* ECF Doc #33.

5. Plaintiff hereby repeats and incorporates by reference his 6/3/19 "Memorandum of Law in Support of Plaintiff's Opposition to Defendant Gordon J. MacDonald's Motion to Dismiss Amended Complaint", obviating the need to engage any further discussion here of Windham Defendants' redundant Rooker-Feldman arguments already addressed. However, Plaintiff briefly discusses a few peculiar aspects of the Windham Defendants' Motion to Dismiss in this part.

#### A. The Windham Defendants Take Disturbing Liberties While Characterizing the Record

6. The Attorney General's 5/17/19 Motion to Dismiss the Amended Complaint offers an argument under the law, though flawed, plausible and made in good faith; where it errs factually, it does not do so in an outrageous or irresponsible manner verging on sanctionable

conduct under Rule 11. Unfortunately, the same cannot be said of the Windham Defendants' 5/16/19 Motion to Dismiss.

7.   Windham Defendants assert "a review of the Amended Complaint makes clear that the Plaintiff wishes this Court to reverse the factual determinations that were found by Judge Coughlin and subsequently upheld (twice) by the New Hampshire Supreme Court". ECF Doc #25, at 4. The Windham Defendants fail to identify a single "factual determination" Maravelias's action seeks to "reverse". The meritless suggestion is reckless and prostitutes this Court's credulity. Indeed, Judge Coughlin made <u>zero</u> "factual determinations" when granting the "extended terms", the narrow subject of this lawsuit, on 8/7/18. *See* <u>Amended Complaint</u>, **Exhibit E**. The Windham Defendants appear to envision an alternate reality wherein Maravelias has brought a federal suit against the existence of the state protective order in whole, rather than solely the "extended terms" thereof. The Windham Defendants go on to divulge their alarming lack of awareness by citing Maravelias's past 2017 appeal of a completely different, preexisting restraining order issued over one year before the "extended terms" issue first arose in July 2018.[1] While the 2018 appeal contained Maravelias's ignored challenge to the "extended terms", the content of the historical 2017 appeal bears not an iota of legal similarity to the issues brought forth for adjudication here.[2]

---

[1] Even though the referenced historical 2017 restraining order was granted by a different judge in a different court, Windham Defendants embarrassingly showcase their ignorance by suggesting "Judge Coughlin" arbitrated both the 2017 and 2018 protective orders, in order to tell a slightly more dramatic *Rooker-Feldman* story.

[2] Upon information and belief, the Windham Defendants have demonstrated a routine susceptibility to confusion in legal matters by maintaining simpleton hyper-generalizations of distinct legal moving-parts. Plaintiff's forthcoming Reply to Windham's Opposition to Motion for Preliminary Injunction illuminates another such instance, pertaining to the Windham Defendants' unenlightened, pedestrian conflation of the distinct concepts "constitutionality of courts relying upon certain speech-acts as grounds to extend a protective order" and "constitutionality of restrictions to speech imposed by in-effect protective orders".

8.  Accordingly, the Windham Defendants' legally imprecise shotgun pleading aims to create heightened tension, confusion, and distraction from the meaningful legal arguments currently before the Court on both sides. While they might understandably lack the Attorney General's level of legal sophistication, Plaintiff respectfully notices his aspiration the Windham Defendants will refrain from such diversionary tactics hereinafter.

**B. The Windham Defendants Misidentify Binding Case Law and Conflate the Rooker-Feldman Doctrine with Preclusion Law**

9.  Plaintiff's contemporaneous 6/3/19 Memorandum of Law exhaustively corroborates that the NHSC's 2018 failure to adjudicate Maravelias's federal constitutional challenge to the "extended terms" leaves said challenges viably within this Court's subject matter jurisdiction, unhindered by Rooker-Feldman. *See Id.* at 22 – 24. Windham Defendants ostensibly scoured LexisNexis to find a single arcane example to the contrary. They came up with a 1999 case from the Eastern Dist. of Pennsylvania which flies in the face of the Supreme Court's current binding case law in the matter since *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280.

10. The Windham Defendants incorrectly claim "the Rooker-Feldman Doctrine applies to 'claims that could have been brought in state court proceedings'", citing *Villela v. City of Philadelphia*, 1999 U.S. Dist. LEXIS 19843 at *8 (E.D. Penn. 1999). In fact, *Feldman* itself held "[t]here can be no question as to the proper presentation of a federal claim when the highest state court passes on it", just as the NHSC "passed" on Maravelias's 2018 federal claims against the "extended terms". *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16, 103 S. Ct. 1303, 1315 (1983) (quotation omitted and emphasis added) (quoting *Raley v. Ohio*, 360 U.S. 423, 436-437 (1959)). To avoid redundant further explanation, Plaintiff relies upon his contemporaneous 6/3/19 Memorandum of Law for all further support.

11. Windham Defendants incorrectly repeat a second time that "the Rooker-Feldman doctrine applies to claims that have been adjudicated by a state court <u>or</u> could have been adjudicated by a state court", this time offering not a single citation of support. ECF Doc #24, at 4. While the preclusion law doctrines of *res judicata* and collateral estoppel can sometimes preclude claims or issues which "could have been" raised, "Rooker-Feldman is not simply preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, 126 S. Ct. 1198 (2006). "The District Court erroneously conflated preclusion law with Rooker-Feldman." *Id.*

## II. Plaintiff Does Not Lack Standing

12. Plaintiff eagerly turns to the Windham Defendants' other argument that he lacks standing under Article III and, thus, his Amended Complaint must be dismissed.

13. Standing is a core component of Article III's case-and-controversy limitation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). "The Supreme Court has explained that the 'irreducible constitutional minimum' of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (citing *Lujan*, 504 U.S. at 560–61). The Windham Defendants only dispute that there is "an actual or imminent injury".

### A. Plaintiff Alleges an Actual or Imminent Injury

14. Plaintiff's Original Complaint doubtlessly alleges the "real and immediate" threat of unlawful prosecution because it alleges Sgt. Smith will arrest Maravelias for the lawful, constitutionally protected conduct of violating the "social media possession" "extended terms" if Sgt. Smith fails to establish the Supreme Court exhibit in question was not part of an earlier court case. *See* ECF Doc. #2, Attachment (1), "Declaration in Support", ¶15-3.

15. The Windham Defendants' very Answer thereto reconfirms their imminent, real, and unabated enforcement threat. *See* Answer, ECF Doc. #8, ¶83, 92, 97, 109, 118. "[A] 'real and immediate threat' of injury may be demonstrated through an 'offending policy [that] remains firmly in place.'" *Alasaad v. Nielsen*, No. 17-cv-11730-DJC, 2018 U.S. Dist. LEXIS 78783 (D. Mass. May 9, 2018) (quoting *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 306 (1st Cir. 2003))

16. The Amended Complaint alleges further imminent and actual injury. *See Id.* at ¶43 – 51 (imminent injury), ¶52 – 56 (actual injury), ¶57 – 62 (imminent injury), ¶63 – 73 (imminent injury). In fact, "Maravelias openly admits he has possessed the 'middle-fingers' social media post trial court exhibit" which DePamphilis cyberbullied him with while lying about "fear" to obtain a false restraining order. *Id.* at ¶58. Maravelias asseverates he will soon exercise his constitutional rights "to violate the 'extended terms' by obtaining certain 'social media' artifacts and using them in public speech acts to prove the DePamphilis stalking order is nothing but a fraudulent legal harassment mechanism" against him. *Id.* at ¶62. It is hard to imagine a more "imminent" threat.

17. While it would not be "sufficiently real and immediate to show an existing controversy simply because [one] anticipate[s] violating lawful criminal statutes and being tried for [their] offenses" (emphasis added), *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the threatened enforcement here – as alleged – is not "lawful".[3]

---

[3] Not only do Windham Defendants persist in credible threats to violate Maravelias's constitutional rights through such enforcements, they persist in defiance even of *state statutory law* – let alone federal constitutional law – to do so. *See* RSA 633:3-a, I.(c), allowing criminal enforcement of such civil state court orders only where a person "engages in a single act of conduct that both violates the provisions of the order and is listed in paragraph II(a)". (Emphasis added). "Possession" appears nowhere in the enumerations of RSA 633:3-a, II(a), an exclusive listing for purposes of the criminal enforcement statute. *See* Amended Complaint at ¶63 – 73.

18. Should the Court desire any further support to accept Maravelias's standing to pursue this action, *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003) is instructive:

> "A party need not violate the statute and suffer the penalty in order to generate a conflict worthy of standing in federal court. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). In challenges under the First Amendment, two types of injuries may confer Article III standing without necessitating that the challenger actually undergo a criminal prosecution. The first is when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.' *Id*. Plaintiffs may have standing even if they have never been prosecuted or threatened with prosecution. *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The second type of injury is when a plaintiff 'is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences.' *N.H. Right to Life*, 99 F.3d at 13."

19. Against this legal backdrop, it is impossible for the Windham Defendants to claim Maravelias lacks standing without rejecting the Amended Complaint's numerous well-pleaded factual stipulations; *e.g.*, that he intends to "engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the extended terms], and there exists a credible threat of prosecution", and that he is presently "chilled from exercising [his] right to free expression". *See* <u>Amended Complaint</u> ¶52 – 56.

20. Here, Maravelias alleges that an unconstitutional application of a state statute (against which he also brings a facial challenge) is currently chilling his First Amendment-protected expression. *See* <u>Amended Complaint,</u> *supra*; *See also* <u>Original Complaint</u>, ¶40 – 43, 46

– 58. *Cf. O'Shea v. Littleton*, 414 U.S. 488 (1974), a distinguishable suit which held that no justiciable case or controversy existed "in the <u>absence of allegations</u> that unconstitutional [statutes] [were] being employed to deter constitutionally protected conduct" (emphasis added) unlike this case, and where "respondents [had] <u>not pointed</u> to any imminent prosecutions contemplated against them" (emphasis added), also unlike the instant case.

### B. The Windham Defendants Base Their Sole Argument to the Contrary Upon a Bizarre Misinterpretation of An Irrelevant 2018 NHSC Final Order

21. The Windham Defendants have a fallback position which may be considered the legal absurdity of the century. After admitting earlier in their Motion that the past 2018 NHSC Appeal <u>did not adjudicate</u> the constitutionality of the "extended terms", the Windham Defendants stage a suave bait-and-switch by deploying the following language as a launchpad for the limitless rocket of their imaginative legal *non-sequiturs*:

> "However, the very issue of the stalking order's impact on Plaintiff's right to free speech was adjudicated by the New Hampshire Supreme Court when the Plaintiff appealed the extended terms. ... [The NH Supreme] Court stated that 'a defendant has no First Amendment right to inflict unwanted and harassing contact on another person,' ... [and] went on to rule that the Plaintiff's prior conduct, which was outlined in detailed in the Order, 'did not amount to protected free speech'" ECF Doc #25, at 7 – 8.

22. The Windham Defendants attempted to persuade readers of its Motion that, because the NHSC held that the trial court's reasoning for granting the past 2018 renewal of the protective order based on Maravelias's disagreeable speech was not a reversible error, therefore the totally unrelated "extended terms" they never adjudicated are somehow not unlawful. Having pulled-off the dramatic bait-and-switch of context, the Windham Defendants allege in the next paragraph that

the "[NHSC] [ruled] that the stalking order does not deter constitutionally protected conduct". Risibly, Windham Defendants confused their own selves while attempting to confuse their readers because their preceding characterizations (amounting to the assertion that Maravelias's offensive speech acts which caused the trial court to grant a protective order were not constitutionally protected) suddenly and inexplicably metamorphosized into the unrelated assertion that the terms of the protective order do "not deter [Maravelias's] constitutionally protected conduct". The Windham Defendants do not conclude without a grand finale of sophistry: based on the above, they then claim Maravelias "is not attempting to engage in protected free speech" if he were to use a public internet screenshot of someone cyberbullying him with her and her boyfriend's middle-fingers to advocate his legal position that said vulgar bully is not credible in her claims of "fearing" Maravelias.

23. The Windham Defendant's legal arguments on Page 7 and 8 of their Motion are unintelligible, frivolous, nonsensical, difficult to understand, and impossible to take seriously. Accordingly, they fail to undermine Plaintiff's presentation of *Lyons* and *O'Shea* as distinguishable. The case law amply supports the conclusion that Maravelias has both an "actual" and "imminent" injury, as alleged, to confer standing, even though only one or the other is necessary.

24. No separate memorandum of law is required in support of this objection as all relevant legal authority relied upon is cited herein. *See* LR 7.1(a)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court:

A.  Deny the Windham Defendants' 5/16/19 Motion to Dismiss Amended Complaint;

B.  Hold a Hearing on this matter; and

C.  Grant any further relief as may be deemed just and proper.

Dated: June 3rd, 2019

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

/s/ Paul J. Maravelias, *pro se*

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

## **CERTIFICATE OF SERVICE**

I, Paul Maravelias, certify that a timely provided copy of this document is being sent on this date to all counsel of record for the Defendants pursuant to the rules of this Court.

/s/ Paul J. Maravelias
**Paul J. Maravelias**

Dated: June 3rd, 2019