**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

DISTRICT OF NH
FILED

2019 JUN 18 P 8 33

24 HOUR DEPOSITORY

|  |  |
|---|---|
| PAUL MARAVELIAS, | ) Civil No. 1:19-CV-143(SM) |
| *Plaintiff,* | ) |
|  | ) JURY TRIAL DEMANDED |
| v. | ) |
|  | ) |
| JOHN J. COUGHLIN, in his individual and official | ) |
| capacities, GORDON J. MACDONALD, in his | ) |
| official capacity as Attorney General of New | ) |
| Hampshire, PATRICIA G. CONWAY, in her official | ) |
| capacity as Rockingham County Attorney, TOWN | ) |
| OF WINDHAM, *ex rel.* WINDHAM POLICE | ) |
| DEPARTMENT, and GERALD S. LEWIS, in his | ) |
| official capacity as Chief of Police. | ) |
|  | ) |
| *Defendants* | ) |

**SURREPLY MEMORANDUM TO DEFENDANT GORDON J. MACDONALD'S**
**REPLY TO OBJECTION TO MOTION TO DISMISS**

NOW COMES Paul Maravelias ("Plaintiff") and submits the within Surreply to the Attorney

General's 6/10/19 Reply (ECF Doc #38), pursuant to LR 7.1(e)(3), and states as follows.

I. **Plaintiff's Admittedly Overlength Memorandum of Law (ECF Doc #33-1) Was**
**Harmless and Should Be Overlooked**

1. Plaintiff agrees with the Attorney General that, apparently, the Court's Local Rule

limits memoranda in support of oppositions to motions to dismiss to twenty-five (25) pages in

length, and that his 6/3/19 Memorandum of Law (ECF Doc #33-1) on the inapplicability of the

Rooker-Feldman doctrine was thirty-six (36) pages in length.

2. Plaintiff's oversight was harmless because the extra approximately ten (10) pages

from Page 26 – 34 thereof contained argument relating to the "extended terms" being (1) non-

judicial and (2) without jurisdiction: this <u>same argumentation</u> was equally responsive both (1) to

1

all Defendants' Rooker-Feldman arguments and also, separately, (2) to Defendant John J.
Coughlin's absolute judicial immunity argument.

3.     Plaintiff's Objection to Defendant John J. Coughlin's Motion to Dismiss (ECF Doc
#24) was only seven (7) pages long, far-under the limit, and incorporated by reference the
approximately ten pages of the overlength 6/3/19 Memorandum to show the non-judicial and extra-
jurisdictional nature of the "extended terms". Plaintiff could have included this same content in
his Objection (ECF Doc #24) to Defendant Coughlin's Motion to Dismiss and externally
incorporated it by reference inside his otherwise-overlength 6/3/19 Memorandum of Law.

4.     The total summed content of Plaintiff's objection pleadings falls woefully below
the theoretical allowed maximum of twenty-five-pages times four defendants = one-hundred (100)
pages, combined, permissible if Plaintiff were to have distributed his argumentation accordingly.

5.     Plaintiff's positioning of the extra pages concerning the non-judicial and non-
jurisdictional nature of the "extended terms" is logical, convenient, and conducive to judicial
efficiency. Plaintiff has provided the Court with one central, primary memorandum detailing the
distinct reasons why Rooker-Feldman cannot apply, rather than confusingly to intersperse distinct
components of said argumentation into separate objection pleadings partitioned per defendant.

6.     Maravelias is a *pro se* litigant arguing his first case outside New Hampshire state
courts; accordingly, the Court should relax its local rule and allow the 36-page memorandum.

7.     Regardless, an extension of length to the memorandum would be appropriate since
Defendants' Rooker-Feldman arguments raise compelling, intricate questions of federal law.

8.    In the alternative, the Court should permit Maravelias to re-file his Objections to the defendants' motions to dismiss in a manner distributing his argumentation such that no single filing exceeds twenty-five (25) pages.

## II.    The Final 2/21/19 Mandate, Not The 1/16/19 Preliminary Draft, Of The NHSC's 2018 Appeal Decision Is Controlling For Rooker-Feldman Purposes

9.    The Attorney General admits the above-captioned issue is "the only argument" in Plaintiff's Memorandum in Opposition that Defendant's Reply addresses.

10.    The U.S. Court of Appeals for the First Circuit has left no question in the matter:

"If federal litigation is initiated before state proceedings have ended, then – <u>even if the federal plaintiff expects to lose in state court and hopes to win in federal court</u> – the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction. See <u>id. at 1526-28</u>." (Emphasis added)

*Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17 (1st Cir. 2005) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).

11.    Though it need not have, it seems the First Circuit foresaw <u>exactly</u> such a situation where Rooker-Feldman would not apply "even if the federal plaintiff expects to lose in state court and hopes to win in federal court", *e.g.*, if such a plaintiff forms an "expectation" based off a state appellate court's preliminary draft order, <u>before</u> said appellate order becomes final.

12.    The Attorney General asserts there is something unnatural, absurd, or untoward about this reality by using rhetoric about the "savvy state court litigant", put into the prose of a "race to file in a lower federal court during the period for motions for reconsideration of a [preliminary state appellate] judgment" in the Windham Defendants' Reply (ECF Doc #38).

However, there is not. If a citizen observes the likelihood that their state court is about to fail to secure his or her rights under the federal constitution, a "race" to involve the federal court's original federal question jurisdiction – while still possible – does not contradict Rooker-Feldman.

13.     The Attorney General cannot expect this Court to dismiss this case based upon a newfound Rooker-Feldman policy which does not currently exist in the law. If the Attorney General wishes to pursue his argument that the 1/16/19 date should apply instead of the 2/21/19 Mandate and change the law, he may appeal this Court's unfavorable decision to the First Circuit.

14.     Regardless, it is not even necessary here to reject the Attorney General's argument. This case is readily distinguishable from a case where a "savvy state court litigant" took to federal court immediately upon view of an unfavorable preliminary state appellate judgment. Plaintiff's 2/11/19 Original Complaint leaves zero doubt that it was the Windham Defendants' credible unlawful enforcement threats expressed to Maravelias on Friday 2/8/19 at an in-person meeting with Sgt. Bryan Smith at Windham Police Department which caused this lawsuit. Plaintiff filed his Original Complaint and application for TRO within 72 hours thereafter, weeks and almost an entire month after he saw the NHSC's preliminary 1/16/19 Order.

15.     Accordingly, there is no question this Court need not even adopt a rule on the matter favorable to Plaintiff's position regarding the 2/21/19 Mandate as the particular facts and circumstances herein indicate this lawsuit was filed as a response to a credible threat of an unlawful enforcement, not as a "savvy" "rush" to federal court before the 2/21/19 NHSC Mandate. Plaintiff points to the expeditious, laconic nature of his 2/11/19 filings as further evidence and avers he barely even knew what the Rooker-Feldman doctrine was on 2/8/19.

16.     Moreover, the question of the finality of the state court judgment is a matter of state law, even though a "final judgment" refers to the date of the mandate even in federal-only contexts. *See e.g. United States v. Reyes*, 49 F.3d 63 (2d Cir. 1995). The NHSC has addressed with crystal clarity "the date of the mandate, not the date of the issuance of the decision, is the effective date of an appellate court's decision". *State v. Gubitosi*, 153 N.H. 79, 888 A.2d 1262 (2005). Plaintiff does not "rely" upon *Carleton v. Balagur*, 162 N.H. 501, 505-06, 34 A.3d 637, 641 (2011) for the proposition, as the Attorney General claims. Rather, *Carleton* was simply a more recent case which quoted and reiterated the date-of-mandate rule the NHSC previously rehearsed in *Gubitosi*.

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court:

A.     Deny all Defendants' Motions to Dismiss Amended Complaint;
B.     Hold a Hearing on this matter; and
C.     Grant any further relief as may be deemed just and proper.

I, Paul Maravelias, certify under penalty of perjury that the factual allegations in Paragraphs 14 and 15 above are true and accurate to the best of my knowledge as of this date.

Dated: June 18th, 2019

Respectfully submitted,

PAUL J. MARAVELIAS,

/s/ Paul J. Maravelias, *pro se*

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

## CERTIFICATE OF SERVICE

I, Paul Maravelias, certify that a timely provided copy of this document is being sent on this date to all counsel of record for the Defendants pursuant to the rules of this Court.

/s/ Paul J. Maravelias                          Dated: June 18th, 2019
**Paul J. Maravelias**